IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

No. 06-211T
(Judge Victor J. Wolski)

JAMES R. THOMPSON,

Plaintiff,

v.

THE UNITED STATES,

Defendant

---

**APPENDIX TO PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

**VOLUME V**


| Description | Page(s) |
| --- | --- |
| April 2001 Staff Report of the Joint Committee on Taxation (MAC 0964-977) (Excerpts) | 100-113 |

[JOINT COMMITTEE PRINT]

# STUDY OF THE OVERALL STATE OF THE FEDERAL TAX SYSTEM AND RECOMMENDATIONS FOR SIMPLIFICATION, PURSUANT TO SECTION 8022(3)(B) OF THE INTERNAL REVENUE CODE OF 1986

## VOLUME II: RECOMMENDATIONS OF THE STAFF OF THE JOINT COMMITTEE ON TAXATION TO SIMPLIFY THE FEDERAL TAX SYSTEM

Prepared by the Staff

of the

Joint Committee on Taxation

April 2001

**U.S. Government Printing Office**
**Washington: 2001**

JCS-3-01

**JOINT COMMITTEE ON TAXATION**

**107TH CONGRESS, 1ST SESSION**

---

**HOUSE**

WILLIAM M. THOMAS, California
*Chairman*
PHILIP M. CRANE, Illinois
E. CLAY SHAW, JR., Florida
CHARLES B. RANGEL, New York
FORTNEY PETE STARK, California

**SENATE**

CHARLES E. GRASSLEY, Iowa
*Vice Chairman*
ORRIN G. HATCH, Utah
FRANK H. MURKOWSKI, Alaska
MAX BAUCUS, Montana
JOHN D. ROCKEFELLER, IV, West Virginia

Lindy L. Paull, *Chief of Staff*
Bernard A. Schmitt, *Deputy Chief of Staff*
Mary M. Schmitt, *Deputy Chief of Staff*

ACKNOWLEDGEMENTS

The Joint Committee on Taxation study of the overall state of the Federal tax system and recommendations to simplify taxpayer and administrative burdens is required by the IRS Restructuring and Reform Act of 1998 and funded by appropriations approved by the Congress.

The study was prepared and produced by virtually the entire Joint Committee staff. Special recognition must be given to Mary Schmitt and Carolyn Smith who helped on every stage of this project, from planning and coordinating staff teams to the final editing of the report. In addition, Rick Grafmeyer, who left the staff last year, was instrumental in assisting in the planning of this report. Cecily Rock, who contributed to various portions of the report, also coordinated the final production of the Joint Committee staff recommendations in Volume II.

This study was prepared by the legislative staff of the Joint Committee on Taxation, each of whom contributed to this final product: Carolyn D. Abraham, Secretary; R. Gregory Bailey, Legislation Counsel; Thomas A. Barthold, Senior Economist; E. Ray Beeman, Legislation Counsel; B. Jean Best, Secretary; John H. Bloyer, Chief Clerk; Michael E. Boren, Administrative Assistant; Mary Ann Borrelli, Economist; Tanya Butler, Statistical Analyst; Roger Colinvaux, Legislation Counsel; William J. Dahl, Senior Computer Specialist; John W. Diamond, Economist; Timothy A. Dowd, Economist; Patrick A. Driessen, Senior Economist; Christopher P. Giosa, Economist; H. Benjamin Hartley, Senior Legislation Counsel; Robert P. Harvey, Economist; Patricia A. Hensley, Data Set Specialist; Harold E. Hirsch, Senior Legislation Counsel; Thomas P. Holtmann, Economist; Melani Houser, Chief Statistical Analyst; Deirdre A. James, Legislation Counsel; Ronald A. Jeremias, Senior Economist; Gary Koenig, Economist; Thomas F. Koerner, Associate Deputy Chief of Staff; Lauralee A. Matthews, Senior Legislation Counsel; Patricia M. McDermott, Legislation Counsel; Debra L. McMullen, Senior Staff Assistant; Neval E. McMullen, Staff Assistant; Brian A. Meighan, Accountant; Pamela H. Moomau, Senior Economist; Tracy S. Nadel, Director Of Tax Resources; John F. Navratil, Economist; Joseph W. Nega, Legislation Counsel; Hal G. Norman, Computer Specialist; Melissa A. O'Brien, Tax Resource Specialist; Samuel Olchyk, Legislation Counsel; Christopher J. Overend, Economist; Lindy L. Paull, Chief of Staff; Oren S. Penn, Legislation Counsel; Cecily W. Rock, Senior Legislation Counsel; Lucia J. Rogers, Secretary; Bernard A. Schmitt, Deputy Chief of Staff; Mary M. Schmitt, Deputy Chief of Staff; Todd C. Simmens, Legislation Counsel; Christine J. Simmons, Secretary; Carolyn E. Smith, Associate Deputy Chief of Staff; William T. Sutton, Senior Economist; Melvin C. Thomas, Jr., Senior Legislation Counsel; Michael A. Udell, Economist; and Barry L. Wold, Legislation Counsel. In addition, the following former staff members contributed to this report: David P. Hering, Paul M. Schmidt, and Melbert E. Schwarz.

The Joint Committee staff gratefully acknowledges the contribution of the academic and tax policy advisors for the significant commitment of time and substantive contributions they made to the development of this report. The tax policy advisors provided guidance on the principal focus of the report, and the academic advisors provided significant input on the recommendations in the report. The meetings with the advisors were a rare opportunity for our staff to engage in informative and thought-provoking discussions with former government officials and scholars. The advisors are listed in Appendices A and B, respectively, of Volume I. Special recognition is given to three of the advisors who spent significant time working as consultants to the Joint Committee staff: Patricia E. Dilley, Christopher H. Hanna, and Frances R. Hill, and to the advisors who prepared papers for inclusion in Volume III of this study: Jonathan Barry Forman, Deborah A. Geier, Frances R. Hill, Annette Nellen, George K. Yin, and David J. Shakow.

The Joint Committee staff also recognizes the significant contributions of the General Accounting Office and the Congressional Research Service to this study. The work of these organizations is reproduced in Appendices C and D, respectively, of Volume I.

Lindy L. Paull
Chief of Staff

## B. Partnership Simplification Recommendations

### 1. Modernize references to "limited partner" and "general partner"

**Present Law**

State law defines types of entities for conducting business, such as corporations and partnerships, and describes basic characteristics of such entities and the rights, duties and obligations of their owners. The laws of all 50 States and the District of Columbia provide for the establishment of partnerships, including limited partnerships, and have so provided for many decades.

In general, under State law, a partnership is a mutual agency arrangement, and each partner is an agent of the firm. State law provides rules for general partnerships, in which all partners ordinarily can bind the partnership, can participate in control of the partnership's business, and have personal liability for debts and obligations of the partnership. State law also provides rules for limited partnerships, which can have as owners both general partners and limited partners. Under State law, a limited partner normally is not personally liable for the debts and obligations of the partnership, and generally cannot participate in the control of the partnership's business activities. Thus, State law historically has distinguished between general partners, who do have personal liability and can participate in control of the business (whether in a general partnership or limited partnership), and limited partners, who do not have personal liability and cannot participate in control of the partnership's business.

Within the past two decades, a new form of unincorporated business entity has arisen under State law: the limited liability company. The laws of all 50 States and the District of Columbia now provide for limited liability companies. State laws differ as to the rights of limited liability company owners to participate in control of the limited liability company's business; State law often provides for several classes of ownership interests with different rights as to distributions, voting, and participation in management, for example.[482] However, the common characteristic of limited liability company owners is that they ordinarily are not personally liable for the debts and obligations of the limited liability company. Utilization of limited liability companies (rather than corporations or partnerships under State law) as the choice of entity for new business activities has increased significantly.

For Federal income tax purposes, limited liability companies generally are classified as partnerships rather than as corporations.[483] The owners of a limited liability company that is

[482] In some States, members of limited liability companies are classified as managing and non-managing members.

[483] Under Federal income tax law, generally income of entities classified as partnerships is subject to one level of tax (i.e., only to owner-level but not to entity-level income tax on earnings), whereas income of entities classified as corporations is subject to two levels of tax (i.e., both to owner-level and entity-level income tax on earnings). Treasury regulations issued in 1996 provide that Federal tax classification of an entity that is not a corporation under State law, such as a limited liability company, as either a corporation or a partnership is elective. A

classified as a partnership for tax purposes are treated as partners for Federal income tax purposes. However, under State law, limited liability company owners are not defined as either general partners or limited partners.

Nevertheless, a number of provisions of the tax law refer to either "general partners" or "limited partners." These references generally predate the widespread use of limited liability companies, and are based on the distinction made under State law with respect to general and limited partners of partnerships. The distinction is difficult to interpret when applied to owners of a limited liability company, who, though treated as partners for Federal income tax purposes, are not subject to the State-law rules relating to partners and partnerships, and are neither general partners nor limited partners under State law.

Present-law references to "general partners" in the Internal Revenue Code are found in:

(1) section 465(c)(7)(D)(ii)(I), in a rule identifying an active business of a corporation eligible for an exception to the at-risk rules;

(2) section 736(b)(3)(B), in a rule identifying service partners eligible for exchange treatment of payments for good will upon retirement or death;

(3) section 988(c)(1)(E)(v)(I), in a rule identifying owners of funds eligible for special treatment of foreign currency gains and losses;

(4) section 2701(b)(2)(B)(II), in a rule to determine "control" under special valuation rules of the generation skipping tax; and

(5) section 6231(a)(7), in a rule identifying the "tax matters partner" under the 1982 Act partnership audit rules.

Present-law references to "limited partners" in the Internal Revenue Code are found in:

(1) section 464(c)(1)(B) and (e)(2)(A), in rules identifying holdings attributable to active management and defining farming syndicates under a limitation on farming deductions;

(2) section 469(h)(2) and (i)(6)(C), in rules identifying investors that do not materially participate in a business activity or actively participate in a rental real estate activity;

(3) section 772(f), in a rule specifying the operation of simplified flow-through rules for electing large partnerships;

(4) section 1256(e)(3) and (e)(4)(A), in rules identifying "active management" transactions eligible for a hedging exception to mark-to-market rules;

---

limited liability company that does not elect to be treated as a corporation for Federal tax purposes generally is treated as a partnership (unless it is a single-member limited liability company that is treated as a disregarded entity), under these regulations.

(5) section 1258(d)(5)(C), in a rule identifying passive investments that are not eligible for an exception for options dealers and commodities traders to ordinary income treatment;

(6) section 1402(a)(13), in a rule excluding from tax on self-employment income partnership income that is not a guaranteed payment for the partner's personal services; and

(7) section 9701(c)(2), in a rule identifying employers that are subject to Coal Industry Health Benefits rules.

## Sources of Complexity

References in the Code to "general partners" and "limited partners" have become out-of-date, due to the increase in utilization of limited liability companies. Limited liability companies are generally treated as partnerships -- and their owners as partners -- for Federal income tax purposes. Nevertheless, limited liability company owners are neither general nor limited partners under applicable State law. Applying provisions of the tax law that refer specifically to general or limited partners to limited liability company owners creates difficult questions of interpretation.

The development of limited liability companies under State law and the resulting change in business practices have made it advisable to modernize references in the Code to general and limited partners to accommodate the existence of persons who are partners within the meaning of the Federal tax law, but are not either general partners or limited partners.

## Recommendation for Simplification

**The Joint Committee staff recommends that references in the Internal Revenue Code to "general partners" and "limited partners" should be modernized consistently with the purpose of the reference. In most cases, the reference to limited partners may be updated by substituting a reference to a person whose participation in the management or business activity of the entity is limited under applicable State law (or, in the case of general partners, not limited). In a few cases, the reference to limited partners can be retained because the provisions also refer to a person (other than a limited partner) who does not actively participate in the management of the enterprise, which can encompass limited liability company owners with interests similar to limited partnership interests. In one case, the reference to a general partner can be updated by referring to a person with income from the partnership from his own personal services.**

### In general

Two principal differences between general and limited partners under State law are important for Federal tax purposes: (1) whether the partner's liability for partnership obligations is limited; and (2) whether the partner may participate in management or business activity of the partnership.

If the relevant aspect of references to general or limited partners were limited liability, then the appropriate update of references to limited partners would be to substitute a reference to partners whose liability for partnership obligations is limited (or, in the case of general partners, not limited). State law generally does provide limited liability for limited liability company owners with respect to obligations of the limited liability company. Under this approach, then, all limited liability company owners would be treated as limited partners under the present-law rules, even if the limited liability company owners were active in the management or business of the limited liability company. This approach[484] would tend in some cases to change the scope of the present-law rules that include such references, rather than just modernize the reference so that the rule retains its present scope. Further, it would not take into account the purpose of the reference to serve as a shorthand measure of the partner's personal involvement in the management or activity of the partnership, a purpose that appears to be common to many of the provisions that include such references, as illustrated by the provision-by-provision analysis below.

Therefore, it is argued, the relevant aspect of the references to general or limited partners is probably not limited liability in most cases, but rather, is whether the partner's participation in the management or business activity of the partnership is limited under State law. State limited liability company laws do not invariably provide, as does most State law with respect to limited partners, that a limited liability company owner is prohibited from, or limited in, participation in the management or business of the partnership. State laws vary, but most provide that at least some classes of limited liability company owners are permitted to participate without restriction. Under this approach, the appropriate update for references to limited partners would be to substitute a reference to a person whose participation in the management or activity of the partnership is limited under State law (or, in the case of general partners, not limited).[485]

**Provision-by-provision analysis**

Below is a provision-by-provision analysis of the direct references in the Code to limited partners and general partners. Other, indirect references to these terms generally are assumed to be for purposes similar to the direct references, and therefore, are not specifically discussed. For example, the definition of a syndicate (which includes a reference to limited partners in section 1256) is incorporated indirectly by reference in rules governing whether the taxpayer may use the cash method of accounting for Federal tax purposes (sec. 448). This indirect reference is not separately discussed. Similarly, references to general partners or limited partners in Treasury regulations are not discussed. While the purpose of the reference in each provision that is

---

[484] *See Gregg v. U.S.*, D. Or., No 99-845-AA, Nov. 29, 2000, a recent case in which the court refused to take this approach.

[485] One provision of present law, further discussed below, provides a definition of a limited entrepreneur, which means a person with an interest in an enterprise other than as a limited partner, who does not actively participate in the management of the enterprise. Although this is a somewhat different notion than relying on the interest-holder's right to participate in management or activities of the business as defined under State law, it could be a starting point for drafting.

discussed may not be precise or explicit in the legislative history, it may generally be inferred from the context of the provision.

References to general partners

At-risk rules (sec. 465(c)(7)(D)(ii)(I)).--The at-risk rules serve to limit individuals' and closely held corporations' losses and deductions from a business activity to the amount that the taxpayer could actually lose in the activity, i.e., the taxpayer's amount at risk. A special rule provides an exception for certain active businesses conducted by closely held corporations. To qualify for this active business exception, a corporation must have a certain minimum number of full-time employees performing services in the business. If the business is conducted by a partnership in which the closely held corporation is a partner, then to qualify for the active business exception, the corporation must be a general partner. In addition, the corporation must satisfy tests based on minimum percentage ownership and dollar value investment in the partnership. Although the legislative history of these requirements for corporate partners in active businesses is not explicit about the purpose of the general partner requirement,[486] it would not be inconsistent with the sense and scope of the provision to substitute for the general partner requirement a requirement that the closely held corporate partner not be prohibited or limited under applicable State law from participation in the management or business of the partnership. This approach would provide simplification by eliminating the reference to general partners, without changing the meaning or effect of the reference. The partner would still be required to satisfy the other parts of the test, relating to its minimum percentage ownership and dollar value investment. In addition, a minimum full-time employee requirement applies. Thus, for example, under this approach, a closely held corporation conducting an active business as an owner of an limited liability company could qualify for the active business exception under the at-risk rules, provided that applicable State law governing the corporation's interest in the limited liability company did not limit the corporation's participation in management or business of the limited liability company. This result would follow even though the corporation's liability for obligations of the limited liability company is limited under State law. This approach would continue the same result as under present law with respect to general partners, as the new language generally would correlate to rights of general partners under State law.

Payments to retiring partner (sec. 736(b)(3)(B)).--Special rules provide for the character as either ordinary income, or capital gain, of payments made in liquidation of the partnership interest of a retiring or deceased partner. Under this rule, a payment that is treated as a distributive share (which can be ordinary income to the partner) is effectively deductible by the partnership, while a payment that is treated as a distribution in exchange for the partner's partnership interest (which is generally capital gain to the partner) is not deductible by the partnership. A payment to a retiring partner may be treated as in exchange for the partnership interest (with capital gain treatment), unless it is a payment for unrealized receivables, or for good will. An additional special rule provides that a payment for unrealized receivables or good will may nevertheless qualify for favorable exchange treatment, if two requirements are met. The first requirement is that capital is not a material income-producing factor for the partnership,

---

486 *See* Joint Committee on Taxation, *General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984* (JCS-41-84), Dec. 31, 1984, at 730 (reasons for change), 735.

and the second requirement is that the partner was a general partner. Both of these requirements are intended to ensure that the retiring or deceased partner performed personal services for a service partnership.[487] It would be consistent with this intent to substitute for the general partner requirement a requirement that the retiring or deceased partner was subject to tax on self-employment income from the partnership. This approach would serve the same purpose as the present-law reference to a general partner, that is, to provide that the retiring or deceased partner was not merely an investor but actually performed personal services in the partnership's service business. It would serve this purpose better than merely providing a reference to whether the partner was limited by State law in the participation in management or business of the partnership, because the self-employment income would be evidence of his performance of services.

Foreign currency transactions (sec. 988(c)(1)(E)(v)(I)).--Section 988 provides generally that foreign currency gains and losses are treated as ordinary. Transactions that are defined as section 988 transactions subject to this rule generally include (among other things) entering into or acquiring any forward contract, futures contract, option or similar financial instrument, that is denominated in, or by reference to, a foreign currency. In the case of taxpayers that elect to be treated as "qualified funds," however, these types of transactions are not treated as section 988 transactions if they would otherwise be marked to market under section 1256, which provides for 40-percent/60-percent short-term/long-term capital gain or loss treatment.[488] A "qualified fund" means an electing partnership meeting certain statutory requirements, including a requirement that at all times while its election is in effect, it has at least 20 partners, and no single partner owns more than 20 percent of the interest in the capital or profits of the partnership. This rule has the effect of diversifying the ownership of the partnership. An exception is provided to the 20-percent limit in the case of an interest of a general partner, "if neither that partner, nor any person whose taxable income is combined with such general partner's taxable income in a consolidated return, has ordinary income that is foreign currency gain or loss. . ."[489] The legislative history further explains, "[t]hus, a general partner's share of profits or capital may be any percentage if none of that partner's ordinary income or loss is exchange gain or loss from a section 988 transaction."[490] The reference appears to be to a partner that is active in a business (outside the qualified fund) other than one involving section 988 transactions.

The reference in the qualified fund election to a general partner could be modernized by substituting a reference to a person not limited as to participation in the management or activity

[487] *See* H. Rep. 103-111 (May 25, 1993), at 782-783.

[488] The qualified fund election has the effect of benefiting "commodity pool" partnerships that might not otherwise have uniform capital treatment for all of their foreign currency contracts under the general section 988(a)(1)(B) election, which provides for capital treatment of gains and losses on foreign currency contracts unless they are part of a straddle under section 1092.

[489] H. Rep. 100- 1104 (October 21, 1988), at 191.

[490] *Id.*

of the qualified fund. The effect of the present-law reference is to require partners with a greater-than-20 percent interest in the fund to be general partners, that is, to give up the limited liability for fund obligations that they would have as limited partners. Unlimited liability in a qualified fund has the potential for significant consequences because of the inherent volatility of foreign currency derivatives, particularly if the unlimited liability cannot be hedged with offsetting foreign currency transactions outside of the qualified fund. Changing the reference to accommodate limited liability company owners that can participate in management or activity of the fund would have the effect of allowing fund owners to have greater-than-20-percent interests without giving up limited liability.[491] Arguably, this could be a substantive change in the scope of the qualified fund exception to section 988 treatment; it could make the section 1256 treatment available even though no owner of the qualified fund has to give up limited liability for it. If this result is inconsistent with the original purpose of the provision, then expanding the general partner exception to the 20-percent limit to encompass limited liability company owners may be inappropriate.

Special valuation rules for generation-skipping tax (sec. 2701(b)(2)(B)(II).--The generation-skipping transfer tax is imposed on transfers, either directly or through a trust or similar arrangement, to a beneficiary in a generation more than one generation below that of the transferor. Special valuation rules apply for valuing interests in corporations and partnerships. These rules provide that the value of control of the corporation or partnership that is retained by the transferor is treated as zero, for purposes of determining whether the property transferred to the younger generation is a gift. In determining control of a partnership, the rules provide that control means holding an interest as a general partner, in the case of a limited partnership. Because the provision relates to control, the ability of the transferor to participate in the management or activity of the partnership is relevant. To update the references, the provision could be rewritten to provide that in the case of a partnership, any members of which are limited as to participation in management or activity of the partnership, control means holding an interest that is not limited as to participation in management or activity of the partnership. This would broaden the definition of control to cover a situation that is not addressed in present law, giving greater certainty, a transactional simplification benefit.

1982 Act partnership audit rules (sec. 6231(a)(7).--Rules for audits of partnerships, in which determinations can be made at the partnership level so that items are treated consistently for all partners, were added by the Tax Equity and Fiscal Responsibility Act of 1982. Under these rules, a "tax matters partner" is selected who may represent other partners and transmit information to them about the audit process. The tax matters partner is defined as the general partner designated in accordance with procedures set forth in regulations, or if none is designated, the general partner with the largest profits interest. These references are designed to

---

[491] The limited liability company owner would still be precluded from engaging in section 988 transactions outside of the qualified fund, and so would not be able to hedge the (albeit limited) liability associated with its ownership interest through offsetting foreign currency contracts.

point to a partner who is familiar with the operations of the partnership.[492] It would be consistent with the purpose of the provision to substitute for the reference to a general partner a reference to a partner who is not limited as to participation in management or activity of the partnership.

References to limited partners

Concept of "limited partner or limited entrepreneur" (secs. 464(c)(1)(B) and (e)(2)(A), 1256(e)(3)(B) and (C) and (e)(4)(A), and 1258(d)(5)(C)).--Several provisions of the tax law utilize the concept of "limited partner or limited entrepreneur," generally to disallow or limit tax benefits with respect to those persons. Rules deferring certain farming deductions in the case of a farming syndicate include in the definition of farming syndicate a partnership, if more than 35 percent of the losses during any period are allocable to limited partners or limited entrepreneurs. This same concept is applied to exclude from the hedging exception to the mark-to-market rules for section 1256 contracts any transaction entered into by or for a syndicate. For this purpose, a syndicate includes any partnership, if more than 35 percent of the losses for the taxable year are allocable to limited partners or limited entrepreneurs. In a rule recharacterizing gain from certain financial transactions as ordinary income, an exception from the recharacterization rule for options dealers and commodities traders does not apply in the case of any gain recognized by a limited partner or limited entrepreneur. Each of these rules refers to the section 464 definition, which provides that a limited entrepreneur is a person other than a limited partner who does not actively participate in the management of the enterprise. In each case, the reference to a limited partner is coupled with a reference to a limited entrepreneur. A limited entrepreneur, under the present-law definition, encompasses a limited liability company owner that is not permitted to participate in the management or activity of the limited liability company; if State law prevents the limited liability company owner's participation, then the limited liability company owner would clearly not be actively participating. It can be argued, therefore, that there is no harm in retaining the limited partner references in these provisions, because the accompanying notion of limited entrepreneur picks up the parallel case of the limited liability company owner. Alternatively, if the concern about limited partners is their lack of participation, then the definition of limited entrepreneur under present law covers the case involving limited partners that gives rise to concern. Therefore, the limited partner reference could be dropped and only the limited entrepreneur notion retained, without changing the meaning or effect of the provisions.

Material participation and active participation under the passive loss rules (sec. 469 (h)(2) and (i)(6)(C)).--The passive loss rules serve to defer losses and deductions from activities in which the taxpayer does not materially participate, until the taxpayer disposes of the entire interest in the activity in a taxable transaction. These rules were developed to stem the growth of tax shelters among individual taxpayers in the md-1980's. The definition of material participation includes a provision that an interest in a limited partnership as a limited partner is not an interest with respect to which the taxpayer materially participates. Similarly, in a special rule for individuals who actively participate in a rental real estate activity, the definition of active participation includes a provision that an interest in a limited partnership as a limited partner is

---

[492] *See* Joint Committee on Taxation, *General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982* (JCS-38-82), December 31, 1982, at 268-274 (describing the role of the tax matters partner).

not an interest with respect to which the taxpayer actively participates. These references are found in provisions whose basic purpose relates to the taxpayer's level of personal involvement in the activity of the entity. It would be consistent with this purpose to substitute for the references to interests as a limited partner in a limited partnership a reference to a person whose participation in the management or business activity of the entity is limited under applicable State law. This would provide certainty that limited liability company owners who, like limited partners, may not participate in partnership management or activities, are not treated as materially or actively participating. It would also have the effect of clarifying that a limited liability company owner who is not so restricted is treated like a general partner under the material or active participation tests, with the result that his or her participation is assessed under regulations applicable to everyone who is not a limited partner.[493]

Reporting rules for large partnerships (sec. 772(f)).--Partnerships with more than 100 partners may elect simplified reporting and audit rules. Under the reporting rules, the number of separately stated items that are reported to partners (and to the IRS) is reduced. Certain provisions are not modified or consolidated for purposes of these simplified reporting rules, such as the passive loss rules. The reference to limited partners in the simplified reporting rules conforms the reporting of passive losses under these rules to the reporting of passive losses from partnerships that do not elect simplified reporting. The same substituted reference as is recommended above under the passive loss rules would be appropriate. However, in a separate section of this study, it is recommended that these reporting and audit rules be repealed, so the reference would be eliminated.

Self-employment tax rules (sec. 1402(a)(13)).--The tax on net earnings from self-employment applies to gross income derived by an individual from any trade or business carried on by the individual, less the allowable deductions attributable to the trade or business. In the case of a partner, net earnings from self employment include the partner's distributive share (whether or not distributed) of income or loss from any trade or business carried on by the partnership. A special rule provides that net earnings from self employment does not include the distributive share of any partnership item of income or loss of a limited partner (other than guaranteed payments for services actually rendered). The issues involved in modernizing this limited partner reference are discussed in a separate section of this study.

---

[493] This approach would be consistent with the result in *Gregg v. U.S.*, above. In that case, the issue was whether a limited liability company owner would be treated as a limited partner or a general partner in determining his material participation under the passive loss rules. The court concluded that the limited liability company owner should not be treated as a limited partner solely because of his limited liability, but rather, should be treated as a general partner. The court noted, "the legislative history clearly shows that Congress enacted the limited partnership test for the purpose of the passive activity loss rules to thwart the deduction by investors, such as limited partners in a limited partnership, of 'passive' losses from 'tax shelter' investments against other non-passive income, since 'a limited partner generally is precluded from participating in the partnership's business if he is to retain his limited liability status.'" *See* S. Rep. 99-313 (May 29, 1986), at 731.

Coal industry health benefit provisions (sec. 9701(c)(2)).--These provisions provide special health benefit rules with respect to a particular industry. They serve nontax purposes, and modifying the limited partner reference in these provisions is outside the scope of this simplification study.

**Other possible approaches**

Some have argued that an approach based on actual performance of services would be an appropriate replacement for references to limited or general partners. Ordinarily the reference was a shorthand method of identifying the partner's level of involvement in the partnership's business activity. If the purpose of the reference in the present-law rules is to identify a partner who not only is permitted under State law to participate in the entity's business, but actually is providing personal services, then a rule defining minimum personal services by hours per year could be substituted for the current limited or general partner reference.

It could be argued that an hours-per-year test would be better than a reference to whether the person is limited under State law from participating in management or activity of the entity. It is argued that an hours-per-year test more precisely focuses on the difference between limited and general partners. In a limited partnership, a limited partner normally has to give up his limited liability and become a general partner, in order to participate in management or activity of the partnership. Thus, if someone is a general partner in a limited partnership, that person probably is involved in partnership activities. Similarly, if the choice of entity is a general partnership rather than a limited partnership, the liability risk taken on by the partners is the trade-off for the ability to participate in the partnership's activity. Thus, a general partner is relatively likely to be performing services, having given up limited liability. This calculus does not apply in the limited liability company context, however, because the limited liability company owner does not have to give up limited liability in order to have an ownership interest that permits participation in the partnership's activities. Thus, it is argued, the analogy to a limited or general partner is not complete if one merely substitutes a reference to whether the person is (or is not) permitted under State law to participate in the management or activities of the entity. Some reference to the limited liability company owner's level of personal service for the limited liability company is also needed, it is argued. Thus, it could be argued, a minimum number of hours per year of personal service for the partnership would be an appropriate test, providing an easy-to-administer, simple, bright-line test.[494]

On the other hand, an hours-per-year test could be criticized on several grounds. The particular minimum number of hours could be criticized as either too many or too few, depending on the factual circumstances. The same number of hours might not be appropriate for each provision. Another difficulty of a minimum hours test is that it would impose a record-keeping burden on taxpayers. They would need to keep a log or other record of their hours, which generally would not be viewed as a simplification. In some instances, there could be a perverse incentive to work up to or past the minimum. For example, while escaping limited partner treatment would be beneficial to taxpayers under many of the above provisions, working

---

[494] An hours-per-year test would be administratively simpler, and easier for taxpayers to apply, than a subjective test that did not provide for quantifiable services.

significant hours might have the result of subjecting the taxpayer's income from the activity to self-employment tax (depending on what the test might be under that provision; no recommendation is made in this study). A further concern would be the need for aggregation, or disaggregation, as the case might be, of an individual's services in multiple activities. An aggregation rule would be a complex but probably necessary addition to a minimum hours test. In addition, it is argued that actually imposing a minimum level of service measured in hours is substantively different from examining the status of a person as a general or a limited partner under State law. No such requirement applies to general partners either as a matter of State law or under Federal income tax law, so any attempt to quantify the services that a general partner is likely to perform in any particular instance would alter the substantive results of the affected provisions. Thus, it is argued, trying to assess taxpayers' level of involvement in partnership activities based on an hours-per-year test could be more complex than present law.

**2. Eliminate large partnership rules**

**Present Law**

**In general**

A partnership generally is treated as a conduit for Federal income tax purposes. Each partner takes into account separately his distributive share of the partnership's items of income, gain, loss, deduction, or credit. The character of an item is the same as if it had been directly realized or incurred by the partner. Limitations affecting the computation of taxable income generally apply at the partner level.

The taxable income of a partnership is computed in the same manner as that of an individual, except that no deduction is permitted for personal exemptions, foreign taxes, charitable contributions, net operating losses, certain itemized deductions, or depletion. Elections affecting the computation of taxable income derived from a partnership are made by the partnership, except for certain elections such as those relating to discharge of indebtedness income and the foreign tax credit.

**Reporting of partnership items**

In general

A partnership is required to provide in its return a statement setting forth separately those items that impact the computation of a partner's income tax liability.[495] A partnership must separately report: (1) gains and losses from sales or exchanges of capital assets held for not more than one year; (2) gains and losses from sales or exchanges of capital assets held for more than one year; (3) gains and losses from sales or exchanges of property described in section 1231 (relating to certain property used in a trade or business and involuntary conversions); (4) charitable contributions (as defined in section 170(c)); (5) dividends with respect to which there is a deduction under part VIII of subchapter B; taxes, described in section 901, paid or accrued to foreign countries and to possessions of the United States; (6) certain taxes paid to foreign

[495] Sec. 6031(a).