THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-211 T
(Judge Victor J. Wolski)

---

JAMES R. THOMPSON,

Plaintiff,

v.

THE UNITED STATES

Defendant.

---

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF ITS CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
STEVEN FRAHM
JEFFREY R. MALO
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 305-7539
(202) 514-9440 (facsimile)

# Table of Contents

Table of Contents ........ ii

Table of Authorities ........ iv

Cases ........ iv

Statutes ........ iv

*State Law* ........ iv

*Federal Law Internal Revenue Code (26 U.S.C.)* ........ v

Miscellaneous ........ v

*Treasury Regulations* ........ v

*Temporary Treasury Regulations* ........ v

*Legislative History* ........ v

*Administrative History* ........ v

*Uniform Laws* ........ vi

Table of Exhibits ........ vii

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF ITS CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT ........ 1

I. INTRODUCTION ........ 1

II. QUESTION PRESENTED ........ 3

III. STATUTES AND REGULATIONS INVOLVED ........ 3

IV. STATEMENT OF THE CASE ........ 4

V. ARGUMENT ........ 10

PLAINTIFF'S INTEREST IN MOUNTAIN AIR IS TREATED AS A LIMITED PARTNERSHIP INTEREST UNDER SECTION 469 ........ 10

A. *Introduction – Section 469 Loss Limitations* .......... 10

B. *Treasury Regulations on Material Participation and Limited Partnership Interests* .......... 12

C. *Plaintiff had a partnership interest in Mountain Air, and his liability for its obligations was limited.* .......... 15

D. *Plaintiff's arguments that the Regulation does not apply to his interest in Mountain Air are misconceived* .......... 17

VI. CONCLUSION .......... 23

Appendix A .......... 25

*Internal Revenue Code § 469* .......... 25

*Temporary Treasury Regulation § 1.469-5T* .......... 35

*Treasury Regulation § 301.7701-3* .......... 40

# Table of Authorities

## Cases

*Batterton v. Francis*, 432 U.S. 416 (1977) ........................................................ 2
*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)........................................................................................ 3
*Gregg v. United States,* 186 F. Supp. 2d 1123 (D. Or. 2000)............................. 22
*Long Island Care at Home Ltd. v. Coke*, 551 U.S. ___ (June 11, 2007) ................ 2
*Rite Aid Corp. v. U.S.,* 255 F.3d 1357 (Fed. Cir. 2001)........................................ 2
*Rowan Cos. v. U.S.,* 452 U.S. 247 (1981)............................................................ 2
*United States v. Mead Corp.,* 533 U.S. 218 (2001) .............................................. 3
*Union Carbide v. United States,* 612 F.2d 558 (Ct. Cl. 1979).............................. 2

## Statutes

### *State Law*

California Uniform Limited Parternship Act of 2008, CAL. CORP. CODE §§ 15900 to 15912.07 ....................................................... 21
Florida Revised Uniform Limited Partnership Act of 2005, FLA. STAT. §§ 620.1101 to 620.2205............................................................ 21
Hawaii Uniform Limited Partnership Act (Revised), HAW. REV. STAT. §§ 425E-111 to 425E-1206................................................ 21
Idaho Uniform Limited Partnership Act, IDAHO CODE §§ 53-2-101 to 53-2-1205........................................................ 21
Illinois Uniform Limited Partnership Act, 805 ILL. COMP. STAT. 215/0.01 to 215/1402 ................................................. 21
Iowa Uniform Limited Parternship Act, IOWA CODE §§ 488.101 to 488.1207............................................................. 21
Kentucky Uniform Limited Partnership Act (2006), KY. REV. STAT. §§ 362.2-102 to 362.2-1207................................................. 21
Maine Uniform Limited Partnership Act of 2007, ME. REV. STAT. tit. 31, §§ 1301 to 1461........................................................ 21
Minnesota Uniform Limited Partnership Act of 2001, MINN. STAT. §§ 321.0101 to 321.1208 ......................................................... 21
North Dakota Uniform Limited Partnership Act (2001), N.D. CENT. CODE §§ 45-10.2-01 to 45-10.2-117............................................ 21
Texas Limited Liability Company Act, Tex Rev. Civ. Stat. art. 1528n §§ 1.01-11.07 ...................................... 5, 15, 16

### *Federal Law Internal Revenue Code (26 U.S.C.)*

§ 168(k) .......... 8
§ 469 .......... passim
§ 7805 .......... 12
§§ 1361-1379 .......... 9

## Miscellaneous

### *Treasury Regulations*

Treas. Reg. § 301.7701-3 .......... 15

### *Temporary Treasury Regulations*

Temp. Treas. Reg. § 1.469-5T .......... passim

### *Legislative History*

SENATE REPORT ON PUB. L. 99-514 (The Tax Reform Act of 1986) S. Rep. No. 313 (1986) *as repinted in* 1986-3 C.B. (Part 3) 1, 713-746 .......... 19

STAFF OF JOINT COMM. ON TAXATION, 99TH CONG. 2ND, GENERAL EXPLANATION OF THE TAX REFORM ACT OF 1986, MAY 4, 1987 .......... 10

STAFF OF JOINT COMM. ON TAXATION, 99TH CONG., TAX REFORM PROPOSALS: TAX SHELTERS AND MINIMUM TAX, AUG. 7, 1985 .......... 10

Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085 (1986). .......... 10

### *Administrative History*

Treas. Dec. 8253, 1989-1 C.B. 121, 1989-24 I.R.B. 12, 54 F.R. 20527 (1989) .......... 12

Treas. Dec. 8417, 1992-1 C.B. 173, 1992-24 I.R.B. 70, 57 F.R. 20747 (1992). .......... 12

***Uniform Laws***

Revised Uniform Limited Partnership Act 1976 §§ 101-1106 (1976) ................. 21

Uniform Limited Partnership Act 2001 §§ 101-1207 (2001) ......................... 21, 22

**Table of Exhibits**

| | |
|---|---|
| Exhibit 1: | James R. Thompson Deposition Transcript. |
| Exhibit 2: | www.orix.com/executive_thompson_james.htm. |
| Exhibit 3: | James R. Thompson 2002 Form 1040, Individual Income Tax Return. |
| Exhibit 4: | James R. Thompson 2003 Form 1040, Individual Income Tax Return. |
| Exhibit 5: | Mountain Air Charter, LLC Business Overview and Operating Results through Calendar Year 2004. |
| Exhibit 6: | Articles of Organization of Mountain Air Charter, L.L.C. |
| Exhibit 7: | Pilatus PC-12 Fact Sheet, *available at* www.pilatus-aircraft.com. |
| Exhibit 8: | Application for Air Carrier Operating Certificate, Letter of Intent and Preapplication Statement of Intent. |
| Exhibit 9: | Regulations of Mountain Air Charter, L.L.C. |
| Exhibit 10: | Articles of Incorporation of JRT Holdings, Inc. |
| Exhibit 11: | Promissory Note from Mountain Air Charter, L.L.C. to James R. Thompson. |
| Exhibit 12: | Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories. |
| Exhibit 13: | USAIG Insurance Policy Effective May 15, 2002 – May 15, 2003. |
| Exhibit 14: | Resume of Thomas E. Travis. |
| Exhibit 15: | Affidavit of Thomas E. Travis. |
| Exhibit 16: | Thomas E. Travis Deposition Transcript. |
| Exhibit 17: | James R. Thompson Flight Log 2002 – 2003. |
| Exhibit 18: | Thomas E. Travis Flight Log 2002 – 2003. |
| Exhibit 19: | Mountain Air Charter, L.L.C. Operations Specifications. |
| Exhibit 20: | Select Mountain Air Charter, L.L.C. Statements of Revenue Calculation. |

Exhibit 21: Michael D. Holderread Deposition Transcript.

Exhibit 22: Resume of Michael D. Holderread.

Exhibit 23: Mountain Air Charter, L.L.C. 2002 Form 1065, *U.S. Return of Partnership Income*.

Exhibit 24: Mountain Air Charter, L.L.C. 2003 Form 1065, *U.S. Return of Partnership Income*.

Exhibit 25: Form 4549A, *Income Tax Examination Changes*.

Exhibit 26: Plaintiff's Refund Claim and Request for Immediate Disallowance.

THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-211 T
(Judge Victor J. Wolski)

---

JAMES R. THOMPSON,

Plaintiff,

v.

THE UNITED STATES

Defendant.

---

**DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF ITS CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

## I. INTRODUCTION

Plaintiff filed this tax refund suit, seeking a federal income tax refund of $781,241, plus interest, for the tax years ended December 31, 2002 and 2003.[1] (Compl. at 6). Plaintiff is an avid pilot who formed a limited liability company ("LLC"), and provided the funds to acquire an aircraft to be used in a charter operation and which plaintiff also used for personal purposes. The LLC claimed large depreciation deductions, and also sustained operating losses from its charter activities, resulting in a substantial loss. Plaintiff treated the LLC as a partnership for tax purposes and claimed a

[1] The total refund plaintiff seeks is $863,124. $81,883 of plaintiff's claim for refund is attributable to interest that accrued on his deficiency through August 11, 2005, as determined by the Internal Revenue Service. (Def. Prop. Findings ¶ 52).

pass-through of the LLC's losses on his personal returns, reducing the tax liability on his substantial income as a corporate executive.

The Internal Revenue Service disallowed the losses for the years at issue, under Section 469 of the Internal Revenue Code.[2] Section 469 provides that "passive activity" losses can only be applied against passive activity income, and any excess losses are carried forward to the next taxable year. Under the statute and applicable regulations, if a taxpayer has a partnership interest and has limited liability for the partnership's obligations, he will be treated as holding a limited partnership interest and is presumed to be subject to the loss limitations. The Internal Revenue Service determined that plaintiff should be treated as holding a limited partnership interest, since he owned an interest in an LLC which was treated as a partnership, and he only had limited liability with respect to the LLC's obligations. If a taxpayer holds a limited partnership interest, he may reverse the presumption that he is subject to the loss limitation if he meets any one of three tests. The IRS concluded that plaintiff did not meet any of the three tests, and therefore, his losses were limited under Section 469.

Plaintiff does not challenge the validity of the regulation, which is entitled to the highest level of judicial deference, because it was promulgated pursuant to a specific grant of legislative authority.[3] Rather, he argues that under the regulation, his interest in

---

[2] Unless otherwise indicated, all references to "Section" or "§" are to the Internal Revenue Code of 1986 (26 U.S.C.).

[3] Legislative regulations have the force and effect of law unless they are unreasonable, conflict with a statute, exceed the scope of authority granted, or are not issued in accordance with the proper procedure. *Long Island Care at Home Ltd. v. Coke,* 551 U.S. ___ (June 11, 2007). *Batterton v. Francis*, 432 U.S. 416, 426 (1977); *Rite Aid Corp. v. U.S.*, 255 F.3d 1357, 1359 (Fed. Cir. 2001); *Union Carbide v. U.S.*, 612 F.2d 558,563 (Ct. Cl. 1979); *cf. Rowan Cos. v. U.S.,* 452 U.S. 247, 253 (1981); (continued)

the LLC is not treated as a limited partnership interest. On that basis, he argues that four additional tests are available to him under the regulation in determining whether he is subject to Section 469's loss limitations.

The parties' cross motions for partial summary judgment ask the Court to resolve the legal question of whether the regulation treats plaintiff's interest as a limited partnership interest, which will determine which tests apply to determine whether he is subject to the Section 469 loss limitations. Once the applicable tests are established, the parties, and if necessary, the Court, can resolve the remaining factual issues presented.

## II. QUESTION PRESENTED

Whether plaintiff's interest in a limited liability company, which he treated as a partnership interest, and with respect to which his liability was limited, should be treated as a limited partnership interest under Temp. Treas. Reg. § 1.469-5T(e)(3), which provides that "a partnership interest shall be treated as a limited partnership interest" if the "liability of the holder of such interest for obligations of the partnership is limited."

## III. STATUTES AND REGULATIONS INVOLVED

The relevant statutes and regulations are set forth in Appendix A, *infra.*

---

(continued from prior page) *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

## IV. STATEMENT OF THE CASE

Plaintiff, James R. Thompson, is the Chief Executive Officer of Orix USA Corporation, a financial services company. (Def. Prop. Findings ¶ 1). Orix USA Corporation is the parent of approximately 95 subsidiary companies. (Def. Prop. Findings ¶ 2). Plaintiff holds various board positions with these subsidiaries in both an executive and non-executive capacity. (Def. Prop. Findings ¶ 3). He has been employed by Orix USA since 1990. (Def. Prop. Findings ¶ 4). He resides in Dallas, TX. (Def. Prop. Findings ¶ 5).

On his Form 1040 U.S. Individual Income Tax Return for 2002, plaintiff reported wages of $8,175,485 from Orix. (Def. Prop. Findings ¶ 6). He reported wages of $7,246,711 in 2003. (Def. Prop. Findings ¶ 7).

Plaintiff is also an avid and experienced pilot. He learned to fly in 1982 and by 2004, Mr. Thompson had logged more than 4,500 hours of flight time. (Def. Prop. Findings ¶ 8). Plaintiff owned and regularly flew a Mooney aircraft until approximately the time a larger, faster, and more capable aircraft was purchased, as described below, and whose ownership and use is central to the tax dispute in this case. (Def. Prop. Findings ¶ 9).

In 2002, Mr. Thompson formed Mountain Air Charter, LLC (Mountain Air) to acquire and use a new Pilatus PC-12 aircraft. (Def. Prop. Findings ¶ 10). The Pilatus PC-12 is a several million dollar, large, luxurious, high performance, single-engine, turboprop aircraft. (Def. Prop. Findings ¶ 11). Configured for executive transportation, it can seat six to eight passengers and cruise at approximately 310 miles per hour. (Def. Prop. Findings ¶ 12). It is certified to be flown by a single pilot. (Def. Prop. Findings

¶ 13). According to its Application for Air Carrier Operating Certificate, Mountain Air was to engage in the aircraft charter business. (Def. Prop. Findings ¶ 14). Mr. Thompson also intended to pilot and use the Pilatus PC-12 aircraft for personal purposes. (Def. Prop. Findings ¶ 15).

Mountain Air was organized on March 19, 2002, as a limited liability company under Texas law. (Def. Prop. Findings ¶ 16). Mr. Thompson acquired a 99% interest in Mountain Air. JRT Holdings, Inc. (JRT Holdings) held the remaining 1% interest in Mountain Air. Mr. Thompson owns 100% of the stock of JRT Holdings. (Def. Prop. Findings ¶ 17). JRT Holdings was incorporated in Texas on April 15, 2002 and elected to be treated as a Subchapter S corporation for federal income tax purposes. (Def. Prop. Findings ¶ 18).

Mr. Thompson made an initial capital contribution to Mountain Air of $928,621, and JRT Holdings contributed an additional $9,380. (Def. Prop. Findings ¶ 19). Mr. Thompson also loaned Mountain Air $2.6 million on the day it acquired the Pilatus aircraft. (Def. Prop. Findings ¶ 20). The loan was evidenced by a promissory note dated May 15, 2002. The terms of the note provided for interest only payments (at 6%) in five annual installments beginning May 15, 2003. The principal was to be repaid on the fifth annual installment date. Prepayment of the principal was allowed without any penalty or premium. (Def. Prop. Findings ¶ 21).

Under Texas state law, Mr. Thompson's liability in Mountain Air is limited to his capital contribution, subject to any additional requirements imposed by the LLC's Articles of Organization and/or Regulations. TEX. REV. CIV. STAT. art. 1528n §§ 4.03, 5.02. Article 5.7 of the Regulations of Mountain Air specifically provides that "[l]oans

by a Member to the Company shall not be considered Capital Contributions . . . [and] shall not result in any increase in the amount of the Capital Account of such Member." Neither the Articles of Organization nor the Regulations for Mountain Air imposed additional liabilities on Mr. Thompson. (Def. Prop. Findings ¶ 22). Accordingly, the $2.6 million loan from Mr. Thompson was not a capital contribution. Under Texas state law and the Regulations of Mountain Air, Mr. Thompson's total liability in Mountain Air was limited to $937,381 (the amount of his initial capital contributions from Mr. Thompson and JRT Holdings). If the LLC were dissolved, Mr. Thompson would have rights as a general creditor against the LLC for any unpaid balance of the $2.6 million loan to the LLC.

Mountain Air used the loan proceeds and a portion of its capital contributions to purchase the new Pilatus PC-12 aircraft on May 15, 2002. (Def. Prop. Findings ¶ 23). The purchase price of the aircraft was $3,338,001. (Def. Prop. Findings ¶ 24).

Mr. Thompson secured insurance for the aircraft, effective on its purchase date. (Def. Prop. Findings ¶ 25). The insurance coverage provided that Mr. Thompson would not be permitted to be the sole pilot of the aircraft until he accumulated 200 hours of flight time in the PC-12, accompanied by Mr. Thomas E. Travis. (Def. Prop. Findings ¶ 26). Mr. Travis is a retired American Airlines pilot with more than 22,000 hours of recorded flight time in a wide variety of aircraft. (Def. Prop. Findings ¶ 27). Mr. Travis is also an accomplished flight instructor, having recorded more than 7,000 hours in that capacity. (Def. Prop. Findings ¶ 28). Mr. Travis was hired as an employee of Mountain Air in March 2002. (Def. Prop. Findings ¶ 29).

Upon acquisition of the aircraft, Mr. Thompson and Mr. Travis flew together regularly. They flew to many destinations, including an initial trip along the coast of California (where Mr. Thompson lived prior to moving to Texas) and to a location in New Mexico, where Mr. Thompson rented a vacation home. (Def. Prop. Findings ¶ 30). In his logbook, Mr. Travis recorded this flight time as an instructor; Mr. Thompson logged it as "dual", which Mr. Travis explained meant that Mr. Thompson was receiving instruction. (Def. Prop. Findings ¶ 31). Mr. Thompson continued to fly with Mr. Travis until he accumulated approximately 200 hours in the aircraft in November 2002, after which, the insurance documents were revised to provide that Mr. Thompson was authorized to fly the PC-12 as the sole pilot, which he did. (Def. Prop. Findings ¶ 32).

Mountain Air did not begin offering to fly passengers for hire until on or about September 3, 2002, when the FAA approved its application to become a charter operator. (Def. Prop. Findings ¶ 33). Its charter customers during the years at issue were primarily Orix employees and Mr. Thompson's personal acquaintances. (Def. Prop. Findings ¶ 34). Mountain Air often offered these customers substantial discounts from its regular charter rates. (Def. Prop. Findings ¶ 35). Mr. Travis served as the pilot for these for-hire operations until he left the company in 2003 and was succeeded in that capacity by Mr. Michael D. Holderread. (Def. Prop. Findings ¶ 36).

After he was authorized to fly the PC-12 as the sole pilot, Mr. Thompson sometimes flew persons he characterized as potential customers (and already knew), on flights without charge. (Def. Prop. Findings ¶ 37). He also flew the aircraft as the sole pilot on other flights he acknowledged were personal. On the flights characterized as personal, he declared minimal amounts of income on his personal income tax return to

acknowledge his personal use of the aircraft. The income he declared was far less than the actual cost of owning and operating the aircraft. Mr. Thompson alleges that the amounts included were in accordance with IRS guidelines. (Def. Prop. Findings ¶ 38).

Mountain Air did not elect to be treated as a corporation for federal tax purposes. (Def. Prop. Findings ¶ 39). Consequently, it was treated as a partnership for federal tax purposes and filed a partnership return (Form 1065, U.S. Return of Partnership Income) in both 2002 and 2003. (Def. Prop. Findings ¶ 40).

In 2002, Mountain Air reported a loss of $1,235,446, which included a depreciation deduction of $1,112,700 on the Pilatus PC-12.[4] (Def. Prop. Findings ¶ 41). The reported loss also apparently included deductions for the cost of all of Mr. Thompson's and Mr. Travis' flights together, as well as Mr. Thompson's flights after he was authorized to fly as the sole pilot. (Def. Prop. Findings ¶ 42)

In 2003, Mountain Air reported a loss of $955,430 on its partnership return. (Def. Prop. Findings ¶ 43). Its reported loss included $635,810 of depreciation on the aircraft, and apparently also the costs attributable to Mr. Thompson's personal flights in the aircraft.[5] (Def. Prop. Findings ¶ 44).

Mountain Air's partnership returns also include an analysis of Net Income (Loss), reflecting the distributive shares of its losses to Mr. Thompson and JRT Holdings. Each was identified in this analysis as a *limited partner*, rather than a general partner. (Def. Prop. Findings ¶ 45). For 2002, Mountain Air submitted a Schedule K-1 to Mr. Thompson indicating that his 99% distributive share of the losses was $1,213,897, and

[4] The original cost basis of the aircraft was $3,338,001. Section 168(k) provided for first year bonus depreciation of 30% of the purchase price ($1,001,400), plus additional depreciation under the double declining balance method for 7-year property using the half year convention ($111,300). Thus, total depreciation on the PC-12 was $1,112,700.

JRT Holding's 1% distributive share was $12,359. (Def. Prop. Findings ¶ 46). For 2003, Mountain Air submitted a Schedule K-1 to Mr. Thompson indicating that his 99% distributive share of the losses was $931,065, and JRT Holding's 1% distributive share was $9,549. (Def. Prop. Findings ¶ 47).

On his individual income tax returns for 2002 and 2003, Mr. Thompson reported his individual distributive share of Mountain Air's losses, and since he owned 100% of JRT Holdings, a Subchapter S corporation, its distributive share as well.[6] Thus, after including some other minor items in 2002, he claimed a loss from Mountain Air of $1,225,869 on Schedule E of his personal return. (Def. Prop. Findings ¶ 48). After inclusion of similar items in 2003, he claimed a loss from Mountain Air of $939,878 on Schedule E of his personal Return. (Def. Prop. Findings ¶ 49). Mr. Thompson used these tax losses to offset a significant portion of his wage income from Orix Corporation USA and its affiliates. (Def. Prop. Findings ¶ 50).

The Internal Revenue Service examined Mr. Thompson's 2002 and 2003 income tax returns and concluded that the Mountain Air losses he claimed on his personal returns were subject to the loss limitation provisions of Section 469. Accordingly, the Internal Revenue Service disallowed all of the losses from Mountain Air in 2002 ($1,225,869) and most of the losses Mr. Thompson claimed in 2003 ($783,878). (Def. Prop. Findings ¶ 51). Under Section 469, the losses were not permanently disallowed. Rather, they were to be carried forward to future tax years until such time as Mountain Air has income, or until plaintiff disposes of his interest in the LLC.

---

[6] Subchapter S of the Internal Revenue Code, Sections 1361-1379 in particular, provide that the income or loss of a Subchapter S corporation flows through to be reported on the individual returns of its shareholders.

The disallowances resulted in the Internal Revenue Service's determination that plaintiff owed additional tax and interest in the amount of $863,124 for 2002 and 2003.[7] (Def. Prop. Findings ¶ 52). On September 9, 2005, plaintiff paid the tax and interest and filed a claim for refund, requesting immediate disallowance so he could file suit. (Def. Prop. Findings ¶ 53). On March 15, 2006, plaintiff filed suit in this court. (Def. Prop. Findings ¶ 54).

## V. ARGUMENT

### PLAINTIFF'S INTEREST IN MOUNTAIN AIR IS TREATED AS A LIMITED PARTNERSHIP INTEREST UNDER SECTION 469

#### *A. Introduction – Section 469 Loss Limitations*

Prior to the enactment of the Tax Reform Act of 1986,[8] there were few limitations on a taxpayer's ability to use deductions from one activity against income from another activity. The absence of rules encouraged the proliferation of a variety of tax driven transactions. STAFF OF JOINT COMM. ON TAXATION, 99TH CONG., GENERAL EXPLANATION OF THE TAX REFORM ACT OF 1986, May 4, 1987 at 209. A tax shelter, according to Congress, was an investment in which a significant portion of the taxpayer's return was derived from tax savings. STAFF OF JOINT COMM. ON TAXATION, 99TH CONG., TAX REFORM PROPOSALS: TAX SHELTERS AND MINIMUM TAX, Aug. 7, 1985 at 2. In an effort to curtail these tax shelters, Congress enacted Internal Revenue Code Section 469, which

[7] For 2002, the Service determined that $473,186 in additional tax was due, plus $58,844 in interest that had accrued as of August 11, 2005. For 2003, the Service determined that $308,055 in additional tax was due, plus $23,039 in interest that had accrued as of August 11, 2005. Thus, Mr. Thompson's total deficiency was alleged to be $863,124. (Def. Prop. Findings ¶ 52).

[8] Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085 (1986).

limits a taxpayer's ability to shelter positive income from tax by claiming losses from other activities in which his investment is considered "passive."

Section 469 generally provides that an individual taxpayer's losses in a taxable year from a passive activity may be used to offset income in that year from another passive activity, but that any excess is not allowed and is instead carried forward as a passive activity loss to the next taxable year. Sections 469(a), (b), and (d). Section 469(c)(1) provides the starting point for determining whether a taxpayer's investment is considered passive and is subject to these limitations:

(1) In General. – The term "passive activity" means any activity –

(A) which involves the conduct of a trade or business, and
(B) in which the taxpayer does not materially participate.

Material participation is defined generally, but there is a special rule for limited partnership interests. The general rule is that a taxpayer is treated as materially participating in an activity only if he is involved in the operations of the activity on a "regular", "continuous", and "substantial" basis. Section 469(h)(1). But, "[e]*xcept as provided in regulations*" (emphasis added) no limited partnership interest "shall be treated as an interest with respect to which a taxpayer materially participates." Section 469(h)(2). Thus, under the statute, a taxpayer holding a limited partnership interest is, *per se*, subject to the Section 469 loss limitations, unless, pursuant to Congress' grant of legislative regulatory authority, the Secretary issues regulations providing exceptions.

In addition to the rule-making authority given to the Secretary in Section 469(h)(2), Congress gave the Secretary additional authority in Section 469(l) to promulgate regulations "as may be necessary or appropriate to carry out the provisions of

this section." Section 469(l). Among the regulatory areas cited, Congress specifically authorized the Secretary to prescribe regulations to "specify what constitutes an activity, material participation, or active participation". Section 469(l)(1).

### *B. Treasury Regulations on Material Participation and Limited Partnership Interests*

Acting on these broad legislative grants of authority, the Secretary promulgated Temp. Treas. Reg. § 1.469-5T in 1988. The regulation remains in effect today[9] and prescribes rules for determining material participation, including, specifically, rules regarding limited partnership interests.

In general, an individual will be treated as materially participating in an activity for the taxable year if he meets any one of seven prescribed tests (Temp. Treas. Reg. § 1.469-5T(a)):

> (1) The individual participates in the activity for more than 500 hours during such year;
>
> (2) The individual's participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including individuals who are not owners of interests in the activity) for such year;
>
> (3) The individual participates in the activity for more than 100 hours during the taxable year, and such individual's participation in the activity for the taxable year is not less than the participation in the activity of any other individual (including individuals who are not owners of interests in the activity) for such year;

---

[9] Amendments to Temp. Treas. Reg. § 1.469-5T and a corresponding notice of proposed rulemaking were published in the Federal Register on May 12, 1989. T.D. 8253. Written comments were received on the amendments to the temporary regulations, and a public hearing was held on November 28, 1989. To avoid possible disputes about whether the amendments to Temp. Treas. Reg. § 1.469-5T would "sunset" under § 7805(e)(2), Treasury released a decision on May 15, 1992 adopting the amendments as final regulations, and preserving the cross references to the corresponding temporary regulations. T.D. 8417.

(4) The activity is a significant participation activity (within the meaning of paragraph (c) of this section) for the taxable year, and the individual's aggregate participation in all significant participation activities during such year exceeds 500 hours;

(5) The individual materially participated in the activity (determined without regard to this paragraph (a)(5)) for any five taxable years (whether or not consecutive) during the ten taxable years that immediately precede the taxable year;

(6) The activity is a personal service activity (within the meaning of paragraph (d) of this section), and the individual materially participated in the activity for any three taxable years (whether or not consecutive) preceding the taxable year; or

(7) Based on all the facts and circumstances (taking into account the rules in paragraph (b) of this section), the individual participates in the activity on a regular, continuous, and substantial basis during such year.[10]

Temp. Treas. Reg. § 1.469-5T(e) addresses the special treatment of limited partnership interests and tracks Section 469(h)(2). As Section 469(h)(2) provides, the holder of a limited partnership interest is not treated as materially participating in an activity for purposes of applying Section 469, unless otherwise provided in the regulation. Temp. Treas. Reg. § 1.469-5T(e)(1). The exceptions are contained in Temp. Treas. Reg. § 1.469-5T(e)(2). It provides that paragraph (e)(1) does not apply to limit losses if an individual holding a limited partnership interest would be treated as materially participating for the taxable year under tests (1), (5), or (6) above.

Temp. Treas. Reg. § 1.469-5T(e)(3) provides two definitions of a limited partnership interest for "purposes of Section 469(h)(2) and this paragraph (e)". The first definition is based on organizational formalities. It provides that a

[10] For purposes of this facts and circumstances test, if an individual participates in an activity for 100 hours or less during the taxable years, the individual shall not be treated as materially participating in the activity. Temp. Treas. Reg. § 1.469-5T(b)(2)(iii).

partnership interest shall be treated as a limited partnership interest if such interest is “designated a limited partnership interest in the limited partnership agreement or the certificate of limited partnership.” Temp. Treas. Reg. § 1.469-5T(e)(3)(i)(A). The second definition recognizes that form and labels are not controlling, but still offers a clear, easily applied rule. Temp. Treas. Reg. § 1.469-5T(e)(3)(i)(B) provides that a partnership interest also will be treated as a limited partnership interest if the liability of the holder of such an interest for the partnership’s obligations is limited under state law to a determinable, fixed amount.

To summarize, if an individual holds a limited partnership interest under the regulation, he is subject to the Section 469 loss limitation rules unless he meets one of three tests. If he does not hold a limited partnership interest, he can avoid the loss limitations by satisfying any of those three tests, or any of four additional tests. Understandably, plaintiff seeks the broader, more expansive set of tests and a greater opportunity to avoid the loss limitations.

The dispute in these cross motions over whether plaintiff’s interest in Mountain Air is treated as a limited partnership interest thus reduces to applying Temp. Treas. Reg. § 1.469-5T(e)(3)(i) to determine the following: (1) Was plaintiff’s interest in Mountain Air a partnership interest? and (2) Was his liability for Mountain Air’s obligations limited under Texas law?

***C. Plaintiff had a partnership interest in Mountain Air, and his liability for its obligations was limited.***

Mountain Air Charter LLC was organized under Texas law as an LLC. TEX. REV. CIV. STAT. art. 1528n. For federal tax purposes, under the so-called "check the box" regulations, such non-corporate entities with two or more members may elect to be taxed as a corporation. Treas. Reg. § 301.7701-3(a). If no election is made, the organization is treated for tax purposes as a partnership. Treas. Reg. § 301.7701-3(b)(1)(i).

Mountain Air did not elect to be treated as a corporation for federal tax purposes. (Def. Prop. Findings ¶ 39). Instead, consistent with its resulting treatment as a partnership, Mountain Air filed partnership returns. (Def. Prop. Findings ¶ 40).

On its partnership returns for those years, Mountain Air reported relatively little charter income, a larger amount of out-of-pocket deductions, and very large deductions for depreciation. As a result, Mountain Air reported substantial partnership losses of $1,235,446 in 2002, and $955,430 in 2003. (Def. Prop. Findings ¶¶ 41, 43).

The partnership also reported the distributive shares of those losses to its two owners – plaintiff (99%) and his wholly owned Subchapter S corporation, JRT Holdings, Inc. (1%). Def. Prop. Findings ¶ 45. Plaintiff was identified on the partnership's tax returns as a "limited partner." *Id.*

Mountain Air's partnership returns also included Schedules K-1, "*Partner's* Share of Income, Credits, Deductions, etc." (emphasis added). A Schedule K-1 was prepared for "Partner #1", James R. Thompson, allocating a

99% distributive share of losses to him. (Def. Prop. Findings ¶¶ 46, 47). Likewise, the partnership returns included Schedules K-1 for Partner #2, JRT Holdings, Inc., allocating a 1% share of losses to it.[11] *Id.*

Plaintiff reported 100% of the partnership's distributive losses from the K-1s on his individual income tax returns for 2002 and 2003. (Def. Prop. Findings ¶¶ 48, 49). He reported the details of the losses on Schedule E, "Supplemental Income and Loss (From rental real estate, royalties, *partnerships, S corporations*, estates, trusts, REMICs, etc.)" (emphasis added). *Id.* Part II of Schedule E addresses losses from partnerships and S corporations, and Mr. Thompson reported the Mountain Air losses there. *Id.* He reported his direct, 99% share of Mountain Air's losses as "P" for a partnership loss.[12] *Id.*

Under Texas law, plaintiff's liability for Mountain Air's obligations is limited to his capital contributions, subject to any additional responsibility specified in Mountain Air's Articles of Organization and Regulations. TEX. REV. CIV. STAT. art. 1528n §§ 4.03, 5.02. Plaintiff's initial capital contribution to Mountain Air was $928,621.[13] Mountain Air's Articles of Organization and Regulations do not impose any further liability on plaintiff for its obligations. (Def. Prop. Findings ¶ 22). Plaintiff's loan to Mountain Air (used to purchase the Pilatus PC-12 aircraft) was not an additional capital contribution under the

---

[11] Since JRT Holdings, Inc. was a Subchapter S corporation, its share of losses flowed through to its sole owner – plaintiff, James R. Thompson.

[12] He reported JRT Holding, Inc.'s loss as "S" for S corporation, but, of course, JRT Holding's loss was derived from Mountain Air's partnership loss.

[13] Plaintiff also caused JRT Holdings, Inc. to make a $9,380 capital contribution to Mountain Air. Thus his total liability was limited to $938,001.

Regulations and therefore did not increase his liability for Mountain Air's obligations. Article 5.7 of the Regulations of Mountain Air specifically provides that "[l]oans by a Member to the Company shall not be considered Capital Contributions . . . [and] shall not result in any increase in the amount of the Capital Account of such Member." *Id.*

In summary, Mountain Air treated itself as a partnership and its two owners as partners. Plaintiff also reported his interest in Mountain Air as a partnership interest. These undisputed facts lead inescapably to the conclusion that Mr. Thompson held a partnership interest in Mountain Air. There also can be no dispute that, under Texas law, his liability with respect to his partnership interest was limited. Therefore, under Temp. Treas. Reg. § 1.469-5T(e)(3), plaintiff's interest in Mountain Air is treated as a limited partnership interest.

### *D. Plaintiff's arguments that the Regulation does not apply to his interest in Mountain Air are misconceived*

As discussed above, plaintiff opted for Mountain Air to be treated for tax purposes as a partnership, with the result that it reported a substantial partnership loss, which plaintiff then claimed on his individual return. At the same time, plaintiff's liability for Mountain Air's obligations arising from its losses was limited to his capital contributions. Thus, plaintiff sought partnership treatment to obtain a pass-through of losses, but he seeks to avoid partnership treatment in evaluating whether the loss pass-through is subject to the limitations of Section 469. Plaintiff offers essentially two arguments why he should not be regarded as holding a limited partnership interest. One would give conclusive effect to organizational formalities; the other would ignore the

regulatory language, which is consistent with the statute, in favor of policy arguments best addressed to Congress. Neither justifies ignoring the plain language result under the regulations – plaintiff held a partnership interest, his liability was limited, and, therefore, he held a limited partnership interest.

Plaintiff's first argument is to the effect that the regulation can't treat him as holding a limited partnership interest, because Mountain Air was an LLC and not a limited partnership under state law. (Pltf.'s Br. at 15). Of course, if Mountain Air had been organized under state law as a limited partnership, and had plaintiff been designated as a limited partner, he would be considered to hold a limited partnership interest. Presumably, plaintiff would not dispute that the regulation goes this far. Indeed, that is precisely what Temp. Treas. Reg. § 1.469-5T(e)(3)(i)(**A**) provides.[14]

But the regulation does not end there. It goes on, in Temp. Treas. Reg. § 1.469-5T(e)(3)(i)(**B**), to treat an interest as a limited partnership interest without regard to organizational and labeling formalities. This subsection of the regulation recognizes that designations and labels are part of the tax planning process and provides (without reference to whether there is a limited partnership agreement or a designated limited partner) that a partnership interest shall be treated as a limited partnership interest if "[t]he liability of the holder of such interest for obligations of the partnership is limited [under State law] to a determinable fixed amount." *Id*.

[14] A partnership interest shall be treated as a limited partnership interest if "(A) such interest is *designated as a limited partnership interest in the limited partnership agreement or the certificate of limited partnership* without regard to whether the liability of the holder of such interest for obligations of the partnership is limited under the applicable State law." (emphasis added).

The regulation in this regard is consistent with Congress' view when it enacted Section 469 that the form of organization and form of ownership is not conclusive regarding whether a taxpayer is treated as having a limited partnership interest. For example, Congress explained that an interest should be treated as a limited partnership interest even when the taxpayer holds an interest through a tiered entity arrangement under which the taxpayer owns a general partnership interest or stock in an S corporation. S. Rep. No. 313, 99th Cong., 2d Sess. 713, 731 (1986). Similarly, the exercise of regulatory authority would be appropriate if taxpayers were permitted under State law to establish limited liability entities (that are not taxable as corporations) for personal service or other active businesses, by treating interests relating to the rendering of personal services as limited partnership interests. *Id*. at 731-32. Congress went on to state even more broadly that the Secretary's exercise of regulatory authority "might be appropriate where taxpayers sought to avoid limited partnership status with respect to substantially equivalent entities." *Id.* at 732. Thus, Congress made it quite clear that a taxpayer may be treated as holding a limited partnership interest, even if his interest was not designated as such, and, indeed, even if an entity other than a limited partnership that is not taxed as a corporation was utilized. Temp. Treas. Reg. § 1.469-5T(e)(3)(i)(B) does just that. Plaintiff is not entitled to attribute conclusive effect to whether a limited partnership was formed – the subject of subparagraph (A) – and thereby write subparagraph (B) out of the regulation.[15]

---

[15] Plaintiff also argues (Br. at 16) that, even if his interest in Mountain Air is treated as a partnership interest, he should be considered a general partner under Temp. Treas. Reg. § 1.469-5T(e)(3)(ii). According to plaintiff, "[t]here can be no dispute" that this subparagraph "describes 'general partner' solely with reference to management involvement." The language of the regulation provides no support for (continued)

Plaintiff also seeks to avoid the straightforward application of the language of Temp. Treas. Reg. § 1.469-5T(e)(3)(ii) by making a policy argument best addressed to Congress, which can then consider whether to amend the underlying statute. Plaintiff points to Texas law regarding LLC's, which allows members to participate in its business activities. Plaintiff also points to Texas limited partnership law, which would cause a limited partner to lose limited liability if he was regularly involved in the partnership's business. (Pltf.'s Br. at 11-14). Relying on legislative history that referenced the usual circumstance in 1986 when Section 469 was enacted that limited partners were not engaged in the activities of a partnership, plaintiff argues that, since he was not so limited as an LLC member, he should not be treated as holding a limited partnership interest. *Id*. According to plaintiff, the distinguishing factor between LLC's and limited partnerships is "control." (Pltf.'s Br. at 13.)

The law since 1986 has evolved considerably, and the distinction between limited partnerships and LLCs regarding the participation of owners is in full retreat. In many states, limited partners have gained increased rights of participation, without risking their limited liability.[16] In 2001, the National Conference of Commissioners on Uniform State

---

(continued from prior page) plaintiff's hyperbolic argument. The regulation does not describe or define a general partner at all, much less by reference to management involvement. Moreover, it is elementary that the status of a limited partner is characterized by *limited* liability, which a general partner does not enjoy. Since plaintiff had limited liability, he is treated as holding a limited partnership interest under Temp. Treas. Reg. § 1.469-5T(e)(3)(i)(B) and not as a general partner under Temp. Treas. Reg. § 1.469-5T(e)(3)(ii).

[16] The commentary to the Uniform Limited Partnership Act of 2001 indicates that erosion of the "control rule" began with the Revised Uniform Limited Partnership Act of 1976 (RULPA 1976) in which several safe harbors were designated as activities in which limited partners could participate without violating the general prohibition against participation in the partnership, unless the limited partner acted (continued)

Laws released the Uniform Limited Partnership Act of 2001 (ULPA 2001), extending full rights of participation in the management and control of a partnership to limited partners.[17] UNIF. LTD. PART. ACT 2001 § 303 (2001). The Commissioners made it clear in their Comment to Section 303 that they were eliminating the distinction based on control between limited partnerships and LLCs:

> This section provides a full, status-based liability shield for each limited partner, "even if the limited partner participates in the management and control of the limited partnership." *The section thus eliminates the so-called "control rule" with respect to personal liability for entity obligations and brings limited partners into parity with LLC members*, LLP partners and corporate shareholders. . .
>
> In a world with LLPs, LLCs and, most importantly, LLLPs, the control rule has become an anachronism. This Act therefore takes the next logical step in the evolution of the limited partner's liability shield and renders the control rule extinct. (emphasis added).

Section 469(h)(2) provides simply that holders of limited partnership interests are subject to the loss limitations of that section, unless excepted by regulation. Under the statutory language, the determination whether a limited partnership interest exists does not turn on whether the holder of the interest may participate in the partnership's

---

(continued from prior page) "substantially the same" as a general partner. The control rule further deteriorated in the 1985 revisions to RULPA 1976, which eliminated the "substantially the same" rule from the act. With the introduction of ULPA 2001, the control rule was eliminated in its entirety. UNIF. LTD. PART. ACT 2001 § 303 (comment).

[17] As of June 11, 2007, ten states had adopted ULPA 2001, including California (Cal. Corp. Code §§ 15900 to 15912.07 (effective January 1, 2008)), Florida (F.S.A. §§ 620.1101 to 620.2205 (effective January 1, 2006)), Hawaii (H.R.S. §§ 425E-111 to 425E-1206 (effective July 1, 2004)), Idaho (I.C. §§ 53-2-101 to 53-2-1205 (effective July 1, 2006)), Illinois (S.H.A. 805 ILCS 215/0.01 to 215/1402 (effective January 1, 2005)), Iowa (I.C.A. §§ 488.101 to 488.1207 (effective January 1, 2005)), Kentucky (KRS 362.2-102 to 362.2-1207 (effective July 12, 2006)), Maine (31 M.R.S.A. §§ 1301 to 1461 (effective July 1, 2007)), Minnesota (M.S.A. §§ 321.0101 to 321.1208 (effective May 15, 2004)), and North Dakota (NDCC 45-10.2-01 to 45-10.2-117 (effective July 1, 2005)).

activities. Thus, even if a limited partner of a limited partnership has the same ability to participate in business activities as a member of an LLC (*i.e.*, he is a limited partner in a state that has adopted ULPA 2001), he is treated as holding a limited partnership interest under Section 469(h)(2). Temp. Treas. Reg. § 1.469-5T(e), merely implements that statute, and as Congress envisioned, treats taxpayers as holding limited partnership interests in entities that are not taxed as corporations, whether organized as a limited partnership, an LLC, or a similar entity. There is no basis under either the statute or the regulation to distinguish between persons holding limited liability interests in an LLC from one holding a limited liability interest in a limited partnership. While plaintiff makes a policy-based argument that Section 469 should not apply when the holder of a limited liability interest can participate in business activities, it is an argument whose acceptance would require amendments to both Section 469(h)(2) and the regulations. It is an argument best presented to Congress, not this Court.[18] In the meantime, plaintiff is not entitled to be treated more favorably as a member of an LLC than many limited

[18] The district court of Oregon in *Gregg v. United States*, 186 F. Supp. 2d 1123 (2000) nevertheless supported a participation test, rather than the limited liability test expressed in the regulations, in determining that a member of an LLC should not be treated as holding a limited partnership interest. Phrasing the issue as whether the taxpayer should be treated as a limited or general partner for Section 469 purposes (*id.* at 1127), the court went on to explain that a limited partner in a limited partnership "cannot, by definition, participate" in its management, while LLC members "retain their limited liability regardless of the level of participation in the management of the LLC." *Id.* at 1128. This foundation to the court's conclusion came, in 2000, before ULPA 2001, which eliminated the control rule for limited partnerships. In any event, the district court failed to apply the "limited liability" test under the regulations in distinguishing between a limited and general partnership interest. The court's conclusion that it would be inappropriate to treat an LLC member as a limited partner of a limited partnership without a regulation expressly so stating wrongly gives conclusive effect under the regulations to organizational formalities. As expressed above, doing so is contrary to the language of Temp. Treas. Reg. § 1.469-5T(e)(3)(i)(B) and Congress' intent. *Gregg* was (continued)

partners of limited partnerships. Both types of owners are subject to the loss limitations of Section 469 unless they satisfy one of three regulatory tests.

## VI. CONCLUSION

For tax purposes, Mountain Air Charter, LLC was a partnership, and plaintiff's ownership interest was a partnership interest. Plaintiff also had only limited liability for Mountain Air's obligations. As there is no dispute of material fact, defendant is entitled to partial summary judgment that plaintiff's interest in Mountain Air is treated as a limited partnership interest under Temp. Treas. Reg. § 1.469-5T(e)(3), and that he therefore is subject to the Section 469 loss limitations unless he satisfies one of the tests expressed in Temp. Treas. Reg. § 1.469-5T(a)(1), (5), or (6). Plaintiff's motion for partial summary judgment should be denied.

Respectfully submitted,

June 11, 2007

s/Jeffrey R. Malo
JEFFREY R. MALO
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 305-7539
Fax (202) 514-9440

---

(continued from prior page) wrong to suggest that LLC members should not be treated as holding a limited partnership interest, and, in any event, the decision is not binding on this Court.

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN FRAHM
Assistant Chief, Court of Federal Claims Section

June 11, 2007

s/Steven Frahm
Of Counsel

# Appendix A

## *Internal Revenue Code § 469*

**Passive activity losses and credits limited**

**(a) Disallowance.--**

**(1) In general.**--If for any taxable year the taxpayer is described in paragraph (2), neither--

**(A)** the passive activity loss, nor

**(B)** the passive activity credit,

for the taxable year shall be allowed.

**(2) Persons described.**--The following are described in this paragraph:

**(A)** any individual, estate, or trust,

**(B)** any closely held C corporation, and

**(C)** any personal service corporation.

**(b) Disallowed loss or credit carried to next year.**--Except as otherwise provided in this section, any loss or credit from an activity which is disallowed under subsection (a) shall be treated as a deduction or credit allocable to such activity in the next taxable year.

**(c) Passive activity defined.**--For purposes of this section--

**(1) In general.**--The term "passive activity" means any activity--

**(A)** which involves the conduct of any trade or business, and

**(B)** in which the taxpayer does not materially participate.

**(2) Passive activity includes any rental activity.**--Except as provided in paragraph (7), the term "passive activity" includes any rental activity.

**(3) Working interests in oil and gas property.--**

**(A) In general.**--The term "passive activity" shall not include any working interest in any oil or gas property which the taxpayer holds directly or through an entity which does not limit the liability of the taxpayer with respect to such interest.

**(B) Income in subsequent years.**--If any taxpayer has any loss for any taxable year from a working interest in any oil or gas property which is treated as a loss which is not from a passive activity, then any net income from such property (or any property the basis of which is determined in whole or in part by reference to the basis of such property) for any succeeding taxable year shall be treated as income of the taxpayer which is not from a passive activity. If the preceding sentence applies to the net income from any property for any taxable year, any credits allowable under subpart B (other than section 27(a)) or D of part IV of subchapter A for such taxable year which are attributable to such property shall be treated as credits not from a passive activity to the extent the amount of such credits does not exceed the regular tax liability of the taxpayer for the taxable year which is allocable to such net income.

**(4) Material participation not required for paragraphs (2) and (3).**-- Paragraphs (2) and (3) shall be applied without regard to whether or not the taxpayer materially participates in the activity.

**(5) Trade or business includes research and experimentation activity.**--For purposes of paragraph (1)(A), the term "trade or business" includes any activity involving research or experimentation (within the meaning of section 174).

**(6) Activity in connection with trade or business or production of income.**--To the extent provided in regulations, for purposes of paragraph (1)(A), the term "trade or business" includes--

**(A)** any activity in connection with a trade or business, or

**(B)** any activity with respect to which expenses are allowable as a deduction under section 212.

**(7) Special rules for taxpayers in real property business.--**

**(A) In general.**--If this paragraph applies to any taxpayer for a taxable year--

**(i)** paragraph (2) shall not apply to any rental real estate activity of such taxpayer for such taxable year, and

**(ii)** this section shall be applied as if each interest of the taxpayer in rental real estate were a separate activity.

Notwithstanding clause (ii), a taxpayer may elect to treat all interests in rental real estate as one activity. Nothing in the preceding provisions of this subparagraph shall be construed as affecting the determination of whether the taxpayer materially participates with respect to any interest in a limited partnership as a limited partner.

**(B) Taxpayers to whom paragraph applies.**--This paragraph shall apply to a taxpayer for a taxable year if--

**(i)** more than one-half of the personal services performed in trades or businesses by the taxpayer during such taxable year are performed in real property trades or businesses in which the taxpayer materially participates, and

**(ii)** such taxpayer performs more than 750 hours of services during the taxable year in real property trades or businesses in which the taxpayer materially participates.

In the case of a joint return, the requirements of the preceding sentence are satisfied if and only if either spouse separately satisfies such requirements. For purposes of the preceding sentence, activities in which a spouse materially participates shall be determined under subsection (h).

**(C) Real property trade or business.**--For purposes of this paragraph, the term "real property trade or business" means any real property development, redevelopment, construction, reconstruction, acquisition, conversion, rental, operation, management, leasing, or brokerage trade or business.

**(D) Special rules for subparagraph (B).--**

**(i) Closely held C corporations.**--In the case of a closely held C corporation, the requirements of subparagraph (B) shall be treated as met for any taxable year if more than 50 percent of the gross receipts of such corporation for such taxable year are derived from real property trades or businesses in which the corporation materially participates.

**(ii) Personal services as an employee.**--For purposes of subparagraph (B), personal services performed as an employee shall not be treated as performed in real property trades or businesses. The preceding sentence shall not apply if such employee is a 5-percent owner (as defined in section 416(i)(1)(B)) in the employer.

**(d) Passive activity loss and credit defined.**--For purposes of this section--

**(1) Passive activity loss.**--The term "passive activity loss" means the amount (if any) by which--

**(A)** the aggregate losses from all passive activities for the taxable year, exceed

**(B)** the aggregate income from all passive activities for such year.

**(2) Passive activity credit.**--The term "passive activity credit" means the amount (if any) by which--

**(A)** the sum of the credits from all passive activities allowable for the taxable year under--

**(i)** subpart D of part IV of subchapter A, or

**(ii)** subpart B (other than section 27(a)) of such part IV, exceeds

**(B)** the regular tax liability of the taxpayer for the taxable year allocable to all passive activities.

**(e) Special rules for determining income or loss from a passive activity.**--For purposes of this section--

**(1) Certain income not treated as income from passive activity.**--In determining the income or loss from any activity--

**(A) In general.**--There shall not be taken into account--

**(i)** any--

**(I)** gross income from interest, dividends, annuities, or royalties not derived in the ordinary course of a trade or business,

**(II)** expenses (other than interest) which are clearly and directly allocable to such gross income, and

**(III)** interest expense properly allocable to such gross income, and

**(ii)** gain or loss not derived in the ordinary course of a trade or business which is attributable to the disposition of property--

**(I)** producing income of a type described in clause (i), or

**(II)** held for investment.

For purposes of clause (ii), any interest in a passive activity shall not be treated as property held for investment.

**(B) Return on working capital.**--For purposes of subparagraph (A), any income, gain, or loss which is attributable to an investment of working capital shall be treated as not derived in the ordinary course of a trade or business.

**(2) Passive losses of certain closely held corporations may offset active income.--**

**(A) In general.**--If a closely held C corporation (other than a personal service corporation) has net active income for any taxable year, the passive activity loss of such taxpayer for such taxable year (determined without regard to this paragraph)--

**(i)** shall be allowable as a deduction against net active income, and

**(ii)** shall not be taken into account under subsection (a) to the extent so allowable as a deduction.

A similar rule shall apply in the case of any passive activity credit of the taxpayer.

**(B) Net active income.**--For purposes of this paragraph, the term "net active income" means the taxable income of the taxpayer for the taxable year determined without regard to--

**(i)** any income or loss from a passive activity, and

**(ii)** any item of gross income, expense, gain, or loss described in paragraph (1)(A).

**(3) Compensation for personal services.**--Earned income (within the meaning of section 911(d)(2)(A)) shall not be taken into account in computing the income or loss from a passive activity for any taxable year.

**(4) Dividends reduced by dividends received deduction.**--For purposes of paragraphs (1) and (2), income from dividends shall be reduced by the amount of any dividends received deduction under section 243, 244, or 245.

**(f) Treatment of former passive activities.**--For purposes of this section--

**(1) In general.**--If an activity is a former passive activity for any taxable year--

**(A)** any unused deduction allocable to such activity under subsection (b) shall be offset against the income from such activity for the taxable year,

**(B)** any unused credit allocable to such activity under subsection (b) shall be offset against the regular tax liability (computed after the application of paragraph (1)) allocable to such activity for the taxable year, and

**(C)** any such deduction or credit remaining after the application of subparagraphs (A) and (B) shall continue to be treated as arising from a passive activity.

**(2) Change in status of closely held C corporation or personal service corporation.**--If a taxpayer ceases for any taxable year to be a closely held C corporation or personal service corporation, this section shall continue to apply to losses and credits to which this section applied for any preceding taxable year in the same manner as if such taxpayer continued to be a closely held C corporation or personal service corporation, whichever is applicable.

**(3) Former passive activity.**--The term "former passive activity" means any activity which, with respect to the taxpayer--

**(A)** is not a passive activity for the taxable year, but

**(B)** was a passive activity for any prior taxable year.

**(g) Dispositions of entire interest in passive activity.**--If during the taxable year a taxpayer disposes of his entire interest in any passive activity (or former passive activity), the following rules shall apply:

**(1) Fully taxable transaction.--**

**(A) In general.**--If all gain or loss realized on such disposition is recognized, the excess of--

**(i)** any loss from such activity for such taxable year (determined after the application of subsection (b)), over

**(ii)** any net income or gain for such taxable year from all other passive activities (determined after the application of subsection (b)),

shall be treated as a loss which is not from a passive activity.

**(B) Subparagraph (A) not to apply to disposition involving related party.**--If the taxpayer and the person acquiring the interest bear a relationship to each other described in section 267(b) or section 707(b)(1), then subparagraph (A) shall not apply to any loss of the taxpayer until the taxable year in which such interest is acquired (in a transaction described in subparagraph (A)) by another person who does not bear such a relationship to the taxpayer.

**(C) Income from prior years.**--To the extent provided in regulations, income or gain from the activity for preceding taxable years shall be taken into account under subparagraph (A)(ii) for the taxable year to the extent necessary to prevent the avoidance of this section.

**(2) Disposition by death.**--If an interest in the activity is transferred by reason of the death of the taxpayer--

**(A)** paragraph (1)(A) shall apply to losses described in paragraph (1)(A) to the extent such losses are greater than the excess (if any) of--

**(i)** the basis of such property in the hands of the transferee, over

**(ii)** the adjusted basis of such property immediately before the death of the taxpayer, and

**(B)** any losses to the extent of the excess described in subparagraph (A) shall not be allowed as a deduction for any taxable year.

**(3) Installment sale of entire interest.**--In the case of an installment sale of an entire interest in an activity to which section 453 applies, paragraph (1) shall apply to the portion of such losses for each taxable year which bears the same ratio to all such losses as the gain recognized on such sale during such taxable year bears to the gross profit from such sale (realized or to be realized when payment is completed).

**(h) Material participation defined.**--For purposes of this section--

**(1) In general.**--A taxpayer shall be treated as materially participating in an activity only if the taxpayer is involved in the operations of the activity on a basis which is--

**(A)** regular,

**(B)** continuous, and

**(C)** substantial.

**(2) Interests in limited partnerships.**--Except as provided in regulations, no interest in a limited partnership as a limited partner shall be treated as an interest with respect to which a taxpayer materially participates.

**(3) Treatment of certain retired individuals and surviving spouses.**--A taxpayer shall be treated as materially participating in any farming activity for a taxable year if paragraph (4) or (5) of section 2032A(b) would cause the requirements of section 2032A(b)(1)(C)(ii) to be met with respect to real property used in such activity if such taxpayer had died during the taxable year.

**(4) Certain closely held C corporations and personal service corporations.**--A closely held C corporation or personal service corporation shall be treated as materially participating in an activity only if--

**(A)** 1 or more shareholders holding stock representing more than 50 percent (by value) of the outstanding stock of such corporation materially participate in such activity, or

**(B)** in the case of a closely held C corporation (other than a personal service corporation), the requirements of section 465(c)(7)(C) (without regard to clause (iv)) are met with respect to such activity.

**(5) Participation by spouse.**--In determining whether a taxpayer materially participates, the participation of the spouse of the taxpayer shall be taken into account.

**(i) $25,000 offset for rental real estate activities.--**

**(1) In general.**--In the case of any natural person, subsection (a) shall not apply to that portion of the passive activity loss or the deduction equivalent (within the meaning of subsection (j)(5)) of the passive activity credit for any taxable year which is attributable to all rental real estate activities with respect to which such individual actively participated in such taxable year (and if any portion of such loss or credit arose in another taxable year, in such other taxable year).

**(2) Dollar limitation.**--The aggregate amount to which paragraph (1) applies for any taxable year shall not exceed $25,000.

**(3) Phase-out of exemption.--**

**(A) In general.**--In the case of any taxpayer, the $25,000 amount under paragraph (2) shall be reduced (but not below zero) by 50 percent of the amount by which the adjusted gross income of the taxpayer for the taxable year exceeds $100,000.

**(B) Special phase-out of rehabilitation credit.**--In the case of any portion of the passive activity credit for any taxable year which is attributable to the rehabilitation credit determined under section 47, subparagraph (A) shall be applied by substituting "$200,000" for "$100,000".

**(C) Exception for commercial revitalization deduction.**--Subparagraph (A) shall not apply to any portion of the passive activity loss for any taxable year which is attributable to the commercial revitalization deduction under section 1400I.

**(D) Exception for low-income housing credit.**--Subparagraph (A) shall not apply to any portion of the passive activity credit for any taxable year which is attributable to any credit determined under section 42.

**(E) Ordering rules to reflect exceptions and separate phase-outs.**--If subparagraph (B), (C), or (D) applies for a taxable year, paragraph (1) shall be applied--

**(i)** first to the portion of the passive activity loss to which subparagraph (C) does not apply,

**(ii)** second to the portion of such loss to which subparagraph (C) applies,

**(iii)** third to the portion of the passive activity credit to which subparagraph (B) or (D) does not apply,

**(iv)** fourth to the portion of such credit to which subparagraph (B) applies, and

**(v)** then to the portion of such credit to which subparagraph (D) applies.

**(F) Adjusted gross income.**--For purposes of this paragraph, adjusted gross income shall be determined without regard to--

**(i)** any amount includible in gross income under section 86,

**(ii)** the amounts excludable from gross income under sections 135 and 137,

**(iii)** the amounts allowable as a deduction under sections 199, 219, 221, and 222, and

**(iv)** any passive activity loss or any loss allowable by reason of subsection (c)(7).

**(4) Special rule for estates.--**

**(A) In general.**--In the case of taxable years of an estate ending less than 2 years after the date of the death of the decedent, this subsection shall apply to all rental real estate activities with respect to which such decedent actively participated before his death.

**(B) Reduction for surviving spouse's exemption.**--For purposes of subparagraph (A), the $25,000 amount under paragraph (2) shall be reduced by the amount of the exemption under paragraph (1) (without regard to paragraph (3)) allowable to the surviving spouse of the decedent for the taxable year ending with or within the taxable year of the estate.

**(5) Married individuals filing separately.--**

**(A) In general.**--Except as provided in subparagraph (B), in the case of any married individual filing a separate return, this subsection shall be applied by substituting--

**(i)** "$12,500" for "$25,000" each place it appears,

**(ii)** "$50,000" for "$100,000" in paragraph (3)(A), and

**(iii)** "$100,000" for "$200,000" in paragraph (3)(B).

**(B) Taxpayers not living apart.**--This subsection shall not apply to a taxpayer who--

**(i)** is a married individual filing a separate return for any taxable year, and

**(ii)** does not live apart from his spouse at all times during such taxable year.

**(6) Active participation.--**

**(A) In general.**--An individual shall not be treated as actively participating with respect to any interest in any rental real estate activity for any period if, at any time during such period, such interest (including any interest of the spouse of the individual) is less than 10 percent (by value) of all interests in such activity.

**(B) No participation requirement for low-income housing, or rehabilitation credit, or commercial revitalization deduction.**--Paragraphs (1) and (4)(A) shall be applied without regard to the active participation requirement in the case of--

**(i)** any credit determined under section 42 for any taxable year,

**(ii)** any rehabilitation credit determined under section 47, or.

**(iii)** any deduction under section 1400I (relating to commercial revitalization deduction).

**(C) Interest as a limited partner.**--Except as provided in regulations, no interest as a limited partner in a limited partnership shall be treated as an interest with respect to which the taxpayer actively participates.

**(D) Participation by spouse.**--In determining whether a taxpayer actively participates, the participation of the spouse of the taxpayer shall be taken into account.

**(j) Other definitions and special rules.**--For purposes of this section--

**(1) Closely held C corporation.**--The term "closely held C corporation" means any C corporation described in section 465(a)(1)(B).

**(2) Personal service corporation.**--The term "personal service corporation" has the meaning given such term by section 269A(b)(1), except that section 269A(b)(2) shall be applied--

**(A)** by substituting "any" for "more than 10 percent", and

**(B)** by substituting "any" for "50 percent or more in value" in section 318(a)(2)(C).

A corporation shall not be treated as a personal service corporation unless more than 10 percent of the stock (by value) in such corporation is held by employee-owners (within the meaning of section 269A(b)(2), as modified by the preceding sentence).

**(3) Regular tax liability.**--The term "regular tax liability" has the meaning given such term by section 26(b).

**(4) Allocation of passive activity loss and credit.**--The passive activity loss and the passive activity credit (and the $25,000 amount under subsection (i)) shall be allocated to activities, and within activities, on a pro rata basis in such manner as the Secretary may prescribe.

**(5) Deduction equivalent.**--The deduction equivalent of credits from a passive activity for any taxable year is the amount which (if allowed as a deduction) would reduce the regular tax liability for such taxable year by an amount equal to such credits.

**(6) Special rule for gifts.**--In the case of a disposition of any interest in a passive activity by gift--

**(A)** the basis of such interest immediately before the transfer shall be increased by the amount of any passive activity losses allocable to such interest with respect to which a deduction has not been allowed by reason of subsection (a), and

**(B)** such losses shall not be allowable as a deduction for any taxable year.

**(7) Qualified residence interest.**--The passive activity loss of a taxpayer shall be computed without regard to qualified residence interest (within the meaning of section 163(h)(3)).

**(8) Rental activity.**--The term "rental activity" means any activity where payments are principally for the use of tangible property.

**(9) Election to increase basis of property by amount of disallowed credit.**--For purposes of determining gain or loss from a disposition of any property to which subsection (g)(1) applies, the transferor may elect to increase the basis of such property immediately before the transfer by an amount equal to the portion of any unused credit allowable under this chapter which reduced the basis of such property for the taxable year in which such credit arose. If the taxpayer elects the application of this paragraph, such portion of the passive activity credit of such taxpayer shall not be allowed for any taxable year.

**(10) Coordination with section 280A.**--If a passive activity involves the use of a dwelling unit to which section 280A(c)(5) applies for any taxable year, any income, deduction, gain, or loss allocable to such use shall not be taken into account for purposes of this section for such taxable year.

**(11) Aggregation of members of affiliated groups.**--Except as provided in regulations, all members of an affiliated group which files a consolidated return shall be treated as 1 corporation.

**(12) Special rule for distributions by estates or trusts.**--If any interest in a passive activity is distributed by an estate or trust--

**(A)** the basis of such interest immediately before such distribution shall be increased by the amount of any passive activity losses allocable to such interest, and

**(B)** such losses shall not be allowable as a deduction for any taxable year.

**(k) Separate application of section in case of publicly traded partnerships.--**

**(1) In general.**--This section shall be applied separately with respect to items attributable to each publicly traded partnership (and subsection (i) shall not apply with respect to items attributable to any such partnership). The preceding sentence shall not apply to any credit determined under section 42, or any rehabilitation credit determined under section 47, attributable to a publicly traded partnership to the extent the amount of any such credits exceeds the regular tax liability attributable to income from such partnership.

**(2) Publicly traded partnership.**--For purposes of this section, the term "publicly traded partnership" means any partnership if--

**(A)** interests in such partnership are traded on an established securities market, or

**(B)** interests in such partnership are readily tradable on a secondary market (or the substantial equivalent thereof).

**(3) Coordination with subsection (g).**--For purposes of subsection (g), a taxpayer shall not be treated as having disposed of his entire interest in an activity of a publicly traded partnership until he disposes of his entire interest in such partnership.

**(4) Application to regulated investment companies.**--For purposes of this section, a regulated investment company (as defined in section 851) holding an interest in a qualified publicly traded partnership (as defined in section 851(h)) shall be treated as a taxpayer described in subsection (a)(2) with respect to items attributable to such interest.

**(l) Regulations.**--The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out provisions of this section, including regulations--

**(1)** which specify what constitutes an activity, material participation, or active participation for purposes of this section,

**(2)** which provide that certain items of gross income will not be taken into account in determining income or loss from any activity (and the treatment of expenses allocable to such income),

**(3)** requiring net income or gain from a limited partnership or other passive activity to be treated as not from a passive activity,

**(4)** which provide for the determination of the allocation of interest expense for purposes of this section, and

**(5)** which deal with changes in marital status and changes between joint returns and separate returns.

**(m) Phase-in of disallowance of losses and credits for interest held before date of enactment.--**

**(1) In general.**--In the case of any passive activity loss or passive activity credit for any taxable year beginning in calendar years 1987 through 1990, subsection (a) shall not apply to the applicable percentage of that portion of such loss (or such credit) which is attributable to pre-enactment interests.

**(2) Applicable percentage.**--For purposes of this subsection, the applicable percentage shall be determined in accordance with the following table:

| In the case of taxable years beginning in: | The applicable percentage is: |
| --- | --- |
| 1987 | 65 |
| 1988 | 40 |
| 1989 | 20 |
| 1990 | 10 . |

**(3) Portion of loss or credit attributable to pre-enactment interests.**--For purposes of this subsection--

**(A) In general.**--The portion of the passive activity loss (or passive activity credit) for any taxable year which is attributable to pre-enactment interests is the lesser of--

**(i)** the amount of the passive activity loss (or passive activity credit) which is disallowed for the taxable year under subsection (a) (without regard to this subsection), or

**(ii)** the amount of the passive activity loss (or passive activity credit) which would be disallowed for the taxable year (without regard to this subsection and without regard to any amount allocable to an activity for the taxable year under subsection (b)) taking into account only pre-enactment interests.

**(B) Pre-enactment interest.--**

**(i) In general.**--The term "pre-enactment interest" means any interest in a passive activity held by a taxpayer on the date of the enactment of the Tax Reform Act of 1986, and at all times thereafter.

**(ii) Binding contract exception.**--For purposes of clause (i), any interest acquired after such date of enactment

pursuant to a written binding contract in effect on such date, and at all times thereafter, shall be treated as held on such date.

**(iii) Interest in activities.**--The term "pre-enactment interest" shall not include an interest in a passive activity unless such activity was being conducted on such date of enactment. The preceding sentence shall not apply to an activity commencing after such date if—

**(I)** the property used in such activity is acquired pursuant to a written binding contract in effect on August 16, 1986, and at all times thereafter, or

**(II)** construction of property used in such activity began on or before August 16, 1986.

## *Temporary Treasury Regulation § 1.469-5T*

**Material participation (temporary).**

**(a) In general.** Except as provided in paragraphs (e) and (h)(2) of this section, an individual shall be treated, for purposes of section 469 and the regulations thereunder, as materially participating in an activity for the taxable year if and only if--

**(1)** The individual participates in the activity for more than 500 hours during such year;

**(2)** The individual's participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including individuals who are not owners of interests in the activity) for such year;

**(3)** The individual participates in the activity for more than 100 hours during the taxable year, and such individual's participation in the activity for the taxable year is not less than the participation in the activity of any other individual (including individuals who are not owners of interests in the activity) for such year;

**(4)** The activity is a significant participation activity (within the meaning of paragraph (c) of this section) for the taxable year, and the individual's aggregate participation in all significant participation activities during such year exceeds 500 hours;

**(5)** The individual materially participated in the activity (determined without regard to this paragraph (a)(5)) for any five taxable years (whether or not consecutive) during the ten taxable years that immediately precede the taxable year;

**(6)** The activity is a personal service activity (within the meaning of paragraph (d) of this section), and the individual materially participated in the activity for any three taxable years (whether or not consecutive) preceding the taxable year; or

**(7)** Based on all of the facts and circumstances (taking into account the rules in paragraph (b) of this section), the individual participates in the activity on a regular, continuous, and substantial basis during such year.

**(b) Facts and circumstances--(1) In general.** [Reserved]

**(2) Certain participation insufficient to constitute material participation under this paragraph (b)--(i) Participation satisfying standards not contained in section 469.** Except as provided in section 469(h)(3) and paragraph (h)(2) of this section (relating to certain retired individuals and surviving spouses in the case of farming activities), the fact that an individual satisfies the requirements of any participation standard (whether or not referred to as "material participation") under any provision (including sections 1402 and 2032A and the regulations thereunder) other than section 469 and the regulations thereunder shall not be taken into account in determining whether such individual materially participates in any activity for any taxable year for purposes of section 469 and the regulations thereunder.

**(ii) Certain management activities.** An individual's services performed in the management of an activity shall not be taken into account in determining whether such individual is treated as materially participating in such activity for the taxable year under paragraph (a)(7) of this section unless, for such taxable year--

(A) No person (other than such individual) who performs services in connection with the management of the activity receives compensation described in section 911(d)(2)(A) in

consideration for such services; and

(B) No individual performs services in connection with the management of the activity that exceed (by hours) the amount of such services performed by such individual.

**(iii) Participation less than 100 hours.** If an individual participates in an activity for 100 hours or less during the taxable year, such individual shall not be treated as materially participating in such activity for the taxable year under paragraph (a)(7) of this section.

**(c) Significant participation activity--(1) In general.** For purposes of paragraph (a)(4) of this section, an activity is a significant participation activity of an individual if and only if such activity--

**(i)** Is a trade or business activity (within the meaning of § 1.469-1T(e)(2)) in which the individual significantly participates for the taxable year; and

**(ii)** Would be an activity in which the individual does not materially participate for the taxable year if material participation for such year were determined without regard to paragraph (a)(4) of this section.

**(2) Significant participation.** An individual is treated as significantly participating in an activity for a taxable year if and only if the individual participates in the activity for more than 100 hours during such year.

**(d) Personal service activity.** An activity constitutes a personal service activity for purposes of paragraph (a)(6) of this section if such activity involves the performance of personal services in--

**(1)** The fields of health, law, engineering, architecture, accounting, actuarial science, performing arts, or consulting; or

**(2)** Any other trade or business in which capital is not a material income-producing factor.

**(e) Treatment of limited partners--(1) General rule.** Except as otherwise provided in this paragraph (e), an individual shall not be treated as materially participating in any activity of a limited partnership for purposes of applying section 469 and the regulations thereunder to--

**(i)** The individual's share of any income, gain, loss, deduction, or credit from such activity that is attributable to a limited partnership interest in the partnership; and

**(ii)** Any gain or loss from such activity recognized upon a sale or exchange of such an interest.

**(2) Exceptions.** Paragraph (e)(1) of this section shall not apply to an individual's share of income, gain, loss, deduction, and credit for a taxable year from any activity in which the individual would be treated as materially participating for the taxable year under paragraph (a)(1), (5), or (6) of this section if the individual were not a limited partner for such taxable year.

**(3) Limited partnership interest--(i) In general.** Except as provided in paragraph (e)(3)(ii) of this section, for purposes of section 469(h)(2) and this paragraph (e), a partnership interest shall be treated as a limited partnership interest if--

(A) Such interest is designated a limited partnership interest in the limited partnership agreement or the certificate of limited partnership, without regard to whether the liability of the holder of such interest for obligations of the partnership is limited under the applicable State law; or

(B) The liability of the holder of such interest for obligations of the partnership is limited, under the law of the State in which the partnership is organized, to a determinable fixed amount (for example, the sum of the holder's capital contributions to the partnership and contractual obligations to make additional capital contributions to the partnership).

**(ii) Limited partner holding general partner interest.** A partnership interest of an individual shall not be treated as a limited partnership interest for the individual's taxable year if the individual is a general partner in the partnership at all times during the partnership's taxable year ending with or within the individual's taxable year (or the portion of the partnership's taxable year during which the individual (directly or indirectly) owns such limited partnership interest).

**(f) Participation--(1)** [Reserved]. See § 1.469-5(f)(1) for rules relating to this paragraph.

**(2) Exceptions--(i) Certain work not customarily done by owners.** Work done in connection with an activity shall not be treated as participation in the activity for purposes of this section if--

(A) Such work is not of a type that is customarily done by an owner of such an activity; and

(B) One of the principal purposes for the performance of such work is to avoid the disallowance, under section 469 and the regulations thereunder, of any loss or credit from such activity.

**(ii) Participation as an investor**--(A) In general. Work done by an individual in the individual's capacity as an investor in an activity shall not be treated as participation in the activity for purposes of this section unless the individual is directly involved in the day-to-day management or operations of the activity.

(B) Work done in individual's capacity as an investor. For purposes of this paragraph (f)(2)(ii), work done by an individual in the individual's capacity as an investor in an activity includes--

(1) Studying and reviewing financial statements or reports on operations of the activity;

(2) Preparing or compiling summaries or analyses of the finances or operations of the activity for the individual's own use; and

(3) Monitoring the finances or operations of the activity in a non-managerial capacity.

**(3) Participation of spouse.** In the case of any person who is a married individual (within the meaning of section 7703) for the taxable year, any participation by such person's spouse in the activity during the taxable year (without regard to whether the spouse owns an interest in the activity and without regard to whether the spouses file a joint return for the taxable year) shall be treated, for purposes of applying section 469 and the regulations thereunder to such person, as participation by such person in the activity during the taxable year.

**(4) Methods of proof.** The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

**(g) Material participation of trusts and estates.** [Reserved]

**(h) Miscellaneous rules--(1) Participation of corporations.** For rules relating to the participation in an activity of a personal service corporation (within the meaning of § 1.468-1T(g)(2)(i)) or a closely held corporation (within the meaning of § 1.469-1T(g)(2)(ii)), see § 1.469-1T(g)(3).

**(2) Treatment of certain retired farmers and surviving spouses of retired or disabled farmers.** An individual shall be treated as materially participating for a taxable year in any trade or business activity of farming if paragraph (4) or (5) of section 2032A(b) would cause the requirements of section 2032A(b)(1)(C)(ii) to be met with respect to real property used in such activity had the individual died

during such taxable year.

**(3) Coordination with rules governing the treatment of passthrough entities.** [Reserved]. See § 1.469-5(h)(3) for rules relating to this paragraph.

**(i)** [Reserved]

**(j) Material participation for preceding taxable years.** [Reserved]. See § 1.469-5(j) for rules relating to this paragraph.

**(k) Examples.** The following examples illustrate the application of this section:

**Example 1.** A, a calendar year individual, owns all of the stock of X, a C corporation. X is the general partner, and A is the limited partner, in P, a calendar year partnership. P has a single activity, a restaurant, which is a trade or business activity (within the meaning of § 1.469-1T(e)(2)). During the taxable year, A works for an average of 30 hours per week in connection with P's restaurant activity. Under paragraphs (a)(1) and (e)(2) of this section, A is treated as materially participating in the activity for the taxable year because A participates in the restaurant activity during such year for more than 500 hours. In addition, under § 1.469-1T(g)(3)(i), A's participation will cause X to be treated as materially participating in the restaurant activity.

**Example 2.** The facts are the same as in example (1), except that the partnership agreement provides that P's restaurant activity is to be managed by X, and A's work in the activity is performed pursuant to an employment contract between A and X. Under paragraph (f)(1) of this section, work done by A in connection with the activity in any capacity is treated as participation in the activity by A. Accordingly, the conclusion is the same as in example (1). The conclusion would be the same if A owned no stock in X at any time, although in that case A's participation would not be taken into account in determining whether X materially participates in the restaurant activity.

**Example 3.** B, an individual, is employed fulltime as a carpenter. B also owns an interest in a partnership which is engaged in a van conversion activity, which is a trade or business activity (within the meaning of § 1.469- 1T(e)(2)). B and C, the other partner, are the only participants in the activity for the taxable year. The activity is conducted entirely on Saturdays. Each Saturday throughout the taxable year, B and C work for eight hours in the activity. Although B does not participate in the activity for more than 500 hours during the taxable year, under paragraph (a)(3) of this section, B is treated for such year as materially participating in the activity because B participates in the activity for more than 100 hours during the taxable year, and B's participation in the activity for such year is not less than the participation of any other person in the activity for such year.

**Example 4.** C, an individual, is employed full-time as an accountant. C also owns interests in a restaurant and a shoe store. The restaurant and shoe store are trade or business activities (within the meaning of § 1.469-1T(e)(2)) that are treated as separate activities under the rules to be contained in § 1.469-4T. Each activity has several full-time employees. During the taxable year, C works in the restaurant activity for 400 hours and in the shoe store activity for 150 hours. Under paragraph (c) of this section, both the restaurant and shoe store activities are significant participation activities of C for the taxable year. Accordingly, since C's aggregate participation in the restaurant and shoe store activities during the taxable year exceeds 500 hours, C is treated under paragraph (a)(4) of this section as materially participating in both activities.

**Example 5.** [Reserved]. See § 1.469-5(k) Example 5 for this example.

**Example 6.** The facts are the same as in example (5), except that D does not acquire any stock in the S corporation until 1994. Under paragraph (f)(1) of this section, D is not treated as participating in the activity for any taxable year prior to 1994 because D does not own as interest in the activity for any such taxable year. Accordingly, D materially participates in the activity for only one taxable year prior to 1995, and D is not treated under paragraph (a)(5) of this section as materially participating in the activity for 1995 or subsequent taxable years.

**Example 7.** (i) E, a married individual filing a separate return for the taxable year, is employed full-time as an attorney. E also owns an interest in a professional football team that is a trade or business activity (within the meaning of § 1.469-1T(e)(2)). E does no work in connection with this activity. E anticipates that, for the taxable year, E's deductions from the activity will exceed E's gross income from the activity and that, if E does not materially participate in the activity for the taxable year, part or all of F's passive activity loss for the taxable year will be disallowed under § 1.469- 1T(a)(1)(i). Accordingly, E pays E's spouse to work as an office receptionist in connection with the activity for an average of 15 hours per week during the taxable year.

(ii) Under paragraph (f)(3) of this section any participation in the activity by E's spouse is treated as participation in the activity by E. However, under paragraph (f)(2)(i) of this section, the work done by E's spouse is not treated as participation in the activity because work as an office receptionist is not work of a type customarily done by an owner of a football team, and one of E's principal purposes for paying E's spouse to do this work is to avoid the disallowance under § 1.469-1T(a)(1)(i) of E's passive activity loss. Accordingly, E is not treated as participating in the activity for the taxable year.

**Example 8.** (i) F, an individual, owns an interest in a partnership that feeds and sells cattle. The general partner of the partnership periodically mails F a letter setting forth certain proposed actions and decisions with respect to the cattle-feeding operation. Such actions and decisions include, for example, what kind of feed to purchase, how much to purchase, and when to purchase it, how often to feed cattle, and when to sell cattle. The letters explain the proposed actions and decisions, emphasize that taking or not taking a particular action or decision is solely within the discretion of F and other partners, and ask F to indicate a decision with respect to each proposed action by answering certain questions. The general partner receives a fee that constitutes earned income (within the meaning of section 911 (d)(2)(A)) for managing the cattle-feeding operation. F is not treated as materially participating in the cattle-feeding operation under paragraph (a) (1) through (6) of this section.

(ii) F's only participation in the cattle-feeding operation is to make certain managerial decisions. Under paragraph (b)(2)(ii) of this section, such management services are not taken into account in determining whether the taxpayer is treated as materially participating in the activity for a taxable year under paragraph (a)(7) of this section, if any other person performs services in connection with the management of the activity and receives compensation described in section 911(d)(2)(A) for such services. Therefore, F is not treated as materially participating for the taxable year in the cattle-feeding operation.

## *Treasury Regulation § 301.7701-3*

**Classification of certain business entities.**

**(a) In general.** A business entity that is not classified as a corporation under § 301.7701-2(b)(1), (3), (4), (5), (6), (7), or (8) (an eligible entity) can elect its classification for federal tax purposes as provided in this section. An eligible entity with at least two members can elect to be classified as either an association (and thus a corporation under § 301.7701-2(b)(2)) or a partnership, and an eligible entity with a single owner can elect to be classified as an association or to be disregarded as an entity separate from its owner. Paragraph (b) of this section provides a default classification for an eligible entity that does not make an election. Thus, elections are necessary only when an eligible entity chooses to be classified initially as other than the default classification or when an eligible entity chooses to change its classification. An entity whose classification is determined under the default classification retains that classification (regardless of any changes in the members' liability that occurs at any time during the time that the entity's classification is relevant as defined in paragraph (d) of this section) until the entity makes an election to change that classification under paragraph (c)(1) of this section. Paragraph (c) of this section provides rules for making express elections. Paragraph (d) of this section provides special rules for foreign eligible entities. Paragraph (e) of this section provides special rules for classifying entities resulting from partnership terminations and divisions under section 708(b). Paragraph (f) of this section sets forth the effective date of this section and a special rule relating to prior periods.

**(b) Classification of eligible entities that do not file an election--(1) Domestic eligible entities.** Except as provided in paragraph (b)(3) of this section, unless the entity elects otherwise, a domestic eligible entity is--

**(i)** A partnership if it has two or more members; or

**(ii)** Disregarded as an entity separate from its owner if it has a single owner.

**(2) Foreign eligible entities--(i) In general.** Except as provided in paragraph (b)(3) of this section, unless the entity elects otherwise, a foreign eligible entity is--

(A) A partnership if it has two or more members and at least one member does not have limited liability;

(B) An association if all members have limited liability; or

(C) Disregarded as an entity separate from its owner if it has a single owner that does not have limited liability.

**(ii) Definition of limited liability.** For purposes of paragraph (b)(2)(i) of this section, a member of a foreign eligible entity has limited liability if the member has no personal liability for the debts of or claims against the entity by reason of being a member. This determination is based solely on the statute or law pursuant to which the entity is organized, except that if the underlying statute or law allows the entity to specify in its organizational documents whether the members will have limited liability, the organizational documents may also be relevant. For purposes of this section, a member has personal liability if the creditors of the entity may seek satisfaction of all or any portion of the debts or claims against the entity from the member as such. A member has personal liability for purposes of this paragraph even if the member makes an agreement under which another person (whether or not a member of the entity) assumes such liability or agrees to indemnify that member for any such liability.

**(3) Existing eligible entities--(i) In general.** Unless the entity elects otherwise, an eligible entity in existence prior to the effective date of this section will have the same classification that the entity claimed under §§ 301.7701-1 through 301.7701-3 as in effect on the date prior to the effective date of

this section; except that if an eligible entity with a single owner claimed to be a partnership under those regulations, the entity will be disregarded as an entity separate from its owner under this paragraph (b)(3)(i). For special rules regarding the classification of such entities prior to the effective date of this section, see paragraph (h)(2) of this section.

**(ii) Special rules.** For purposes of paragraph (b)(3)(i) of this section, a foreign eligible entity is treated as being in existence prior to the effective date of this section only if the entity's classification was relevant (as defined in paragraph (d) of this section) at any time during the sixty months prior to the effective date of this section. If an entity claimed different classifications prior to the effective date of this section, the entity's classification for purposes of paragraph (b)(3)(i) of this section is the last classification claimed by the entity. If a foreign eligible entity's classification is relevant prior to the effective date of this section, but no federal tax or information return is filed or the federal tax or information return does not indicate the classification of the entity, the entity's classification for the period prior to the effective date of this section is determined under the regulations in effect on the date prior to the effective date of this section.

**(c) Elections--(1) Time and place for filing--(i) In general.** Except as provided in paragraphs (c)(1)(iv) and (v) of this section, an eligible entity may elect to be classified other than as provided under paragraph (b) of this section, or to change its classification, by filing Form 8832, Entity Classification Election, with the service center designated on Form 8832. An election will not be accepted unless all of the information required by the form and instructions, including the taxpayer identifying number of the entity, is provided on Form 8832. See § 301.6109-1 for rules on applying for and displaying Employer Identification Numbers.

**(ii) Further notification of elections.** An eligible entity required to file a Federal tax or information return for the taxable year for which an election is made under § 301.7701-3(c)(1)(i) must attach a copy of its Form 8832 to its Federal tax or information return for that year. If the entity is not required to file a return for that year, a copy of its Form 8832 ("Entity Classification Election") must be attached to the Federal income tax or information return of any direct or indirect owner of the entity for the taxable year of the owner that includes the date on which the election was effective. An indirect owner of the entity does not have to attach a copy of the Form 8832 to its return if an entity in which it has an interest is already filing a copy of the Form 8832 with its return. If an entity, or one of its direct or indirect owners, fails to attach a copy of a Form 8832 to its return as directed in this section, an otherwise valid election under § 301.7701-3(c)(1)(i) will not be invalidated, but the non-filing party may be subject to penalties, including any applicable penalties if the Federal tax or information returns are inconsistent with the entity's election under § 301.7701-3(c)(1)(i). In the case of returns for taxable years beginning after December 31, 2002, the copy of Form 8832 attached to a return pursuant to this paragraph (c)(1)(ii) is not required to be a signed copy.

**(iii) Effective date of election.** An election made under paragraph (c)(1)(i) of this section will be effective on the date specified by the entity on Form 8832 or on the date filed if no such date is specified on the election form. The effective date specified on Form 8832 can not be more than 75 days prior to the date on which the election is filed and can not be more than 12 months after the date on which the election is filed. If an election specifies an effective date more than 75 days prior to the date on which the election is filed, it will be effective 75 days prior to the date it was filed. If an election specifies an effective date more than 12 months from the date on which the election is filed, it will be effective 12 months after the date it was filed. If an election specifies an effective date before January 1, 1997, it will be effective as of January 1, 1997. If a purchasing corporation makes an election under section 338 regarding an acquired subsidiary, an election under paragraph (c)(1)(i) of this section for the acquired subsidiary can be effective no earlier than the day after the acquisition date (within the meaning of section 338(h)(2)).

**(iv) Limitation.** If an eligible entity makes an election under paragraph (c)(1)(i) of this section to change its classification (other than an election made by an existing entity to change its classification as of the effective date of this section), the entity cannot change its classification by election again during the sixty months succeeding the effective date of the election. However, the Commissioner may

permit the entity to change its classification by election within the sixty months if more than fifty percent of the ownership interests in the entity as of the effective date of the subsequent election are owned by persons that did not own any interests in the entity on the filing date or on the effective date of the entity's prior election. An election by a newly formed eligible entity that is effective on the date of formation is not considered a change for purposes of this paragraph (c)(1)(iv).

**(v) Deemed elections--**(A) Exempt organizations. An eligible entity that has been determined to be, or claims to be, exempt from taxation under section 501(a) is treated as having made an election under this section to be classified as an association. Such election will be effective as of the first day for which exemption is claimed or determined to apply, regardless of when the claim or determination is made, and will remain in effect unless an election is made under paragraph (c)(1)(i) of this section after the date the claim for exempt status is withdrawn or rejected or the date the determination of exempt status is revoked.

(B) Real estate investment trusts. An eligible entity that files an election under section 856(c)(1) to be treated as a real estate investment trust is treated as having made an election under this section to be classified as an association. Such election will be effective as of the first day the entity is treated as a real estate investment trust.

(C) S corporations. An eligible entity that timely elects to be an S corporation under section 1362(a)(1) is treated as having made an election under this section to be classified as an association, provided that (as of the effective date of the election under section 1362(a)(1)) the entity meets all other requirements to qualify as a small business corporation under section 1361(b). Subject to § 301.7701-3(c)(1)(iv), the deemed election to be classified as an association will apply as of the effective date of the S corporation election and will remain in effect until the entity makes a valid election, under § 301.7701-3(c)(1)(i), to be classified as other than an association.

**(vi) Examples.** The following examples illustrate the rules of this paragraph (c)(1):

**Example 1.** On July 1, 1998, X, a domestic corporation, purchases a 10% interest in Y, an eligible entity formed under Country A law in 1990. The entity's classification was not relevant to any person for federal tax or information purposes prior to X's acquisition of an interest in Y. Thus, Y is not considered to be in existence on the effective date of this section for purposes of paragraph (b)(3) of this section. Under the applicable Country A statute, all members of Y have limited liability as defined in paragraph (b)(2)(ii) of this section. Accordingly, Y is classified as an association under paragraph (b)(2)(i)(B) of this section unless it elects under this paragraph (c) to be classified as a partnership. To be classified as a partnership as of July 1, 1998, Y must file a Form 8832 by September 14, 1998. See paragraph (c)(1)(i) of this section. Because an election cannot be effective more than 75 days prior to the date on which it is filed, if Y files its Form 8832 after September 14, 1998, it will be classified as an association from July 1, 1998, until the effective date of the election. In that case, it could not change its classification by election under this paragraph (c) during the sixty months succeeding the effective date of the election.

**Example 2.** (i) Z is an eligible entity formed under Country B law and is in existence on the effective date of this section within the meaning of paragraph (b)(3) of this section. Prior to the effective date of this section, Z claimed to be classified as an association. Unless Z files an election under this paragraph (c), it will continue to be classified as an association under paragraph (b)(3) of this section.

(ii) Z files a Form 8832 pursuant to this paragraph (c) to be classified as a partnership, effective as of the effective date of this section. Z can file an election to be classified as an association at any time thereafter, but then would not be permitted to change its classification by election during the sixty months succeeding the effective date of that subsequent election.

**(2) Authorized signatures--(i) In general.** An election made under paragraph (c)(1)(i) of this section must be signed by--

(A) Each member of the electing entity who is an owner at the time the election is filed; or

(B) Any officer, manager, or member of the electing entity who is authorized (under local law or the entity's organizational documents) to make the election and who represents to having such authorization under penalties of perjury.

**(ii) Retroactive elections.** For purposes of paragraph (c)(2)(i) of this section, if an election under paragraph (c)(1)(i) of this section is to be effective for any period prior to the time that it is filed, each person who was an owner between the date the election is to be effective and the date the election is filed, and who is not an owner at the time the election is filed, must also sign the election.

**(iii) Changes in classification.** For paragraph (c)(2)(i) of this section, if an election under paragraph (c)(1)(i) of this section is made to change the classification of an entity, each person who was an owner on the date that any transactions under paragraph (g) of this section are deemed to occur, and who is not an owner at the time the election is filed, must also sign the election. This paragraph (c)(2)(iii) applies to elections filed on or after November 29, 1999.

**(d) Special rules for foreign eligible entities--(1) Definition of relevance-- (i) General rule.** For purposes of this section, a foreign eligible entity's classification is relevant when its classification affects the liability of any person for federal tax or information purposes. For example, a foreign entity's classification would be relevant if U.S. income was paid to the entity and the determination by the withholding agent of the amount to be withheld under chapter 3 of the Internal Revenue Code (if any) would vary depending upon whether the entity is classified as a partnership or as an association. Thus, the classification might affect the documentation that the withholding agent must receive from the entity, the type of tax or information return to file, or how the return must be prepared. The date that the classification of a foreign eligible entity is relevant is the date an event occurs that creates an obligation to file a federal tax return, information return, or statement for which the classification of the entity must be determined. Thus, the classification of a foreign entity is relevant, for example, on the date that an interest in the entity is acquired which will require a U.S. person to file an information return on Form 5471.

**(ii) Deemed relevance--**(A) General rule. For purposes of this section, except as provided in paragraph (d)(1)(ii)(B) of this section, the classification for Federal tax purposes of a foreign eligible entity that files Form 8832, "Entity Classification Election", shall be deemed to be relevant only on the date the entity classification election is effective.

(B) Exception. If the classification of a foreign eligible entity is relevant within the meaning of paragraph (d)(1)(i) of this section, then the rule in paragraph (d)(1)(ii)(A) of this section shall not apply.

**(2) Entities the classification of which has never been relevant.** If the classification of a foreign eligible entity has never been relevant (as defined in paragraph (d)(1) of this section), then the entity's classification will initially be determined pursuant to the provisions of paragraph (b)(2) of this section when the classification of the entity first becomes relevant (as defined in paragraph (d)(1)(i) of this section).

**(3) Special rule when classification is no longer relevant.** If the classification of a foreign eligible entity is not relevant (as defined in paragraph (d)(1) of this section) for 60 consecutive months, then the entity's classification will initially be determined pursuant to the provisions of paragraph (b)(2) of this section when the classification of the foreign eligible entity becomes relevant (as defined in paragraph (d)(1)(i) of this section). The date that the classification of a foreign entity is not relevant is the date an event occurs that causes the classification to no longer be relevant, or, if no event occurs in a taxable year that causes the classification to be relevant, then the date is the first day of that taxable year.

**(4) Effective date.** Paragraphs (d)(1)(ii), (d)(2), and (d)(3) of this section apply on or after October 22, 2003.

**(e) Coordination with section 708(b).** Except as provided in § 301.7701- 2(d)(3) (regarding termination of grandfather status for certain foreign business entities), an entity resulting from a transaction described in section 708(b)(1)(B) (partnership termination due to sales or exchanges) or section 708(b)(2)(B) (partnership division) is a partnership.

**(f) Changes in number of members of an entity--(1) Associations.** The classification of an eligible entity as an association is not affected by any change in the number of members of the entity.

**(2) Partnerships and single member entities.** An eligible entity classified as a partnership becomes disregarded as an entity separate from its owner when the entity's membership is reduced to one member. A single member entity disregarded as an entity separate from its owner is classified as a partnership when the entity has more than one member. If an elective classification change under paragraph (c) of this section is effective at the same time as a membership change described in this paragraph (f)(2), the deemed transactions in paragraph (g) of this section resulting from the elective change preempt the transactions that would result from the change in membership.

**(3) Effect on sixty month limitation.** A change in the number of members of an entity does not result in the creation of a new entity for purposes of the sixty month limitation on elections under paragraph (c)(1)(iv) of this section.

**(4) Examples.** The following examples illustrate the application of this paragraph (f):

**Example 1.** A, a U.S. person, owns a domestic eligible entity that is disregarded as an entity separate from its owner.

On January 1, 1998, B, a U.S. person, buys a 50 percent interest in the entity from A. Under this paragraph (f), the entity is classified as a partnership when B acquires an interest in the entity. However, A and B elect to have the entity classified as an association effective on January 1, 1998. Thus, B is treated as buying shares of stock on January 1, 1998. (Under paragraph (c)(1)(iv) of this section, this election is treated as a change in classification so that the entity generally cannot change its classification by election again during the sixty months succeeding the effective date of the election.) Under paragraph (g)(1) of this section, A is treated as contributing the assets and liabilities of the entity to the newly formed association immediately before the close of December 31, 1997. Because A does not retain control of the association as required by section 351, A's contribution will be a taxable event. Therefore, under section 1012, the association will take a fair market value basis in the assets contributed by A, and A will have a fair market value basis in the stock received. A will have no additional gain upon the sale of stock to B, and B will have a cost basis in the stock purchased from A.

**Example 2.** (i) On April 1, 1998, A and B, U.S. persons, form X, a foreign eligible entity. X is treated as an association under the default provisions of paragraph (b)(2)(i) of this section, and X does not make an election to be classified as a partnership. A subsequently purchases all of B's interest in X.

(ii) Under paragraph (f)(1) of this section, X continues to be classified as an association. X, however, can subsequently elect to be disregarded as an entity separate from A. The sixty month limitation of paragraph (c)(1)(iv) of this section does not prevent X from making an election because X has not made a prior election under paragraph (c)(1)(i) of this section.

**Example 3.** (i) On April 1, 1998, A and B, U.S. persons, form X, a foreign eligible entity. X is treated as an association under the default provisions of paragraph (b)(2)(i) of this section, and X does not make an election to be classified as a partnership. On January 1, 1999, X elects to be classified as a partnership effective on that date. Under the sixty month limitation of paragraph (c)(1)(iv) of this section, X cannot elect to be classified as an association until January 1, 2004 (i.e., sixty months after the effective date of the election to be classified as a partnership).

(ii) On June 1, 2000, A purchases all of B's interest in X. After A's purchase of B's interest, X can no

longer be classified as a partnership because X has only one member. Under paragraph (f)(2) of this section, X is disregarded as an entity separate from A when A becomes the only member of X. X, however, is not treated as a new entity for purposes of paragraph (c)(1)(iv) of this section. As a result, the sixty month limitation of paragraph (c)(1)(iv) of this section continues to apply to X, and X cannot elect to be classified as an association until January 1, 2004 (i.e., sixty months after January 1, 1999, the effective date of the election by X to be classified as a partnership).

**(5) Effective date.** This paragraph (f) applies as of November 29, 1999.

**(g) Elective changes in classification--(1) Deemed treatment of elective change--(i) Partnership to association.** If an eligible entity classified as a partnership elects under paragraph (c)(1)(i) of this section to be classified as an association, the following is deemed to occur: The partnership contributes all of its assets and liabilities to the association in exchange for stock in the association, and immediately thereafter, the partnership liquidates by distributing the stock of the association to its partners.

**(ii) Association to partnership.** If an eligible entity classified as an association elects under paragraph (c)(1)(i) of this section to be classified as a partnership, the following is deemed to occur: The association distributes all of its assets and liabilities to its shareholders in liquidation of the association, and immediately thereafter, the shareholders contribute all of the distributed assets and liabilities to a newly formed partnership.

**(iii) Association to disregarded entity.** If an eligible entity classified as an association elects under paragraph (c)(1)(i) of this section to be disregarded as an entity separate from its owner, the following is deemed to occur: The association distributes all of its assets and liabilities to its single owner in liquidation of the association.

**(iv) Disregarded entity to an association.** If an eligible entity that is disregarded as an entity separate from its owner elects under paragraph (c)(1)(i) of this section to be classified as an association, the following is deemed to occur: The owner of the eligible entity contributes all of the assets and liabilities of the entity to the association in exchange for stock of the association.

**(2) Effect of elective changes--(i) In general.** The tax treatment of a change in the classification of an entity for federal tax purposes by election under paragraph (c)(1)(i) of this section is determined under all relevant provisions of the Internal Revenue Code and general principles of tax law, including the step transaction doctrine.

**(ii) Adoption of plan of liquidation.** For purposes of satisfying the requirement of adoption of a plan of liquidation under section 332, unless a formal plan of liquidation that contemplates the election to be classified as a partnership or to be disregarded as an entity separate from its owner is adopted on an earlier date, the making, by an association, of an election under paragraph (c)(1)(i) of this section to be classified as a partnership or to be disregarded as an entity separate from its owner is considered to be the adoption of a plan of liquidation immediately before the deemed liquidation described in paragraph (g)(1)(ii) or (iii) of this section. This paragraph (g)(2)(ii) applies to elections filed on or after December 17, 2001. Taxpayers may apply this paragraph (g)(2)(ii) retroactively to elections filed before December 17, 2001, if the corporate owner claiming treatment under section 332 and its subsidiary making the election take consistent positions with respect to the federal tax consequences of the election.

**(3) Timing of election--(i) In general.** An election under paragraph (c)(1)(i) of this section that changes the classification of an eligible entity for federal tax purposes is treated as occurring at the start of the day for which the election is effective. Any transactions that are deemed to occur under this paragraph (g) as a result of a change in classification are treated as occurring immediately before the close of the day before the election is effective. For example, if an election is made to change the classification of an entity from an association to a partnership effective on January 1, the deemed transactions specified in paragraph (g)(1)(ii) of this section (including the liquidation of the association) are treated as occurring immediately before the close of December 31 and must be

reported by the owners of the entity on December 31. Thus, the last day of the association's taxable year will be December 31 and the first day of the partnership's taxable year will be January 1.

**(ii) Coordination with section 338 election.** A purchasing corporation that makes a qualified stock purchase of an eligible entity taxed as a corporation may make an election under section 338 regarding the acquisition if it satisfies the requirements for the election, and may also make an election to change the classification of the target corporation. If a taxpayer makes an election under section 338 regarding its acquisition of another entity taxable as a corporation and makes an election under paragraph (c) of this section for the acquired corporation (effective at the earliest possible date as provided by paragraph (c)(1)(iii) of this section), the transactions under paragraph (g) of this section are deemed to occur immediately after the deemed asset purchase by the new target corporation under section 338.

**(iii) Application to successive elections in tiered situations.** When elections under paragraph (c)(1)(i) of this section for a series of tiered entities are effective on the same date, the eligible entities may specify the order of the elections on Form 8832. If no order is specified for the elections, any transactions that are deemed to occur in this paragraph (g) as a result of the classification change will be treated as occurring first for the highest tier entity's classification change, then for the next highest tier entity's classification change, and so forth down the chain of entities until all the transactions under this paragraph (g) have occurred. For example, Parent, a corporation, wholly owns all of the interest of an eligible entity classified as an association (S1), which wholly owns another eligible entity classified as an association (S2), which wholly owns another eligible entity classified as an association (S3). Elections under paragraph (c)(1)(i) of this section are filed to classify S1, S2, and S3 each as disregarded as an entity separate from its owner effective on the same day. If no order is specified for the elections, the following transactions are deemed to occur under this paragraph (g) as a result of the elections, with each successive transaction occurring on the same day immediately after the preceding transaction S1 is treated as liquidating into Parent, then S2 is treated as liquidating into Parent, and finally S3 is treated as liquidating into Parent.

**(4) Effective date.** Except as otherwise provided in paragraph (g)(2)(ii) of this section, this paragraph (g) applies to elections that are filed on or after November 29, 1999. Taxpayers may apply this paragraph (g) retroactively to elections filed before November 29, 1999 if all taxpayers affected by the deemed transactions file consistently with this paragraph (g).

**(h) Effective date--(1) In general.** Except as otherwise provided in this section, the rules of this section are applicable as of January 1, 1997.

**(2) Prior treatment of existing entities.** In the case of a business entity that is not described in § 301.7701-2(b)(1), (3), (4), (5), (6), or (7), and that was in existence prior to January 1, 1997, the entity's claimed classification(s) will be respected for all periods prior to January 1, 1997, if--

**(i)** The entity had a reasonable basis (within the meaning of section 6662) for its claimed classification;

**(ii)** The entity and all members of the entity recognized the federal tax consequences of any change in the entity's classification within the sixty months prior to January 1, 1997; and

**(iii)** Neither the entity nor any member was notified in writing on or before May 8, 1996, that the classification of the entity was under examination (in which case the entity's classification will be determined in the examination).

**(3) Deemed elections for S corporations.** Paragraph (c)(1)(v)(C) of this section applies to timely S corporation elections under section 1362(a) filed on or after July 20, 2004. Eligible entities that filed timely S elections before July 20, 2004 may also rely on the provisions of the regulation.