# REGULATIONS

# OF

# MOUNTAIN AIR CHARTER, L.L.C.

**The interests in Mountain Air Charter, L.L.C. have not been registered under the Securities Act of 1933 or the securities laws of any state. Without this registration, these securities may not be sold or otherwise transferred, except upon delivery to the Company of an opinion of counsel satisfactory to the Company that registration is not required for transfer, and that the transfer is not in violation of applicable federal and state securities laws. The sale or other transfer of these interests is also subject to the restrictions set forth in <u>Article 4</u> of these Regulations.**

GOVERNMENT EXHIBIT
9

**TABLE OF CONTENTS**


| | | Page |
|---|---|---|
| ARTICLE 1. DEFINED TERMS | | 1 |
| ARTICLE 2. OFFICES AND REGISTERED AGENT | | 3 |
| Section 2.1 | Offices | 3 |
| Section 2.2 | Registered Agent | 3 |
| ARTICLE 3. PURPOSE | | 4 |
| ARTICLE 4. MEMBERS | | 4 |
| Section 4.1 | Initial Members | 4 |
| Section 4.2 | Admission of Additional Members | 4 |
| Section 4.3 | Transfer of Interest Prohibited | 4 |
| Section 4.4 | Effect of Assignment | 4 |
| Section 4.5 | [Representations and Warranties | 4 |
| ARTICLE 5. CAPITAL CONTRIBUTIONS AND INTERESTS | | 5 |
| Section 5.1 | Capital Contributions | 5 |
| Section 5.2 | Percentage Interests | 6 |
| Section 5.3 | Issuance of Interests. | 6 |
| Section 5.4 | Capital Accounts | 6 |
| Section 5.5 | Return of Capital Contributions | 7 |
| Section 5.6 | Interest | 7 |
| Section 5.7 | Loans From Members | 7 |
| ARTICLE 6. ALLOCATIONS AND DISTRIBUTIONS | | 7 |
| Section 6.1 | Allocation of Income and Loss. | 7 |
| Section 6.2 | Determination of Income and Loss | 8 |
| Section 6.3 | Cash Distributions | 8 |
| Section 6.4 | Distributions of Other Property | 8 |
| ARTICLE 7. FISCAL MATTERS; BOOKS AND RECORDS | | 8 |
| Section 7.1 | Books and Records | 8 |
| Section 7.2 | Fiscal Year | 8 |
| Section 7.3 | Bank Accounts | 8 |
| Section 7.4 | Information and Confidentiality | 9 |
| Section 7.5 | Tax Returns and Information | 9 |
| Section 7.6 | Tax Elections | 9 |
| ARTICLE 8. MANAGEMENT OF THE COMPANY | | 9 |
| Section 8.1 | Management by Managers | 9 |

Section 8.2 Powers of the Members ........ 10
Section 8.3 Officers ........ 10
Section 8.4 Alteration of Management Responsibilities ........ 10
Section 8.5 Conflicts of Interest ........ 10

ARTICLE 9. WITHDRAWAL OR EXPULSION ........ 10
Section 9.1 Expulsion of a Member ........ 10
Section 9.2 Liquidation of Company Interest ........ 11

ARTICLE 10. DISSOLUTION AND WINDING UP ........ 11
Section 10.1 Events Causing Dissolution. ........ 11
Section 10.2 Winding Up ........ 11
Section 10.3 Distribution of Company Property and Proceeds of Sale Thereof. ........ 12
Section 10.4 Final Accounting ........ 13
Section 10.5 Deficit Capital Accounts ........ 13

ARTICLE 11. INDEMNIFICATION AND INSURANCE ........ 13
Section 11.1 Indemnification ........ 13
Section 11.2 Insurance ........ 13
Section 11.3 Advancement of Expenses ........ 14

ARTICLE 12. MISCELLANEOUS PROVISIONS ........ 14
Section 12.1 No State-Law Partnership ........ 14
Section 12.2 Assumed Names ........ 14
Section 12.3 Counterparts ........ 14
Section 12.4 Entire Agreement ........ 14
Section 12.5 Law Governing ........ 14
Section 12.6 Successors and Assigns ........ 14
Section 12.7 Severability ........ 14
Section 12.8 Amendment ........ 15
Section 12.9 Headings ........ 15
Section 12.10 Construction ........ 15
Section 12.11 Offset ........ 15
Section 12.12 Effect of Waiver or Consent ........ 15
Section 12.13 Further Assurances ........ 15
Section 12.14 Waiver of Certain Rights ........ 15

**SCHEDULES**

Schedule A – Member Interests

# REGULATIONS

# OF

# MOUNTAIN AIR CHARTER, L.L.C.

THESE REGULATIONS OF Mountain Air Charter, L.L.C., a Texas limited liability company, are adopted by the Members of the Company. The undersigned Members and those persons and entities subsequently admitted as Members acknowledge and agree as follows:

## ARTICLE 1.
## DEFINED TERMS

The capitalized terms used in these Regulations shall, unless the context otherwise requires, have the meanings specified in this Article 1.

***Act.*** The Texas Limited Liability Company Act, as it may be amended from time to time, and any successor to such Act.

***Affiliate.*** As applied to any Person, any other Person directly or indirectly controlling, controlled by, or under common control with, such Person, including but not limited to such Person's members, limited partners or equity holders. For purposes of this definition, "*control*" (including, with correlative meaning, the terms "*controlling*," "*controlled by*" and "*under common control with*"), as applied to any Person means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise.

***Articles of Organization.*** The Articles of Organization of the Company as filed with the Secretary of State of Texas and as amended from time to time.

***Bankruptcy.*** Bankruptcy under the federal Bankruptcy Code or insolvency under any state insolvency act.

***Business Day.*** Any day other than a Saturday, Sunday and those legal public holidays specified in 5 U.S.C. § 6103(a), as may be amended from time to time.

***Capital Account.*** The Capital Account maintained for each Member pursuant to Section 5.4 of these Regulations.

***Capital Contribution.*** The total amount of cash or property contributed to the Company by all the Members or any one Member, as the case may be.

***Code.*** The Internal Revenue Code of 1986, as it has been and may be amended, and any successor to such Code, and applicable Treasury regulations promulgated thereunder.

***Company.*** Mountain Air Charter, L.L.C., as such limited liability company may from time to time be constituted.

***Company Property or Properties.*** All interests, properties and rights of any type owned by the Company, whether owned by the Company at the date of its formation or thereafter acquired.

***Interest.*** All rights and interests of a Member under these Regulations and the Act, including without limitation (i) the right of a Member, expressed as a percentage on Schedule A, as may be adjusted from time to time pursuant to the terms hereof, to receive distributions of revenues, allocations of income and loss and distributions of liquidation proceeds under these Regulations, and (ii) all voting rights or rights to consent.

***Manager.*** James R. Thompson.

***Members.*** At any time, the Persons who then own Interests in the Company. The Members are listed on Schedule A.

***Notification.*** A writing containing any information required by these Regulations to be communicated to any Person, which may be personally delivered, sent by registered or certified mail, postage prepaid, or sent by facsimile transmission promptly confirmed by mail, to such Person, at the last known address of such Person on the Company records. Any such Notification shall be deemed to be given (i) when delivered, in the case of personal delivery, (ii) two Business Days after the date on which it is deposited in a regularly maintained receptacle for the deposit of United States mail addressed and sent as aforesaid, in the case of mail, and (iii) within the first business hour (being the 9:00 a.m. to 5:00 p.m., local time for the recipient, on any Business Day) after receipt by the addressee, in the case of facsimile transmission. Any communication containing information sent to any Person other than as required by the foregoing sentences, but which is actually received by such Person, shall constitute Notification as of the date of such receipt for all purposes of these Regulations.

***Percentage Interest.*** The percentage set forth on Schedule A representing the Interest of a Member in the Company.

***Permitted Transferee.*** In the case of a Member that is not an individual, any Affiliate of such Member, and in the case of Thompson or any Member that is an individual, Thompson's or such Member's spouse or lineal descendants, or a trust for the benefit of same.

***Person.*** Any natural person, limited liability company, general partnership, limited partnership, corporation, joint venture, trust, business trust, cooperative or association.

***Regulations.*** These Regulations, including all Schedules referenced herein, as originally executed and as subsequently amended from time to time.

***Securities Act.*** The Securities Act of 1933, as it has been and may be amended, and any successor to such Securities Act and any applicable regulations promulgated thereunder.

***Transfer.*** Any mortgage, pledge, hypothecation, assignment, encumbrance, disposal, and any other change in the record or beneficial ownership of an Interest, whether made voluntarily or involuntarily by operation of law, including, but not limited to, the following:

(a) a sale or gift to any Person;

(b) a transfer to the personal representative of the estate of a Member upon such Member's death, and any subsequent transfer from such personal representative to the heirs or devisees of the deceased Member under his or her will or by the laws of descent and distribution;

(c) a transfer to a judicially appointed personal representative as a result of the adjudication by a court of competent jurisdiction that the transferor Member is mentally incompetent to manage his or her person or property;

(d) a transfer to the transferor Member's spouse or former spouse, or heirs of such spouse or former spouse, in connection with a division of their community or other property upon the death of the transferor Member, divorce or the death of such spouse;

(e) a general assignment for the benefit of creditors, or any assignment to a creditor resulting from the creditor's foreclosure upon or execution against such Interest,

(f) the filing by the transferor Member of a voluntary Bankruptcy petition; or

(g) the entry of a judicial order granting the relief requested by the petitioner in an involuntary Bankruptcy proceeding filed against the transferor Member.

## ARTICLE 2.
## OFFICES AND REGISTERED AGENT

Section 2.1 ***Offices***. The registered office of the Company required by the Act to be maintained in the State of Texas shall be the initial registered office named in the Articles of Organization or such other office (which need not be a place of business of the Company) as the Manager may designate from time to time in the manner provided by these Regulations. The principal office of the Company in the United States shall initially be at 5758 Belmont Avenue, Dallas, Texas 75206 or such other place as the Manager may designate from time to time, which need not be in the State of Texas, and the Company shall maintain records there as required by the Act. The Company may have such other offices as the Manager may designate from time to time by filing an appropriate statement in the office of the Secretary of State.

Section 2.2 ***Registered Agent***. The initial registered agent of the Company is as specified in the Articles of Organization. The Manager may from time to time change the registered agent of the Company by filing an appropriate statement in the office of the Secretary of State.

## ARTICLE 3.
## PURPOSE

The purpose of the Company is to engage in any lawful act, activity or business for which limited liability companies may be organized under the Act.

## ARTICLE 4.
## MEMBERS

Section 4.1 ***Initial Members***. The names and addresses of the initial Members of the Company are as set forth on Schedule A of these Regulations.

Section 4.2 ***Admission of Additional Members***. Additional Members of the Company may be admitted only with the consent of the Manager.

Section 4.3 ***Transfer of Interest Prohibited.*** Except as otherwise provided in this Section 4.3, no Member may Transfer any Interest without the prior written consent of the Manager.

4.3.1 Any Member may at any time Transfer any or all of its Interest to one or more of its Permitted Transferees so long as (i) such Permitted Transferee shall have agreed in writing to be bound (through execution of an agreement substantially in the form of Exhibit A hereto) by the terms of these Regulations and (ii) the Transfer to such Permitted Transferee is not in violation of any applicable federal or state securities laws.

4.3.2 Any attempt to Transfer any Interest not in compliance with these Regulations shall be void ab initio and the Company shall not register, or otherwise recognize in the Company's records, any such improper Transfer.

Section 4.4 ***Effect of Assignment.*** Any transferee to whom an Interest in the Company has been transferred by operation of law, judicial decree or by last will and testament, and who is not at the time of the Transfer a party to these Regulations, shall be entitled to receive, in accordance with the terms of the Transfer, the distributions to which the transferring Member would otherwise be entitled. However, such transferee shall not be a Member and shall not have any of the rights of a Member.

**Section 4.5** ***Representations and Warranties.*** Each Member hereby represents and warrants to the Company and each other Member as follows:

4.5.1 in the case of a Member that is not a natural person: (i) that Member is duly incorporated, organized, or formed (as applicable), validly existing, and (if applicable) in good standing under the laws of the jurisdiction of its incorporation, organization, or formation; (ii) if required by applicable law, that Member is duly qualified and in good standing in the jurisdiction of its principal place of business, if different from its jurisdiction of incorporation, organization or formation; and (iii) that Member has full power and authority to execute and deliver these Regulations and to perform its obligations hereunder, and all necessary actions by the board of directors, shareholders, managers, members, partners, trustees, beneficiaries, or

other applicable Persons necessary for the due authorization, execution, delivery, and performance of these Regulations by that Member have been duly taken;

4.5.2 that Member has duly executed and delivered these Regulations, and it constitutes the legal, valid and binding obligation of that Member enforceable against it in accordance with their terms (except as may be limited by bankruptcy, insolvency or similar laws of general application and by the effect of general principles of equity, regardless of whether considered at law or in equity);

4.5.3 that Member's authorization, execution, delivery, and performance of these Regulations do not and will not (i) conflict with, or result in a breach, default, or violation of, (A) the organizational documents of such Member (if it is an Entity), (B) any contract or agreement to which that Member is a party or is otherwise subject, or (C) any law, order, judgment, decree, writ, injunction, or arbitral award to which that Member is subject; or (ii) require any consent, approval, or authorization from, filing or registration with, or notice to, any governmental authority or other Person, unless such requirement has already been satisfied;

4.5.4 that Member is familiar with the existing or proposed business, financial condition, properties, operations, and prospects of the Company; it has asked such questions, and conducted such due diligence, concerning such matters and concerning its acquisition of an Interest as it has desired to ask and conduct, and all such questions have been answered to its full satisfaction; it has such knowledge and experience in financial and business matters that it is capable of evaluating the merits and risks of an investment in the Company; it understands that owning an Interest involves various risks, including the restrictions on Transfers, the lack of any public market for Interests, the risk of owning its Interest for an indefinite period of time, and the risk of losing its entire investment in the Company; it is able to bear the economic risk of such investment; it is acquiring its Interest for investment, solely for its own beneficial account and not with a view to or any present intention of directly or indirectly selling, transferring, offering to sell or transfer, participating in any distribution, or otherwise Transferring all or a portion of its Interest; and it acknowledges that the Interests have not been registered under the Securities Act or any other applicable federal or state securities laws, and that the Company has no intention, and undertakes no obligation, to register, or to obtain a registration exemption for, the Interests or to take action so as to permit sales pursuant to the Securities Act

4.5.5 that the Member is an "accredited investor" within the meaning of Rule 501 promulgated under the Securities Act; and

4.5.6 that the Member is, and shall remain at all times while the owns an Interest, a Citizen of the United States.

## ARTICLE 5.
## CAPITAL CONTRIBUTIONS AND INTERESTS

Section 5.1 ***Capital Contributions***. Each Member shall contribute to the capital of the Company the amount set forth as such Member's Capital Contribution on Schedule A. Such

Capital Contribution shall be in the form of cash, property, services rendered, or other obligation to transfer property to the Company, as specified on Schedule A.

5.1.1 Each Member shall be required to make such additional Capital Contributions as shall be determined by the Manager in his sole discretion from time to time to be necessary to meet the expenses of the Company ("***Capital Call***"). Upon making any such determination, each Member shall deliver to the Company its pro rata share thereof (in proportion to the Percentage Interest of the Members on the date such determination is made) no later than 30 days following the date of such determination. If any Member fails to contribute timely all or any portion of a Capital Call that it is obligated to make pursuant to this Section 5.1.1 (such Member being herein referred to as the "***Delinquent Member***"), any of the other Members (each being referred to as a "***Non-Delinquent Member***") may, at its option, at any time following the date of default and prior to the date such default is cured, make an additional equity contribution in an amount equal to the Capital Contribution required of the Delinquent Member, in which event the corresponding capital contributions of all Non-Delinquent Members shall also be treated as additional equity contributions pursuant to this Section 5.1.1. Schedule A shall be revised in accordance with this Section 5.1.1 to reflect any additional Capital Contributions made and resulting membership Interests.

Section 5.2 ***Percentage Interests***. Upon making the Capital Contribution specified on Schedule A, each Member shall own the Percentage Interest set forth opposite such Member's name on Schedule A. The Percentage Interest of each Member may not be reduced without such Member's consent except pursuant to Section 5.1 above.

Section 5.3 ***Issuance of Interests.***

5.3.1 ***Certificates.*** The Interests of the Members shall be reflected on Schedule A attached hereto and shall not be evidenced by certificates issued by the Company.

5.3.2 ***Subscription.*** Each member understands that the Interests are being offered only in a transaction not involving any public offering within the meaning of the Securities Act. The Interests have not been and will not be registered under the Securities Act or under the securities laws of any state, and, in the future, such Interests may be offered, resold, pledged or otherwise transferred only in accordance with the restrictions contained in these Regulations. Each Member acknowledges that no representation is made by the Company as to the availability of any exemption under the Securities Act or any state securities laws for resale of the Interests.

Section 5.4 ***Capital Accounts***. A capital account shall be established and maintained for each Member. Each Member's capital account shall consist of (i) the amount of cash the Member has contributed to the Company, plus (ii) the agreed fair market value of any property the Member has contributed to the Company, less any liabilities assumed by the company or to which the property is subject, plus (iii) the amount of profits or income (including tax exempt income) allocated to the Member, less (iv) the amount of losses and deductions allocated to the Member, less (v) the amount of all cash distributed to the Member, less (vi) the fair market value of any property distributed to the Member, net of any liability assumed by the Member or to

which the property is subject, less (vii) the Member's share of any other expenditures that are not deductible by the Company for federal income tax purposes or that are not allowable as additions to the basis of Company property, and (viii) subject to other adjustments that may be required under the Code. A Member that has more than one Interest shall have a single capital account that reflects all its Interests, regardless of the class of Interests owned by that Member and regardless of the time or manner in which those Interests were acquired. On the transfer of all or part of an Interest, the capital account of the transferor that is attributable to the transferred Interest or part thereof shall carry over to the transferee Member in accordance with the provisions of the Code.

Section 5.5 ***Return of Capital Contributions***. Except as otherwise provided herein or in the Act, no Member shall have the right to withdraw, or receive any return of, such Member's Capital Contribution.

Section 5.6 ***Interest***. No interest shall be paid by the Company on Capital Contributions or on balances in Members' Capital Accounts.

Section 5.7 ***Loans From Members***. Loans by a Member to the Company shall not be considered Capital Contributions. If any Member shall advance funds to the Company in excess of the amounts required hereunder to be contributed by such Member to the capital of the Company, the making of such advances shall not result in any increase in the amount of the Capital Account of such Member. The amounts of any such advances shall be a debt of the Company to such Member and shall be payable or collectible only out of the Company assets in accordance with the terms and conditions upon which such advances are made. Any such loans shall bear interest at LIBOR plus three percent. The repayment of loans from a Member to the Company upon liquidation shall be subject to the order of priority set forth in Section 10.4 hereof.

## ARTICLE 6.
## ALLOCATIONS AND DISTRIBUTIONS

Section 6.1 ***Allocation of Income and Loss.***

6.1.1 ***General Allocation Rule.*** Except as may be required by Section 704(c) of the Code and Treas. Reg. § 1.704-1(b)(2)(iv)(f)(4), the income, gains, losses, deductions and credits (or items thereof) of the Company shall be shared by the Members in accordance with their respective Percentage Interests. It is the intention of the Members that allocations of income, gains, losses, deductions and credits (or items thereof) pursuant to this Section 6.1 be in accordance with the Members' Interests, as adjusted, for tax purposes.

6.1.2 ***Allocations Between Transferors and Transferees.*** All items of income, gain, loss, deduction, and credit allocable to any Interest that may have been transferred shall be allocated between the transferor and the transferee as of the date of such transfer; provided, however, that this allocation must be made in accordance with a method permissible under Section 706 of the Code and the regulations thereunder. If necessary, the Company shall make

an interim closing of the Company's books as of the date of such transfer in order to determine such allocation.

Section 6.2 ***Determination of Income and Loss***. At the end of each fiscal year of the Company, income, gain, loss, deduction and credit (or items thereof) shall be determined for the accounting period then ending and shall be allocated to the Members in accordance with Section 6.1 herein.

Section 6.3 ***Cash Distributions***. From time to time at their sole discretion, the Manager may balance the Company's accounts and distribute to the Members, in accordance with their respective Interests, the amount (if any) by which cash on hand exceeds the amount necessary to meet the current costs, expenses and liabilities of the Company (including, without limitation, a reasonably adequate reserve for working capital and contingencies). The Company shall not make any distribution to the Members if immediately after giving effect to the distribution, all liabilities of the Company, other than liabilities to Members with respect to their Interests and liabilities for which the recourse of creditors is limited to specified property of the Company, exceed the fair value of Company Property, except that the fair value of Company Property that is subject to a liability for which recourse of creditors is limited shall be included in the Company assets only to the extent that the fair value of that Company Property exceeds that liability. In the event that a Member unexpectedly receives any adjustment, allocation, or distribution described in Treas. Reg. § 1.704-1(b)(2)(ii)(d)(4)-(6) that causes or increases a deficit balance in such Member's Capital Account, items of Company income and gain shall be allocated to that Member in an amount and manner sufficient to eliminate the deficit balance as quickly as possible.

Section 6.4 ***Distributions of Other Property***. From time to time, the Manager also may cause property of the Company other than cash to be distributed to the Members, which distribution must be made in accordance with their respective Interests and may be made subject to existing liabilities and obligations. Immediately prior to such distribution, the capital accounts of the Members shall be adjusted as provided in Treas. Reg. § 1.704-1 (b)(2)(iv)(f).

## ARTICLE 7.
## FISCAL MATTERS; BOOKS AND RECORDS

Section 7.1 ***Books and Records***. The Manager shall keep or have kept full and accurate books of account with respect to the operations of the Company and shall maintain such books of account at a place designated by the Manager or at the principal place of business of the Company.

Section 7.2 ***Fiscal Year***. The fiscal year of the Company shall be the calendar year and the Manager shall keep the books of account of the Company on such basis.

Section 7.3 ***Bank Accounts***. The Manager shall cause one or more bank accounts to be maintained in the name of the Company in such bank or banks as may be determined by the Manager, which accounts shall be used for the payment of expenditures incurred by the Company and in which shall be deposited any and all receipts of the Company. All such receipts

shall be and remain the property of the Company, shall be received, held and disbursed by the Manager for the purposes specified in these Regulations and shall not be commingled with the funds of any other Person.

Section 7.4 ***Information and Confidentiality***. In addition to the other rights specifically set forth in these Regulations, each Member is entitled to all information to which that Member is entitled to have access pursuant to Article 2.22 of the Act under the circumstances and subject to the conditions therein stated. The Members agree that they will keep all information about the Company received by them in strictest confidence and will limit the dissemination of such information to those persons who reasonably require access to such information.

Section 7.5 ***Tax Returns and Information***. The Members intend for the Company to be treated as a partnership for federal tax purposes. The Company shall prepare or cause to be prepared all federal, state and local income and other tax returns that the Company is required to file. Within the shorter of (i) such period as may be required by applicable law or regulation, or (ii) seventy-five (75) days after the end of each calendar year, the Company shall send or deliver to each Person who was a Member at any time during such year such tax information as shall be reasonably necessary for the preparation by such Person of his or her federal income tax return and state income and other tax returns.

Section 7.6 ***Tax Elections***. The Manager shall make such tax elections on behalf of the Company as it shall deem appropriate; provided that neither the Company, the Manager nor any Member shall file an election to classify the Company as an association taxable as a corporation for federal income tax purposes.

## ARTICLE 8.
## MANAGEMENT OF THE COMPANY

Section 8.1 ***Management by Managers***. All Members hereby agree that the powers of the Company shall be exercised by or under the authority of, and the business affairs of the Company shall be managed under the direction of one or more managers (the "***Manager***" or "***Managers***"). Except as expressly provided herein or as otherwise required by law, the Managers shall exercise complete and exclusive control of the management of the Company's business and affairs, and the Members in their capacity as members have no right to participate in the management of the conduct of the Company's business and affairs nor any power or authority to act for or on behalf of the Company in any respect whatsoever. Except as otherwise specifically provided in this Agreement, the Managers have the right, power, and authority on behalf of the Company and its name to execute documents or other instruments and exercise all of the rights, power, and authority of the Company under the Act, subject only to any express limitations set forth in this Agreement. A Manager holds office until his successor has been elected, or until his earlier death, resignation, or removal. A Manager will not be liable or accountable, in damages or otherwise, to the Company or to any Member for any thing the Manager may do or refrain from doing, except in the case of his willful breach of a material provision of this Agreement or gross negligence in connection with the business and affairs of the Company. The initial Manager is James R. Thompson. Notwithstanding the provisions of

this Article 8, the Manager may act through Officers to whom authority and duties have been delegated pursuant to Section 8.3. In the event of the death, incapacity or resignation of the Manager, the Members may elect a new Manager.

Section 8.2 ***Powers of the Members***. The Members, other than a Member serving as a Manager, shall not take part in the management of the Company's business nor transact any business for the Company in their capacity as Members, nor shall they have power to sign for or to bind the Company.

Section 8.3 ***Officers***. The Managers may designate one or more Persons to be an officer of the Company ("***Officer***"). No Officer need be a resident of the State of Texas or a Member. Officers are not "managers," as that term is used in the Act. The Managers may assign titles to particular Officers. If the title is one commonly used for officers of a business corporation formed under the Texas Business Corporation Act, the assignment of such title constitutes the delegation to such Officer of the authority and duties that are normally associated with that office, subject to any specific delegation of authority and duties made to such Officer by the Managers. Each Officer holds office until his successor has been duly designated and qualified or until his death or until he resigns or has been removed in the manner hereinafter provided. Any number of offices may be held by the same Person. The salaries or other compensation, if any, of the Offices of the Company is to be fixed by the Managers. Any Officer may resign as such at any time. Resignations are to be made in writing and take effect at the time specified therein, or if no time be specified, at the time of its receipt by the Manager. The acceptance of a resignation is not necessary to make it effective, unless expressly so provided in the resignation. Any Officer may be removed as such, either with or without cause, by the Manager whenever in his judgment the best interests of the Company will be served thereby. Any vacancy occurring in any office of the Company shall be filled by the Manager.

Section 8.4 ***Alteration of Management Responsibilities***. Management responsibilities as set forth in this Article 8 may not be altered except by or in accord with the specific procedures described in Section 8.1 herein.

Section 8.5 ***Conflicts of Interest***. Subject to the other express provisions of these Regulations, each Manager, Officer, or Affiliate thereof may engage in and possess interests in other business ventures of any and every type and description, independently or with others, including ones in competition with the Company, with no obligation to offer to the Company or any other Member or Officer the right to participate therein.

## ARTICLE 9.
## WITHDRAWAL OR EXPULSION

Section 9.1 ***Expulsion of a Member***. A Member may be expelled from the Company only if (i) an Expulsion Event has occurred with respect to such Member and (ii) all other Members agree to cause the expulsion of such Member. The expulsion of a Member shall be effective as of such date as determined by the Manager. For purposes of this Section 9.1, "***Expulsion Event***" means with respect to any Member, the failure of a Member to comply in any material respect with any of its agreements, covenants, or obligations under these

Regulations, or the failure of any representation or warranty made by a Member in these Regulations to have been true and correct in all material respects at the time it was made and, in each case, the expiration of 30 days from receipt of notice of such failure from any other Member without curing the failure(s) contained in the notice (or, if a failure is not capable of being cured within such 30-day period, if such Member also fails to promptly commence substantial curative efforts with continuity and diligence).

**Section 9.2** ***Liquidation of Company Interest.*** On the permitted withdrawal or expulsion of a Member, the withdrawing Member, or that Member's successor or estate, shall first offer to sell, and the Company, one or more of the Members, or one or more purchasers designated by the other Members shall have the option to purchase the Interest of the withdrawing Member in the Company by paying, subject to Section 12.11 hereof, to the Person legally entitled to it in full satisfaction and discharge of the Interest, (i) an amount equal to the withdrawing Member's capital account or (ii) if a Member is being removed pursuant to Section 9.1, an amount equal to 90% of the withdrawing Member's capital account.

## ARTICLE 10.
## DISSOLUTION AND WINDING UP

Section 10.1 ***Events Causing Dissolution.***

10.1.1 The Company shall be dissolved upon the unanimous written consent of the Members.

10.1.2 The death, withdrawal, bankruptcy, or dissolution of a Member or the purported Transfer of all of a Member's Interest or the occurrence of any event that terminates the continued membership of a Member with the Company shall not cause a dissolution of the Company.

Section 10.2 ***Winding Up***. If the Company is dissolved pursuant to Section 10.1, the Company's affairs shall be wound up as soon as reasonably practicable by the Manager.

10.2.1 ***Powers of Manager during Liquidation.*** In winding up the affairs of the Company, the Manager shall have full right and unlimited discretion, in addition to his regular powers, to take the following actions for and on behalf of the Company.

(a) to prosecute and defend civil, criminal or administrative suits;

(b) to collect Company assets, including obligations owed to the Company;

(c) to settle and close the Company's business;

(d) to dispose of and convey all Company Property for cash, and in connection therewith to determine the time, manner and terms of any sale or sales of Company Property, having due regard for the activity and condition of the relevant market and general financial and economic conditions;

(e) to pay all reasonable selling costs and other expenses incurred in connection with the winding up out of the proceeds of the disposition of Company Property;

(f) to discharge the Company's known liabilities and, if necessary, to set up, for a period not to exceed six (6) years after the date of dissolution, such cash reserves as the Manager may deem reasonably necessary for any contingent or unforeseen liabilities or obligations of the Company;

(g) to distribute any remaining proceeds from the sale of Company Property to the Members;

(h) to prepare, execute, acknowledge and file articles of dissolution under the Act and any other certificates, tax returns or instruments necessary or advisable under any applicable law to effect the winding up and termination of the Company; and

(i) to exercise, without further authorization or consent of any of the parties hereto or their legal representatives or successors in interest, all of the powers conferred upon the Members under the terms of these Regulations to the extent necessary or desirable in the good faith judgment of the Manager to perform its duties and functions.

Section 10.3 ***Distribution of Company Property and Proceeds of Sale Thereof.***

10.3.1 ***Order of Distribution.*** Upon completion of all desired sales of Company Property, and after payment of all selling costs and expenses, the Manager shall distribute the proceeds of such sales, and any Company Property that is to be distributed in kind, to the following groups in the following order of priority:

(a) to the extent permitted by law, to satisfy Company liabilities to its creditors, including Members who are creditors (other than for past due Company distributions), whether by payment or establishment of reserves;

(b) to satisfy Company obligations to Members to pay past due Company distributions;

(c) to the Members, in accordance with the positive balances in their respective Capital Accounts; and

(d) to the Members in accordance with their respective Percentage Interests.

10.3.2 ***Insufficient Assets.*** The claims of each priority group specified above shall be satisfied in full before satisfying any claims of a lower priority group. If the assets available for disposition are insufficient to dispose of all of the claims of a priority group, the

available assets shall be distributed in proportion to the amounts owed to each creditor or the respective Capital Account balances or Interests of each Member in such group.

Section 10.4 ***Final Accounting***. Within a reasonable time following the completion of the liquidation, the Liquidator shall supply to each of the Members a statement which shall set forth the assets and the liabilities of the Company as of the date of complete liquidation and each Member's pro rata portion of distributions pursuant to Section 10.4.

Section 10.5 ***Deficit Capital Accounts***. Notwithstanding anything to the contrary contained in these Regulations, and notwithstanding any custom or rule of law to the contrary, no Member shall be obligated to restore a deficit balance in its capital account at any time.

## ARTICLE 11.
## INDEMNIFICATION AND INSURANCE

Section 11.1 ***Indemnification***. The Company shall indemnify any Person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative, arbitrative or investigative, any appeal in such an action, suit or proceeding and any inquiry or investigation that could lead to such an action, suit or proceeding (whether or not by or in the right of the Company), by reason of the fact that he or she is or was a manager, member, officer, employee or agent of the Company or is or was serving at the request of the Company as a manager, director, officer, partner, venturer, proprietor, trustee, employee, agent or similar functionary of another limited liability company, corporation, partnership, joint venture, sole proprietorship, trust, nonprofit entity, employee benefit plan or other enterprise, against all judgments, penalties (including excise and similar taxes), fines, settlements and reasonable expenses (including attorneys' fees and court costs) actually and reasonably incurred by him or her in connection with such action, suit or proceeding to the fullest extent permitted by any applicable law, and such indemnity shall inure to the benefit of the heirs, executors and administrators of any such Person so indemnified pursuant to this Section 11.1. The right to indemnification under this Section 11.1 shall be a contract right and shall not be deemed exclusive of any other right to which those seeking indemnification may be entitled under these Regulations or any law, agreement, vote of members or disinterested managers or otherwise, both as to action in his or her official capacity and as to action in another capacity while holding such office.

Section 11.2 ***Insurance***. The Company may purchase and maintain liability, indemnification or other similar insurance on behalf of itself, or for any Person who is or was a Manager member, officer, employee or agent of the Company or who is or was serving at the request of the Company as a director, manager, officer, trustee, employee, general partner, agent or similar functionary of another foreign or domestic corporation, limited liability company, partnership, joint venture, sole proprietorship, trust, employee benefit plan or other enterprise, against any liability asserted against or incurred by the Company or Person serving in such a capacity or arising out of its status as such a Person, whether or not the Company would otherwise have the power to indemnify such Person against that liability.

Section 11.3 ***Advancement of Expenses***. Expenses including attorneys' fees incurred by any Manager or Member in defending a civil or criminal action, suit or proceeding may be paid by the Company in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such Manager or Member to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the Company as authorized by law or in this section. Such expenses incurred by former members, managers or other employees and agents may be paid upon such terms and conditions, if any, as the Company deems appropriate.

## ARTICLE 12.
## MISCELLANEOUS PROVISIONS

Section 12.1 ***No State-Law Partnership***. No provisions of these Regulations shall be deemed or construed to constitute the Company a partnership (including, without limitation, a limited partnership) or joint venture, or any Member a partner or joint venturer of any other Member, for any purposes other than federal and state tax purposes.

Section 12.2 ***Assumed Names***. The Manager may cause the Company to do business under one or more assumed names.

Section 12.3 ***Counterparts***. These Regulations may be executed in any number of counterparts, and each counterpart shall for all purposes be deemed to be an original.

Section 12.4 ***Entire Agreement***. These Regulations contain the entire agreement among the Members relating to the subject matter hereof and all prior agreements relative hereto which are not contained herein are terminated.

Section 12.5 ***Law Governing***. These Regulations shall be governed by and construed in accordance with the internal laws of the State of Texas. In particular, Regulations are intended to comply with the requirements of the Act and the Articles of Organization. In the event of a direct conflict between the provisions of these Regulations and the mandatory provisions of the Act or any provision of the Articles of Organization, the Act and the Articles of Organization, in that order of priority, shall control.

Section 12.6 ***Successors and Assigns***. These Regulations shall be binding upon and shall inure to the benefit of the Members and their respective heirs, legal representatives, successors and assigns.

Section 12.7 ***Severability***. These Regulations are intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations. If any provision of these Regulations or the application thereof to any Person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, but the extent of such invalidity or unenforceability does not destroy the basis of the bargain among the Members as expressed herein, the remainder of these Regulations and the application of such provision to other Persons or circumstances shall not be affected thereby, but rather shall be enforced to the greatest extent permitted by law.

Section 12.8 ***Amendment***. Except as expressly provided herein, these Regulations may be amended with the consent of the Manager.

Section 12.9 ***Headings***. The Article and Section headings appearing in these Regulations are for convenience of reference only and are not intended, to any extent or for any purpose, to limit or define the text of any Article or Section.

Section 12.10 ***Construction***. Whenever required by the context, as used in these Regulations, the singular number shall include the plural, and vice versa, and the gender of all words used shall include the masculine, feminine and the neuter. Unless expressly stated herein, all references to Articles and Sections refer to articles and sections of these Regulations, and all references to Schedules and Exhibits are to schedules and exhibits attached hereto, each of which is made a part hereof for all purposes.

Section 12.11 ***Offset***. Whenever the Company is to pay any sum to any Member, any amounts that Member owes the Company may be deducted from that sum before payment.

Section 12.12 ***Effect of Waiver or Consent***. A waiver or consent, express or implied, to or of any breach or default by any Person in the performance by that Person of its obligations with respect to the Company is not a consent or waiver to or of any other breach or default in the performance by that Person of the same or any other obligations of that Person with respect to the Company. Failure on the part of a Person to complain of any act of any Person or to declare any Person in default with respect to the Company, irrespective of how long that failure continues, does not constitute a waiver by that Person of its rights with respect to that default until the applicable statute-of-limitations period has run.

Section 12.13 ***Further Assurances***. In connection with these Regulations and the transactions contemplated hereby, each Member shall execute and deliver any additional documents and instruments and perform any additional acts that may be necessary or appropriate to effectuate and perform the provisions of these Regulations and those transactions.

Section 12.14 ***Waiver of Certain Rights***. Each Member irrevocably waives any right he or she may have to maintain any action for dissolution of the Company or for partition of the property of the Company.

**[SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF**, the Members of the Company have adopted these Regulations to be effective as of the 15th day of April, 2002, as evidenced by their signature below.

MEMBERS:

JAMES R. THOMPSON

JRT HOLDINGS, INC.

By:
Name: James R. Thompson
Title: President

## SCHEDULE A

| MEMBER NAME & ADDRESS | CAPITAL CONTRIBUTIONS | INTEREST |
|---|---|---|
| James R. Thompson<br>5758 Belmont Avenue<br>Dallas, Texas 75206 | $928,621.00 | 99% |
| JRT Holdings, Inc.<br>5758 Belmont Avenue<br>Dallas, Texas 75206 | $9,380.00 | 1% |

**Exhibit A**

**Form of Agreement to be Bound**

[DATE]

To the Members of
Mountain Air Charter, L.L.C.

Dear Sirs:

Reference is made to the Regulations of Mountain Air Charter, L.L.C. dated as of April 15, 2002 (the "Regulations"), by and among the signatories thereto (jointly the "Members"). Capitalized terms not defined herein have the meanings assigned to them in the Regulations.

In consideration of the covenants and agreements contained in the Regulations and the transfer of the Interest in the Company (the "Transferred Interest") to the undersigned by [Transferor], the undersigned hereby confirms and agrees to be bound by all of the provisions of the Regulations.

By: ______________________