**AFFIDAVIT**

I, Tom Travis, having been duly sworn, and understanding that this Affidavit will be submitted to the Internal Revenue Service in connection with the audit of James Thompson, hereby deposes and says:

1. I was employed by Mountain Air Charter ("MAC") as the FAA Part 135 pilot for charter operations from March 2002 until November 2003.

2. Prior to my employment with MAC, I was a captain with American Airlines and had piloted commercial jets for approximately 36 years.

3. My responsibilities as an employee of Mountain Air Charter were limited to the following activities: (1) flying charter passengers for MAC in accordance with the FAA approved operating specifications, (2) flying the aircraft without passengers to a destination where charter passengers were to picked up, and (3) coordinated routine maintenance of the aircraft to the extent not performed by Mr. James Thompson ("Mr. Thompson").

4. I did not perform any management services for MAC. Mr. Thompson performed all management services for MAC.

5. I was MAC's first FAA charter pilot. During the first year of operations, Mr. Thompson and I spent considerable time in the aircraft together. These hours in the aircraft totaled approximately 100, and we spent much more time than that before and after flights. The vast majority of this time in the aircraft with Mr. Thompson was spent in training prior to flying any charter passengers. I had been flying large commercial jets for American Airlines for 36 years. I had never flown a turbo prop before. In particular, the Pilatus aircraft owned by MAC was a specialty aircraft with characteristics that make it particularly capable of take offs and landings at high elevation, mountain airports and small landing strips. Further, I had normally flown with a crew rather than as a single pilot. Consequently, for the safety of the passengers of MAC, I insisted that a substantial amount of time and training experience occur prior to commencing charter flight operations. Mr. Thompson caused MAC to engage an instructor pilot in Colorado to train us on flight patterns and approaches to high altitude airports in the state of Colorado. Mr. Thompson was on all of these training flights with me. In addition to the foregoing, I insisted on a considerable amount of ongoing training to maintain my proficiency.

6. Mr. Thompson supervised me. I never flew the aircraft without Mr. Thompson having knowledge of the flight.

7. During my time as an employee, no other persons were employed by Mr. Thompson in the performance of services in connection with Mountain Air Charter.

8. Mr. Thompson was involved with MAC on a regular and continuous basis from the moment that he interviewed me for the position to the time that I left MAC's

GOVERNMENT EXHIBIT 15

employment. I would describe him as "very hands on". He spent countless hours in the business. I personally witnessed or have direct knowledge of Mr. Thompson performing at least 50 hours per month of service with respect to Mountain Air Charter. This activity consisted of demo flights, maintenance flights, training flights, price negotiation on purchases (fuel, hangar, equipment, etc.) and charter fares, review and approval of passenger lists, billing and invoicing, finance and accounting, insurance matters, promotional and marketing activities, writing and review of various operating documents and manuals, tax payments, inspecting the aircraft before and after trips, coordinating scheduled and unscheduled maintenance, reconciliation of trip sheets, and review of aircraft logbooks. Mr. Thompson chose the color scheme, interior finish, interior layout and seating arrangement, and the avionics for the aircraft. He was very involved in obtaining the FAA Part 135 Certificate which allowed MAC to perform charter services. On a monthly basis, he would remove and install data cards and flash cards and then he would analyze the performance of the plane during the previous month. Mr. Thompson would also review the periodic new versions of flight approaches to various airports and then would make sure that they were properly inserted into the aircraft's flight manuals. Mr. Thompson both purchased and installed life rafts and life vests for the plane, and office furniture and equipment for MAC. He was present for the photo shoot of the aircraft in preparation of marketing materials for MAC. When passengers on a charter had excess baggage, Mr. Thompson often would be the person who would remove and then reinstall the rear two seats to provide for more luggage space. Frequently he met customers at the plane at the beginning or the end of their flights. Mr. Thompson constantly discussed the status and performance of the plane with mechanics. He cleaned or arranged for the cleaning of the interior and the exterior of the aircrafts. Mr. Thompson even performed cleaning duties, such as vacuuming. These hours included personal interaction with me in connection with my duties as a pilot from the time that he hired me until I left MAC as an employee. My knowledge of these hours is both direct and indirect interaction with Mr. Thompson on these matters.

9. I have reviewed the attached Hours Analysis of Mr. Thompson and believe that it accurately describes the activities that Mr. Thompson undertook while I was employed at MAC.

10. Mr. Thompson spent all the time necessary attending to the needs of MAC and directing its operations. Mr. Thompson's other (non-MAC) activities never appeared to prohibit or prevent him from spending the necessary time to ensure that MAC needs were met and the business developed.

Name: Tom Travis

STATE OF TEXAS
COUNTY OF Dallas

BEFORE ME, the undersigned authority, on this day personally appeared Tom Travis, known to me to be the person whose name is subscribed to the foregoing Affidavit, who, after being duly sworn by me, on oath stated that all matters stated therein are true and correct.

SUBSCRIBED AND SWORN TO BEFORE ME, this 8 day of July, 2005, to certify which witness my hand and seal of office.

Maryanne Willows
Signature of Notary Public

MARYANNE Willows
Print Name

My Commission Expires:

MARYANNE WILLOWS
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 01-30-2007

Dallas_1\4186433\4
44222-1 6/27/2005