IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-211 T
(Judge Victor J. Wolski)

JAMES R. THOMPSON,

Plaintiff

v.

THE UNITED STATES,

Defendant

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Plaintiff James R. Thompson, responds to Defendant's proposed findings of uncontroverted fact with respect to relevant matters not covered by plaintiffs' proposed findings, pursuant to RCFC 56(h)(2), as follows:

**GENERAL RESPONSE**:

Plaintiff disagrees with the government's statement that its facts relate "to relevant matters not covered by plaintiff's proposed findings." Mr. Thompson's motion and the government's cross motion present a pure legal issue, the only facts material to which are set forth in Plaintiff's Proposed Findings of Uncontroverted Fact. Since the government has substantially agreed with those facts, most of the government's proposed findings are relevant, if at all, solely to the question of whether Mr. Thompson materially participated in the activities of Mountain Air Charter LLC.

**SPECIFIC RESPONSES:**

1. Plaintiff, James R. Thompson, is the Chief Executive Officer of Orix USA Corporation, a financial services company. *See* Exhibit 1, James R. Thompson deposition transcript at 7:2-3. *See also* Exhibit 2, www.orix.com/executive_thompson_james.htm.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

2. Orix USA Corporation is the parent of approximately 95 subsidiary companies. *See* Exhibit 1, James. R. Thompson deposition transcript at 7:8-12.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

3. Plaintiff holds various board positions with these subsidiaries in both an executive and non-executive capacity. *See* Exhibit 1, James R. Thompson deposition transcript at 7:5-6. *See also* Exhibit 2, www.orix.com/executive_thompson_james.htm.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

4. Plaintiff has been employed by Orix USA since 1990. *See* Exhibit 1, James R. Thompson deposition transcript at 7:16-17.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

5. Plaintiff resides in Dallas, TX. *See* Exhibit 1, James R. Thompson deposition transcript at 6:5-6.

**Plaintiff's Response**:

Agree with the finding as stated.

6. On his Form 1040 U.S. Individual Income Tax Return for 2002, plaintiff reported wages of $8,175,485 from Orix. *See* Exhibit 3, James R. Thompson 2002 Form 1040, Individual Income Tax Return at MAC 0104, 0125.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

7. On his Form 1040 U.S. Individual Income Tax Return for 2003, plaintiff reported wages of $7,246,711 from Orix. *See* Exhibit 4, James R. Thompson 2003 Form 1040, Individual Income Tax Return at MAC 0137, 0157.

**Plaintiff's Response:**

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

8. Mr. Thompson is also an avid and experienced pilot. He learned to fly in 1982 and by 2004, Mr. Thompson had logged more than 4,500 hours of flight time. *See* Exhibit 1, James R. Thompson deposition transcript at 19:10-15. *See also* Exhibit 5, Mountain Air Charter, LLC Business Overview and Operating Results through Calendar Year 2004 at MAC 0008.

**Plaintiff's Response:**

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

9. He owned and regularly flew a Mooney aircraft until approximately the time a larger, faster, and more capable aircraft was purchased, as described below, and whose ownership and use is central to the tax dispute in this case. *See* Exhibit 1, James R. Thompson deposition transcript at 34:20-25, 35:1-14, 40:16-25, 41:1-3.

**Plaintiff's Response:**

Dispute the finding as stated and assert the finding is irrelevant to the motions presented.

10. In 2002, Mr. Thompson formed Mountain Air Charter LLC (Mountain Air) to acquire and use a new Pilatus PC-12 aircraft. *See* Exhibit 1, James R. Thompson deposition transcript at 78:4-25, 79:1-10. *See also* Exhibit 6, Articles of Organization of Mountain Air Charter, L.L.C. at Article 3, MAC 1838; Exhibit 8, Application for Air Carrier Operating Certificate, Letter of Intent and Preapplication Statement of Intent at MAC 1432, 1435.

**Plaintiff's Response:**

Dispute the finding as stated and assert the finding is irrelevant to the motions presented.

11. The Pilatus PC-12 is a several million dollar, large, luxurious, high performance, single-engine, turboprop aircraft. *See* Exhibit 7, Pilatus PC-12 Fact Sheet, available at www.pilatus-aircraft.com. *See also* Exhibit 12, Plaintiffs Objections and Responses to Defendant's First Set of Interrogatories at Interrogatories # 29.

**Plaintiff's Response:**

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

12. Configured for executive transportation, it can seat six to eight passengers and cruise at approximately 310 miles per hour. *See* Exhibit 7, Pilatus PC-12 Fact Sheet, *available at* www.pilatus-aircraft.com.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

13. It is certified to be flown by a single pilot. *See* Exhibit 7, Pilatus PC-12 Fact Sheet, available at www.pilatus-aircraft.com.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the fact is irrelevant to the motions presented.

14. According to its Application for Air Carrier Operating Certificate, Mountain Air was to engage in the aircraft charter business. *See* Exhibit 8, Application for Air Carrier Operating Certificate, Letter of Intent and Preapplication Statement of Intent at MAC 1432, 1435.

**Plaintiff's Response**:

Agree with the finding as stated.

15. Mr. Thompson also intended to pilot and use the Pilatus PC-12 aircraft for personal purposes. *See* Exhibit 1, James R. Thompson deposition transcript at 27:21-22.

**Plaintiff's Response**:

Dispute the finding as stated and assert the fact is irrelevant to the motions presented.

16. Mountain Air was organized on March 19, 2002, as a limited liability company under Texas law. *See* Exhibit 6, Articles of Organization of Mountain Air Charter, L.L.C. at MAC 1838. *See also* Exhibit 12, Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories at Interrogatory # 10.

**Plaintiff's Response**:

Agree with the finding as stated.

17. Mr. Thompson acquired a 99% interest in Mountain Air. JRT Holdings, Inc. ("JRT Holdings") held the remaining 1% interest in Mountain Air. Mr. Thompson owned 100% of the stock of JRT Holdings. *See* Exhibit 9, Regulations of Mountain Air Charter, L.L.C., Schedule A at MAC 1863.

**Plaintiff's Response**:

Agree with the finding as stated.

18. JRT Holdings was incorporated in Texas on April 15, 2002 and elected to be treated as a Subchapter S corporation for federal income tax purposes. *See* Exhibit 10, Articles

of Incorporation of JRT Holdings, Inc. at MAC 2565. *See also* Exhibit 12, Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories at Interrogatory # 1.

**Plaintiff's Response**:

Agree with the finding as stated.

19. Mr. Thompson made an initial capital contribution to Mountain Air of $928,621, and caused JRT Holdings to contribute an additional $9,380. *See* Exhibit 9, Regulations of Mountain Air Charter, L.L.C., Schedule A at MAC 1863.

**Plaintiff's Response**:

Agree with the finding as stated.

20. Mr. Thompson also loaned Mountain Air $2.6 million on the day it acquired the Pilatus aircraft. *See* Exhibit 11, Promissory Note from Mountain Air Charter, L.L.C. to James R. Thompson. *See also* Exhibit 12, Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories at Interrogatory # 30.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

21. The loan was evidenced by a promissory note dated May 15, 2002. The terms of the note provided for interest-only payments (at 6%) in five annual installments beginning May 15, 2003. The principal was to be repaid on the fifth annual installment date. Prepayment of the principal was allowed without any penalty or premium. *See* Exhibit 11, Promissory Note from Mountain Air Charter, L.L.C. to James R. Thompson.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

22. Article 5.7 of the Regulations of Mountain Air specifically provides that "[l]oans by a Member to the Company shall not be considered Capital Contributions . . [and] shall not result in any increase in the amount of the Capital Account of such Member." Neither the Articles of Organization nor the Regulations of Mountain Air imposed additional liabilities on Mr. Thompson. *See* Exhibit 9, Regulations of Mountain Air Charter, L.L.C., art. 5.7. at MAC 1853. *See also* Exhibit 6, Articles of Organization of Mountain Air Charter, L.L.C.

**Plaintiff's Response**:

Agree with the finding as stated.

23. Mountain Air used the loan proceeds and a portion of its capital contributions to purchase the new Pilatus PC-12 aircraft on May 15, 2002. *See* Exhibit 12, Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories at interrogatories # 28-30.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

24. The purchase price of the aircraft was $3,338,001. *See* Exhibit 12, Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories at interrogatories # 29.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

25. Mr. Thompson secured insurance for the aircraft, effective on its purchase date. *See* Exhibit 13, USAIG Insurance Policy at MAC 0423.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

26. The insurance coverage provided that Mr. Thompson would not be permitted to be the sole pilot of the aircraft until he accumulated 200 hours of flight time in the PC-12, accompanied by Mr. Thomas E. Travis. *See* Exhibit 1, James R. Thompson deposition transcript at 25:4-25 - 26:1-9. *See also* Exhibit 13, USAIG Insurance Policy at MAC 0445.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

27. Mr. Travis is a retired American Airlines pilot with more than 22,000 hours of recorded flight time in a wide variety of aircraft. *See* Exhibit 14, Resume of Thomas E. Travis.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

28. Mr. Travis is also an accomplished flight instructor, having recorded more than 7,000 hours in that capacity. *See* Exhibit 14, Resume of Thomas E. Travis.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

29. Mr. Travis was hired as an employee of Mountain Air in March 2002. *See* Exhibit 15, Affidavit of Thomas E. Travis. *See also* Exhibit 1, James R. Thompson deposition transcript at 28:1-8; Exhibit 16, Thomas E. Travis deposition transcript at 5:15-18; Exhibit 12, Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories at Interrogatories # 37.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

30. Upon acquisition of the aircraft, Mr. Thompson and Mr. Travis flew together regularly. They flew to many destinations, including an early trip along the coast of California (where Mr. Thompson lived prior to moving to Texas) and to a location in New Mexico, where Mr. Thompson rented a vacation home. *See* Exhibit 1, James R. Thompson deposition transcript at 67:16-25 - 68:1-23. *See also* Exhibit 16, Thomas E. Travis deposition transcript at 60:17-24 - 63:1-23.

**Plaintiff's Response**:

Dispute the finding as stated and assert the finding is irrelevant to the motions presented.

31. In his logbook, Mr. Travis recorded this flight time as an instructor; Mr. Thompson logged it as "dual", which Mr. Travis explained meant that Mr. Thompson was receiving instruction. *See* Exhibit 16, Thomas E. Travis deposition transcript at 53:5-25 - 54:1-13. *See also* Exhibit 17, James R. Thompson Flight Log 2002 - 2003; Exhibit 18, Thomas E. Travis Flight Log 2002 - 2003.

**Plaintiff's Response**:

Dispute the finding as stated and assert the finding is irrelevant to the motions presented.

32. Mr. Thompson continued to fly with Mr. Travis until he accumulated approximately 200 hours in the aircraft in November 2002, after which, the insurance documents were revised to provide that Mr. Thompson was authorized to fly the PC-12 as the sole pilot, which he did. *See* Exhibit 13, USAIG Insurance Policy at MAC 0421. *See also* Exhibit 1, James R. Thompson deposition transcript at 120:11-25 - 121:1-24.

**Plaintiff's Response**:

Dispute the finding as stated and assert the finding is irrelevant to the motions presented.

33. Mountain Air did not begin offering to fly passengers for hire until on or about September 3, 2002, when the FAA approved its application to become a charter operator. *See* Exhibit 12, Plaintiffs Objections and Responses to Defendant's First Set of Interrogatories at Interrogatories # 24. *See also* Exhibit 19, Mountain Air Charter, L.L.C. Operations Specifications at MAC 1900.

**Plaintiff's Response**:

Dispute the finding as stated and assert the finding is irrelevant to the motions presented.

34. Its charter customers during the years at issue were primarily Orix employees and Mr. Thompson's personal acquaintances. *See* Exhibit 1, James R. Thompson deposition transcript at 88:23-25 - 91:1-7. *See also* Exhibit 5, Mountain Air Charter, LLC Business Overview and Operating Results through Calendar Year 2004 at MAC 0009.

**Plaintiff's Response**:

Dispute the finding as stated and assert the finding is irrelevant to the motions presented.

35. Mountain Air often offered these customers substantial discounts from its regular charter rates. *See* Exhibit 1, James R. Thompson deposition transcript at 75:25 - 76:1-13. *See also* Exhibit 20, Mountain Air Charter, L.L.C. Select Statements of Revenue Calculation.

**Plaintiff's Response**:

Dispute the finding as stated and assert the finding is irrelevant to the motions presented.

36. Mr. Travis served as the pilot for these for-hire operations until he left the company in 2003 and was succeeded in that capacity by Mr. Michael D. Holderread. *See* Exhibit 21, Michael D. Holderread deposition transcript at 6:1-6. *See also* Exhibit 22, Resume of Michael D. Holderread.

**Plaintiff's Response**:

Dispute the finding as stated and assert the finding is irrelevant to the motions presented.

37. After he was authorized to fly the PC-12 as the sole pilot, Mr. Thompson sometimes flew persons he characterized as potential customers (and already knew), on flights without charge. *See* Exhibit 1, James R. Thompson deposition transcript at 113:20-25 - 115:1-3, 169:12-23.

**Plaintiff's Response**:

Dispute the finding as stated and assert the finding is irrelevant to the motions presented.

38. He also flew the aircraft as the sole pilot on other flights he acknowledged were personal. On the flights characterized as personal, he declared minimal amounts of income on his personal income tax return, to acknowledge his personal use of the aircraft. The income he

declared was far less than the actual cost of owning and operating the aircraft. Mr. Thompson alleges that the amounts included were in accordance with IRS guidelines. *See* Exhibit 1, James R. Thompson deposition transcript at 77:10-18, 200:19-25 - 203:1-8.

**Plaintiff's Response**:

Dispute the finding as stated and assert the finding is irrelevant to the motions presented.

39. Mountain Air did not elect to be treated as a corporation for federal tax purposes. *See* Exhibit 12, Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories at Interrogatories # 14.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

40. Consequently, it filed a partnership return (Form 1065, US. Return of Partnership Income) in both 2002 and 2003. *See* Exhibit 23, Mountain Air Charter, L.L.C. 2002 Form 1065, US. Return of Partnership Income; Exhibit 24, Mountain Air Charter, L.L.C. 2003 Form 1065, U.S. Return of Partnership Income.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

41. In 2002, Mountain Air reported a loss of $1,235,446, which included a depreciation deduction of $1,112,700 on the Pilatus PC-12. *See* Exhibit 23, Mountain Air Charter, L.L.C. 2002 Form 1065 at MAC 2658, 2662-2663.

**Plaintiff's Response**:

Agree with the finding as stated.

42. The reported loss also apparently included deductions for the cost of all of Mr. Thompson and Mr. Travis' flights together, as well as Mr. Thompson's flights after he was authorized to fly as the sole pilot. *See* Exhibit 1, James R. Thompson deposition transcript at 178:5-25 - 182:1-6.

**Plaintiff's Response**:

Dispute the finding as stated and assert the finding is irrelevant to the motions presented.

43. In 2003, Mountain Air reported a loss of $955,430 on its partnership return. *See* Exhibit 24, Mountain Air Charter, L.L.C. 2003 Form 1065 at MAC 0083.

**Plaintiff's Response**:

Dispute the finding as stated.

44. Its reported loss included $635,810 of depreciation on the aircraft, and apparently also included the costs attributable to Mr. Thompson's personal flights in the aircraft. *See* Exhibit 24, Mountain Air Charter, L.L.C. 2003 Form 1065 at MAC 0087-0088. *See also* Exhibit 1, James R. Thompson deposition transcript at 178:5-25 - 182:1-6

**Plaintiff's Response**:

Dispute the finding as stated and assert the finding is irrelevant to the motions presented.

45. Mountain Air's partnership returns also include an analysis of Net Income (Loss), reflecting the distributive shares of its losses to Mr. Thompson and JRT Holdings. Each was identified in this analysis as a limited partner, rather than a general partner. *See* Exhibit 23, Mountain Air Charter, L.L.C. 2002 Form 1065 at MAC 2661. *See also* Exhibit 24, Mountain Air Charter. L.L.C. 2003 Form 1065 at MAC 0086.

**Plaintiff's Response**:

Dispute the finding as stated and assert the finding is irrelevant to the motions presented.

46. For 2002, Mountain Air submitted a Schedule K-1 to Mr. Thompson indicating that his 99% distributive share of the losses was $1,213,897, and JRT Holding's 1% distributive share was $12,359. *See* Exhibit 23, Mountain Air Charter, L.L.C. 2002 Form 1065 at MAC 2661, 2678, 2681, 2683, 2686.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

47. For 2003, Mountain Air submitted a Schedule K-1 to Mr. Thompson indicating that his 99% distributive share of the losses was $931,065, and JRT Holding's 1% distributive share was $9,549. *See* Exhibit 24, Mountain Air Charter, L.L.C. 2003 Form 1065 at MAC 0086, 0094, 0095, 0096, 0097.

**Plaintiff's Response**:

Agree with the finding as stated, but assert the finding is irrelevant to the motions presented.

48. On his individual income tax returns for 2002 and 2003, Mr. Thompson reported his individual distributive share of Mountain Air's losses, and since he owned 100% of JRT Holdings, a Subchapter S corporation, its distributive share as well. Thus, after including some other minor items in 2002, he claimed a loss from Mountain Air of $1,225,869 on Schedule E of

his personal return. *See* Exhibit 3, James R. Thompson 2002 Form 1040, Individual Income Tax Return at MAC 0104, 0114-0115.

**Plaintiff's Response**:

Agree with the finding as stated.

49. After inclusion of similar items in 2003, he claimed a loss from Mountain Air of $939,878 on Schedule E of his personal return. *See* Exhibit 4, James R. Thompson 2003 Form 1040, Individual Income Tax Return at MAC 0137, 0148.

**Plaintiff's Response**:

Agree with the finding as stated.

50. Mr. Thompson used these tax losses to offset a significant portion of his wage income from Orix Corporation USA and its affiliates. *See* Exhibit 3, James R. Thompson 2002 Form 1040, Individual Income Tax Return at MAC 0104; Exhibit 4, James R. Thompson 2003 Form 1040, Individual Income Tax Return at MAC 0137.

**Plaintiff's Response**:

Dispute the finding as stated and assert the finding is irrelevant to the motions presented.

51. The Internal Revenue Service examined Mr. Thompson's 2002 and 2003 income tax returns and concluded that the Mountain Air losses he claimed on his personal returns were subject to the loss limitation provisions of Section 469. Accordingly, the Internal Revenue Service disallowed all of the losses from Mountain Air in 2002 ($1,225,869) and most of the losses Mr. Thompson claimed in 2003 ($783,878). *See* Exhibit *25,* Form 4549A, *Income Tax Examination Changes* at MAC 0033.

**Plaintiff's Response**:

Agree with the finding as stated.

52. The disallowances resulted in the Internal Revenue Service's determination that Mr. Thompson owed additional tax and interest in the amount of $863,124 for 2002 and 2003. *See* Exhibit 25, Form 4549A, *Income Tax Examination Changes* at MAC 0034. On September 9, 2005 Mr. Thompson paid the tax and interest and filed a claim for refund, requesting immediate disallowance so he could file suit. *See* Exhibit 26, Plaintiff's Refund Claim and Request for Immediate Disallowance at MAC 0799-0826.

**Plaintiff's Response**:

Agree with the finding as stated.

53. On March 15, 2006, plaintiff filed suit in this court. (Compl. p. I).

**Plaintiff's Response**:

Agree with the finding as stated.

Respectfully submitted,

WINSTEAD PC
5400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2199
(214) 745-5400 (Phone)
(214) 745-5390 (Fax)

By: /s/ Stuart M. Reynolds, Jr.
Thomas R. Helfand, State Bar No. 09392500
Stuart M. Reynolds, Jr., State Bar No. 16805700

**ATTORNEYS FOR PLAINTIFF JAMES R. THOMPSON**

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on this 2nd day of July, 2007, a true and correct copy of the foregoing was forwarded via first class mail to the following:

Jeffrey R. Malo
U.S. Department of Justice, Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044

/s/ Stuart M. Reynolds, Jr.
One of Counsel

Dallas_1\4916837\2
44222-1 6/28/2007