IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-211 T
(Judge Victor J. Wolski)

JAMES R. THOMPSON,

Plaintiff

v.

THE UNITED STATES,

Defendant

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT AND REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Respectfully submitted,

WINSTEAD PC
5400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2199
(214) 745-5400 (Phone)
(214) 745-5390 (Fax)

Thomas R. Helfand, State Bar No. 09392500
Stuart M. Reynolds, Jr., State Bar No. 16805700

**ATTORNEYS FOR PLAINTIFF JAMES R. THOMPSON**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

I. OVERVIEW OF WHERE WE ARE ..... 1

II. QUESTION PRESENTED ..... 1

III. STATUTES AND REGULATIONS INVOLVED ..... 2

IV. STATEMENT OF THE CASE ..... 2

V. ARGUMENT ..... 3

A. Introduction ..... 3

B. The Government's Legal Analysis is Based Entirely Upon a Recitation of Inapplicable State Law ..... 4

C. Code § 469 and the Temporary Treasury Regulations Promulgated Thereunder Can Only Be Read Consistently With the Legislative History to Compel the Conclusion That Mr. Thompson's Interest Must Not Be Treated as a "Limited Partnership" Interest ..... 4

D. The Government's Argument that the Form of Mr. Thompson's Tax Returns Determines the Legal Issue is Ridiculous ..... 9

E. The Elements of Control and Participation as Held in *Gregg* and Recognized by the Joint Committee on Taxation in 2001 Doom the Government's Position ..... 10

VI. CONCLUSION AND PRAYER ..... 13

SUPPLEMENTAL APPENDIX .....

Senate Finance Committee Report
99-313, Concerning the Tax Reform Act of 1986
(May 29, 1986) (Excerpts) 114-117

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-211 T
(Judge Victor J. Wolski)

JAMES R. THOMPSON,

Plaintiff

v.

THE UNITED STATES,

Defendant

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT AND REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. OVERVIEW OF WHERE WE ARE

Except for and notwithstanding numerous irrelevant allegations in the government's "Introduction" and "Statement of the Case," the parties are in agreement on the material facts that relate to the legal issue presented. Neither party asserts that there is a genuine issue of material fact precluding partial summary judgment. The parties agree that this Court has before it everything it needs, factually and legally, to issue a dispositive ruling. As stated by Defendant, "[o]nce the applicable tests are established, the parties, and if necessary, the Court, can resolve the remaining factual issues presented." (U.S. Br. at 3).

## II. QUESTION PRESENTED

The government has framed the question presented too narrowly. (U.S. Br. at 3). The issue is not appropriately framed with reference solely to Temp. Treas. Reg. § 1.469-5T(e)(3),

because all temporary treasury regulations promulgated under Code § 469 must be considered in the broader context of the enabling statute and the legislative history. This Court must certainly consider the meaning and effect of Temp. Treas. Reg. § 1.469-5T(e)(3), which Mr. Thompson fully addressed in his main brief (at pp. 14-16). However, this Court must synthesize the statute, legislative history and regulations to determine whether Mr. Thompson, as the member who managed an LLC, should be treated as owning a limited partnership interest for purposes of applying the material participation standards under the "passive activity" loss limitations of Code § 469.

## III.
## STATUTES AND REGULATIONS INVOLVED

Mr. Thompson agrees that the statutes and regulations set forth in the government's Appendix A to its brief are relevant to the motions before this Court. (U.S. Br. at 3).

## IV.
## STATEMENT OF THE CASE

The government litters its Statement of the Case (U.S. Br. 4-10) with alleged facts not relevant to the dispositive legal issue before this Court. The only facts material to the legal issue presented are set forth in Plaintiff's Proposed Findings of Uncontroverted Fact. The government has essentially agreed with Plaintiff's facts in Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Fact. On the other hand, Defendant's Statement of the Case and Defendant's Proposed Findings of Uncontroverted Fact appear to be an attempt to mislead the Court and to disparage Mr. Thompson's Mountain Air Charter, LLC in prejudicial ways that are not relevant to the dispositive legal issue before the Court. The government's additional proposed findings go to issues not before the Court on Mr. Thompson's motion and the government's cross-motion for summary judgment and should be ignored. As both parties agree

in their motions for summary judgment, the resolution of the factual issues related to Mr. Thompson's "material participation" in the activities of Mountain Air will follow and be guided by this Court's resolution of the pure legal question presented under Code § 469.

## V.
## ARGUMENT

### A. Introduction

The government concedes that only one United States District Court has addressed the precise legal issue presented in this case. *Gregg v. United States*, 186 F. Supp. 2d 1123 (D. Or. 2000). The government's election to refer to *Gregg* solely in footnote 18 on page 22 of its brief is the same ostrich-like approach to *Gregg* taken by the Internal Revenue Service, which has chosen "not to follow it." (*See* Mr. Thompson's main brief at p. 18.) Although this Court is not required to follow the *Gregg* court's holding, the *Gregg* court's legal analysis is correct and the government has not controverted and cannot controvert that.

The government fails to answer the analysis by the court in *Gregg* and by Mr. Thompson in his main brief. The government's brief is nothing more than a repetition and amplification of the IRS Agent's report at the conclusion of the audit of Mr. Thompson's tax returns. (Thompson App. Vol. I at 4-5.) The core of the government's position is set forth as follows: "Under the statute and applicable regulations, if a taxpayer has a partnership interest and has limited liability for the partnership's obligation, he will be treated as holding a limited partnership interest and is presumed to be subject to the loss limitations." (U.S. Br. at 2.) What is missing from the government's brief is a legitimate, supportable and legal basis to treat the managing member of a state-chartered LLC, who is not limited by state law insofar as "materially participating" is concerned, the same as a limited partner, who is limited by state law from managing the activities of the entity.

**B. The Government's Legal Analysis is Based Entirely Upon a Recitation of Inapplicable State Law**

Mr. Thompson is the member who manages Mountain Air, a limited liability company organized under the laws of Texas. Relevant provisions of Texas state LLC law and Texas state limited partnership law are before the Court (Thompson App. 75-81). The government contests none of the applicable state law.

Instead, the government discusses the Uniform Limited Partnership Act of 2001, enacted by only ten states, none of them Texas. (U.S. Br. at 20-22). None of these laws was in effect anywhere when Congress enacted Code § 469 in 1986, when the IRS started issuing regulations in 1988, when Mountain Air was organized in Texas in 2002, or during the years in issue in this case, 2002 and 2003. And none of these laws applies today to this case in this Court.

**C. Code § 469 and the Temporary Treasury Regulations Promulgated Thereunder Can Only Be Read Consistently With the Legislative History to Compel the Conclusion That Mr. Thompson's Interest Must Not Be Treated as a "Limited Partnership" Interest**

The government's fundamental flaw is to confuse a symptom (limited liability) with the ailment (lack of material participation). Code § 469 deals with a perceived ailment. Congress intended that taxpayers who don't materially participate in a trade or business are not allowed certain tax benefits derived from their "passive" interest in such trade or business. It's that simple.

The government fails to address the official committee reports accompanying the enactment of Code § 469. (Thompson App. 82-87). In particular, the government fails to address the following statement from the legislative history:

> In the case of a limited partnership interest, special considerations apply. The form of entity most commonly chosen to maximize tax benefits in a tax shelter investment has been the limited partnership. <u>Moreover, since a limited partner generally is precluded from participating in the partnership's business if he is to retain his limited liability status, the committee believes it</u>

should not be necessary to examine general facts and circumstances regarding material participation in this context. Therefore, under the bill, a limited partnership interest is treated as intrinsically passive (except as provided in regulations).

(Thompson Br. at 9, App. 83) (emphasis added). The government quotes selectively from the Senate Finance Committee Report. (U.S. Br. at 19). Because the government's selected quotes are incomplete or out of context, set forth below is the entire text of the section of the Senate Finance Committee Report called "Limited partnerships."

It is interesting to note that the Senate Report discussed the concerns that led Congress to authorize regulations to require income from a "limited partnership or other passive activity to be treated as not from a passive activity." Code § 469(l)(3). In other words, the Treasury regulations to be drafted in this respect were to prevent taxpayers from seeking to convert "active" income to "passive" income, then to be offset by passive "tax shelter" losses. This conclusion is made clear by the Senate Committee's statement with respect to one aspect of "material participation" as follows:

> "Working as an employee, and providing services as part of a personal service business (including professional businesses such as law, accounting and medicine), intrinsically require personal involvement by the taxpayer. Thus, by their nature, they generally are not passive activities." S.Rep. 99-313 at 730-731 (emphasis added).

Immediately following the foregoing statement on "material participation" in the Senate Finance Committee Report is the discussion of "Limited partnerships," the full text of which is as follows:

> "In the case of a limited partnership interest, except to the extent provided by regulations, it is conclusively presumed that the taxpayer has not materially participated in the activity. In general, under relevant State laws, a limited partnership interest is characterized by limited liability, and in order to maintain limited liability status, a limited partner, as such, cannot be active in the partnership's business. The presumption that a limited partnership interest is passive applies even when the taxpayer *possesses the limited partnership interest indirectly* through a tiered entity arrangement (e.g.. the taxpayer owns a general

> partnership interest, or stock in an S corporation, and the partnership or corporation in which the taxpayer owns such interest itself owns a limited partnership interest in another entity).
>
> When a taxpayer possesses both a limited partnership interest and another type of interest, such as a general partnership interest, with respect to an activity, lack of material participation is conclusively presumed with respect to the limited partnership interest (thus limiting the use of deductions and credits allocable thereto). The presence of material participation for purposes of any other interests in the activity owned by the taxpayer is determined with reference to the relevant facts and circumstances.
>
> Under the bill, the Secretary of the Treasury is empowered to-provide through regulations that limited partnership interests in certain circumstances will not be treated (other than through the application of the general facts and circumstances test regarding material participation) as interests in passive activities. It is intended that this grant of authority be used to prevent taxpayers from manipulating the rule that limited partnerships generally are passive, in attempting to evade the passive loss provision.
>
> For example, the exercise of such authority by the Secretary may be appropriate in certain situations where taxpayers divide their interests in activities between limited and general partnership interests, e.g., to facilitate establishing a disposition of the taxpayer's entire interest in an activity, or in connection with special allocations of items of income, deduction, or credit as between limited and general partnership interests. The exercise of such authority by the Secretary would also be appropriate if taxpayers were permitted under State law to establish limited liability entities (that are not taxable as corporations) for personal service or other active businesses, *and to denominate as "limited partnership interests" any interests in such businesses related to the rendering of personal services. The exercise of such authority might also be appropriate where taxpayers sought to avoid limited partnership status with respect to substantially equivalent entities.*"

S. Rep. No. 99-313, at 731-732, Senate Finance Committee Report 99-313, concerning the Tax Reform Act of 1986 (May 29, 1986) (italics added). These excerpts from the Senate Report are set forth in full in the supplemental appendix hereto (App. 114-117).

The quoted, italicized language in the first paragraph above should be compared to the government's paraphrase that "an interest should be treated as a limited partnership interest even when the taxpayer holds <u>an</u> <u>interest</u> through a tiered entity arrangement. . . " (U.S. Br. at 19)

(emphasis added). The actual words in the Report are "*possesses the limited partnership interest indirectly*." (emphasis added).

The quoted, italicized language in the penultimate sentence above should be compared to the government's following paraphrase, which turns the actual language of the Senate Report on its head:

> "Similarly, the exercise of regulatory authority would be appropriate if taxpayers were permitted under state law to establish limited liability entities (that are not taxable as corporations) for personal service or other active businesses, by treating interests related to the rendering of personal services as limited partnership interests." (U.S. Br. at 19) (emphasis added).

The government's misquote completely changes the meaning of the Senate Report statement which, in context, clearly means that services which "require personal involvement by the taxpayer" and which "are not passive activities" may not be treated as passive even if state law permits the taxpayer "*to denominate as 'limited partnership interests' any interests in such business related to the rendering of personal services*." Far from supporting the government's argument, the entire Senate Report shows clearly that the intent of Code § 469 was to differentiate between "active" and "passive" and the Secretary was authorized to issue regulations to implement that intent.

The government's reliance on the last quoted, italicized sentence of the "Limited partnerships" section of the Senate Report is misplaced. (U.S. Br. at 19). The last sentence must also be put in the context of the preceding sentences. As noted in the legislative history previously quoted, Congress stated that "[t]he form of entity most commonly chosen to maximize tax benefits . . . has been the limited partnership." (Thompson App. 83). On one side of the ledger, regulations should be issued to prevent taxpayers from using passive entity interests to shelter "active" income. On the other side of the ledger, Congress did not want

taxpayers to have a loophole out of the "passive activity" loss limitation if the entity of choice was not a "limited partnership."

In context, an LLC is not a "substantially equivalent" entity to a limited partnership either in "liability" issues or "participation" issues. No member of an LLC, manager or not, is personally liable for the debts of the LLC, whereas a general partner of a limited partnership does have liability. No limited partner of a limited partnership may participate in management, whereas the managing member of an LLC does participate in, even controls, the activities of the entity. The government is wrong to read the last sentence of the Senate Report as authority or even relevant to the issue of whether the managing member of an LLC should be treated as owning a limited partnership interest in a limited partnership.

The government asserts Mr. Thompson makes a "policy" argument "best addressed to Congress." (U.S. Br. at 20). To the contrary, the government is advocating an application of the existing temporary treasury regulations beyond their original and legitimate scope. There are no words in Reg. § 1.469-5T(e) referencing an entity other than a limited partnership and a taxpayer can only reasonably conclude that no broader scope was intended.[1]

However, today, if that regulation were considered to apply to an LLC, then the entire regulation should be interpreted and labels should not apply in equating a member as a limited partner or a general partner. Any interpretation should take into account the exception in Reg. § 1.469-5T(e)(3)(ii) for owners holding general partner interests and a "control" standard should be applied to determine the general partner designation. If labels do not apply, as suggested by the government, then the general partner designation would have to apply to a manager member

[1] Code § 469(h)(2), which is the basis for the regulation, uses the words "no interest in a limited partnership as a limited partner." Under the statute, two tests must be met: the entity must be a limited partnership, and the interest in question must be held as a limited partner.

of an LLC. The government contends that the general partner designation only applies if the owner has unlimited liability. As Mr. Thompson pointed out in his main brief (at 14-16), this standard cannot be correct as it would render the exception moot in the context of an LLC. If the IRS truly intended the regulation to apply to LLCs, then it would not make sense for the Secretary to write an exception that could never apply. Thus, the control standard must apply to designate which members are considered general partners. Such an interpretation of the existing regulation would carry out the intention of Congress in enacting the Code § 469(h)(2).

Indeed, by applying in a mechanical fashion the symptom of "limited liability" to label the managing member of an LLC as a "limited partner," it is the government which is not carrying out the intent of Congress. The IRS is creating a "policy" based on labels that Congress never intended.

**D. The Government's Argument that the Form of Mr. Thompson's Tax Returns Determines the Legal Issue is Ridiculous**

According to the government, "Mountain Air treated itself as a partnership and its two owners as partners. Plaintiff also reported his interest in Mountain Air as a partnership interest. These undisputed facts lead inescapably to the conclusion that Mr. Thompson held a partnership interest in Mountain Air. There also can be no dispute that, under Texas law, his liability with respect to his partnership interest was limited. Therefore, under Temp. Treas. Reg § 1.469-5T(e)(3), plaintiff's interest in Mountain Air is treated as a limited partnership interest." (U.S. Br. at 17.)

The government apparently wants this Court to believe that Mr. Thompson's situation is the result of a self-inflicted wound. Disingenuously, the government states that "Mountain Air did not elect to be treated as a corporation for federal tax purposes" and that, in Mountain Air's tax returns, Mr. Thompson and JRT Holdings were each identified "as a limited partner, rather

than a general partner." (U.S. Br. at 8) (emphasis in U.S. Brief). Later, "Plaintiff was identified on the partnership's tax returns as a 'limited partner.' (U.S. Br. at 15) (notice the government's use of "the partnership's tax returns instead of the LLC's tax returns.) Again, "[h]e reported his direct, 99% share of Mountain Air's losses as 'P' for a partnership loss." (U.S. Br. at 16).

Such an argument is outrageous. There is no dispute that Mountain Air is treated as a partnership for federal income tax purposes. Taxpayers are required to use forms created by the IRS. Mr. Thompson used the forms created by the IRS. Then to argue that, because he used the IRS forms, Mr. Thompson has conceded the legal issue, the government disparages Mr. Thompson and continues to misstate the law and regulations.

This argument is also ridiculous as another example of a mechanical, not analytical, approach. Apply labels, check boxes, compartmentalize the taxpayer by form over substance, next case. The issue in this case is a substantive issue – whether the managing member of an LLC must be conclusively presumed not to materially participate in the business solely because his LLC interest has limited liability under state law. As the court in *Gregg* held, applying labels is not the answer.

**E. The Elements of Control and Participation as Held in *Gregg* and Recognized by the Joint Committee on Taxation in 2001 Doom the Government's Position**

The government's final thrust is that, "even if a limited partner of a limited partnership has the same ability to participate in business activities as a member of an LLC (*i.e.*, he is a limited partner in a state that has adopted ULPA 2001), he is treated as holding a limited partnership interest under Section 469(h)(2). Temp. Treas. Reg. § 1.469-5T(e), merely implements that statute, and as Congress envisioned, treats taxpayers as holding limited

partnership interests in entities that are not taxed as corporations, whether organized as a limited partnership, an LLC, or a similar entity." (U.S. Br. at 22.)[2]

However, as the Court in *Gregg* stated:

> "Furthermore, the legislative history clearly shows that Congress enacted the limited partnership test for the purpose of the passive activity loss rules to thwart the deduction by investors, such as limited partners in a limited partnership, of "passive" losses from "tax shelter" investments against other non-passive income, since "a limited partner generally is precluded from participating in the partnership's business if he is to retain his limited liability status[.]" Senate Finance Committee Report on P.L. 99-514 (Tax Reform Act of 1986), reprinted in CCH Standard Federal Tax Rptr. (2000 ed.) at paragraph 21,960. The limited partnership test is not applicable to all LLC members, because LLCs are designed to permit active involvement by LLC members in the management of the business. See Barbara C. Spudis, LLCS: Recent Developments and the Developing Uses of Hybrid LLCs, 373 PLI/ Tax 1003, 1034 (1995); Hughlene A. Burton, Taxing LLC Members as General or Limited Partners, J. Limited Liability Companies, Spring 1996, at 168, 170. Further, LLC members may materially participate in the LLC without losing their limited liability protection. See, e.g., J. Larry Lee, The Future of Limited Liability Companies for Business and Estate Planning Purposes in Mississippi, 18 Miss. C.L. Rev. 91, 101 (1997); Keen L. Ellsworth, Utah Limited Liability Companies: The "Ugly Ducklings", 1992 B.Y.U. L. Rev. 1091, 1103 n.47 (1992). In the absence of any regulation asserting that an LLC member should be treated as a limited partner of a limited partnership, defendant's conclusion is inappropriate."
>
> 186 F. Supp. 2d at 1128-29 (App. 93-94) (emphasis added).

The government argues that the court in *Gregg* "wrongly gives conclusive effect under the regulations to organizational formalities." (U.S. Br. at 22, fn. 18) (emphasis added). For the government to criticize *Gregg* for recognizing "organizational formalities" is the ultimate irony

---

[2] The government's discussion of the Uniform Limited Partnership Act of 2001 is curious. (U.S. Br. at 21). First, the government knows the Uniform Act is not the law of Texas (Thompson) or Oregon (*Gregg*). Second, the fact that LPs may eventually be more like LLCs in permitting control and participation by persons with limited liability merely shows that the government's position in this case, as well as the same position it took in *Gregg*, is the anachronism. The government refuses to accept that it is the absence of material participation, not the limited liability, that invokes the "passive activity" loss limitations of Code § 469.

of the government's position. Isn't this the same government that argued the organizational formalities of Mr. Thompson's tax returns sealed his fate as a "limited partner?"

The government in its brief chose to ignore entirely the 2001 Report of the Joint Committee on Taxation to the effect that "a limited liability company owner whose participation in the management and activities of the entity is not so restricted is treated like a general partner under the material or active participation tests, with the result that his or her participation is assessed under regulations applicable to everyone who is not a limited partner." Joint Report p. 285 and n. 493 (App. 111) (emphasis added). This report cited to the *Gregg* case and confirmed its holding.

In the final analysis, *Gregg* and the Joint Report understand the intent of Congress, as expressed in Code § 469, that the substance of the activity, not the form in which it is undertaken, dictates the correct result. If the IRS issued a regulation specifically to address LLCs, it would have to follow the rationale of *Gregg* and the Joint Committee Report. This is the only way congressional intent, the words of Code § 469 and all the temporary treasury regulations make sense. Indeed, it is probable that the absence of a regulation "asserting that [a managing] LLC member should be treated as a limited partner of a limited partnership," *Gregg* at 94, demonstrates that the IRS knows such a regulation would be contrary to congressional intent and the statute.

## VI.
## CONCLUSION AND PRAYER

For the foregoing reasons, Plaintiff respectfully asks that the Court grant Plaintiff's Motion for Partial Summary Judgment, deny Defendant's Cross-Motion for Partial Summary Judgment and grant Plaintiff such other and further relief to which he may be entitled.

Respectfully submitted,

WINSTEAD PC
5400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2199
(214) 745-5400 (Phone)
(214) 745-5390 (Fax)

By: /s/ Stuart M. Reynolds, Jr.
Thomas R. Helfand, State Bar No. 09392500
Stuart M. Reynolds, Jr., State Bar No. 16805700

**ATTORNEYS FOR PLAINTIFF JAMES R. THOMPSON**

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on this 2nd day of July, 2007, a true and correct copy of the foregoing was forwarded via first class mail to the following:

Jeffrey R. Malo
U.S. Department of Justice, Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044

/s/ Stuart M. Reynolds, Jr.
One of Counsel