IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-211 T
(Judge Victor J. Wolski)

JAMES R. THOMPSON,

Plaintiff

v.

THE UNITED STATES,

Defendant

**PLAINTIFF'S POST-HEARING BRIEF**

Respectfully submitted,

WINSTEAD PC
5400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2199
(214) 745-5400 (Phone)
(214) 745-5390 (Fax)

Thomas R. Helfand, State Bar No. 09392500
Stuart M. Reynolds, Jr., State Bar No. 16805700

**ATTORNEYS FOR PLAINTIFF JAMES R. THOMPSON**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................ iii

ISSUES ADDRESSED IN THIS BRIEF:

1. As of 1986, was there a commonly-held or predominant meaning, under the law of the several states, of limited partner interests in limited partnerships? What were the features or attributes of such an interest in such an entity? ................1

   a. As of 1986, was there a commonly-held or predominant meaning, under the law of the several states, of limited partner interests in limited partnerships? ..............................................................................1

   b. What were the features or attributes of such an interest in such an entity? ......................................................................................................2

2. How much deference, if any, must a court give to a federal agency's interpretation and application of the agency's own regulations? Must a court interpret regulations in a manner that makes them internally consistent? ................4

   a. How much deference, if any, must a court give to a federal agency's interpretation and application of the agency's own regulations? .....................4

      i. There are no IRS pronouncements on the regulations at issue in this case except the Examiner's opinion in Mr. Thompson's audit..............................................................................................4

      ii. The doctrine of judicial deference does not apply in this case..............6

   b. Must a court interpret regulations in a manner that makes them internally consistent? ..............................................................................14

3. How does 26 C.F.R. § 1.469-5T(e)(3)(ii) apply to plaintiff's matter? .........................17

4. Why was "passive activity" defined in Code § 469 as an activity "in which the taxpayer does not materially participate" as opposed to an activity "in which the taxpayer has limited liability?" ...........................................................18

PRAYER ............................................................................................................................20

## SECOND SUPPLEMENTAL APPENDIX


### VOLUME I

Bromberg Treatise on Limited Partnerships
Bromberg III, 11:1-11:32 118-150

### VOLUME II

Uniform Partnership Act (1996)
Bromberg I, A-1:1-A:1-16, A:1-73-A:1-74 151-170

Uniform Limited Partnership Act (1916)
Bromberg I, B:1-B:18 171-188

### VOLUME III

Uniform Limited Partnership Act (1976) with the 1985 Amendments
And Prefatory Note, Bromberg E:1-E:35 189-224

### VOLUME IV

6 Uniform Laws Ann. (1989 Pocket Part) 225-228

### VOLUME V

Saltzman: IRS Practice & Procedure §3.02 Treasury Regulations 229-254

### VOLUME VI

Bittker & Lokken: Federal Taxation of Income, Estates and Gifts
§ 110.5 Revenue Rulings and Other IRS Opinions and Pronouncements 255-283

2001 IRS NSAR 11454 284-292

Treasury Reg. §301.6231(a)(7)-1 and (a)(7)-2 293-298

### VOLUME VIII

General Explanation of the Tax Reform Act of 1986, prepared by the
Staff of the Joint Committee on Taxation (May 4, 2987),
Table of Contents and Title V (Part 1) 299-326

### VOLUME IX

General Explanation of the Tax Reform Act of 1986, prepared by the
Staff of the Joint Committee on Taxation (May 4, 2987),
Table of Contents and Title V (Part 2) 327-350

**VOLUME X**

General Explanation of the Tax Reform Act of 1986, prepared by the Staff of the Joint Committee on Taxation (May 4, 2987), Table of Contents and Title V (Part 3) 351-371

# TABLE OF AUTHORITIES

## FEDERAL CASES

*American Standard, Inc. v. United States*, 220 Ct. C 602 F.2d 256 (Ct. Cl. 1979) ............4

*Ann Jackson Family Foundation v. Commissioner*, 97 T.C. 534 (1991) *aff'd* 15 F.3d 917 (9th Cir. 1994) ............4

*Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905 (1997) ............6, 9

*BMW of North America, Inc. v. U.S.*, 39 F. Supp. 2d 445 (D.N.J. 1998) ............8

*Barnes Transportation Co.*, 14 T.C. 123 (1950) ............15

*Bernier v. Bernier*, 147 U.S. 242, 13 S. Ct. 244 (1893) ............15

*Black & Decker Corp. v. Comm.*, 986 F.2d 60, 71 A.F.T.R.2d 93-964 (4th Cir. 1993) ............15, 16

*Bowen v. Georgetown University Hospital*, 488 U.S. 204, 109 S. Ct. 468 (1988)....6, 7, 11

*CSI Hydrostatic Testers, Inc.*, 103 T.C. 398 (1994) ............8, 11

*Callaway v. Comm.*, 231 F.3d 106, 86 A.F.T.R.2d 2000-6148 (2nd Cir. 2000) ............8

*Chevron U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 104 S. Ct. 2778 (1984) ............6, 7, 9, 11, 12

*Christensen v. Harris County*, 529 U.S. 576, 120 S. Ct. 1655 (2000) ............6, 7

*Federal National Mortgage Association v. U.S.*, 56 Fed. Cl. 228, 91 A.F.T.R.2d 2003- ( Ct. Fed. Cl. 2003) ............7, 9, 10

*Iowa 80 Group, Inc. v. U.S.*, 203 F. Supp. 2d 1058, 89 A.F.T.R.2d 2002-2939 (S.D. Ia. 2002) ............8

*Landmark Legal Foundation v. IRS*, 267 F.3d 1132, 88 A.F.T.R.2d 2001- (D.C. Cir. 2001) ............8

*Officemax, Inc. v. U.S.*, 428 F.3d 583, 96 A.F.T.R.2d 2005-6824 (6th Cir. 2005)........7, 13

*Progressive Corp. & Subs. v. U.S.*, 970 F.2d 188, 70 A.F.T.R.2d 92-5296 (6th Cir. 1992) ............15

*Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S. Ct. 161 (1944) ............6, 7, 12, 20

*Tax Analysts v. IRS*, 117 F.3d 607, 97 A.F.T.R.2d 2006-1210 (D.D.C. 2006)....................7

*Tupper v. United States*, 134 F.3d 444, 81 A.F.T.R.2d 98-430 (1st Cir. 1998)...................5

*U.S. Freightways Corp. v. Comm.*, 270 F.3d 1137, 88 A.F.T.R.2d 2001-6703 (7th Cir. 2001)........................................8, 12

*U.S. v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 121 S. Ct. 1433 (2001)...................6

*United States v. Mead Corp.*, 533 U.S. 218, 121 S. Ct. 2164 (2001)............................6, 12

*Vons Companies, Inc. v. U.S.*, 51 Fed. Cl. 1, 88 A.F.T.R.2d 2001-6730 (Ct. Fed. Cl. 2001)........................................8, 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-211 T
(Judge Victor J. Wolski)

JAMES R. THOMPSON,

Plaintiff

v.

THE UNITED STATES,

Defendant

**PLAINTIFF'S POST-HEARING BRIEF**

Plaintiff James R. Thompson, pursuant to the Court's August 14, 2007 Order, submits this post-hearing brief.

**1. As of 1986, was there a commonly-held or predominant meaning, under the law of the several states, of limited partner interests in limited partnerships? What were the features or attributes of such an interest in such an entity?**

**a. As of 1986, was there a commonly-held or predominant meaning, under the law of the several states, of limited partner interests in limited partnerships?**

As of 1986, there was a commonly-held or predominant meaning, under the law of the several states, of limited partner interests in limited partnerships. It was this commonly-held meaning which led the Senate Finance Committee to state the following:

> "In the case of a limited partnership interest, special considerations apply. The form of entity most commonly chosen to maximize tax benefits in a tax shelter investment has been the limited partnership. Moreover, since a *limited partner generally is precluded from participating in the partnership's business if he is to retain his limited liability status*, the committee believes it should not be necessary to examine general facts and circumstances regarding material participation in this context. Therefore, under the bill, a

limited partnership interest is treated as intrinsically passive (except as provided in regulations)."[1]

The Uniform Partnership Act ("UPA") dates to 1914 and the Uniform Limited Partnership Act ("ULPA") dates to 1916. Bromberg III, 11:23 (App. 141).[2] The 1916 ULPA was revised ("RULPA") in 1976. With amendments in 1985, "adoptions then accelerated so that *virtually all states have either the 1976 or 1985 Act.*" Bromberg III, 11:28/29 (App. 146-147) (emphasis added). A list of states which as of 1986 had adopted the ULPA or RULPA is contained in the Second Supplemental Appendix (App. 225-228).[3]

**b. What were the features or attributes of such an interest in such an entity?**

The UPA described a general partnership. A partner's rights and duties were carried forward from § 18 of the UPA into the updated act of 1996. (App. 169-170). The major attribute of a general partnership is that "[E]ach partner has equal rights in the management and conduct of the partnership business." UPA § 401(f) (App. 169). Every limited partnership must have at least one general partner, but limited partnerships have different features and attributes. Bromberg describes the features or attributes of limited partner interests in limited partnerships as follows:

> "Limited partnerships differ from general partnerships in a number of ways. They call for greater formality and publicity in formation, although the required formality and publicity is less under the 1976 Act than under the 1916 Act and still less under the 1985 and 2001 Acts. They are less democratic and more hierarchical, with general partners having most or all of the control, and the limited partners little or none. Thus, typically general partners are active managers, and limited partners are passive investors. The relation between general partners and limited partners tends to be more financial and less personal

---

1 Senate Finance Committee Report on P.L. 99-514 (Tax Reform Act of 1986), reported at CCH Standard Federal Tax Rptr. (2000 ed.) at ¶ 21,960. (App. 83) (emphasis added).

2 *Bromberg and Ribstein on Partnership* (successor to *Crane and Bromberg on Partnership*) ("Bromberg") is a multi-volume loose-leaf treatise on partnership law. Plaintiff's Second Supplemental Appendix contains excerpts from this treatise. (App. 118-224).

3 Chairman Rostenkowski and Vice Chairman Bentsen of the Joint Committee on Taxation were from Illinois and Texas, respectively, both of which had long had the 1916 ULPA as the law of their states. (App. 300, 226.)

than the relation among partners in general partnerships because the typical limited partner is an inactive and perhaps distant source of finance. A limited partnership may have a single general partner with managerial authority, while a general partnership has two or more. Limited partnerships are more rigid in structure, with requirements for contributions by limited partners and limitations on distributions to them. They offer limited liability to the limited partners *(although that limited liability may be lost by taking part in control under the 1916, 1976, and 1985 Acts)*."

Bromberg III, 11:4 (App. 125) (emphasis added).

Section 7 of the 1916 ULPA provides as follows:

"A limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, *he takes part in the control of the business*." ULPA at B:7 (App. 177) (emphasis added).

Revised in 1976 (unchanged in 1985), § 303 of the RULPA states as follows:

"(a) Except as provided in subsection (d), a limited partner is not liable for the obligations of a limited partnership unless be [sic] [or she] is also a general partner or, in addition to the exercise of his [or her] rights and powers as a limited partner, he [or she] *participates in the control of the business*. . . . ." RULPA at E:16-17 (App. 205-206) (emphasis added).

The Texas Revised Limited Partnership Act, art. 6132a-1, §3.03, tracks the RULPA as follows:

"(a) Except as provided by Subsection (d) of this section, a limited partner is not liable for the obligations of a limited partnership unless the limited partner is also a general partner or, in addition to the exercise of the limited partner's rights and powers as a limited partner, *the limited partner participates in the control of the business*. . . ." (App. 75) (emphasis added).

Thus, when Code § 469 was drafted, the most commonly-held or predominant meaning in state laws was that a limited partner in a limited partnership would lose his limited liability if he "participates in the control of the business." This key feature or attribute of such an interest in such an entity was at the heart of Code § 469(h)(2) which states "[e]xcept as provided in regulations, no interest in a limited partnership *as a limited partner* shall be treated as an interest with respect to which a taxpayer materially participates." (Emphasis added.)

**2. How much deference, if any, must a court give to a federal agency's interpretation and application of the agency's own regulations? Must a court interpret regulations in a manner that makes them internally consistent?**

**a. How much deference, if any, must a court give to a federal agency's interpretation and application of the agency's own regulations?**

**i. There are no IRS pronouncements on the regulations at issue in this case except the Examiner's opinion in Mr. Thompson's audit**

Code § 7805(a) provides that regulations are issued by the Secretary of the Treasury, one of whose agencies is the IRS. (App. 229.)[4] The issuance of regulations under the Internal Revenue Code involves a number of steps, including the requirements of notice and public comment pursuant to the Administrative Procedure Act ("APA"). (App. 230-232.) Legislative or substantive regulations are entitled to the highest form of judicial deference, as long as they are (i) within the granted power of the agency; (ii) issued pursuant to proper procedure; and (iii) are reasonable. *American Standard, Inc. v. United States*, 220 Ct. Cl. 411, 602 F.2d 256 (Ct. Cl. 1979) (invalidating IRS regulation in violation of delegation of rule-making authority and of notice and comment requirements of the APA). (App. 232-233, n.38).

Interpretive regulations, which also must meet notice and comment requirements, explain the position of the Treasury and the Service on a particular issue. App. 233-234. Although an interpretive regulation "is entitled to respect, it is not entitled to the high degree of deference accorded to a legislative regulation." *Ann Jackson Family Found. v. Comm'r*, 97 T.C. 534, 538 (1991) *aff'd* 15 F.3d 917 (9th Cir. 1994).

Revenue Rulings ("RRs") are an official interpretation by the IRS. Although not having the weight of regulations, RRs "are published to provide precedents to be used in the disposition

---

4 Plaintiff's Second Supplemental Appendix contains excerpts from treatises on IRS pronouncements – Saltzman: IRS Practice & Procedure § 3.02 on Treasury Regulations (App. 229-254); Bittker & Lokken: Federal Taxation of Income, Estates and Gifts § 110.5 on Revenue Rulings and Other IRS Opinions and Pronouncements (App. 255-283).

of other cases, and may be cited and relied upon for that purpose." Rev. Proc. 89-14, 1989-1 CB 814. (App. 261, n.64).

Within the IRS, questions may arise as to the proper interpretation of regulations. A supervisor may issue a Technical Advice Memorandum ("TAM").[5] (App. 256). In addition to TAMs, the technical staff of the IRS may request a legal memorandum on an issue. General Counsel Memoranda ("GCMs") are "legal memoranda from the Office of Chief Counsel to the IRS prepared in response to a formal request for legal advice from the Assistant Commissioner (Technical)." *Tupper v. United States*, 134 F.3d 444, 448, 81 AFTR 2d 98-430 (1st Cir. 1998).

A taxpayer may request an IRS ruling on facts and circumstances specific to him. In such a case, the IRS may issue a Private Letter Ruling ("PLR"). Although specifically limited to the taxpayer inquiry, PLRs (redacted) are public under the Freedom of Information Act. (App. 264.)

The record in Mr. Thompson's tax audit contains, at most, the IRS Examiner's view of the law. (App. 4.) If she requested an NSAR, a TAM or a GCM, it was not in the record produced by the government in this case. There is no evidence of any interpretation by the Secretary of the Treasury or the IRS Commissioner of the issue before this Court under Code § 469 or the temporary treasury regulations. There is only the IRS Examiner's opinion (App. 4) and the government's litigating position.

---

5 The Court will recall that counsel for Mr. Thompson found a non-docketed service advice review ("IRS NSAR 11,454"). 2001 WL 34629779 (June 1, 2001) (App. 284-292) in cite checking the *Gregg* case. (Tr. 83.) In determining the "tax matters partner" of an LLC, the service advice stated that "only a member-manager of an LLC is treated as a general partner and an LLC member who is not a member-manager is treated as a partner other than a general partner." 2001 IRS NSAR 11,454, at p. 6 (App. 289) (citing Reg. § 301.6231(a)(7)-1 and (a)(7)-2. (App. 293-298).

**ii. The doctrine of judicial deference does not apply in this case**

The Supreme Court has held that whether to give judicial deference to an agency interpretation is a function, first, of the authority Congress gave the agency and, second, of the context of the agency interpretation at issue. *U.S. v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 121 S. Ct. 1433 (2001); *United States v. Mead Corp.*, 533 U.S. 218, 121 S. Ct. 2164 (2001); *Christensen v. Harris County*, 529 U.S. 576, 120 S. Ct. 1655 (2000); *Auer v. Robbins* 519 U.S. 452, 117 S. Ct. 905 (1997); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S. Ct. 468 (1988); *Chevron U.S.A., Inc. v. National Res. Def. Council*, 467 U.S. 837, 104 S. Ct. 2778 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S. Ct. 161 (1944).

It is important to note that "deference" comes into play only where the plain language of the statute does not compel the correct result. As stated by the Court in *Chevron*, if "Congress has directly spoken to the precise question at issue [and] [i]f the intent of Congress is clear, that is the end of the matter." 467 U.S. at 842, 104 S. Ct. at 2781. On the other hand, "if the statute is silent or ambiguous with respect to the specific issue," the court proceeds to ask "whether the agency's answer is based on a permissible construction of the statute." *Id.*, at 843, 104 S. Ct. at 2782.

Mr. Thompson asserts that Code § 469 is clear and that the intent of Congress is clear. Moreover, the plain language of the regulations can only be read consistently with the statute to compel the result that Mr. Thompson should not be treated as a limited partner in a limited partnership. As noted, neither the Secretary of the Treasury nor the IRS Commissioner has issued any interpretation of temporary treasury regulation § 1.469-5T(e) that supports the litigating position taken by the government in this case.

This section of Mr. Thompson's brief assumes, *arguendo*, that this case requires a consideration by this Court of "judicial deference" to the IRS. The range of options extends

from *Bowen*, 488 U.S. at 213, 109 S. Ct. at 474 ("[d]eference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate") to *Chevron*, 467 U.S. at 862, 104 S. Ct. at 2791 (where statute as reviewed in light of legislative history "was intended to enlarge, rather than to confine, the scope of the agency's power to regulate particular sources [of pollution] in order to effectuate the policies of the Act," deference to agency's reasonable interpretation of the statute is appropriate).

The court in *Christensen* confronted "an interpretation contained in an opinion letter [from the Dept. of Labor, Wage and Hour Division on the issue presented], not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking. Interpretations such as those in opinion letters – *like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law* – do not warrant *Chevron*-style deference." 529 U.S. at 587, 120 S. Ct. at 1662 (emphasis added). "Instead, interpretation contained in formats such as opinion letters are 'entitled to respect' under [*Skidmore*] but only to the extent that those interpretations have the 'power to persuade.'" *Id.*

The *Skidmore* standard is as follows:

> "We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 323 U.S. at 140, 65 S. Ct. at 164.

Lower courts have addressed judicial deference in many contexts that fall within the range of options established by the Supreme Court. *Tax Analysts v. IRS*, 117 F.3d 607, 97 AFTR 2d 2006-1210 (D.D.C. 2006); *Officemax, Inc. v. U.S.*, 428 F.3d 583, 96 AFTR 2d 2005-6824 (6th Cir. 2005); *Federal National Mortgage Association v. U.S.*, 56 Fed. Cl. 228, 91 AFTR 2d 2003-

1677 ( Ct. Fed. Cl. 2003); *U.S. Freightways Corp. v. Comm.*, 270 F.3d 1137, 88 AFTR 2d 2001-6703 (7th Cir. 2001); *Vons Companies, Inc. v. U.S.*, 51 Fed. Cl. 1, 88 AFTR 2d 2001-6730 (Ct. Fed. Cl. 2001); *Landmark Legal Foundation v. IRS*, 267 F.3d 1132, 88 AFTR 2d 2001- 6350 (D.C. Cir. 2001); *Callaway v. Comm.*, 231 F.3d 106, 86 AFTR 2d 2000-6148 (2nd Cir. 2000); *Iowa 80 Group, Inc. v. U.S.*, 203 F. Supp. 2d 1058, 89 AFTR 2d 2002-2939 (S.D. Ia. 2002); *BMW of North America, Inc. v. U.S.*, 39 F. Supp. 2d 445 (D.N.J. 1998); *CSI Hydrostatic Testers, Inc.*, 103 TC 398 (1994).

In *Landmark Legal Foundation*, the D.C. Court of Appeals offered the following explanation of the criteria affecting deference:

> "We would owe deference to the IRS' interpretation of s 6103 under *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1984), if the Service had reached the interpretation asserted here in a notice-and-comment rulemaking, a formal agency adjudication, or in some other procedure meeting the prerequisites for *Chevron* deference stated in *United States v. Mead*, 121 S. Ct. 2164, 2172-75 (2001). But the Service makes no claim that the interpretation it developed in litigation here arose in any such procedure. Accordingly, we can give its views no more than the weight derived from their 'power to persuade.' See Id. at 2172 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944))."
>
> 267 F.3d at 1135-36, 88 AFTR 2d at 2001-6352.

In *Callaway*, the Court of Appeals for the Second Circuit, before rejecting the agency's interpretation as inconsistent, articulated a good framework for analysis as follows:

> "The IRS' considered view of the interpretation of the Internal Revenue Code and the Regulations adopted under it is generally entitled to considerable deference. *See, e.g., Jewett v. Commissioner*, 455 U.S. 305, 318 [49 AFTR 2d 82-1470] (1982) (canon of construction that Commissioner's consistent interpretation of Code is entitled to respect is 'even more forceful when applied to the Commissioner's interpretation of his own Regulation'); *see* generally *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413-14 (1945) (agency interpretation of its own regulation is entitled to 'controlling weight unless it is plainly erroneous or inconsistent with the regulation'). On the other hand, that the Commissioner advocates a certain interpretation in a particular litigation does not alone justify judicial deference to that interpretation. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988) ('Deference to what appears to be nothing more than an

> agency's convenient litigation position would be entirely inappropriate'); *cf CSI Hydrostatic Testers, Inc. v. Commissioner*, 103 T.C. 398 409 (1994) (no deference due to Commissioner's interpretation where it is neither longstanding nor a matter of public record upon which the public is entitled to rely when planning its affairs).
>
> It is not always easy to distinguish the circumstances when deference is due from those in which it is not. The Supreme Court has looked sometimes to the consistency of an agency's interpretations as a measure of deference due. *See I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 446 n. 30 (1987) ('An agency interpretation . . . which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view.') (citation omitted). However, the Court has instructed that an agency is not 'disqualified from changing its mind' nor 'estopped from changing . . . mistaken legal interpretation.' *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993). At other times, the Court has accorded deference, even to agency interpretations appearing for the first time in an amicus brief, where there 'is simply no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question.' *Auer v. Robbins*, 519 U.S. 452, 462 (1997). A new, and therefore inconsistent position, may yet be 'fair and considered.' Agency expertise underwrites *Chevron*'s theory of deference, see *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 651-652 (1990) ('[P]ractical agency expertise is one of the principal justifications behind *Chevron* deference.'); as *Good Samaritan Hospital* recognized, experts will change their minds. However, notwithstanding this recognition, the consistency of an agency's position remains a factor to be considered in assessing the deference due that position. *See Good Samaritan Hosp.*, 508 U.S. at 417; see also *Federal Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37 (1981) (noting that the 'thoroughness, validity, and consistency of an agency's reasoning are factors that bear upon the amount of deference' due an agency's interpretation). The weight to be given to consistency as a factor in determining how 'fair and considered' is the agency's position, will ultimately 'depend on the facts of individual cases.' *Good Samaritan Hosp.*, 508 U.S. at 417."
>
> 231 F.2d at 132, 86 AFTR 2d at 2000-6167/68.

In 2003, Judge Wiese of this Court granted summary judgment to the taxpayer and denied the government's cross-motion in a tax refund suit. *Federal National Mortgage Association v. U.S.*, *supra*. Describing the issue as "the correct interpretation" of a statute and rule which "is a question of first impression in the federal courts," Judge Wiese determined that "an examination of the circumstances leading to their enactment is warranted." 91 AFTR 2d at

2003-1679/80. The IRS asked the court to give deference to the IRS' Revenue Procedure 99-43. The court's discussion is instructive:

> "Because the statute is unclear, defendant urges the court to rely on the IRS' Revenue Procedure 99-43, 1999-47 I.R.B. 579, which states unambiguously that the special rule applies only where 'both applicable periods of limitation . . . were open on July 22, 1998.' Id. at 580. This we cannot do. Revenue Procedure 99-43 is an interpretative rule that is not entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Moreover, although the doctrine of *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), entitles a revenue procedure to weight proportional to its 'power to persuade,' id. at 140, the IRS' reasoning set forth in Revenue Procedure 99-43 is not persuasive."
>
> 56 Fed. Cl. at 234, 91 AFTR 2d at 2003-1683.

This Court in *Vons Companies, Inc. v. U.S.* discussed "a split among the courts as to the weight that should be afforded to a revenue ruling. The Tax Court and the circuits following its lead have historically held that revenue rulings merely "represent the positions of one of the parties" before the court. 51 Fed. Cl. at 7, 88 AFTR 2d at 2001-6735. The *Vons Companies* court continued: "The Federal Circuit, whose precedents, of course, are binding on this court, appears to lie somewhere in the middle of this continuum, possibly with a slight cant towards the position of the Tax Court . . . Following the Federal Circuit's lead, this court has mapped out a position that considers revenue rulings, but also does not afford them binding precedent." *Id.* at 8, 88 AFTR 2d at 2001-6736. Of even less value are PLRs and TAMs, which "have precedential value only to the specific taxpayers to which they are issued." *Id.* The court next discussed GCMs. *Id.* at 11. The court concluded the GCMs "may be relevant in a refund suit as indicating the IRS interpretation of its own regulations and procedures. *However, in that regard, such memoranda are entitled to no more weight or deference than any other informal agency interpretations, including a position taken on brief.*" [Citation omitted.] *Id.* at 11-12, 88 AFTR 2d at 2001-6739 (emphasis added).

In *CSI Hydrostatic Testers*, the Tax Court was faced with an argument by the IRS in a deficiency case that the court should defer to the IRS' interpretation of the Code section in issue. The court rejected the argument as follows:

> "Respondent also contends that, because section 312(l) does not speak to the precise question in issue we should defer to respondent's interpretation of section 312(l) and section 1.1502-32, Income Tax Regs., as argued in the instant case, even though respondent has not published any interpretation of such Code and regulatory provisions. Respondent relies on *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), for the proposition that an agency's interpretation of its own regulation is entitled to deference.
>
> Although such an interpretation generally is entitled to deference, *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 413-414 (1945), in the absence of a contrary published, or at least long-standing, interpretation of the regulation in question, deference is not the rule. As the Supreme Court recently stated in *Bowen v. Georgetown Univ. Hosp.*, 488 U.S 204, 212 (1988):
>
>> 'Despite the novelty of this interpretation, the Secretary contends that it is entitled to deference under *Young v. Community Nutrition Institute*, 476 U.S. 974, 980-981 (1986), *Chemical Mfrs. Assn. v. Natural Resources Defense Council, Inc.*, 470 U.S. 116, 125 (1985), and *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-844 (1984). We have never applied the principle of those cases to agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice. To the contrary, we have declined to give deference to an agency counsel's interpretation of a statute where the agency itself has articulated no position on the question, on the ground that 'Congress has delegated to the administrative official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands.' *** Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate. ***'
>
> In short, unless an agency's interpretation of a statute or a regulation is a matter of public record and is an interpretation upon which the public is entitled to rely when planning their affairs, it will not be accorded any special deference. *Southern Pac. Transp. Co. v. Commissioner*, 75 T.C. 497, 541-542 (1980). Respondent has not cited any published ruling, procedure, or practice interpreting the interplay of section 312(l) and section 1.1502-32, Income Tax Regs. Consequently, we do not give any deference to respondent's position in the instant case."
>
> 103 T.C. at 408-409.

In *U.S. Freightways*, the Court of Appeals for the Seventh Circuit refused to give deference under either the *Chevron* or *Skidmore* rationales. 270 F.3d at 141-42, 88 AFTR 2d at 2001-6706. As to the *Chevron* issue, the court stated:

> "In the ordinary case, our focus is on the deference we must give to a regulation itself. After *Mead*, we know that we give full deference under *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), only to regulations that were promulgated with full notice-and-comment or comparable formalities. *See Mead*, 121 S. Ct. at 2171. We also know that deference to agency positions is not an all-or-nothing proposition; more informal agency statements and positions receive a more flexible respect, in which factors like 'the degree of the agency's care, its consistency, formality, and relative expertness, and . . . the persuasiveness of the agency's position,' are all relevant. *Id.*
>
> * * *
>
> *In the present case, however, no one is arguing that the regulations the Commissioner has promulgated are invalid or that they are inconsistent with the text of the Code. The issue is instead whether the Commissioner's interpretation of his own regulations is a reasonable one. And as to that, there is no question but that the interpretive methodologies he has used have been informal. The interpretation with which we are concerned has emerged inferentially in the way the IRS has applied the rules to different cases and it has appeared through the litigating positions the Service has taken.*
>
> Both the informality of this interpretation and the context in which it has arisen persuade us that full *Chevron* deference is not appropriate here. *Mead* expressly disapproved of the exercise of such deference for the customs regulations that were at issue there, in part because of the boot-strapping that could otherwise occur. With full *Chevron* deference, agencies could pass broad or vague regulations through notice-and-comment procedures, and then proceed to create rules through ad hoc interpretations that were subject only to limited judicial review. All told, we think this is a clear case for the flexible approach *Mead* described, relying on the Supreme Court's earlier decision in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), and we thus proceed on that basis."
>
> 270 F.3d at 1142; 88 AFTR 2d at 2001-6706 (emphasis added).

The court then rejected deference under the *Skidmore* standard, stating that "[p]ersuasiveness is another factor that *Skidmore* and *Mead* identify as important in this kind of case." *Id.* at 1145; 88 AFTR 2d 2001-6709. Mr. Thompson submits that his case is, at most, analogous to the highlighted paragraph quoted above in *U.S. Freightways*.

In *Officemax*, the government asked the court to defer to a revenue ruling related to the specific issue in the case. Said the Court:

> "When the Court decided *Chevron*, five years after this revenue ruling, we do not think it had in mind deferring to tax administrators who wished to impose taxes on services that were 'essentially,' but not 'literally,' within the contours of a taxing statute. Even if this circuit gave *Chevron* deference to revenue rulings, which it does not, *see Aeroquip-Vickers, Inc. v. Comm'r*, 347 F.3d 173, 181 [92 AFTR 2d 2003-6555] (6th Cir. 2003) (declining to give *Chevron* deference to revenue rulings because they lack the 'force of law'); *Ammex, Inc. v. United States*, 367 F.3d 530, 535 [93 AFTR 2d 2004-2187] n.2 (6th Cir. 2004) (same), this revenue ruling would not clear step one of the *Chevron* test.
>
> Likewise, even assuming revenue rulings were entitled to *Skidmore* respect, *cf. United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 220 [87 AFTR 2d 2001-1706] (2001) (declining to decide whether revenue rulings are entitled to deference at all), that deference would apply to a revenue ruling 'only to the extent that [it has] the 'power go persuade." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (quoting *Skidmore*, 323 U.S. at 140). Under *Skidmore*, courts should consider "the thoroughness evident in [the ruling's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (quoting *Skidmore*, 323 U.S. at 140). Generated by an agency that frequently insists that its citizens 'turn square corners,' *Rock Island, Ark. & Lou R. Co. v. United States*, 254 U.S. 141, 143 [3 AFTR 3090] (1920), this revenue ruling no more supports an 'essential' method of tax imposition than it does an 'essential' method of tax payment. *As other parts of our opinion explain, neither the legislative history nor one-sided generalizations about the purpose of the law make the case for straying from the ordinary meaning of the language in the statute. Agencies in the end receive Skidmore respect because of the persuasiveness of their reasoning, not in spite of it."*
>
> 428 F.3d at 595, 96 AFTR 2d at 2005-6834/35 (emphasis added).

There are no interpretive regulations, RRs, TAMs, PLRs, NSARs or GCMs addressing the regulations in this case. There is nothing from the IRS to which this Court may give judicial deference, other than the litigating position of the government. The only "interpretation" is the IRS Examiner's Report in Mr. Thompson's audit, which stated as follows:

> "The taxpayer is arguing that LLC member should not be limited to only 3 of the material participation tests. It is *our position* that in this case, the 500 hour test is the only applicable test. The taxpayer is citing a district court case out of

> Oregon that permitted a taxpayer to use the other tests, but *our position* on the Gregg case is as follows: It is not precedent-setting – and, most importantly, its decision was contrary to the regulations. Reg. 1.469-5T(e) explicitly treats interests *in any entity* which limits liability as limited partnership interests. *It is also important that the Commissioner has under no circumstances acquiesced to this case – and, in fact, this is not the type of case that the Commissioner would even be involved with an [sic] acquiesce or non-acquiesce.*"

App. 4 (emphasis added).[6]

According to the Examiner, the Commissioner would not "even be involved" in this "type of case." Since the Commissioner has never issued any interpretation of the regulations in issue in this case, Mr. Thompson asserts that this Court should interpret Code § 469 and Reg. § 1.469-5T(e) in accordance with congressional intent in the manner described in this brief and his prior briefs.

**b. Must a court interpret regulations in a manner that makes them internally consistent?**

The regulations involved in this case are reasonable and are consistent with the statute. This is the most important feature regulations must exhibit. Internal consistency of the regulations results from a correct interpretation. The standard applicable to statutory construction is equally applicable in construing regulations. First, as to statutory construction, the Supreme Court has held:

> "This construction will give effect to both sections; and it is a general rule, without exception, in construing statutes, that effect must be given to all their provisions, if such a construction is consistent with the general purposes of the act, and the provisions are not necessarily conflicting. All acts of the legislature should be so construed, if practicable, that one section will not defeat or destroy another, but explain and support it. When a provision admits of more than one construction, that one will be adopted which best serves to carry out the purposes of the act."

6 Mr. Thompson has already pointed out the Examiner's misstatement about the regulations, which do not refer to "any entity," but only to " partnerships." (Main Br. at 14-15, 18.)

*Bernier v. Bernier*, 147 U.S. 242, 246, 13 S. Ct. 244, 245 (1893); *Barnes Transportation Co.*, 14 T.C. 123, 126 (1950) ("It is a cardinal rule of construction that a statute is to be construed as a whole, and not as if each of its provisions was independent and unaffected by others [citations omitted].")

On the relationship between the enabling statute and the regulations, the Court of Appeals for the Sixth Circuit held as follows:

> "Treasury regulations cannot be given a construction that will violate the language of the statute they implement. *C.I.R. v. Landers Corp.*, 210 F.2d 188, 191 [45 AFTR 303] (6th Cir. 1954); *C.I.R. v. Netcher*, 143 F.2d 484, 487 [32 AFTR 1014] (7th Cir.), *cert. denied*, 323 U.S. 759 (1944). 'The traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress.' *Board of Governors of Fed. Reserve System v. Dimension Financial Corp.*, 474 U.S. 361, 368 (1986)."

*Progressive Corp. & Subs. v. U.S.*, 970 F.2d 188, 192, 70 AFTR 2d 92-5296 at 92-5299 (6th Cir. 1992).

The court further stated:

> "Wherever possible, courts should read regulations to be consistent with the statutes that authorize them, and a construction that thwarts the statute which the regulation implements is impermissible. [citations omitted]"

*Id.* at 192-93, 70 AFTR 2d at 92-5299.

The construction of treasury regulations was involved in *Black & Decker Corp. v. Comm.*, 986 F.2d. 60, 71 AFTR 2d 93-964 (4th Cir. 1993). There the court affirmed a tax court ruling against the taxpayer on an issue of foreign tax credit offsetting domestic tax liability under applicable Code sections and regulations. Black & Decker relied on Reg. § 1.861-8(b)(5) but ignored Reg. § 1.861-8(e)(9). The court stated the following:

> "Black & Decker's insistence on actual income within a class also contravenes basic principles of regulatory construction. *Regulations, like statutes, are interpreted according to canons of construction. Chief among these canons is the mandate that 'constructions which render regulatory provisions superfluous are to be avoided.'* *Hart v. McLucas*, 535 F.2d 516, 519 (9th Cir. 1976) (citing *Jay*

> *v. Boyd*, 351 U.S. 345, 360 (1956) ('We must read the body of regulations . . . so as to give effect, if possible, to all of its provisions.')). Interpreting the loss allocation provision to require allocation only against actual income would obviate any need for language that approved of allocations against a hypothetical class of income, even though no income was received. *See* C.F.R. section 1.861-8(b)(1) and (2). *The tax court recognized this incongruity by interpreting the full text of the regulations, not just isolated provisions.*
>
> 986 F.2d at 65, 71 AFTR 2d 93-967/68 (emphasis added).

Mr. Thompson asserts that Reg. § 1.469-5T(e) is reasonable, consistent with the statute, and internally consistent when interpreted to apply to "material participation." The government's interpretation ignores the internal inconsistency of § 1.469-5T(e)(i)(A) and (e)(i)(B) if read to assume that "limited liability" is the target of Code § 469. Under the reading urged by the government in this case, a taxpayer is deemed by the IRS not to materially participate (i) if state law doesn't limit his liability and (ii) if state law does limit his liability. Such a reading captures 100% of LLC members and leaves no opportunity for any member of any pass-through entity which confers limited liability to use all seven tests of material participation. The *Gregg* court found that "LLC members may materially participate in the LLC without losing their limited liability protection." 186 F. Supp. 2d. at 1129 (App. 94).[7]

As the *Black & Decker* court stated (quoting the Supreme Court): "We must read the body of regulations . . . so as to give effect, if possible, to all of its provisions." 986 F.2d at 65, 71 AFTR 2d at 93-967. Reg. § 1.469-5T(e)(3)(ii) is given effect to apply to Mr. Thompson's LLC. Mr. Thompson's "partnership [LLC] interest. . . shall not be treated as a limited partnership interest . . . if the individual is a general partner in the partnership [member-manager

---

[7] The IRS has had almost seven years since the decision in *Gregg* to fashion an interpretive regulation stating that any member having limited liability in any pass-through entity will not be eligible for all seven tests of material participation under Reg. § 1.469-5T(a). Mr. Thompson asserts such a regulation would be invalid, inconsistent with the statute, unreasonable and the Commissioner knows it.

of the LLC]." Reg. § 1.469-5T(e)(3)(ii). So read, the regulation is "reasonable" and may be read with all the other regulations in a manner that makes them internally consistent.

**3. How does 26 C.F.R. § 1.469-5T(e)(3)(ii) apply to plaintiff's matter?**

Mr. Thompson demonstrated in his prior briefs that this regulation is reasonable in the context of "material participation" and makes no sense if considered solely in the context of "limited liability." (Main Brief at 14-18 and Reply Brief at 4, 8-9). This Court pointed out at the August 2, 2007 hearing that, under Reg. § 1.469-5T(e)(3)(i)(A), "a partnership interest shall be treated as a limited partnership interest if [s]uch interest is designated [as such], *without regard to whether the liability of the holder* of such interest for obligations of the partnership *is limited* under the applicable state law." (Tr. 52) (emphasis added).

The enabling statute, Code § 469(l), directs the Secretary to "prescribe such regulations as may be necessary or appropriate to carry out provisions of this section, including regulations – (1) which specify what constitutes an activity, material participation, or active participation for purposes of this section, . . ." This is the type of legislative or substantive regulation, discussed in the preceding section of this brief, to which the court gives deference.

There are four other subparts of Code § 469(l) describing the subject of regulations which the Secretary should prescribe. None of the four suggests that the Secretary shall prescribe regulations explaining or defining "limited liability." Mr. Thompson asserts that Reg. § 1.469-5T(e)(3)(ii), dealing with general partners holding limited partnership interests, is the direct result of the Secretary's understanding that the statute dealt with "material participation" and not with "limited liability." Indeed, this particular regulation appears to flow directly from Code § 469(h)(2) – "*[e]xcept as provided in regulations*, . . ." and from the legislative history – "[t]herefore, under the bill, a limited partnership interest is treated as intrinsically passive (*except as provided in regulations*)." (Emphasis added).

This Court, at the August 2, 2007 hearing, pointed out that none of the seven tests for material participation in temporary regulation § 1.469-5T(a) refers to "liability." (Tr. 42-44.) This Court also inquired of government counsel, "[a]gain, limited partnerships are partnerships that have general partners. Who is the general partner in the L.L.C.?" Counsel responded: "In the context of the '86 act, Mr. Thompson would be the general partner." (Tr. 73.) As this Court later stated about the LLC, "there must be somebody who is a general partner in it, and (e)(3)(ii) provides that even if your liability is limited, if your interest is a general partner, if you're the one who is running the show, you get all seven factors." (Tr. 89). The proper interpretation of Reg. § 1.469-5T(e)(3)(ii) requires that Mr. Thompson, the managing member of an LLC, be entitled to use all seven tests of material participation.

**4. Why was "passive activity" defined in Code § 469 as an activity "in which the taxpayer does not materially participate" as opposed to an activity "in which the taxpayer has limited liability?"**

At the hearing, the Court noted that the word "liability" is not used in Code § 469 or in temporary treasury regulation § 1.469-5T(a), which describes the seven tests of material participation. (Tr. 38, 43-44). The Court also observed (and the government conceded) that, with respect to the four tests of Reg. § 1.469-5T(a) which the IRS did not permit Mr. Thompson to use, "[t]here is nothing about number 2, number 3, number 4, and number 7 that has connection at all to whether or not somebody has limits on liability." (Tr. 55.) Mr. Thompson asserts that the omission of "liability" from the statute and the regulations is consistent with the only rational view of Code § 469, namely that it is aimed at "material participation" and not at "limited liability."

According to the Staff of the Joint Committee, "Congress viewed the question of how to prevent harmful and excessive tax sheltering as not a simple one. One way to address the problem would have been to eliminate substantially all tax preferences in the Internal Revenue

Code. For two reasons, however, this course was determined by Congress to be inappropriate." JCS-10-87 at pp. 210-211 (App. 327-328).[8] The Report continued: "Congress determined that, in order for tax preferences to function as intended, their benefit should be directed primarily to taxpayers with a substantial and *bona fide* involvement in the activities to which the preferences related." JCS-10-87 at p. 212 (App. 329) (emphasis in original). The Report then states the following with respect to the topic of the liability of the taxpayer:

> "The relationship to an activity of an investor who did not materially participate was viewed as comparable to the relationship of a shareholder to a corporation. So long as the investor retained an interest in the activity, any reduction in the value of such interest not only might be difficult to measure accurately, but would not have been realized by the investor to a greater extent than in the context of a C corporation. In the case of a C corporation, losses and expenses borne by the corporation, and any decline in the value of the corporation's stock, did not give rise to the recognition of any loss on the part of shareholders prior to disposition of their stock. [Footnote 6 omitted.]
>
> *The distinction that Congress determined should be drawn between activities on the basis of material participation was viewed as unrelated to the question of whether, and to what extent, the taxpayer was at risk with respect to the activities.* [Footnote 7 omitted.] In general, the fact that a taxpayer placed a particular amount at risk in an activity did not establish, prior to a disposition of the taxpayer's interest, that the amount invested, or any amount, had as yet been lost. The fact that a taxpayer was potentially liable with respect to future expenses or losses of the activity likewise had no bearing on the question whether any amount had as yet been lost, or otherwise was an appropriate current deduction or credit.
>
> *At-risk standards, although important in determining the maximum amount that is subject to being lost, were viewed as not a sufficient basis for determining whether or when net losses from an activity should be deductible against other sources of income, or for determining whether an ultimate economic loss had been realized. Congress concluded that its goal of making tax preferences available principally to active participants in substantial businesses, rather than to investors seeking to shelter unrelated income, was best*

---

[8] Report prepared by the Staff of the Joint Committee on Taxation entitled "General Explanation of the Tax Reform Act of 1986." H.R. 3838 99th Congress, Public Law 99-514 ("JCS-10-87"). The Staff Report JCS-10-87 and its appendices cover 1,379 pages. A complete .pdf version of JCS-10-87 may be found at *http:\\www.house.gov\jct\pubs87.html.* Plaintiff's Second Supplemental Appendix contains excerpts. (App. 299-371).

> *accomplished by examining material participation, as opposed to the financial stake provided by an investor to purchase tax shelter benefits."*

JCS-10-87 at 213 (App. 330) (emphasis added).

The foregoing perspective of the Joint Committee Staff in 1986 validates Mr. Thompson's argument that limited liability was merely a symptom and not the ailment Congress was attempting to treat. The view of the Joint Committee Staff is not binding on this Court. However, the Staff Report reflects a lot of hard work and much thoughtful analysis, "which give it power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140, 65 S. Ct. at 164.

## PRAYER

For the reasons set forth herein, in his prior briefs and at the hearing on August 2, 2007, which demonstrate the fallacy of the position taken by the government in this case, Plaintiff respectfully asks that the Court grant Plaintiff's Motion for Partial Summary Judgment, deny Defendant's Cross-Motion for Partial Summary Judgment and grant Plaintiff such other and further relief to which he may be entitled.

Respectfully submitted,

WINSTEAD PC
5400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2199
(214) 745-5400 (Phone)
(214) 745-5390 (Fax)

By: /s/ Stuart M. Reynolds, Jr.
Thomas R. Helfand, State Bar No. 09392500
Stuart M. Reynolds, Jr., State Bar No. 16805700

**ATTORNEYS FOR PLAINTIFF JAMES R. THOMPSON**

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on this 28th day of August, 2007, a true and correct copy of the foregoing was forwarded via first class mail to the following:

Jeffrey R. Malo
U.S. Department of Justice, Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044

/s/ Stuart M. Reynolds, Jr.
One of Counsel

Dallas_1\5080562\2
44222-1 8/28/2007