IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-211T
(Judge Victor J. Wolski)

JAMES R. THOMPSON,

Plaintiff,

v.

THE UNITED STATES,

Defendant

**SECOND SUPPLEMENTAL APPENDIX TO PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

**VOLUME II**


| Description | Page(s) |
|---|---|
| Uniform Partnership Act (1996)<br>Bromberg I, A-1:1-A:1-16, A:1-73-A:1-74 | 151-170 |
| Uniform Limited Partnership Act (1916)<br>Bromberg I, B:1-B:18 | 171-188 |

ASPEN PUBLISHERS

# BROMBERG AND RIBSTEIN ON PARTNERSHIP

VOLUME I

Successor to
*Crane and Bromberg on Partnership*

ALAN R. BROMBERG
University Distinguished Professor of Law
Southern Methodist University
Of Counsel, Jenkens & Gilchrist, P.C., Dallas

LARRY E. RIBSTEIN
Richard and Marie Corman Professor of Law
University of Illinois College of Law

Wolters Kluwer
Law & Business

AUSTIN BOSTON CHICAGO NEW YORK THE NETHERLANDS

Release No. 23 — 2007-2 Supplement

This publication is designed to provide accurate and authoritative information in regard to the subject matter covered. It is sold with the understanding that the publisher is not engaged in rendering legal, accounting, or other professional services. If legal advice or other professional assistance is required, the services of a competent professional person should be sought.

—From a *Declaration of Principles* jointly adopted by a Committee of the American Bar Association and a Committee of Publishers and Associations.

© 2007, 2006-1996, 1994, 1992, and 1988
Alan R. Bromberg and Larry E. Ribstein.

Published by Aspen Publishers. All Rights Reserved.

No part of this publication may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopy, recording, or any information storage and retrieval system, without permission in writing from the publisher. Requests for permission to reproduce content should be directed to the Aspen Publishers website at *www.aspenpublishers.com*, or a letter of intent should be faxed to the permissions department at 212-771-0803.

Printed in the United States of America

1 2 3 4 5 6 7 8 9 0

Set ISBN 978-0-7355-1460-7
Vol. I 978-0-7355-5627-0
Vol. II 978-0-7355-5628-7
Vol. III 978-0-7355-5629-4
Vol. IV 978-0-7355-5630-0

Library of Congress Catalog No. 87-82663

**Release No. 23 — 2007-2 Supplement**

# ≡*Appendix A-1*≡

## UNIFORM PARTNERSHIP ACT (1996)* WITH 1997 AMENDMENT** (additions and deletions marked)

Prefatory Note

Article 1. General Provisions
§101. Definitions
§102. Knowledge and Notice
§103. Effect of Partnership Agreement; Nonwaivable Provisions
§104. Supplemental Principles of Law
§105. Execution, Filing, and Recording of Statements

* Drafted by the National Conference of Commissioners on Uniform State Laws and by it approved and recommended for enactment in all the states at its annual conference meeting in its one-hundred-and-fifth year, San Antonio, Texas, July 12 - July 19, 1996. Approved by the American Bar Association, San Antonio, Texas, February 4, 1997. This act has been printed through the permission of the National Conference of Commissioners on Uniform State Laws, and copies of the act may be ordered from them at 211 East Ontario Street, Suite 1300, Chicago, Illinois 60611.

Additions to and deletions from this act are represented, respectively, by underscores and strike-overs.

** Section 801, Events Causing Dissolution and Winding Up of Partnership Business, and the Comment thereto, was amended in 1997.

§106. Governing Law
§107. Partnership Subject to Amendment or Repeal of [Act]

Article 2. Nature of Partnership
§201. Partnership As Entity
§202. Formation of Partnership
§203. Partnership Property
§204. When Property Is Partnership Property

Article 3. Relations of Partners to Persons Dealing With Partnership
§301. Partner Agent of Partnership
§302. Transfer of Partnership Property
§303. Statement of Partnership Authority
§304. Statement of Denial
§305. Partnership Liable for Partner's Actionable Conduct
§306. Partner's Liability
§307. Actions by and Against Partnership and Partners
§308. Liability of Purported Partner

Article 4. Relations of Partners to Each Other and to Partnership
§401. Partner's Rights and Duties
§402. Distributions in Kind
§403. Partner's Rights and Duties With Respect to Information
§404. General Standards of Partner's Conduct
§405. Actions by Partnership and Partners
§406. Continuation of Partnership Beyond Definite Term or Particular Undertaking

Article 5. Transferees and Creditors of Partner
§501. Partner Not Co-Owner of Partnership Property
§502. Partner's Transferable Interest in Partnership
§503. Transfer of Partner's Transferable Interest
§504. Partner's Transferable Interest Subject to Charging Order

Article 6. Partner's Dissociation
§601. Events Causing Partner's Dissociation
§602. Partner's Power to Dissociate; Wrongful Dissociation
§603. Effect of Partner's Dissociation

Article 7. Partner's Dissociation When Business Not Wound Up
§701. Purchase of Dissociated Partner's Interest
§702. Dissociated Partner's Power to Bind and Liability to Partnership
§703. Dissociated Partner's Liability to Other Persons
§704. Statement of Dissociation
§705. Continued Use of Partnership Name

Article 8. Winding Up Partnership Business
§801. Events Causing Dissolution and Winding Up of Partnership Business
§802. Partnership Continues After Dissolution
§803. Right to Wind Up Partnership Business
§804. Partner's Power to Bind Partnership After Dissolution
§805. Statement of Dissolution
§806. Partner's Liability to Other Partners After Dissolution
§807. Settlement of Accounts and Contributions Among Partners

Article 9. Conversions and Mergers
§901. Definitions
§902. Conversion of Partnership to Limited Partnership
§903. Conversion of Limited Partnership to Partnership
§904. Effect of Conversion; Entity Unchanged
§905. Merger of Partnerships
§906. Effect of Merger
§907. Statement of Merger
§908. Nonexclusive

Article 10. Limited Liability Partnership
§1001. Statement of Qualification
§1002. Name
§1003. Annual Report

Article 11. Foreign Limited Liability Partnership
§1101. Law Governing Foreign Limited Liability Partnership
§1102. Statement of Foreign Qualification
§1103. Effect of Failure to Qualify
§1104. Activities Not Constituting Transacting Business
§1105. Action by [Attorney General]

Article 12. Miscellaneous Provisions
§1201. Uniformity of Application and Construction
§1202. Short Title
§1203. Severability Clause
§1204. Effective Date
§1205. Repeals
§1206. Applicability
§1207. Savings Clause
§1208. Effective Date
§1209. Repeals
§1210. Applicability
§1211. Savings Clause

Conversion Table: U.P.A. and R.U.P.A.

## LIMITED LIABILITY PARTNERSHIP AMENDMENTS TO UNIFORM PARTNERSHIP ACT (1994)

The Committee that acted for the National Conference of Commissioners on Uniform State Laws in preparing the Uniform Partnership Act (1996) was as follows:

HARRY J. HAYNSWORTH, IV, William Mitchell College of Law, 875 Summit Avenue, St. Paul, MN 55105, *Chair*

ANN E. CONAWAY ANKER, Widener University, School of Law, P.O. Box 7474, Wilmington, DE 19803

REX BLACKBURN, Suite 200, 1101 W. River Street, P.O. Box 959, Boise, ID 83701

STANLEY M. FISHER, 1100 Huntington Building, Cleveland, OH 44115

REED L. MARTINEAU, P.O. Box 45000, 10 Exchange Place, Salt Lake City, UT 84145

JOHN M. SPANGLER, Legislative Research Commission, Room 409, State Capitol, Frankfort, KY 40601

HOWARD J. SWIBEL, Suite 1200, 120 South Riverside Plaza, Chicago, IL 60606

JUSTIN L. VIGDOR, 2400 Chase Square, Rochester, NY 14604

CARTER G. BISHOP, Suffolk University Law School, 41 Temple Street, Boston, MA 02114, *Reporter*

### EX OFFICIO

BION M. GREGORY, Office of Legislative Counsel, State Capitol, Suite 3021, Sacramento, CA 95814-4996, *President*

HENRY M. KITTLESON, P.O. Box 32092, 92 Lake Wire Drive, Lakeland, FL 33802, *Chair, Division E*

## EXECUTIVE DIRECTOR

FRED H. MILLER, University of Oklahoma, College of Law, 300 Timberdell Road, Norman, OK 73019, *Executive Director*
WILLIAM J. PIERCE, 1505 Roxbury Road, Ann Arbor, MI 48104, *Executive Director Emeritus*

## ABA ADVISORS TO DRAFTING COMMITTEE

ELIZABETH G. HESTER, *ABA*, Richmond, VA
LOU CONTI, *ABA Section of Business Law*, Orlando, FL
STEVEN G. FROST, *ABA Section of Taxation*, Chicago, IL
PROFESSOR THOMAS E. GEU, *ABA Section of Real Property, Probate and Trust*, University of South Dakota School of Law
SANFORD J. LIEBSCHUTZ, *ABA Section of Real Property, Probate and Trust* and *American College of Real Estate Lawyers*, Rochester, NY

## UNIFORM PARTNERSHIP ACT (1994)

**Approved and Recommended, Chicago, Illinois,**
**July 29-August 5, 1994**
**Approved by the American Bar Association, August 10, 1994**

**Succeeded by the Uniform Partnership Act (1996)**

The Committee that acted for the National Conference of Commissioners on Uniform State Laws in preparing the Uniform Partnership Act (1994) was as follows:

H. LANE KNEEDLER, Suite 600, 411 East Franklin Street, P.O. Box 3-K, Richmond, VA 23206, *Chair*
GEORGE H. BUXTON, III, P.O. Box 5389, Oak Ridge, TN 37831
ROBERT H. CORNELL, 34th Floor, 101 California Street, San Francisco, CA 94111

WILLIAM C. GARDNER, 4366 Argyle Terrace, N.W., Washington, DC 20011

HARRY J. HAYNSWORTH, IV, Southern Illinois University, School of Law, Lesar Law Building, Douglas Drive, Carbondale, IL 62901

MENDES HERSHMAN, 20th Floor, 575 Madison Avenue, New York, NY 10022

THOMAS L. JONES, University of Alabama, School of Law, P.O. Box 5557, University Station, Tuscaloosa, AL 35486

MORRIS W. MACEY, Suite 700, 133 Carnegie Way, N.W., Atlanta, GA 30303

FRANCIS J. PAVETTI, P.O. Box 829, Court House Square Building, New London, CT 06320

HAROLD E. READ, JR., 5631 East Desert Vista Trail, Cave Creek, AZ 85331

HOWARD J. SWIBEL, Suite 1200, 120 South Riverside Plaza, Chicago, IL 60606

M. GAY TAYLOR, Office of Legislative Research, 436 State Capitol, Salt Lake City, UT 84114

DONALD J. WEIDNER, Florida State University, College of Law, 425 West Jefferson Street, Tallahassee, FL 32306, *Reporter*

JOHN W. LARSON, Florida State University, College of Law, 425 West Jefferson Street, Tallahassee, FL 32306, *Assistant Reporter*

## EX OFFICIO

RICHARD C. HITE, 200 West Douglas Avenue, Suite 630, Wichita, KS 67202, *President*

K. KING BURNETT, P.O. Box 910, 115 Broad Street, Salisbury, MD 21803, *Chair, Division A*

## EXECUTIVE DIRECTOR

FRED H. MILLER, University of Oklahoma, College of Law, 300 Timberdell Road, Norman, OK 73019, *Executive Director*

WILLIAM J. PIERCE, 1505 Roxbury Road, Ann Arbor, MI 48104, *Executive Director Emeritus*

## REVIEW COMMITTEE

JOHN FOX ARNOLD, 714 Locust Street, St. Louis, MO 63101, *Chair*
L. S. JERRY KURTZ, JR., 810 N Street, Anchorage, AK 99501
ROGER P. MORGAN, P.O. Box 588, Mystic, CT 06355

## ABA ADVISORS TO DRAFTING COMMITTEE

ALLAN G. DONN, *American Bar Association*
S. STACY EASTLAND, *American Bar Association, Section of Real Property, Probate and Trust Law, Probate and Trust Division*
CARYL B. WELBORN, *American Bar Association, Section of Real Property, Probate and Trust Law, Real Property Division*

## UNIFORM PARTNERSHIP ACT — QUICK CHRONOLOGY

1914 — Original Uniform Partnership Act

1992 — Promulgation of Uniform Partnership Act (1992) by Uniform Law Commissioners

1993 — Amendments to Uniform Partnership Act (1992) Becomes Uniform Partnership Act (1993)

1994 — Amendments to Uniform Partnership Act (1993) Becomes Uniform Partnership Act (1994)

1996 — Amendments to Uniform Partnership Act (1994) Adds Limited Liability Partnership. Becomes **Uniform Partnership Act (1996)**

## PREFATORY NOTE

The National Conference of Commissioners on Uniform State Laws first considered a uniform law of partnership in 1902. Although early drafts had proceeded along the mercantile or "entity" theory of partnerships, later drafts were based on the common-law "aggregate" theory. The resulting Uniform Partnership Act ("UPA"), which embodied certain aspects of each theory, was finally approved by the Conference in 1914. The UPA governs general partnerships, and also governs limited partnerships except where the limited partnership statute is inconsistent. The UPA has been adopted in every State other than Louisiana and has been the subject of remarkably few amendments in those States over the past 80 years.

In January of 1986, an American Bar Association subcommittee issued a detailed report that recommended extensive revisions to the UPA. *See* UPA Revision Subcommittee of the Committee on Partnerships and Unincorporated Business Organizations, Section of Business Law, American Bar Association, *Should the Uniform Partnership Act be Revised?*, 43 Bus. Law. 121 (1987) ("ABA Report"). The ABA Report recommended that the entity theory "should be incorporated into any revision of the UPA whenever possible." *Id.* at 124.

In 1987, the Conference appointed a Drafting Committee to Revise the Uniform Partnership Act and named a Reporter. The Committee held its initial meeting in January of 1988 and a first reading of the Committee's draft was begun at the Conference's 1989 Annual Meeting in Kauai, Hawaii. The first reading was completed at the 1990 Annual Meeting in Milwaukee. The second reading was begun at Naples, Florida, in 1991 and completed at San Francisco in 1992. The Revised Uniform Partnership Act (1992) was adopted unanimously by a vote of the States on August 6, 1992. The following year, in response to suggestions from various groups, including an American Bar Association subcommittee and several state bar associations, the Drafting Committee recommended numerous revisions to the Act. Those were adopted at the Charleston, South Carolina, Annual Meeting in 1993, and the Act was restyled as the Uniform Partnership Act

(1993). Subsequently, a final round of changes was incorporated, and the Conference unanimously adopted the Uniform Partnership Act (1994) at its 1994 Annual Meeting in Chicago. The Revised Act was approved by the American Bar Association House of Delegates in August, 1994.

The Uniform Partnership Act (1994) ("Revised Act" or "RUPA") gives supremacy to the partnership agreement in almost all situations. The Revised Act is, therefore, largely a series of "default rules" that govern the relations among partners in situations they have not addressed in a partnership agreement. The primary focus of RUPA is the small, often informal, partnership. Larger partnerships generally have a partnership agreement addressing, and often modifying, many of the provisions of the partnership act.

The Revised Act enhances the entity treatment of partnerships to achieve simplicity for state law purposes, particularly in matters concerning title to partnership property. RUPA does not, however, relentlessly apply the entity approach. The aggregate approach is retained for some purposes, such as partners' joint and several liability.

The Drafting Committee spent significant effort on the rules governing partnership breakups. RUPA's basic thrust is to provide stability for partnerships that have continuation agreements. Under the UPA, a partnership is dissolved every time a member leaves. The Revised Act provides that there are many departures or "dissociations" that do not result in a dissolution.

Under the Revised Act, the withdrawal of a partner is a "dissociation" that results in a dissolution of the partnership only in certain limited circumstances. Many dissociations result merely in a buyout of the withdrawing partner's interest rather than a winding up of the partnership's business. RUPA defines both the substance and procedure of the buyout right.

Article 6 of the Revised Act covers partner dissociations; Article 7 covers buyouts; and Article 8 covers dissolution and the winding up of the partnership business. *See generally* Donald J. Weidner & John W. Larson, *The Revised Uniform Partnership Act: The Reporters' Overview*, 49 Bus. Law. 1 (1993).

The Revised Act also includes a more extensive treatment of the fiduciary duties of partners. Although RUPA continues the traditional rule that a partner is a fiduciary, it also makes clear that a partner is not required to be a disinterested trustee. Provision is made for the legitimate pursuit of self-interest, with a counter-balancing irreducible core of fiduciary duties.

Another significant change introduced by RUPA is provision for the public filing of statements containing basic information about a partnership, such as the agency authority of its partners. Because of the informality of many partnerships, and the inadvertence of some, mandatory filings were eschewed in favor of a voluntary regime. It was the Drafting Committee's belief, however, that filings would become routine for sophisticated partnerships and would be required by lenders and others for major transactions.

Another innovation is found in Article 9. For the first time, the merger of two or more partnerships and the conversion of partnerships to limited partnerships (and the reverse) is expressly authorized, and a "safe harbor" procedure for effecting such transactions is provided.

One final change deserves mention. Partnership law no longer governs limited partnerships pursuant to the provisions of RUPA itself. First, limited partnerships are not "partnerships" within the RUPA definition. Second, UPA Section 6(2), which provides that the UPA governs limited partnerships in cases not provided for in the Uniform Limited Partnership Act (1976) (1985) ("RULPA") has been deleted. No substantive change in result is intended, however. Section 1105 of RULPA already provides that the UPA governs in any case not provided for in RULPA, and thus the express linkage in RUPA is unnecessary. Structurally, it is more appropriately left to RULPA to determine the applicability of RUPA to limited partnerships. It is contemplated that the Conference will review the linkage question carefully, although no changes in RULPA may be necessary despite the many changes in RUPA.

Finally, the Drafting Committee wishes to express its deep appreciation for the extraordinary time and effort that has been devoted to this project by its Reporter, Donald J. Weidner, Dean

of the Florida State University College of Law; by its Assistant Reporter, Professor John W. Larson of the Florida State University College of Law; by its American Bar Association Advisors Allan G. Donn, of Norfolk, Virginia (ABA Section of Taxation and later the ABA Advisor, and a member of the original ABA subcommittee that recommended revising the UPA), Harry J. Haynsworth, Dean of the Southern Illinois University School of Law (the original ABA Advisor until he became a Commissioner and member of the Drafting Committee in 1992 and who was also a member of the original ABA subcommittee), S. Stacy Eastland, of Houston, Texas (Probate and Trust Division of the ABA Section of Real Property, Probate and Trust Law), and Caryl B. Welborn, of San Francisco, California (Real Property Division of the ABA Section of Real Property, Probate and Trust Law); and by a number of other advisors and observers without whose assistance the successful completion of this project would not have been possible: Edward S. Merrill of Walnut Creek, California, Gregory P.L. Pierce of Chicago, Illinois, Paul L. Lion, III, of San Jose, California, Professor Robert W. Hillman of the University of California at Davis School of Law, John Goode of Richmond, Virginia, Ronald H. Wilcomes of New York, New York, Professor Gary S. Rosin of the South Texas College of Law, James F. Fotenos of San Francisco, California, and Joel S. Adelman of Detroit, Michigan (who also was a member of the original ABA subcommittee). The Drafting Committee also would like to express its appreciation to the members of the ABA Committee on Partnerships and Unincorporated Business Organizations, and its chairs, Thurston R. Moore of Richmond, Virginia, and John H. Small of Wilmington, Delaware, for all the time and effort they devoted to this project, and to that Committee's special Subcommittee on the Revised Uniform Partnership Act, the chairs of that subcommittee, Lauris G.L. Rall of New York, New York, and Gerald V. Niesar of San Francisco, California, and its members, in particular, Robert R. Keatinge of Denver, Colorado, Professor Larry E. Ribstein of the George Mason University School of Law, and Anthony van Westrum of Denver, Colorado. Each of these individuals added immeasurably to the Drafting Committee's discussion and con-

sideration of both the major policy issues and the technical drafting issues raised by the Act.

## Addendum

In 1995, the Conference appointed a Drafting Committee to add provisions to RUPA authorizing the creation of a new form of general partnership called a limited liability partnership (LLP). At the time RUPA was first approved in 1992, only two states had adopted limited liability partnership legislation. By the time the LLP amendments to RUPA were approved by the Conference at the 1996 Annual Meeting, over forty states had adopted limited liability partnership provisions to their general partnership statutes.

The LLP amendments to RUPA deal with four major issues: (1) scope of a partner's liability shield; (2) the voting requirement to become an LLP; (3) the effect of becoming an LLP on the partnership agreement; and (4) the annual filing requirement.

### 1. Scope of a Partner's Liability Shield

The amendments to add LLP provisions to RUPA include a new Section 306(c) providing for a corporate-styled liability shield which protects partners from vicarious personal liability for all partnership obligations incurred while a partnership is a limited liability partnership. The complete liability shield comports with the modern trend among the states. Most states, however, have adopted a partial liability shield protecting the partners only from vicarious personal liability for all partnership obligations arising from negligence, wrongful acts or misconduct, whether characterized as tort, contract or otherwise, committed while the partnership is an LLP. The Act does not alter a partner's liability for personal misconduct and does not alter the normal partnership rules regarding a partner's right to indemnification from the partnership (Section 401(c)). Therefore, the primary effect of the new liability shield is to sever a partner's personal liability to make contributions to the partnership when partnership assets are insufficient to cover its indemnification

obligation to a partner who incurs a partnership obligation in the ordinary course of the partnership's business.

## 2. Voting Requirement to Become an LLP

The Act includes a new Section 1001(b) which provides that the decision to become an LLP is a major partnership event equivalent to an amendment of the partnership agreement. Therefore, the required vote equals the vote required to amend the partnership agreement. When the agreement is silent on these matters, the required vote would be unanimous. Where the agreement includes several amendment votes depending on the nature of the amendment, the required vote is that which considers contribution obligations since those obligations are the most affected by the amendments. Most states currently consider the required vote to become a limited liability partnership to be an ordinary partnership decision requiring only a majority consent.

In becoming an LLP, each partner should consider a personal liability calculus. Where partnership assets are insufficient to indemnify a partner for an LLP obligation, each partner forfeits a right to receive contributions from other partners in exchange for being relieved of the obligation to contribute to the personal liability of other partners. This calculus will be different for each partner and will vary, for example, depending on the size and business of the partnership, the number of partners, the amount of insurance, and the relative risk of each partner's business practice compared to fellow partners. To adequately consider these varying interests, the Act adopts the vote required to amend the partnership agreement in special and general cases.

## 3. Effect of Becoming an LLP on the Partnership Agreement

The last sentence in new Section 306(c) provides that when a partnership becomes an LLP, the resulting liability shield applies notwithstanding inconsistent provisions of the partnership agreement existing immediately before the vote to become an LLP was taken. When the partners vote to become an LLP, they obviously intend to sever their personal responsibility to make

contributions to the partnership when partnership assets are insufficient to cover partnership indemnification obligations to a partner. A partner's contribution obligation may be enforced not only by a partner (Sections 401 and 405) but also by a partner's creditors (Section 807(f)). In essence, the new Section 306(c) automatically "amends" the partnership agreement to remove personal liability for contribution obligations that may exist under the terms of the partnership agreement as it exists immediately before the vote. However, the partners are not prohibited from thereafter amending the partnership agreement again to reestablish contribution obligations (see Section 103(b)).

4. **Annual Filing Requirement**

The Act includes new Section 1001(d) which provides that a partnership's status as an LLP remains effective until it is revoked by a vote of the partners or is canceled by the Secretary of State under new Section 1003(c) for the failure to file an annual report or pay the required annual fees. Most states provide that unless an LLP timely files an annual registration statement, its LLP status is "automatically" terminated but may be resurrected prospectively only with a subsequent corrective filing. Under this view, an operating partnership may have significant "gaps" in its shield which is further complicated by sourcing rules necessary to determine when a partnership obligation belongs to the shielded LLP or the unshielded partnership. As with corporations and limited liability companies, the Act preserves the LLP status and the partners' liability shield unless the LLP status is revoked by the partners or canceled by the Secretary of State. In the latter case, potential gaps in the liability shield are cured with a retroactive resurrection of the LLP status if a corrective filing is made within two years (Section 1003(e)).

The LLP Drafting Committee wishes to express its gratitude to the Reporter for this project, Professor Carter G. Bishop of Suffolk University Law School. Professor Bishop's comprehensive knowledge of partnership law and tax and his drafting expertise were instrumental in enabling the Drafting Committee to complete this project in one year. The Drafting Committee also wishes to thank the following advisors and observers, whose

expertise and advice were very important to the success of this project: Elizabeth G. Hester of Richmond, Virginia (ABA Advisor); Lou Conti of Orlando, Florida (ABA Section of Business Law Advisor); Steven G. Frost of Chicago, Illinois (ABA Section of Taxation Advisor); Professor Thomas E. Geu of the University of South Dakota School of Law (ABA Section of Real Property, Probate and Trust Advisor); Sanford J. Liebschutz of Rochester, New York (ABA Section of Real Property, Probate and Trust Advisor and American College of Real Estate Lawyers Advisor); Robert A. Creamer of Chicago, Illinois (Attorneys' Liability Assurance Society, Inc.); R. Michael Duffy of Washington, D.C. (The Accountant's Coalition); Professor Philip Hablutzel of Chicago, Illinois (Illinois Secretary of State's Corporation Law Advisory Committee; Robert R. Keatinge of Denver, Colorado (ABA Business Law Section); Mark Lubin of San Francisco, California (California Bar Association); Professor Sandra Miller of Chester, Pennsylvania; and William R. Stein of Washington, D.C. (The Accountant's Coalition); and Ronald H. Wilcomes of Paramus, New Jersey (American College of Real Estate Lawyers).

## [ARTICLE] 4
## RELATIONS OF PARTNERS TO EACH OTHER AND TO PARTNERSHIP

### SECTION 401. PARTNER'S RIGHTS AND DUTIES.

(a) Each partner is deemed to have an account that is:

(1) credited with an amount equal to the money plus the value of any other property, net of the amount of any liabilities, the partner contributes to the partnership and the partner's share of the partnership profits; and

(2) charged with an amount equal to the money plus the value of any other property, net of the amount of any liabilities, distributed by the partnership to the partner and the partner's share of the partnership losses.

(b) Each partner is entitled to an equal share of the partnership profits and is chargeable with a share of the partnership losses in proportion to the partner's share of the profits.

(c) A partnership shall reimburse a partner for payments made and indemnify a partner for liabilities incurred by the partner in the ordinary course of the business of the partnership or for the preservation of its business or property.

(d) A partnership shall reimburse a partner for an advance to the partnership beyond the amount of capital the partner agreed to contribute.

(e) A payment or advance made by a partner which gives rise to a partnership obligation under subsection (c) or (d) constitutes a loan to the partnership which accrues interest from the date of the payment or advance.

(f) Each partner has equal rights in the management and conduct of the partnership business.

(g) A partner may use or possess partnership property only on behalf of the partnership.

(h) A partner is not entitled to remuneration for services performed for the partnership, except for reasonable compensation for services rendered in winding up the business of the partnership.

(i) A person may become a partner only with the consent of all of the partners.

(j) A difference arising as to a matter in the ordinary course of business of a partnership may be decided by a majority of the partners. An act outside the ordinary course of business of a partnership and an amendment to the partnership agreement may be undertaken only with the consent of all of the partners.

(k) This section does not affect the obligations of a partnership to other persons under Section 301.

Comment

1. Section 401 is drawn substantially from UPA Section 18. It establishes many of the default rules that govern the relations among partners. All of these rules are, however, subject to contrary agreement of the partners as provided in Section 103.

2. Subsection (a) provides that each partner is deemed to have an account that is credited with the partner's contributions and share of the partnership profits and charged with distributions to the partner and the partner's share of partnership losses. In the absence of another system of partnership accounts, these rules establish a rudimentary system of accounts for the partnership. The rules regarding the settlement of the partners' accounts upon the dissolution and winding up of the partnership business are found in Section 807.

3. Subsection (b) establishes the default rules for the sharing of partnership profits and losses. The UPA Section 18(a) rules that profits are shared equally and that losses, whether capital or operating, are shared in proportion to each partner's share of the profits are continued. Thus, under the default rule, partners share profits per capita and not in proportion to capital contribution as do corporate shareholders or partners in limited partnerships. Compare RULPA Section 504. With respect to losses, the qualifying phrase, "whether capital or operating," has been deleted as inconsistent with contemporary partnership accounting practice and terminology; no substantive change is intended.

If partners agree to share profits other than equally, losses will be shared similarly to profits, absent agreement to do otherwise. That rule, carried over from the UPA, is predicated on the assumption that partners would likely agree to share losses on the

# ≡Appendix B≡

# UNIFORM LIMITED PARTNERSHIP ACT (1916)*

Official Comment
§1 Limited Partnership Defined
§2 Formation
§3 Business Which May Be Carried On
§4 Character of Limited Partner's Contribution
§5 A Name Not to Contain Surname of Limited Partner; Exceptions
§6 Liability for False Statements in Certificate
§7 Limited Partner Not Liable to Creditors
§8 Admission of Additional Limited Partners
§9 Rights, Powers and Liabilities of a General Partner
§10 Rights of a Limited Partner
§11 Status of Person Erroneously Believing Himself a Limited Partner
§12 One Person Both General and Limited Partner
§13 Loans and Other Business Transactions with Limited Partner
§14 Relation of Limited Partners Inter Se
§15 Compensation of Limited Partner
§16 Withdrawal or Reduction of Limited Partner's Contribution
§17 Liability of Limited Partner to Partnership
§18 Nature of Limited Partner's Interest in Partnership
§19 Assignment of Limited Partner's Interest
§20 Effect of Retirement, Death or Insanity of a General Partner
§21 Death of Limited Partner

* This act has been printed through the permission of the National Conference of Commissioners on Uniform State Laws, and copies of the act may be ordered from them at 211 East Ontario Street, Suite 1300, Chicago, Illinois 60611.

*Official Comment*

The business reason for the adoption of acts making provisions for limited or special partners is that men in business often desire to secure capital from others. There are at least three classes of contracts which can be made with those from whom the capital is secured: One, the ordinary loan on interest; another, the loan where the lender, in lieu of interest, takes a share in the profits of the business; third, those cases in which the person advancing the capital secures, besides a share in the profits, some measure of control over the business.

At first, in the absence of statutes the courts, both in this country and in England, assumed that one who is interested in a business is bound by its obligations, carrying the application of this principle so far, that a contract where the only evidence of interest was a share in the profits made one who supposed himself a lender, and who was probably unknown to the creditors at the times they extended their credits, unlimitedly liable as a partner for the obligations of those actually conducting the business.

Later decisions have much modified the earlier cases. The lender who takes a share in the profits, except possibly in one or two of our jurisdictions, does not by reason of that fact run a risk of being held as a partner. If, however, his contract falls within the third class mentioned, and he has any measure of control over the business, he at once runs serious risk of being held liable for the debts of the business as a partner; the risk increasing as he increases the amount of his control.

The first Limited Partnership Act was adopted by New York in 1822; the other commercial states, during the ensuing 30 years, following her example. Most of the statutes follow the language of the New York statute with little material alteration. These statutes were adopted, and to a considerable degree interpreted by the courts, during that period when it was generally held that any interest in a business should make the person holding the interest liable for its obligations. As a result the courts usually assume in the interpretation of these statutes two principles as fundamental.

First: That a limited (or as he is also called a special) partner is a partner in all respects like anyother partner, except that to obtain

the privilege of a limitation on his liability, he has conformed to the statutory requirements in respect to filing a certificate and refraining from participation in the conduct of the business.

Second: The limited partner, on any failure to follow the requirements in regard to the certificate or any participation in the conduct of his business, loses his privilege of limited liability and becomes, as far as those dealing with the business are concerned, in all respects a partner.

The courts in thus interpreting the statutes, although they made an American partnership with limited members something very different from the French Societe en Commandite from which the idea of the original statutes was derived, unquestionably carried out the intent of those responsible for their adoption. This is shown by the very wording of the statutes themselves. For instance, all the statutes require that all partners, limited and general, shall sign the certificate, and nearly all state that: "If any false statement be made in such certificate all the persons interested in such partnership shall be liable for all the engagements thereof as general partners."

The practical result of the spirit shown in the language and in the interpretation of existing statutes, coupled with the fact that a man may now lend money to a partnership and take a share in the profits in lieu of interest without running serious danger of becoming bound for partnership obligations, has, to a very great extent, deprived the existing statutory provisions for limited partners of any practical usefulness. Indeed, apparently their use is largely confined to associations in which those who conduct the business have not more than one limited partner.

One of the causes forcing business into the corporate form, in spite of the fact that the corporate form is ill suited to many business conditions, is the failure of the existing limited partnership acts to meet the desire of the owners of a business to secure necessary capital under the existing limited partnership form of business association.

The draft herewith submitted proceeds on the following assumptions:

First: No public policy requires a person who contributes to the capital of a business, acquires an interest in the profits, and some degree of control over the conduct of the business, to become

bound for the obligations of the business; provided creditors have no reason to believe at the times their credits were extended that such person was so bound.

Second: That persons in business should be able, while remaining themselves liable without limit for the obligations contracted in its conduct, to associate with themselves others who contribute to the capital and acquire rights of ownership, provided that such contributors do not compete with creditors for the assets of the partnership.

The attempt to carry out these ideas has led to the incorporation into the draft submitted of certain features, not found in, or differing from, existing limited partnership acts.

First: In the draft the person who contributes the capital, though in accordance with custom called a limited partner, is not in any sense a partner. He is, however, a member of the association (see Sec. 1.).

Second: As limited partners are not partners securing limited liability by filing a certificate, the association is formed when substantial compliance, in good faith, is had with the requirements for a certificate (Sec. 2(2)). This provision eliminates the difficulties which arise from the recognition of de facto associations, made necessary by the assumption that the association is not formed unless a strict compliance with the requirements of the act is had.

Third: The limited partner not being in any sense a principal in the business, failure to comply with the requirements of the act in respect to the certificate, while it may result in the nonformation of the association, does not make him a partner or liable as such. The exact nature of his ability in such cases is set forth in Sec. 11.

Fourth: The limited partner, while not as such in any sense a partner, may become a partner as any person not a member of the association may become a partner; and, becoming a partner, may nevertheless retain his rights as limited partner; this last provision enabling the entire capital embraced in the business to be divided between the limited partners, all the general partners being also limited partners (Sec. 12).

Fifth: The limited partner is not debarred from loaning money or transacting other business with the partnership as any other nonmember; provided he does not, in respect to such transactions,

accept from the partnership collateral security, or receive from any partner or the partnership any payment, conveyance, or release from liability, if at the time the assets of the partnership are not sufficient to discharge its obligations to persons not general or limited partners. (Sec. 13).

Sixth: The substitution of a person as limited partner in place of an existing limited partner, or the withdrawal of a limited partner, or the addition of new limited partners, does not necessarily dissolve the association (Secs. 8, 16(2b)); no limited partner, however, can withdraw his contribution until all liabilities to creditors are paid (Sec. 16(1a)).

Seventh: As limited partners are not principals in transactions of the partnership, their liability, except for known false statements in the certificate (Sec. 6), is to the partnership, not to creditors of the partnership (Sec. 17). The general partners cannot, however, waive any liability of the limited partners to the prejudice of such creditors (Sec. 17(3)).

## *§1. Limited Partnership Defined*

A limited partnership is a partnership formed by two or more persons under the provisions of Section 2, having as members one or more general partners and one or more limited partners. The limited partners as such shall not be bound by the obligations of the partnership.

## *§2. Formation*

(1) Two or more persons desiring to form a limited partnership shall

(a) Sign and swear to a certificate, which shall state

I. The name of the partnership,

II. The character of the business,

III. The location of the principal place of business,

IV. The name and place of residence of each member; general and limited partners being respectively designated,

V. The term for which the partnership is to exist,

VI. The amount of cash and a description of and the agreed value of the other property contributed by each limited partner,

VII. The additional contributions, if any, agreed to be made by each limited partner and the times at which or events on the happening of which they shall be made,

VIII. The time, if agreed upon, when the contribution of each limited partner is to be returned,

IX. The share of the profits or the other compensation by way of income which each limited partner shall receive by reason of his contribution,

X. The right, if given, of a limited partner to substitute an assignee as contributor in his place, and the terms and conditions of the substitution,

XI. The right, if given, of the partners to admit additional limited partners,

XII. The right, if given, of one or more of the limited partners to priority over other limited partners, as to contributions or as to compensation by way of income, and the nature of such priority,

XIII. The right, if given, of the remaining general partner or partners to continue the business on the death, retirement or insanity of a general partner, and

XIV. The right, if given, of a limited partner to demand and receive property other than cash in return for his contribution.

(b) File for record the certificate in the office of [here designate the proper office].

(2) A limited partnership is formed if there has been substantial compliance in good faith with the requirements of paragraph (1).

## §3. *Business Which May Be Carried On*

A limited partnership may carry on any business which a partnership without limited partners may carry on, except [here designate the business to be prohibited].

## §4. *Character of Limited Partner's Contribution*

The contributions of a limited partner may be cash or other property, but not services.

## §5. *A Name Not to Contain Surname of Limited Partner; Exceptions*

(1) The surname of a limited partner shall not appear in the partnership name, unless

(a) It is also the surname of a general partner, or

(b) Prior to the time when the limited partner became such the business had been carried on under a name in which his surname appeared.

(2) A limited partner whose name appears in a partnership name contrary to the provisions of paragraph (1) is liable as a general partner to partnership creditors who extend credit to the partnership without actual knowledge that he is not a general partner.

## §6. *Liability for False Statements in Certificate*

If the certificate contains a false statement, one who suffers loss by reliance on such statement may hold liable any party to the certificate who knew the statement to be false.

(a) At the time he signed the certificate, or

(b) Subsequently, but within a sufficient time before the statement was relied upon to enable him to cancel or amend the certificate, or to file a petition for its cancellation or amendment as provided in Section 25(3).

## §7. *Limited Partner Not Liable to Creditors*

A limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, he takes part in the control of the business.

B:7

## §8. *Admission of Additional Limited Partners*

After the formation of a limited partnership, additional limited partners may be admitted upon filing an amendment to the original certificate in accordance with the requirements of Section 25.

## §9. *Rights, Powers and Liabilities of a General Partner*

(1) A general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners, except that without the written consent or ratification of the specific act by all the limited partners, a general partner or all of the general partners have no authority to

(a) Do any act in contravention of the certificate,

(b) Do any act which would make it impossible to carry on the ordinary business of the partnership,

(c) Confess a judgment against the partnership,

(d) Possess partnership property, or assign their rights in specific partnership property, for other than a partnership purpose,

(e) Admit a person as a general partner,

(f) Admit a person as a limited partner, unless the right so to do is given in the certificate,

(g) Continue the business with partnership property on the death, retirement or insanity of a general partner, unless the right so to do is given in the certificate.

## §10. *Rights of a Limited Partner*

(1) A limited partner shall have the same rights as a general partner to

(a) Have the partnership books kept at the principal place of business of the partnership, and at all times to inspect and copy any of them.

(b) Have on demand true and full information of all things affecting the partnership, and a formal account of partnership affairs whenever circumstances render it just and reasonable, and

(c) Have dissolution and winding up by decree of court.

(2) A limited partner shall have the right to receive a share of the profits or other compensation by way of income, and to the return of his contribution as provided in Sections 15 and 16.

## §11. *Status of Person Erroneously Believing Himself a Limited Partner*

A person who has contributed to the capital of a business conducted by a person or partnership erroneously believing that he has become a limited partner in a limited partnership, is not, by reason of his exercise of the rights of a limited partner, a general partner with the person or in the partnership carrying on the business, or bound by the obligations of such person or partnership; provided that on ascertaining the mistake he promptly renounces his interest in the profits of the business, or other compensation by way of income.

## §12. *One Person Both General and Limited Partner*

(1) A person may be a general partner and a limited partner in the same partnership at the same time.

(2) A person who is a general, and also at the same time a limited partner, shall have all the rights and powers and be subject to all the restrictions of a general partner; except that, in respect to his contribution, he shall have the rights against the other members which he would have had if he were not also a general partner.

## §13. *Loans and Other Business Transactions with Limited Partner*

(1) A limited partner also may loan money to and transact other business with the partnership, and, unless he is also a general

partner, receive on account of resulting claims against the partnership, with general creditors, a pro rata share of the assets. No limited partner shall in respect to any such claim

(a) Receive or hold as collateral security any partnership property, or

(b) Receive from a general partner or the partnership any payment, conveyance, or release from liability, if at the time the assets of the partnership are not sufficient to discharge partnership liabilities to persons not claiming as general or limited partners,

(2) The receiving of collateral security, or a payment, conveyance, or release in violation of the provisions of paragraph (1) is a fraud on the creditors of the partnership.

## *§14. Relation of Limited Partners Inter Se*

Where there are several limited partners the members may agree that one or more of the limited partners shall have a priority over other limited partners as to the return of their contributions, as to their compensation by way of income, or as to any other matter. If such an agreement is made it shall be stated in the certificate, and in the absence of such a statement all the limited partners shall stand upon equal footing.

## *§15. Compensation of Limited Partner*

A limited partner may receive from the partnership the share of the profits or the compensation by way of income stipulated for in the certificate; provided, that after such payment is made, whether from the property of the partnership or that of a general partner, the partnership assets are in excess of all liabilities of the partnership except liabilities to limited partners on account of their contributions and to general partners.

## §16. *Withdrawal or Reduction of Limited Partner's Contribution*

(1) A limited partner shall not receive from a general partner or out of partnership property any part of his contribution until

(a) All liabilities of the partnership, except liabilities to general partners and to limited partners on account of their contributions, have been paid or there remains property of the partnership sufficient to pay them,

(b) The consent of all members is had, unless the return of the contribution may be rightfully demanded under the provisions of paragraph (2), and

(c) The certificate is cancelled or so amended as to set forth the withdrawal or reduction.

(2) Subject to the provisions of paragraph (1) a limited partner may rightfully demand the return of his contribution

(a) On the dissolution of a partnership, or

(b) When the date specified in the certificate for its return has arrived, or

(c) After he has given six months' notice in writing to all other members, if no time is specified in the certificate either for the return of the contribution or for the dissolution of the partnership,

(3) In the absence of any statement in the certificate to the contrary or the consent of all members, a limited partner, irrespective of the nature of his contribution, has only the right to demand and receive cash in return for his contribution.

(4) A limited partner may have the partnership dissolved and its affairs wound up when

(a) He rightfully but unsuccessfully demands the return of his contribution, or

(b) The other liabilities of the partnership have not been paid, or the partnership property is insufficient for their payment as required by paragraph (1a) and the limited partner would otherwise be entitled to the return of his contribution.

## §17. *Liability of Limited Partner to Partnership*

(1) A limited partner is liable to the partnership

(a) For the difference between his contribution as actually made and that stated in the certificate as having been made, and

(b) For any unpaid contribution which he agreed in the certificate to make in the future at the time and on the conditions stated in the certificate.

(2) A limited partner holds as trustee for the partnership

(a) Specific property stated in the certificate as contributed by him, but which was not contributed or which has been wrongfully returned, and

(b) Money or other property wrongfully paid or conveyed to him on account of his contribution.

(3) The liabilities of a limited partner as set forth in this section can be waived or compromised only by the consent of all members; but a waiver or compromise shall not affect the right of a creditor of a partnership who extended credit or whose claim arose after the filing and before a cancellation or amendment of the certificate, to enforce such liabilities.

(4) When a contributor has rightfully received the return in whole or in part of the capital of his contribution, he is nevertheless liable to the partnership for any sum, not in excess of such return with interest, necessary to discharge its liabilities to all creditors who extended credit or whose claims arose before such return.

## *§18. Nature of Limited Partner's Interest in Partnership*

A limited partner's interest in the partnership is personal property.

## *§19. Assignment of Limited Partner's Interest*

(1) A limited partner's interest is assignable.

(2) A substituted limited partner is a person admitted to all the rights of a limited partner who has died or has assigned his interest in a partnership.

(3) An assignee, who does not become a substituted limited

partner, has no right to require any information or account of the partnership transactions or to inspect the partnership books; he is only entitled to receive the share of the profits or other compensation by way of income, or the return of his contribution, to which his assignor would otherwise be entitled.

(4) An assignee shall have the right to become a substituted limited partner if all the members (except the assignor) consent thereto or if the assignor, being thereunto empowered by the certificate, gives the assignee that right.

(5) An assignee becomes a substituted limited partner when the certificate is appropriately amended in accordance with Section 25.

(6) The substituted limited partner has all the rights and powers, and is subject to all the restrictions and liabilities of his assignor, except those liabilities of which he was ignorant at the time he became a limited partner and which could not be ascertained from the certificate.

(7) The substitution of the assignee as a limited partner does not release the assignor from liability to the partnership under Sections 6 and 17.

## *§20. Effect of Retirement, Death or Insanity of a General Partner*

The retirement, death or insanity of a general partner dissolves the partnership, unless the business is continued by the remaining general partners.

(a) Under a right so to do stated in the certificate, or

(b) With the consent of all members.

## *§21. Death of Limited Partner*

(1) On the death of a limited partner his executor or administrator shall have all the rights of a limited partner for the purpose of settling his estate, and such power as the deceased had to constitute his assignee a substituted limited partner.

(2) The estate of a deceased limited partner shall be liable for all his liabilities as a limited partner.

## §22. *Rights of Creditors of Limited Partner*

(1) On due application to a court of competent jurisdiction by any judgment creditor of a limited partner, the court may charge the interest of the indebted limited partner with payment of the unsatisfied amount of the judgment debt; and may appoint a receiver, and make all other orders, directions, and inquiries which the circumstances of the case may require.

In those states where a creditor on beginning an action can attach debts due the defendant before he has obtained a judgment against the defendant it is recommended that paragraph (1) of this section read as follows:

On due application to a court of competent jurisdiction by any creditor of a limited partner, the court may charge the interest of the indebted limited partner with payment of the unsatisfied amount of such claim; and may appoint a receiver, and make all other orders, directions, and inquiries which the circumstances of the case may require.

(2) The interest may be redeemed with the separate property of any general partner, but may not be redeemed with partnership property.

(3) The remedies conferred by paragraph (1) shall not be deemed exclusive of others which may exist.

(4) Nothing in this act shall be held to deprive a limited partner of his statutory exemption.

## §23. *Distribution of Assets*

(1) In settling accounts after dissolution the liabilities of the partnership shall be entitled to payment in the following order:

(a) Those to creditors, in the order of priority as provided by law, except those to limited partners on account of their contributions, and to general partners,

(b) Those to limited partners in respect to their share of the profits and other compensation by way of income on their contributions,

(c) Those to limited partners in respect to the capital of their contributions,

(d) Those to general partners other than for capital and profits,

(e) Those to general partners in respect to profits,

(f) Those to general partners in respect to capital.

(2) Subject to any statement in the certificate or to subsequent agreement, limited partners share in the partnership assets in respect to their claims for capital, and in respect to their claims for profits or for compensation by way of income on their contributions respectively, in proportion to the respective amounts of such claims.

### §24. *When Certificate Shall Be Cancelled or Amended*

(1) The certificate shall be cancelled when the partnership is dissolved or all limited partners cease to be such.

(2) A certificate shall be amended when

(a) There is a change in the name of the partnership or in the amount or character of the contribution of any limited partner,

(b) A person is substituted as a limited partner,

(c) An additional limited partner is admitted,

(d) A person is admitted as a general partner,

(e) A general partner retires, dies or becomes insane, and the business is continued under Section 20,

(f) There is a change in the character of the business of the partnership,

(g) There is a false or erroneous statement in the certificate,

(h) There is a change in the time as stated in the certificate for the dissolution of the partnership or for the return of a contribution,

(i) A time is fixed for the dissolution of the partnership, or

the return of a contribution, no time having been specified in the certificate, or

(j) The members desire to make a change in any other statement in the certificate in order that it shall accurately represent the agreement between them.

## §25. *Requirements for Amendment and for Cancellation of Certificate*

(1) The writing to amend a certificate shall

(a) Conform to the requirements of Section 2(1a) as far as necessary to set forth clearly the change in the certificate which it is desired to make, and

(b) Be signed and sworn to by all members, and an amendment substituting a limited partner or adding a limited or general partner shall be signed also by the member to be substituted or added, and when a limited partner is to be substituted, the amendment shall also be signed by the assigning limited partner.

(2) The writing to cancel a certificate shall be signed by all members.

(3) A person desiring the cancellation or amendment of a certificate, if any person designated in paragraphs (1) and (2) as a person who must execute the writing refuses to do so, may petition the [here designate the proper court] to direct a cancellation or amendment thereof.

(4) If the court finds that the petitioner has a right to have the writing executed by a person who refuses to do so, it shall order the [here designate the responsible official in the office designated in Section 2] in the office where the certificate is recorded to record the cancellation or amendment of the certificate; and where the certificate is to be amended, the court shall also cause to be filed for record in said office a certified copy of its decree setting forth the amendment.

(5) A certificate is amended or cancelled when there is filed for record in the office [here designate the office designated in Section 2] where the certificate is recorded

(a) A writing in accordance with the provisions of paragraph (1), or (2) or

(b) A certified copy of the order of court in accordance with the provisions of paragraph (4).

(6) After the certificate is duly amended in accordance with this section, the amended certificate shall thereafter be for all purposes the certificate provided for by this act.

## §26. *Parties to Actions*

A contributor, unless he is a general partner, is not a proper party to proceedings by or against a partnership, except where the object is to enforce a limited partner's right against or liability to the partnership.

## §27. *Name of Act*

This act may be cited as The Uniform Limited Partnership Act.

## §28. *Rules of Construction*

(1) The rule that statutes in derogation of the common law are to be strictly construed shall have no application to this act.

(2) This act shall be so interpreted and construed as to effect its general purpose to make uniform the law of those states which enact it.

(3) This act shall not be so construed as to impair the obligations of any contract existing when the act goes into effect, nor to affect any action or proceedings begun or right accrued before this act takes effect.

## *§29. Rules for Cases Not Provided for in This Act*

In any case not provided for in this act the rules of law and equity, including the law merchant, shall govern.

## *§30. Provisions for Existing Limited Partnerships*

(1) A limited partnership formed under any statute of this state prior to the adoption of this act, may become a limited partnership under this act by complying with the provisions of Section 2; provided the certificate sets forth

(a) The amount of the original contribution of each limited partner, and the time when the contribution was made, and

(b) That the property of the partnership exceeds the amount sufficient to discharge its liabilities to persons not claiming as general or limited partners by an amount greater than the sum of the contributions of its limited partners.

(2) A limited partnership formed under any statute of this state prior to the adoption of this act, until or unless it becomes a limited partnership under this act, shall continue to be governed by the provisions of [here insert proper reference to the existing limited partnership act or acts], except that such partnership shall not be renewed unless so provided in the original agreement.

## *§31. Act (Acts) Repealed*

Except as affecting existing limited partnerships to the extent set forth in Section 30, the act (acts) of [here designate the existing limited partnership act or acts] is (are) hereby repealed.