IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-211T
(Judge Victor J. Wolski)

JAMES R. THOMPSON,

Plaintiff,

v.

THE UNITED STATES,

Defendant

**SECOND SUPPLEMENTAL APPENDIX TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**VOLUME VI**


| Description | Page(s) |
|---|---|
| Bittker & Lokken: Federal Taxation of Income, Estates and Gifts § 110.5 Revenue Rulings and Other IRS Opinions and Pronouncements | 255-283 |

# ¶ 110.5 Revenue Rulings and Other IRS Opinions and Pronouncements

## ¶ 110.5.1 Introductory

The IRS issues numerous rulings and similar documents pursuant to its practice of answering inquiries from individuals and organizations, "whenever appropriate in the interest of sound tax administration, as to their status for tax purposes and as to the tax effects of their acts or transactions," as well as to advise the public and its own staff. [1] These administrative rulings rest on the same statutory foundation as regulations, [2] but since they emanate from the IRS without formal approval by the Secretary of the Treasury, they are more readily issued, amended, and withdrawn than regulations and do not evoke the same judicial deference when challenged by taxpayers. [3] Unlike regulations, IRS rulings and other determinations are not ordinarily published in proposed form pursuant to the Administrative Procedure Act of 1946, presumably on the theory that they are "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice," to which the Act's rule making procedures do not apply. [4]

The principal current categories of IRS rulings, opinion letters, and similar documents are:

1. *Letter ruling:* "a written statement issued to a taxpayer by the Service's National Office that interprets and applies the tax laws to the taxpayer's specific set of facts." [5]

2. *Revenue ruling:* "an interpretation by the Service that has been published in the Internal Revenue Bulletin...for the information and guidance of taxpayers, Internal Revenue Service officials, and other interested parties." [6] A revenue ruling, like a letter ruling, states the IRS' view on the law as applied to a particular set of facts, but the facts of a revenue ruling may be hypothetical or may be extracted and distilled from the facts of several cases known to the IRS, including cases brought to their attention through requests for letter rulings.

3. *Revenue procedure:* a statement of procedure affecting the rights or duties of taxpayers or other members of the public under the Code and related statutes, or information "that should be a matter of public knowledge" even if it may not affect anyone's rights and duties. [7]

4. *Determination letter:* a written statement by an IRS director in response to an inquiry by a taxpayer, applying "principles and precedents previously announced by the national office to a specific set of facts." [8] Determination letters are issued "only when a determination can be made based on clearly established rules in the statute, a tax treaty, or the regulations, or based on a conclusion in a revenue ruling, opinion, or court decision published in the Internal Revenue Bulletin that specifically answers the questions presented." They are used particularly to rule on the qualification of pension, profit sharing, and stock bonus plans and exempt organizations.

5. *Opinion letter:* a written statement issued by the IRS to a sponsor or mass submitter of a

master or prototype plan on the acceptability of the plan form under §§ 401 and 501(a) , relating to pension, profit sharing, and stock bonus plans and to exempt organizations. [9]

6. *Information letter:* a statement by the National Office or a director calling "attention to a well-established interpretation or principle of tax law (including a tax treaty) without applying it to a specific set of facts," when it appears that general information rather than a particularized application of the rules will be helpful. [10]

7. *Technical advice:* guidance provided by the Chief Counsel's National Office to a director or appeals office director on a "technical or procedural question" the office may have "on the interpretation and proper application of tax law...to a specific set of facts." [11] Technical advice may be requested in connection with an audit of a taxpayer's return, a claim for refund, or "any other matter involving a specific taxpayer." [11.1] It is furnished in order to "help Service personnel close cases and establish and maintain consistent holdings throughout the Service."

8. *Acquiescence or nonacquiescence:* an announcement that the IRS accepts or rejects the conclusions reached by the Tax Court on an issue decided adversely to the government. [12]

Some of these categories are the successors to earlier series of rulings and other announcements with different labels, which ordinarily continue to be controlling until designated as obsolete by the IRS unless the relevant statute, regulation, or other legal foundation has been amended or repealed. [13]

The IRS also issues several types of more specialized rulings, [14] as well as a constant stream of press releases, pamphlets, and other documents. Not content with these published sources, practitioners scrutinize every speech by an IRS official for clues to the agency's unpublished policies, and they often seek to discern the future by extrapolating from informal discussions with IRS employees and other oracles.

Taxpayers within the jurisdiction of the IRS's Large and Mid-Size Business Division (LMSB) may ask the IRS to "examine specific issues relating to tax returns before those returns are filed." [14.1] If the IRS selects the taxpayer for participation in this program and if it and the taxpayer succeed in resolving the issues before the return is filed, they may "memorialize their agreement by executing an LMSB Pre-Filing Agreement (PFA)." [14.2] According to the IRS,

> Taxpayers and the Service often resolve issues more effectively and efficiently through a pre-filing examination than a post-filing examination, because the taxpayer and the Service have more timely access to the records and personnel that are relevant to the issues. A pre-filing examination also provides the taxpayer with certainty regarding the examined issue at an earlier point in time than a post-filing examination. These procedures benefit both taxpayers and the Service by improving the quality of tax compliance while reducing costs, burdens, and delays. [14.3]

"The objective of the PFA program is to resolve, before returns are filed, issues that are likely to be disputed in post-filing audits." [14.4]

A taxpayer may generally request a PFA for any year, current, past, or future, for which it has not yet filed a return. [14.5] The IRS "will consider entering into a PFA on any issue that requires either a determination of facts or the application of well-established legal principles to known facts." [14.6] It may also enter into a PFA "regarding a methodology used...to determine the...amount of an item of income,... deduction, or credit." [14.7] The PFA procedure may not be used to resolve issues for which the IRS has other procedures (e.g., the advance pricing agreement program and procedures for changing accounting methods) or issues in litigation between the taxpayer and the IRS for earlier years, and several other types of issues, including issues of reasonable cause, due diligence, and good faith, are

also excluded. [14.8] Also, a PFA may only relate to "completed transactions or events," not to "prospective or future transactions or events." [14.9] A taxpayer who requests a PFA and is selected to participate in the PFA program must pay a user fee of $1,000 to $10,000, depending on the amount of assets reported on its most recently filed return. [14.10] A PFA is a closing agreement under § 7121 , and as such, it is "confidential return information." [14.11]

The PFA Program has enjoyed a modest popularity with taxpayers. During 2004, its fifth full year, taxpayers submitted 38 requests, of which the IRS accepted 22 and rejected 12 by year-end. [14.12] Of the 22 accepted requests, 7 involved the research credit, 4 involved worthless securities and bad debts, 2 involved the deductibility of fines and penalties, 2 involved asset class life and recovery period, and each of the others involved an issue unique to that request. The IRS concluded 27 PFAs during 2004, of which 6 involved the deductibility and fair market value of donated property, 6 involved the qualified research and experimental credit, and 6 involved worthless securities and bad debts. The average time from application to agreement was 360 days. [14.13] Respondents to a satisfaction survey showed a high level of satisfaction, except as to the time required to complete a PFA.

The IRS also has an Industry Issue Resolution Program "to provide guidance to resolve frequently disputed tax issues common to a significant number of large or mid-size business taxpayers...in a manner other than the traditional post-filing examination process." [14.14] Under the program, the IRS invites taxpayers, industry associations, and other groups representing taxpayers to "suggest issues and possible options for resolution." [14.15] An issue appropriate for the program arises from "uncertainty about the appropriate tax treatment of a given factual situation," resulting in "frequent, often repetitive examinations of the same issue" and "significant taxpayer burden," but only if the issue is "material and impacts a significant number of taxpayers, either within an industry or across industry lines" and "factual determination is a major component of the issue." An issue selected for consideration is worked on by a team that may include personnel from the Large and Mid-Size Business and Small Business/Self-Employed Divisions, the Office of Chief Counsel, Appeals, and the Treasury Office of Tax Policy. The team consults with taxpayers and other interested persons. Guidance issued at the conclusion of the process is most often a revenue ruling or procedure.

The IRS maintains an Internal Revenue Manual, which is essentially an operating manual for all major categories of activities within the agency. Since the Manual is available to the public, [14.16] it is likely cited often by taxpayers dealing with the IRS in audits and other proceedings. However, most courts addressing the issue have held that the Internal Revenue Manual "does not have the force of law and does not confer rights on taxpayers." [14.17]

## ¶ 110.5.2 Letter Rulings

App. 257

The National Office issues letter rulings to taxpayers on the effect of prospective and completed transactions if a ruling is requested before the return reporting the transaction is filed, but it ordinarily does not issue such a ruling if the "identical issue" is present by a prior return of the taxpayer and is under examination by a field office, being considered by Appeals, pending in litigation involving the taxpayer or a related person, or has been examined by a field office or Appeals and the issue is not barred by the statute of limitations or a closing agreement. [15] Rulings are often sought voluntarily by taxpayers as guides to action or the preparation of returns and to protect themselves against an adverse change in IRS policies or interpretations of law. [16] They also are often requested because a statutory provision requires the taxpayer to obtain the consent or approval of the IRS. For example, a change in the taxpayer's method of accounting may be made only with IRS consent. [17]

1. *Procedure.* The IRS annually issues a revenue procedure prescribing in a general way the facts, documents, and data that must be included in requests for letter rulings, and these instructions are supplemented by detailed rules governing requests for rulings on recurring issues. A ruling request must include a "complete statement" of the relevant facts, copies of contracts, wills, and other documents relevant to the request, and a summary and analysis of the

relevant facts contained in the documents. [18] The request must state whether, "to the best of the knowledge of" the taxpayer and the taxpayer's representatives, a return of the taxpayer, a related person, or a member of an affiliated group to which the taxpayer belongs "that would be affected by the requested ruling or determination letter" is or has been examined or is the subject of litigation. [19] To reduce the number of incomplete requests it receives, the IRS has developed a checklist for letter ruling requests, and several checklists for rulings on particular issues, and it recommends that the checklists be completed and included with ruling requests. [20] It has also developed guidelines for ruling requests in various areas.

A statement of relevant authorities must be included, even if the taxpayer is merely asking for advice without urging a particular determination. [21]

Pending legislation affecting the issue must also be identified. In order to "enable Service personnel to understand the issue and relevant authorities more quickly," the taxpayer is encouraged to identify and discuss any authorities that might be contrary to the position advocated by the taxpayer in the request.

Letter rulings and determination letters are open to public inspection, but names, addresses, and identifying numbers deleted before public disclosure, and other deletions may be allowed in particular cases. [22] A ruling request must identify any information other than automatically deleted items that the taxpayer believes should be deleted from the public disclosure. [23] Procedures are also provided for protesting public disclosure of information after the ruling is issued.

Within 21 days after a ruling request is received by the appropriate Branch of the Associate Chief Counsel's office, the taxpayer is contacted to discuss the request informally. [24] This discussion normally touches on both procedural and substantive matters, but it may be limited to procedural matters if the issues raised by the request are complex. Any informal opinion given by the Branch representative is not binding on the IRS and cannot be relied on as a basis for relief against retroactive application of the ruling under § 7805(b) . [25]

Ruling requests are normally processed in the order received. A taxpayer with a "compelling need" to have "a request processed ahead of the regular order may request expedited handling," but such a request is granted only in "rare and unusual cases." [26] Priority is not granted to meet a date for a closing or shareholders' meeting that was set "without regard" to the time required to obtain a ruling. Possible fluctuations in the market price of stocks are also not a basis for priority.

In order to speed things up, a taxpayer with a ruling request raising two or more issues may request that the issues be considered separately if, for example, one issue is more urgent than others. [27] Under an elective two-part procedure for rulings on prospective transactions, the full statement required in all requests can be accompanied by a summary statement of the facts, which can be used by the IRS in issuing the ruling. [28] The summary statement may reduce the time required to process the request by limiting the material that must be considered by the IRS in evaluating the request. Also, the taxpayer may request that the ruling and other documents related to the ruling request be sent to the taxpayer by fax, but submissions by fax are not allowed. [29]

A ruling request may include a request for a conference. [30] A conference is normally held only if the IRS considers it helpful or is contemplating an adverse decision on the request, but a taxpayer is entitled to one conference as a matter of right. [31] The IRS will offer a taxpayer an additional conference if, after the conference of right, it proposes to rule adversely to the taxpayer "on a new issue" or on an issue discussed at the first conference "but on different

grounds." [32] The IRS will entertain a request for a conference before a ruling request is made. [33]

On concluding that an adverse ruling will be issued (and if, in the case of a prospective transaction, that the transaction cannot be reformulated to elicit favorable action), taxpayers often withdraw their requests for rulings. However, following a withdrawal, the National Office will "ordinarily" furnish its views on the transaction to the "official in the operating division that has examination jurisdiction of the taxpayer's tax return." [34]

2. *Fees.* Congress decided in 1987 that "the relatively small number of persons that request letter rulings, determination letters, and opinion letters should pay for the benefit of these services." [35] It therefore directed the IRS to develop a schedule of fees for its services in responding to the requests. [36] Pursuant to this directive, the IRS generally charges user fees for all requests for letter rulings, determination letters, advance pricing agreements, renewals of advance pricing agreements, reconsideration of letter rulings and determination letters, and closing agreements requested before the relevant returns are filed. [36.1]

3. *No-ruling areas.* Except when required by the Code or the regulations, [37] rulings are issued as a matter of discretion "[w]henever appropriate in the interest of sound tax administration." [38] As a matter of policy, however, the IRS will not issue rulings on some issues and will not ordinarily rule on certain others, either because of the inherently factual nature of the problem or for other reasons. No ruling will be issued on (1) transactions lacking in bona fide business purpose or having tax reduction as their principal purpose, (2) alternative plans for proposed transactions and hypothetical situations, (3) matters as to which a judicial decision adverse to the government has been handed down if the IRS has not yet decided whether to follow the decision or litigate the issue further, (4) whether a proposed transaction would subject the taxpayer to a criminal penalty, or (5) whether, for purposes of procedural or penalty rules, there is reasonable cause, due diligence, good faith, or clear and convincing evidence. [39] Rulings are "not ordinarily" issued on determinations of fact, such as the market value of property or whether an interest in a corporation is, in substance, debt or equity, whether property is held for sale to customers in the ordinary course of business, transactions to be consummated at an indefinite future time also is ordinarily out of bounds for letter rulings, and transactions that are the subject of pending litigation between the parties. [40]

The exclusion of factual issues as a proper subject for a ruling does not preclude determination of a related legal issue. For example, the market value of property can be assumed for purposes of the ruling, subject to verification when the return is audited. Indeed, the IRS of its own motion often conditions a ruling on a subsequent determination by the examining agent that payments or other transfers are reasonable in amount and are what they purport to be. Moreover, the policy against ruling on "alternate plans of proposed transactions" does not preclude modifying a proposal to eliminate a feature on discovering that it may elicit an adverse ruling or cause untoward delay in reaching a decision. [41] The policy against ruling on "hypothetical situations" does not preclude ruling on a transaction (e.g., a corporate reorganization) that will be consummated only if blessed by a favorable ruling, nor is the policy violated by a provision in a newly established pension or profit sharing plan requiring the employer's contribution to be returned in the event the IRS holds that the plan does not meet the requirements of § 401 . [42]

In addition to the general areas described above, the IRS annually provides a list of particular issues on which it either will not or "ordinarily" will not rule, most of which involve factual questions that are better handled "by an agent examining the taxpayer's return than by a tax law specialist sitting at a desk in Washington." [43] The no-ruling list includes whether compensation is reasonable in amount, whether the cost of an item usually used for personal pleasure (e.g., a swimming pool) can be deducted as a medical expense, and whether an acquisition was made to evade or avoid tax within the meaning of § 269 . [44] The qualified embargo ("will not ordinarily rule") covers may questions that to the outsider differ only imperceptibly, if at all, from those

covered by the absolute embargo, including the ownership of property where title is in a person other than the alleged true owner and whether indebtedness is incurred or carried to purchase or continue an investment in tax-exempt bonds. [45]

Finally, rulings typically conclude with a disclaimer of the following type:

> No opinion is expressed as to the tax treatment of the transaction under the provisions of any of the other sections of the Code and Regulations [not mentioned in the body of the ruling] which may also be applicable thereto or to the tax treatment of any conditions existing at the time of, or effects resulting from, the transaction which are not specifically covered by the above rulings. [46]

4. *Guidelines for requests on recurring subjects* To guide taxpayers requesting rulings on particular subjects, the IRS issues numerous special instructions, including checklists, questionnaires, and percentage and other quantitative bench marks. The principal areas include:

1. Section 302 : distributions to redeem stock. [47]

2. Section 302(b)(4) : partial liquidations. [48]

3. Section 331 : liquidations generally. [49]

4. Section 332 : liquidation by parent corporations of 80-percent-or-more owned subsidiaries. [50]

5. Section 337 (before amendment in 1986): sales of corporate assets incident to complete liquidations. [51]

6. Section 351 : transfers to controlled corporations. [52]

7. Section 355 : spin-offs and similar transactions. [53]

8. Section 368(a) : meaning of "substantially all" in C reorganizations. [54]

9. Partnerships: whether certain organizations are taxable as partnerships rather than as corporations. [55]

10. Whether a liquidating trust is properly classified as trust or corporation. [56]

11. Whether leveraged leases are properly classified as leases or sales. [57]

12. Tax-exempt status. [58]

13. Private foundation status. [59]

14. Qualification of pension, annuity, profit sharing, and stock bonus plans. [60]

15. Nonqualified deferred compensation. [61]

**App. 260**

5. *Oral advice* The IRS does not issue oral rulings or accept oral requests for rulings. [62] IRS

personnel, however, will discuss with taxpayers and their representatives the availability of IRS rulings in particular situations and other procedural questions relating to rulings requests. Also, "at the [IRS'] discretion" and "as time permits," IRS personnel will discuss substantive issues, but statements made in these discussions are not binding on the IRS and may not be relied upon, even as a basis for relief from retroactive effect of an inconsistent written ruling later issued to the taxpayer. [63]

## ¶ 110.5.3 Revenue Rulings

A revenue ruling is "an official interpretation by the Service...that has been published in the [Internal Revenue] Bulletin...for the information and guidance of taxpayers, Service officials, and others concerned." [64] Rulings address "issues and answers involving substantive tax laws under the jurisdiction of the Service." [65] The number of revenue rulings published each year is relatively small, and practitioners sometimes complain that the IRS now provides less guidance by this means than it did in earlier times. [66]

Although not having the weight of regulations, revenue rulings "are published to provide precedents to be used in the disposition of other cases, and may be cited and relied upon for that purpose." [67] Letter rulings, in contrast, are denied this precedential force by IRS policy that "a taxpayer may not rely on a ruling issued to another taxpayer" [68] and by statutory directive that written determinations may not be used or cited as precedents. [69] Whether revenue agents always adhere to this caveat by blotting out their knowledge of unpublished rulings is another matter, particularly since the *Internal Revenue Manual* advises IRS personnel that private letter rulings "may be used as a guide with other research material in formulating a district office position on an issue." [70]

Revenue rulings apply retroactively unless they explicitly provide otherwise, but rulings that revoke or modify previously published rulings are ordinarily limited to apply prospectively only. [71]

## ¶ 110.5.4 Reliance on and Revocation of Rulings

There are important differences between taxpayer letter rulings and revenue rulings as respects the related issues of reliance by taxpayers and revocation by the IRS.

Taxpayers to whom letter rulings are issued can generally safely rely on them, even though they are not vested by statute with the finality of closing agreements. [72] The IRS may, however, revoke or modify a letter ruling (other than a ruling issued as part of a closing agreement) if it finds the ruling is "in error or not in accord with the current views of the Service." [73] "Except in rare or unusual circumstances," a revocation or modification is only applied prospectively to the taxpayer to whom the letter ruling was issued or a taxpayer whose tax liability was directly involved in the letter ruling, provided that

a. No "controlling facts" were misstated in or omitted from the ruling request,

b. The controlling facts at the time of the transaction do not differ "materially from the facts on which the letter ruling was based,"

c. In the case of a ruling involving "a continuing action or series of actions," the controlling facts do not change "during the course of the transaction,"

d. "Applicable law" has not changed,

e. The ruling was issued for a proposed transaction,

f. The taxpayer "acted in good faith" in relying on the ruling, and

g. Retroactive revocation or modification of the ruling would be "to the taxpayer's detriment." [73.1]

All of a corporation's shareholders are, for example, "directly involved" in a letter ruling on a reorganization of the corporation and may enjoy this protection from retroactivity, while a member of an industry is not protected from retroactive revocation or modification of a ruling issued to another member of the industry.

This self-denying ordinance may reflect the fact that an early case, vesting the IRS with almost uncontrolled authority to revoke private rulings, grew out of a political vendetta and ended in a fiasco for the government. In *Couzens v. CIR* , decided in 1928, the Board of Tax Appeals upheld the Treasury's revocation of a ruling issued to Senator Couzens of Michigan, who was on Treasury Secretary Mellon's "political enemies" list. [74] The court pointedly refrained from expressing any opinion "as to the moral aspects of the matter or...the wisdom or ethics of the [government's] conduct." [75] Having vindicated the Treasury's authority to revoke the ruling, however, the Board reached a conclusion that was more favorable to the taxpayer than the repudiated ruling. [76]

*Couzens* proved to be the high-water mark of IRS freedom in this area, and contemporary courts are likely to hold that the retroactive revocation of a private ruling to a taxpayer's detriment is an abuse of discretion unless warranted by circumstances like those listed above. [77] There are few authorities in this area, however, because the IRS "has almost invariably followed a policy of honoring [private] rulings and making changes prospective only" unless the taxpayer is estopped from relying on the ruling because of a concealment of facts or similar misconduct. [78]

These principles apply only to the taxpayer to whom the ruling was issued or whose liability is directly involved in the ruling. Other taxpayers who learn of a private ruling are cautioned against relying on it, [79] but this caveat may be ineffective if applying different rules to the two classes of taxpayers is an abuse of discretion, akin to a violation of the due process clause of the Fifth Amendment. [80]

By contrast with letter rulings, revenue rulings are published so that taxpayers can rely on them "in determining the tax treatment of their own transactions and need not request specific rulings applying the principles of a published revenue ruling to the facts of their particular cases." [81] This invitation is accompanied by a caveat:

> Each revenue ruling represents the conclusion of the Service as to the application of the law to the entire statement of facts involved. Therefore, taxpayers, Service personnel, and others concerned are cautioned against reaching the same conclusion in other cases unless the facts and circumstances are substantially the same. [82]

Users of revenue rulings are also cautioned to determine whether they have been "affected by subsequent legislation, treaties, regulations, revenue rulings, revenue procedures or court decisions." [83] However, because the IRS invites taxpayers to rely on revenue rulings, partly to reduce the administrative burden of issuing individualized rulings, it should not be allowed to engage in quibbling distinctions between the facts as described by a revenue ruling—drafted, after all, by the agency itself—and those of a particular later case.

The IRS has almost untrammeled authority to amend or revoke a revenue ruling, at least prospectively, on concluding that it erroneously interprets the applicable law and regulations. Indeed, every issue of the *Internal Revenue Bulletin* and the *Cumulative Bulletin* carries a glossary defining the terms used by the IRS to describe the effect of new rulings on old ones—amplified, clarified, distinguished, modified, revoked, superseded, supplemented, and suspended, along with a newly coined past participle,

obsoleted. [84] When a published ruling is revoked or modified, the IRS ordinarily exercises its authority under § 7805(b) to provide that the new ruling will not be applied retroactively to the detriment of taxpayers. [85]

A failure to exercise this authority, however, could be an abuse of discretion. The IRS invites taxpayers to rely on published rulings in lieu of requesting individualized rulings and, having done so, should not be permitted to jerk the rug out from under its invitees if it is simultaneously protecting less trusting taxpayers against retroactive revocation of their private rulings.

Some cases imply a more tolerant attitude toward retroactive revocations of erroneous rulings, but they do not explicitly address the issue of discriminatory application of the new rule. The principal case holding that the IRS can correct mistakes of law retroactively, "even where a taxpayer may have relied to his detriment on the Commissioner's mistake," is *Dixon v. United States*, which relied heavily on an IRS warning to taxpayers that published rulings

> are for the information of taxpayers and their counsel as showing the trend of official opinion in...the Bureau of Internal Revenue; the rulings other than Treasury Decisions have none of the force or effect of Treasury Decisions and *do not commit the Department to any interpretation of the law which has not been formally approved and promulgated by the Secretary of the Treasury*. [86]

This warning—so critical to the opinion that it was italicized by the Court—was dropped from the *Internal Revenue Bulletin* for taxable years following the year involved in the *Dixon* case (1952) in favor of a statement that "published rulings do not have the force and effect of Treasury Department Regulations, but are published to provide precedents to be used in the disposition of other cases, and may be cited and relied upon for this purpose." [87] Moreover, in 1954 the IRS announced that "it is the general policy of the Service that taxpayers may rely upon [published] rulings in determining the rule applicable to their own transactions and need not request a specific ruling applying the principles of the published ruling to the facts of the taxpayer's case where otherwise applicable" and that "it is the general practice of the Service to make... revocation or modification [of published rulings] prospective only." [88]

As a Commissioner of Internal Revenue stated (without the usual disclaimer of official sanction for his views), the 1954 ruling was "an extremely important departure from previous practice which treated all rulings as mere advisory opinions." [89] Against this background, *Dixon* should not be interpreted to approve a distinction, as respects retroactivity, between taxpayers who accept the IRS invitation to rely on published rulings and their less trusting counterparts who insist on getting private rulings to confirm the published announcement. [90]

Although revenue rulings are binding on IRS officials until revoked, [90.1] their effect when challenged by taxpayers in judicial proceedings is another matter. The IRS itself acknowledges that they "do not have the force and effect of Treasury Department Regulations," [91] an admission that seems to reflect the fact that rulings are issued, amended, and revoked with less formality than regulations. Even so, they deserve, and sometimes get, more deference than is implied by occasional disparaging suggestions that a revenue ruling "is merely the opinion of a lawyer in an agency." [92]

This comment is sometimes followed by the statement that a revenue ruling in conflict with the statute is "without any force," which is true but is equally true of regulations and is usually beside the point. The issue ordinarily is whether a revenue ruling's interpretation of an ambiguous statute should be given weight in deciding the disputed issue. As considered expressions of the IRS' views, revenue rulings and regulations differ more in degree than in kind, and it is not clear that a sharp distinction in their weight is warranted. [93]

The deference courts accord to IRS rulings may be affected by a 2001 Supreme Court decision, *United*

*States v. Mead Corp.*, [93.1] involving a U.S. Customs Service ruling letter reclassifying goods imported by Mead from a duty-free category to a dutiable category. A Customs ruling letter resembles an IRS letter ruling. It is issued without notice or comment, addresses the classification of particular goods, and applies only to the importer to which it is addressed. The Court held that such rulings are not entitled to the deference shown to regulations, noting that "46 different Customs offices issue 10,000 to 15,000 of them each year" and concluding that "[a]ny suggestion that rulings intended to have the force of law are being churned out [in this way] is simply self-refuting." [93.2] However, the Court found the rulings to be within the holding of its earlier decision in *Skidmore v. Swift & Co.* [93.3]

> that an agency's interpretation may merit some deference whatever its form, given the "specialized experience and broader investigations and information" available to the agency...and given the value of uniformity in its administrative and judicial understandings of what a national law requires...
>
> There is room at least to raise a *Skidmore* claim here, where the regulatory scheme is highly detailed, and Customs can bring the benefit of specialized experience to bear on the subtle questions in this case...Such a ruling may surely claim the merit of its writer's thoroughness, logic and expertness, its fit with prior interpretations, and any other sources of weight. [93.4]

## ¶ 110.5.5 Public Inspection of Rulings and Other IRS Documents

Section 6110 , enacted in 1976, opens to public inspection all rulings, determination letters, and technical advice memoranda ("written determinations") and any "background file document." [94] The term "background file document" includes the request for the determination, supporting material, and communications (written or oral) relating to the determination between IRS personnel and persons outside the IRS (e.g., members of Congress, their staff, or personnel from other government agencies). [95] Communications between the IRS and the Justice Department, however, are exempt from disclosure if they relate to a pending civil or criminal case or investigation.

Written determinations and background file documents are disclosed to the public only in redacted form because the statute exempts various information from disclosure to ensure anonymity for the applicant, safeguard business secrets, and avoid unwarranted invasions of personal privacy. The exempted information includes names, addresses, and "other identifying details," trade secrets, "privileged or confidential" commercial or financial information, information whose disclosure would be "a clearly unwarranted invasion of personal privacy," and geological and geophysical data on wells, including maps. [96] Other information can be exempted by Executive Order for national security or foreign policy reasons.

The recipient of a written determination must be notified before it is disclosed and before the IRS responds to a written request for disclosure of a background file document. [97] Generally, a written determination or background file document is made available for public inspection no sooner than 75 days, and no later than 90 days, after this notice is given, but disclosure may be delayed if the transaction to which the determination relates has not been completed or if the taxpayer seeks to limit disclosure by exercising one of the remedies described below. [98] If an IRS employee "intentionally or willfully" fails to follow the rules for deleting certain information or the rules pertaining to the timing of disclosure, a person injured as a result may sue for damages in the Claims Court and is entitled to a minimum recovery of $1,000. [99]

Administrative procedures are provided for persons seeking additional disclosures or to restrain disclosures. [100] On exhausting these administrative remedies, a person to whom a determination pertains or who has a direct interest in maintaining its confidentiality can petition the Tax Court (anonymously, if appropriate) to restrain disclosure of the contested matter. [101] Conversely, persons wishing to obtain additional disclosures may sue in either the Tax Court or the federal district court for

the District of Columbia to open the requested document or information for public inspection. [102] The IRS is required to send a notice of a proceeding for additional disclosure to the last known address of all persons identified by name and address in the requested document; any such person can intervene and, if the IRS chooses, take over the defense of the action. A trial de novo is had on the request for disclosure, in which the burden of proof is on the IRS or other person seeking to restrain disclosure.

A third category of court proceedings concerns third-party contacts—oral or written communications received by the IRS before a written determination is issued from persons other than IRS employees and the person to whom the determination pertains, including non-IRS governmental officials and private persons. To discourage improprieties by these outsiders (e.g., pressure from influential members of Congress), the publicly disclosed version of the written determination must be flagged with a notation of the "category" of person involved in the communication and its date. [103] Once the determination has been disclosed, any person may sue in the Tax Court or the federal district court for the District of Columbia for disclosure of the third person's identity. The court must order disclosure if there is evidence in the record reasonably warranting an inference of impropriety or undue influence.

Section 6110(*l*) provides that the Treasury shall not be required by any court to disclose, or refrain from disclosing, any written determination or background file document except pursuant to § 6110 , other provisions of the Code, or a judicial discovery order, thus ousting the Freedom of Information Act (FOIA) from jurisdiction over this field. [104] Many other documents of potential interest to taxpayers, such as legal memoranda and explanations and summaries of past decisions, are outside the scope of § 6110 , and they remain subject to the FOIA disclosure rules. Because the FOIA applies to almost all federal agencies, cases involving the IRS are only a small portion of the vast body of litigation interpreting its disclosure rules and correlative exemptions, and an analysis of its provisions is beyond the scope of this work. A sample of cases involving IRS documents is given below. [105]

## ¶ 110.5.6 Acquiescence and Nonacquiescence in Tax Court Decisions

When a decision of the Tax Court goes against the IRS, it is IRS policy to announce "at the earliest practicable date" whether it acquiesces or does not acquiesce in the decision. [106] Notices of acquiescence or nonacquiescence relate only to issues decided adversely to the government and are not issued in the case of memorandum decisions of the Tax Court. An acquiescence means that the court's conclusion should be accepted by IRS personnel in disposing of similar cases. The acquiescence, however, does not necessarily mean that the reasons assigned by the court are accepted and approved by the IRS. Moreover, an announcement that the IRS acquiesces only in the result in a Tax Court case signals disagreement with some or all of the reasons given by the court for its conclusions.

In some cases, the IRS announces acquiescence in the result reached in one issue and nonacquiescence as to others. From time to time, notices of acquiescence are withdrawn and nonacquiescence are substituted, and vice versa. [107]

Although the Supreme Court once described an acquiescence as a "ruling," [108] the IRS does not invite taxpayer reliance on notices of acquiescence in the way it invites reliance on published revenue rulings. [109] Except in unusual circumstances, it is unlikely that an acquiescence estops the IRS from collecting a tax otherwise due or from litigating the issue on its merits in a later case, however similar. [110]

The formal acquiescence/nonacquiescence policy applies only to Tax Court decisions. The IRS also announces, though much more rarely, whether it accepts particular decisions of the federal district courts, courts of appeals, or Court of Claims as precedents for the disposition of similar cases. In addition, Tax Court decisions occasionally evoke an IRS announcement or revenue ruling, indicating whether the decision will be followed, with reasons, in lieu of a simple announcement of acquiescence or nonacquiescence. [111]

---

1

Statement of Procedural Rules, 26 CFR Pt. 601, at § 601.201(a) .

See Chang, Cullen, Doernberg, Easson, Krever, Sandler & Somerhalder, Private Income Tax Rulings: A Comparative Study, 10 Tax Notes Int'l 738 (Feb. 27, 1995) (discussing procedures in Australia, Canada, Hong Kong, Netherlands, United Kingdom, and United States); Marshall, Stratton & Bergin, The Changing Landscape of U.S. IRS Guidance: A Downward Slope, 22 Tax Notes Int'l 673 (Feb. 12, 2001); Meadows & Dobrovir, Who Killed Guidance? 73 Tax Notes 221 (Oct. 14, 1996) (alleging that quantity of publicly disclosed IRS pronouncements has, in recent years, sharply declined in favor of less formal forms of advice between IRS offices that are not disclosed); Nelson, In Search of Good Guidance: The Confused Ways, Means and Objectives of the Tax Guidance Process, 80 Taxes 25 (Mar. 2002). See also Tax Analysts v. IRS, 117 F3d 607 (DC Cir. 1997) (requiring IRS to disclose under Freedom of Information Act "Field Service Advice Memoranda" issued by national office of IRS Chief Counsel in response to requests from field attorneys, revenue agents, and appeals officers for "legal guidance, usually with reference to the situation of a specific taxpayer").

---

2

Reg. § 301.7805-1 .

---

3

For the legal status of revenue rulings, see infra ¶ 110.5.3 . See generally Alexander & Boshkov, The Internal Revenue Service's Ability to Dispose of Cases: General Techniques (Regulations, Rulings, and the Like), 1979 S. Cal. Tax Inst. 1037.

---

4

Administrative Procedure Act of 1946, 5 USC § 553(b)(3)(A) . For discussion of this exemption, see Asimow, Public Participation in the Adoption of Interpretative Rules and Policy Statements, 75 Mich. L. Rev. 521, 524–60 (1977); Osimitz, Revenue Rulings and the Federal Administrative Procedure Act, 1975 Wis. L. Rev. 1135.

For the publication of revenue rulings and revenue procedures in the *Internal Revenue Bulletin* and ultimately the *Cumulative Bulletin*, see Rev. Proc. 89-14, 1989-1 CB 814 . See id. at § 7.01(7) ("all interested parties...are encouraged" to suggest "generic issues that would be appropriately addressed in revenue rulings or revenue procedures"; public comment on rulings and procedures being prepared by IRS may be sought "when justified by special circumstances").

---

5

Rev. Proc. 2006-1, 2006-1 IRB 1, § 2.01 . See Rev. Proc. 2006-4, 2006-1 IRB 132, § 3.02 (letter ruling issued by Tax Exempt and Government Entities Division); Statement of Procedural Rules, , § 601.201(a)(2) (same).

---

6

Rev. Proc. 2006-4, 2006-1 IRB 132, § 3.07 . For publication criteria, see infra ¶ 110.5.3 .

---

7

Rev. Proc. 89-14, supra note 6, § 3.02 .

App. 266

---

8

Rev. Proc. 2006-1, 2006-1 IRB 1, § 2.03 . See Rev. Proc. 2006-4, 2006-1 IRB 132, § 3.04 (determination letters issued by Tax Exempt and Government Entities Division).

---

9

Statement of Procedural Rules, 26 CFR pt. 601, § 601.201(a)(4) ; Rev. Proc. 2006-4, 2006-1 IRB 132, § 3.05 ; Rev. Proc. 2000-20, 2000-6 IRB 553 .

---

10

Rev. Proc. 2006-1, 2006-1 IRB 1, § 2.04 . See Rev. Proc. 2006-4, 2006-1 IRB 132, § 3.06 (information letter issued by Tax Exempt and Government Entities Division).

---

11

Rev. Proc. 2006-2, 2006-1 IRB 89, § 3 . Revenue Procedure 2006-2 provides procedures for technical advice and technical expedited advice on issues under jurisdiction of the Corporate, Financial Institutions and Products, Income Tax and Accounting, International, Passthroughs and Special Industries, Procedure and Administration, and Tax Exempt and Government Entities divisions of the Chief Counsel. Id. § 1 . Technical expedited advice is technical advice "issued in an expedited manner." Id. § 3 . See Rev. Proc. 2002-30, 2002-24 IRB 1184 (pilot program for issuing technical expedited advice by Associate Chief Counsel (Income Tax and Accounting)). See Rev. Proc. 2006-2 , supra, § 7.04 (technical advice not issued on "frivolous issue," but taxpayer may appeal decision of examining agent or appeals office that issue is frivolous), id. § 6.02 (issue is frivolous if it is "without basis in law or fact" or "espouses a position which has been held by the courts to be frivolous or groundless"); Rev. Proc. 2006-5, 2006-1 IRB 174 (procedures for technical advice on issues relating to employee plans arising in audit or in connection with refund claims or requests for determination letters).

---

11.1

Rev. Proc. 2006-2, 2006-1 IRB 89, § 3 .

---

12

See infra ¶ 110.5.6 .

---

13

For the IRS "obsolete rulings" practice, see infra ¶ 110.5.4 .

---

14

E.g., Commissioner delegation orders (CDOs), prohibited transactions exemptions (PTEs), and technical information releases (TIRs).

---

14.1

App. 267

Rev. Proc. 2005-12, 2005-2 IRB 311, § 1.01 . This procedure, which superseded a similar procedure, Rev. Proc. 2001-22, 2001-9 IRB 745 , is effective for the period December 22, 2004, through December 31, 2006, unless the IRS sooner revokes or supersedes it. Rev. Proc. 2005-12 , supra § 12 . For request procedures, see id. § 4 . For IRS procedures for processing PFAs, see id. § 6 ;

Announcement 2005-42, 2005-24 IRB 1257. See Stubblefield, Participation in the Service's Pre-Filing Agreement Program: A Guide to Developing a Quality PFA Request, 55 Tax Lawyer 809 (2002). The IRS initially adopted this procedure as a "pilot program." Notice 2000-12, 2000-1 CB 727 .

---

14.2

Rev. Proc. 2005-12, 2005-2 IRB 311, § 1.01 .

---

14.3

Rev. Proc. 2005-12, 2005-2 IRB 311, § 1.02 .

---

14.4

Rev. Proc. 2005-12, 2005-2 IRB 311, § 2.01 .

---

14.5

Rev. Proc. 2005-12, 2005-2 IRB 311, § 3.02 ("[a]greements for future taxable years are limited to four taxable years beyond the current taxable year"). Under earlier versions of the procedure, a PFA could not cover future years. See id. § 2.02.

---

14.6

Rev. Proc. 2005-12, 2005-2 IRB 311, § 3.03(1) . The IRS "may, in its sole discretion, refuse to address an issue in a PFA based on considerations of sound tax administration." Id. § 3.05. See id. § 5.02 (IRS's criteria for selecting cases for PFAs), id. § 7.01 (criteria for deciding whether to issue PFA). Either the IRS or the taxpayer may withdraw from the PFA process at any time before a PFA is executed. Id. § 8 . See also id. § 3.06 (list of "international issues that are likely suitable for a PFA, but also require that the Associate Chief Counsel (International) concur with the acceptance of the issue into the PFA Program and execution of the PFA"), § 3.07 ("[s]pecial provisions [for requesting] a PFA on an issue having international implications").

---

14.7

Rev. Proc. 2005-12, 2005-2 IRB 311, § 3.03(2) .

---

14.8

Rev. Proc. 2005-12, 2005-2 IRB 311, § 3.08 . See also id. § 3.09 (changes of accounting method).

---

14.9

Rev. Proc. 2005-12, 2005-2 IRB 311, § 1.01 .

---

14.10

Rev. Proc. 2005-12, 2005-2 IRB 311, § 10 .

---

14.11

Rev. Proc. 2005-12, 2005-2 IRB 311, § 11 . For § 7121 , see infra ¶ 112.1.5 . For nondisclosure of closing agreements, see § 6103(b)(2)(D) , discussed infra ¶ 111.2.2 .

**App. 268**

14.12

Announcement 2005-42, 2005-24 IRB 1257. Of the 22 requests accepted, the IRS concluded PFAs during 2004 with 8 taxpayers, 13 were pending at year-end, and 1 was withdrawn during 2004. During 2004, taxpayers withdrew three requests accepted before the year started, and the IRS withdrew its earlier acceptances of eight requests, seven because it was unable to come to agreement with the taxpayers.

Announcement 2005-42 is the fifth of the IRS's annual reports on the program, which the IRS issues pursuant to a congressional suggestion. The earlier reports are Announcement 2004-59, 2004-30 IRB 94 ; Announcement 2003-43, 2003-26 IRB 1139 ; Announcement 2002-54, 2002-24 IRB 1190 ; Announcement 2001-38, 2001-17 IRB 1138 .

14.13

This time was 173 days for 2001, 235 days for 2002, and 299 days for 2003.

14.14

Notice 2002-20, 2002-17 IRB 796 . See Notice 2000-65, 2000-52 IRB 599 (adopting Pilot Program).

14.15

See Rev. Rul. 2003-36, 2003-18 IRB 859 (procedures for business taxpayers, industry associations, and other "interested parties" to suggest issues for consideration under program).

14.16

It is found at http://www.irs.gov/irm (last visited August 17, 2006).

14.17

Fargo v. CIR, 447 F3d 706, 713 (9th Cir. 2006) . For similar statements, see Carlson v. US, 126 F3d 915, 922 (7th Cir. 1997) ; Marks v. CIR, 947 F2d 983, 986 n.1 (DC Cir. 1991) ("it is well-settled...that the provisions of the Internal Revenue Manual are directory rather than mandatory, are not codified regulations, and clearly do not have the force and effect of law"). See also Valen Mfg. Co. v. US, 90 F3d 1190 (6th Cir. 1996) ; US v. Horne, 714 F2d 206 (1st Cir. 1983) ; Einhorn v. DeWitt, 618 F2d 347 (5th Cir. 1980) .

15

Rev. Proc. 2006-1, 2006-1 IRB 1, §§ 5.01 , 6.01 . 6.01 . Rulings are not issued to trade associations or similar groups relating to the application of tax laws to their members. Id. § 6.05.

16

For the use of rulings as insurance, see Wright, Needed Changes in Internal Revenue Service Conflict Resolution Procedures, 50 (American Bar Foundation 1970); Smith, Tax Rulings, Their Use and Abuse, 1970 S. Cal. Tax Inst. 663, 671–73; Taylor, Tax Rulings: New Rules and Procedures, 21 NYU Inst. on Fed. Tax'n 69, 72 (1963).

17

See supra ¶ 105.12.1 .

18

Rev. Proc. 2006-1, 2006-1 IRB 1, § 7.01 . For a sample format for a letter ruling request, see id. Appendix B. See id. Appendix D (addresses to which taxpayers subject to IRS's Small Business/Self-Employed Division should send requests for determination letters).

19

Rev. Proc. 2006-1, 2006-1 IRB 1, § 7.01(4) . See id. § 7.04 (if "identical issue" is raised in audit while ruling request is pending, taxpayer must notify National Office).

20

Rev. Proc. 2006-1, 2006-1 IRB 1 , Appendix C. See id. § 9.01 (listing other revenue procedures providing checklists and guidelines).

21

Rev. Proc. 2006-1, 2006-1 IRB 1, § 7.01(8) . A taxpayer "is encouraged to inform the Service about, and discuss the implications of, any authority believed to be contrary to the position advanced...." Id. § 7.01(9). The taxpayer must also "identify any pending legislation that may affect the proposed transaction." Id. § 7.01(10).

22

See infra ¶ 110.5.5 .

23

Rev. Proc. 2006-1, 2006-1 IRB 1, § 7.01(11) .

24

Rev. Proc. 2006-1, 2006-1 IRB 1, § 8.02 .

25

Rev. Proc. 2006-1, 2006-1 IRB 1, § 8.04 .

26

Rev. Proc. 2006-1, 2006-1 IRB 1, § 8.04 .

27

Rev. Proc. 2006-1, 2006-1 IRB 1, § 7.02(1) .

28

Rev. Proc. 2006-1, 2006-1 IRB 1, § 7.02(3) .

29

Rev. Proc. 2006-1, 2006-1 IRB 1, §§ 7.02(5) , 7.03(3) . Taxpayers are "encouraged" to request that IRS requests for additional facts be sent by fax and to respond by fax to any such request. Id. § 8.05 (1).

30

Rev. Proc. 2006-1, 2006-1 IRB 1, § 7.02(6) .

31

Rev. Proc. 2006-1, 2006-1 IRB 1, §§ 10.01 , 10.02 . "Because conference procedures are informal, no tape, stenographic, or other verbatim recording of a conference may be made by any party." Id. § 10.03 . Conferences may sometimes be held by telephone. Id. § 10.08 .

32

Rev. Proc. 2006-1, 2006-1 IRB 1, § 10.05 . A taxpayer has no right to another conference "when a proposed holding is reversed at a higher level with a result less favorable to the taxpayer, if the grounds or arguments on which the reversal is based were discussed at the conference of right."

33

Rev. Proc. 2006-1, 2006-1 IRB 1, § 10.07 .

34

Rev. Proc. 2006-1, 2006-1 IRB 1, § 7.07(2)(a) . See id. § 8.06 (IRS will give taxpayer opportunity to withdraw if adverse ruling is contemplated). For the IRS operating divisions, see supra ¶ 110.1 text accompanying note 11.1 .

35

H.R. Rep. No. 391, 100th Cong., 1st Sess. 1123 (1987).

36

Pub. L. No. 100-203, § 10511, 101 Stat. 1330 (1987) . IRS authority to impose user fees has always been temporary. It presently extends through 2014. IRC § 7528 , as amended by Pub. L. No. 108-357, § 891, 118 Stat. 1418 (2004) .

36.1

Rev. Proc. 2006-1, 2006-1 IRB 1, § 15.02 . User fees are generally refundable only if the IRS declines to rule on all issues raised. Id. § 15.10. For the schedules of fees, see id. Appendix A (fee is generally $10,000 for requests postmarked after January 2006, but lower fees are provided for most accounting changes and some determination letters); Rev. Proc. 2006-8, 2006-1 IRB 245 (user fees for letter rulings, determination letters, and other ruling requests addressed to Commissioner, Tax Exempt and Government Entities Division).

37

See, e.g., IRC §§ 442 , 446(e) .

App. 271

38

Rev. Proc. 2006-3, 2006-1 IRB 122, § 2.01 .

39

Rev. Proc. 2006-3, 2006-1 IRB 122, § 3.02 . See id. § 3.01 (list of "specific questions and problems" on which rulings and determination letters are not issued).

40

Rev. Proc. 2006-3, 2006-1 IRB 122, § 4.02 . See id. § 2.01 ("'not ordinarily' connotes that unique and compelling reasons must be demonstrated to justify the issuance of a ruling or determination letter"), id. § 4.01 (list of "specific questions and problems" on which IRS does not ordinarily rule).

41

Rev. Proc. 2006-1, 2006-1 IRB 1, § 8.03 (if "a less than fully favorable letter ruling is indicated," IRS "will tell the taxpayer whether minor changes in the transaction or adherence to certain published positions would bring about a favorable ruling").

42

See generally Sugarman, Drafting Clauses of Escape in Agreements With Uncertain Tax Consequences, 1960 S. Cal. Tax Inst. 131. See also West Los Angeles Inst. v. Mayer, 366 F2d 220 (9th Cir. 1966) (adverse IRS ruling warranted rescission of sale of stock on ground of commercial frustration or supervening impossibility of performance).

43

Corey, Letter Rulings: To Apply or Not to Apply, 34 NYU Inst. on Fed. Tax'n 787, 792 (1976).

44

Rev. Proc. 2006-3, 2006-1 IRB 122, §§ 3.01(16) , 3.01(19) , 3.01(22) .

45

Rev. Proc. 2006-1, 2006-1 IRB 1, §§ 4.01(3) , 4.01(20) .

46

For a case holding that a private ruling did not bind the IRS on an issue that was not explicitly addressed, see Jeffers v. US, 556 F2d 986 (Ct. Cl. 1977) (ruling on status of proposed reorganization did not pass on impact of § 483 ).

47

Rev. Proc. 86-18, 1986-1 CB 551 (§§ 302 and 311 generally); Rev. Proc. 77-41, 1977-2 CB 574 .

48

Rev. Proc. 81-42, 1981-2 CB 611 .

49

Rev. Proc. 86-16, 1986-1 CB 546 .

50

Rev. Proc. 90-52, 1990-2 CB 626 .

51

Rev. Proc. 86-16, 1986-1 CB 546 .

52

Rev. Proc. 83-59, 1983-2 CB 575 . See Rev. Proc. 69-19, 1969-2 CB 301 (transfers of technical know-how in exchanges involving foreign transferee corporations).

53

Rev. Proc. 86-41, 1986-2 CB 716 , modified by Rev. Proc. 91-63, 1991-2 CB 865 . For certain issues under § 355 on which rulings will not be issued, see Rev. Proc. 2006-3, 2006-1 IRB 122, § 4.01(29) .

54

Rev. Proc. 77-37, 1977-2 CB 568 , superseded in part by Rev. Proc. 79-14, 1979-1 CB 496 , modified by Rev. Proc. 89-30, 1989-1 CB 895 .

55

Rev. Proc. 89-12, 1989-1 CB 798 .

56

Rev. Proc. 82-58, 1982-2 CB 847 .

57

Rev. Proc. 75-21, 1975-1 CB 715 , as modified by Rev. Proc. 76-30, 1976-2 CB 647 .

58

See supra ¶ 100.8 .

59

Rev. Proc. 76-34, 1976-2 CB 656 , modified by Rev. Proc. 84-46, 1984-1 CB 541 . See Statement of Procedural Rules, supra note 1 , § 601.201(n) .

60

See supra ¶ 61.1.3 .

---

61

Rev. Proc. 71-19, 1971-1 CB 698 .

---

62

Rev. Proc. 2006-1, 2006-1 IRB 1, § 2.05(1) . See Rev. Proc. 2006-4, 2006-1 IRB 132, § 3.08 (same for Tax Exempt and Government Entities Division).

---

63

Rev. Proc. 2006-1, 2006-1 IRB 1, § 2.05(2) ("substantive tax issues" under examination or in litigation will not be discussed by IRS employees not involved in examination or litigation, and taxpayer requesting oral guidance may be asked whether matter is before another IRS office).

---

64

Rev. Proc. 89-14, 1989-1 CB 814, at § 3.01 .

---

65

Id. at § 6.01 .

---

66

For example, 112 revenue rulings were published in 1990, as against 448 in 1978.

---

67

Id. at § 7.01(4) .

---

68

Rev. Proc. 2006-1, 2006-1 IRB 1, § 11.02 . See Zelenak, Should Courts Require the Internal Revenue Service to Be Consistent? 40 Tax L. Rev. 411 (1985).

---

69

IRC § 6110(j)(3) .

---

70

IRM 4245.3, MT 4200–352 (April 27, 1979).

---

71

Rev. Proc. 89-14, 1989-1 CB 814, § 7.01(3) .

---

72

**App. 274**

Rev. Proc. 2006-1, 2006-1 IRB 1, § 11.01 ("[a] taxpayer ordinarily may rely on a letter ruling"). For closing agreements and compromises, see infra ¶ 112.1.5 .

---

73

Reg. § 601.201(*l*)(4) ; Rev. Proc. 2006-1, 2006-1 IRB 1, § 11.04 . A revocation or modification may be accomplished by a notice to the taxpayer to whom the letter ruling was issued, enactment of legislation or ratification of a tax treaty, a decision of the Supreme Court, temporary or final regulations, or a revenue ruling, revenue procedure, notice, or other statement published in the *Internal Revenue Bulletin*. See generally Green & Lehmann, GCM 39862 : A Case Study in the Revocation of Letter Rulings, 57 Tax Notes 1301 (Nov. 30, 1992); Comment, Retroactive and Nonretroactive Application of Rulings, 24 Tax Law. 151 (1970); Note, Retroactive Revocation of Revenue Rulings, 42 NYU L. Rev. 91 (1967).

---

73.1

Reg. § 601.201(*l*)(5) ; Rev. Proc. 2006-1, 2006-1 IRB 1, §§ 11.05 , 11.06 .

---

74

Couzens v. CIR, 11 BTA 1040, 1159 (1928) . The court held that the ruling fixing the March 1, 1913 value of stock of the Ford Motor Co. sold by minority shareholders to Henry Ford in 1919 was not conclusive, pointing out that Congress had provided a procedure "for a written agreement binding both the taxpayer and the government." Id. at 1155 . In a suit by another minority shareholder, the Commissioner was held to be bound by the ruling, or at least by an assessment made pursuant to it. Woodworth v. Kales, 26 F2d 178 (6th Cir. 1928) . Having obtained a refund on the theory that the government was bound by the ruling, this shareholder brought a second suit to recover part of the tax originally paid pursuant to the ruling on the ground that the ruling was too favorable to the government. This suit was also successful! See US v. Kales, 314 US 186 (1941) . See Botany Worsted Mills v. US, 278 US 282 (1929) (nonstatutory settlements are not conclusive).

The political background of the *Couzens* case is summarized in Paul, Taxation in the United States 150–51 (Little, Brown 1954), which also describes a later unsuccessful fraud case against Secretary Mellon, not without political overtones, culminating in Mellon v. CIR, 36 BTA 977 (1937) .

---

75

Couzens v. CIR, supra note 74 , at 1159.

---

76

Id. at 1172–73 (stock valued at $10,000, as against $9,500 value fixed by ruling).

---

77

See Boggs v. CIR, 784 F2d 1166 (4th Cir. 1986) (retroactive revocation of ruling was abuse of discretion where only change in facts identified by IRS was immaterial; that comparability of employer's pension and profit sharing plans was upset by departure of two employees was not material); Lansons, Inc. v. CIR, 622 F2d 774 (5th Cir. 1980) (retroactive revocation of letter ruling was abuse of discretion); Stevens Bros. Found., Inc. v. CIR, 324 F2d 633 (8th Cir. 1963), cert. denied, 376 US 969 (1964) (retroactive revocation proper because disqualifying facts not disclosed in request for ruling); Oakton Distribs., Inc. v. CIR, 73 TC 182 (1979) (same; misstatement of material fact); Wisconsin Nipple & Fabricating Corp. v. CIR, 67 TC 490 (1976), aff'd, 581 F2d 1235 (7th Cir. 1978) (change in facts in later years), and cases there cited.

---

78

Found. v. CIR, 238 F2d 589, 591 (3d Cir. 1956) . See generally Kanter & Horwood, The ITT-Hartford Ruling Revocation: An Analysis of the Tax Implications, 40 J. Tax'n 260 (1974) ; Lynn & Gerson, Quasi-Estoppel and Abuse of Discretion as Applied Against the United States in Federal Tax Controversies, 19 Tax L. Rev. 487, 505–12 (1964); Wenchel, Taxpayers' Rulings, 5 Tax L. Rev. 105 (1949) (early history of IRS ruling policy).

79

Rev. Proc. 2006-1, 2006-1 IRB 1, § 11.02 . See Goodstein v. CIR, 267 F2d 127 (1st Cir. 1959) .

80

See IBM Corp. v. US, 343 F2d 914 (Ct. Cl. 1965), cert. denied, 382 US 1028 (1966) . The case, which involved application of manufacturer's excise tax differently to two business competitors, both of which requested rulings, was directly concerned with the exercise of discretion under § 7805(b) , but it has wider implications. See also Ogiony v. CIR, 617 F2d 14 (2d Cir.), cert. denied, 449 US 900 (1980) (concurring opinion—"consistency over time and uniformity of treatment among taxpayers are proper benchmarks from which to judge IRS actions," but, on facts, insufficient evidence of inconsistent treatment); Bornstein v. US, 345 F2d 558 (Ct. Cl. 1965) (*IBM* case inapplicable to taxpayer who did not apply for ruling). See generally Zelenak, supra note 68 . See Powell v. US, 945 F2d 374 (11th Cir. 1991) (refund suit based on allegation that in denying deductions for payments to Church of Scientology on ground that payments were for services performed for taxpayer, not charitable gifts, IRS acted inconsistently because members of other religious groups were routinely allowed deductions for payments for religious services or benefits; held, district court erred in dismissing suit for failure to state claim on which relief can be granted; "administrative inconsistency becomes more odious when it entails an inconsistent action based upon religion").

81

Rev. Proc. 89-14, 1989-1 CB 814, at § 7.01(5) .

82

Id. § 7.01(6) . For the history of this policy, see Caplin, Taxpayer Rulings Policy of the Internal Revenue Service: A Statement of Principles, 20 NYU Inst. on Fed. Tax'n 1 (1962).

83

Id. at § 7.01(5) .

84

E.g., 1990-1 CB iv. For the IRS program of "obsoleting" rulings published before 1953, see Rev. Proc. 67-6, 1967-1 CB 576 (rulings designated as obsolete are not determinative as to transactions occurring after announcement of obsolete status; application to prior transactions resolved on basis of facts and circumstances). For other statements of the reasons for declaring a ruling obsolete, see Rev. Rul. 76-315, 1976-2 CB 449 ; Rev. Rul. 76-564, 1976-2 CB 449 .

**App. 276**

85

Rev. Proc. 89-14, supra note 81, at § 7.01(3) . But see Crespo v. US, 399 F2d 191 (Ct. Cl. 1968) (46-year-old ruling applied where retroactive revocation by 1968 ruling would have been extraordinary, even though 1968 ruling was not explicitly nonretroactive; on finding that retroactive revocation did not occur, no need to determine whether taxpayer relied on old ruling); Vogt v. US, 537 F2d 405 (Ct. Cl. 1976) (change in position not applied retroactively despite IRS failure to so provide).

See also Computer Sciences Corp. v. US, 2001-2 USTC ¶ 50,635 (Ct. Fed. Cl. 2001) (IRS unreasonably discriminated between similarly situated taxpayers in modifying revenue ruling, applying modification to amounts paid after 1989, except to extent deducted on return filed before December 7, 1990, regardless of year-end).

---

86

Dixon v. US, 381 US 68, 73 (1965) The case involved a published acquiescence in a Tax Court decision, which was analogized to a ruling for purposes of discussion. Whether, in a case where the issue is critical, an acquiescence is governed by the same judicial criteria as a published ruling is another matter. See infra ¶ 110.5.6 .

Automobile Club of Mich. v. CIR, 353 US 180 (1957) , often cited in this context, did not involve discrimination among similarly situated taxpayers because the revocation of the ruling in that case was applied retroactively to all taxpayers and was presaged by an earlier announcement of the IRS' changed view. See generally Cohen & Harrington, Is the Internal Revenue Service Bound by its Own Regulations and Rulings? 51 Tax Law. 675 (1998).

---

87

1953-1 CB 1. The current formulation: "Rulings and procedures reported in the Bulletin do not have the force and effect of Treasury Department Regulations, but they may be used as precedents." 1990-1 CB iii. See Rev. Proc. 89-14, supra note 81, at § 7.01(4) (rulings published to provide precedents to be used in the disposition of other cases and "may be cited and relied upon for that purpose").

---

88

Rev. Rul. 54-172, 54-1 CB 394 . For the current formulation of this policy, see Rev. Proc. 89-14 , supra note 81 .

---

89

Caplin, supra note 82 , at 6. See Silco, Inc. v. US, 779 F2d 282 (5th Cir. 1986) (taxpayer entitled to rely on position stated in published rulings that are on books when transaction occurs, even if ruling stating opposite position is issued before consequences of transaction are litigated). But see Dickman v. CIR, 465 US 330, 343 (1984) (IRS may change its interpretation of law and may apply new interpretation retroactively; "Commissioner is under no duty to assert a particular position as soon as the statute authorizes such an interpretation"); Murray v. US, 81-2 USTC ¶ 9497 (SDNY 1981) (not officially reported) (unless revenue ruling has gained "the force of law" by congressional reenactment of provision with which it deals, IRS may issue and give retroactive application to inconsistent revenue ruling, even if taxpayer relied on earlier ruling). See also First Chicago Corp. v. CIR, 96 TC __ (1991) (IRS did not abuse discretion in giving ruling retroactive effect where issue was "one of first impression" and ruling did not alter "existing state of the law"; purpose of § 7805(b) is to protect "a taxpayer's justifiable reliance on prior settled law that is altered by the ruling or regulations [if] retroactive application would create an inordinately harsh result"); Matson Navigation Co. v. CIR, 68 TC 847 (1977) (distinguishing between revenue rulings and revenue procedures as respects retroactivity; extended discussion, leading to greater reluctance to apply revenue procedures retroactively). See McLendon v. CIR, 135 F3d 1017 (5th Cir. 1998) ("*Silco* stands for the proposition that the Commissioner will be held to his published rulings in areas where the law is unclear, and may not depart from them in individual cases[, and] may not retroactively abrogate a ruling in any unclear area with respect to any taxpayer who has relied on it").

The Tax Court has often treated unrevoked revenue rulings as concessions of the issues ruled upon. See, e.g., Cascade Designs, Inc. v. CIR, 79 TCM (CCH) 1642 (2000) .

---

90

**App. 277**

Bornstein v. US, 345 F2d 558 (Ct. Cl. 1965) , upholding a distinction between published and private rulings as far as retroactive revocation is concerned, resembles *Dixon* in being concerned with pre-1953 taxable years.

---

90.1

In Rauenhorst v. CIR, 119 TC 157 (2002) , the court, finding the IRS's litigating position to be contrary to a published ruling, said,

> the IRS has committed itself "to increased and more timely published guidance," in the form of revenue rulings and revenue procedures, in the hopes of achieving increased taxpayer compliance and resolving "frequently disputed tax issues." These stated goals will not be achieved if the Commissioner refuses to follow his own published guidance and argues in court proceedings that revenue rulings do not bind him or that his rulings are incorrect. Certainly, the Commissioner's failure to follow his own rulings would be unfair to those taxpayers, such as petitioners herein, who have relied on revenue rulings to structure their transactions....Accordingly, in this case, we shall not permit respondent to argue against his revenue ruling, and we shall treat his revenue ruling as a concession.

Other cases treating protaxpayer rulings as concessions by the IRS include Walker v. CIR, 101 TC 537 (1993) ; Nissho Iwai Am. Corp. v. CIR, 89 TC 765 (1987) ; Phillips v. CIR, 88 TC 529 (1987), rev'd on another issue, 851 F2d 1492 (DC Cir. 1988) .

---

91

Rev. Proc. 89-14, supra note 81, at § 7.01(4) .

**App. 278**

---

92

Stubbs, Overbeck & Assocs. v. US, 445 F2d 1142, 1146–47 (5th Cir. 1971) , and cases there cited. See Stark v. CIR, 86 TC 243, 250 (1986) ("absent special circumstances, a revenue ruling merely represents the Commissioner's position with respect to a specific factual situation, [and] typically [is not] substantive authority for a position"); Reinhardt v. CIR, 85 TC 511, 520 (1985) (revenue ruling "merely represents the position of one of the litigants in this case, the Commissioner of Internal Revenue, and does not necessarily even represent the view of the Treasury Department"); Browne v. CIR, 73 TC 723, 731 (1980) (rulings "essentially represent the position of one of the parties before us"); Lang's Est. v. CIR, 64 TC 404, 407 (1975) (acq.) ("simply the contention of one of the parties to the litigation, and...entitled to no greater weight").

A revenue ruling is especially likely to be greeted with judicial hostility if it is patterned on the facts of the case before the court and was issued after the case was in litigation. See Silco, Inc. v. US, 779 F2d 282 (5th Cir.1986) (published ruling is not entitled to any weight when promulgated after taxpayer's suit commenced and is response to issues raised in suit); Tandy Corp. v. CIR, 92 TC 1165, 1170 (1989) (re ruling closely patterned on facts of case and issued after case had been tried and briefed but before court's decision; "we think that the ruling is a thinly veiled attempt to influence this litigation, judging from the similarity of the facts and the timing of its issuance. This and other courts have routinely looked upon such bootstrapping revenue rulings with disfavor").

See Surrey, The Scope and Effect of Treasury Regulations Under the Income, Estate, and Gift Taxes, 88 U. Pa. L. Rev. 556, 557–58 (1940) (interpretative regulations are "no more than the Department's construction of the Revenue Act" and "considered in their own right enjoy, as respects taxpayers, no greater authority as to the meaning of the statutory language interpreted than is possessed by the discussions in the tax services or legal periodicals").

See Davis v. US, 495 US 472 (1990) ("although the Service's interpretive rulings do not have the force and effect of regulations,...we give an agency's interpretations and practices considerable weight where

they involve the contemporaneous construction of a statute and where they have been in long use"); AMP, Inc. v. US, 185 F3d 1333, 1339 (Fed. Cir. 1999) ("A revenue ruling issued at a time when the I.R.S. is preparing to litigate is often self-serving and not generally entitled to deference by the courts. ...This is especially true when the ruling cites no authority and is inconsistent with regulations and other pronouncements of the I.R.S."); McLendon's Est. v. CIR, 135 F3d 1017, 1023–1024 (5th Cir. 1998) ("revenue rulings are odd creatures unconducive to precise categorization in the hierarchy of legal authorities. They are clearly less binding on the courts than treasury regulations or Code provisions, but probably (and in this circuit certainly) more so than the mere legal conclusions of the parties"); Wood v. CIR, 955 F2d 908 (4th Cir. 1992) (after independently justifying result reached in Revenue Ruling, court commented: "It is well-established that considerable weight is to be given to an agency's construction of a statute that it is charged with administering"); Solomon v. US, 92-1 USTC ¶ 50,142 (SDNY 1992) ("while revenue rulings may not be binding on this Court, they should be given great deference"); Norfolk S. Corp. v. CIR, 104 TC 13 (1995) ("a ruling or other interpretation by the Commissioner is only as persuasive as her reasoning and the precedents upon which she relies"); Standley v. CIR, 99 TC 259, at n.8 (1992) ("at best, [IRS Notice] can be considered the position of a party"); Indiana Nat'l Corp. v. US, 980 F2d 1098 (7th Cir. 1992) ("it is proper to consider a relevant revenue ruling,...although they are not definitive"); Burton v. CIR, 99 TC 622 (1992) ("although revenue rulings are not binding on this Court, they may be helpful in interpreting a statute based on their own intrinsic value"); Geisinger Health Plan v. CIR, 985 F2d 1210 (3d Cir. 1993) ("courts are to give weight to IRS revenue rulings but may disregard them if they conflict with the statute they purport to interpret or its legislative history, or if they are otherwise unreasonable"). See generally Caron, Tax Myopia Meets Tax Hyperopia: The Unproven Case of Increased Judicial Deference to Revenue Rulings, 57 Ohio St. LJ 637 (1996); Galler, Judicial Deference to Revenue Rulings: Reconciling Divergent Standards, 56 Ohio St. LJ 1037 (1995); Galler, Emerging Standards for Judicial Review of IRS Revenue Rulings, 72 BU L. Rev. 841 (1992).

---

93

See Industrial Valley Bank & Trust Co. v. CIR, 66 TC 272, 280 (1976) ("in the usual case we do not consider revenue rulings as having any particular legal significance other than as a statement of [IRS] position...[but] in the field of bad debt reserves of banks, the applicable rules appear to have been customarily laid down by revenue ruling rather than by regulation"; since parties treated issue as whether requirements of a revenue ruling were satisfied, court did not raise question of ruling's validity on its own motion); Fenstermaker v. CIR, 37 TCM (CCH) 898 (1978) (suggestion that revenue ruling might acquire force if "dignified by precedent and sanctioned by higher authority").

---

93.1

US v. Mead Corp., 121 S. Ct. 2164 (2001) . See generally ABA Section of Taxation, Report of the Task Force on Judicial Deference, 104 Tax Notes 1231 (Sept. 13, 2004).

---

93.2

US v. Mead Corp., 121 S. Ct. 2164, 2174–2175 (2001) .

---

93.3

Skidmore v. Swift & Co., 323 US 134 (1944) .

**App. 279**

---

93.4

US v. Mead Corp., 121 S. Ct. 2164, 2175–2176 (2001) . See US v. Cleveland Indians Baseball Co., 532 US 220 (2001) ("In this case, the Rulings simply reflect the agency's longstanding interpretation of its own regulations. Because that interpretation is reasonable, it attracts substantial judicial deference"); O'Shaughnessy v. US, 332 F3d 1125 (8th Cir. 2003) (30-year-old ruling not followed because "statutory framework on which the agency's analysis...was based has changed significantly");

U.S. Freightways Corp. v. CIR, 270 F3d 1137 (7th Cir. 2001) ("even after *United States v. Mead Corp*.... we owe some deference to the Commissioner's interpretation of his own regulations"); Matz v. Household Int'l Tax Reduction Inv. Plan, 265 F3d 572 (7th Cir. 2001) (IRS's position in amicus brief is "an informal agency policy pronouncement" that *Mead* requires courts to "respect only to the extent that those interpretations have the power to persuade").

---

94

See S. Rep. No. 938, 94th Cong., 2d Sess., reprinted in 1976-3 (Vol. 3) CB 49; Emory, Private Rulings: What May Practitioners Expect From the New Procedure? 47 J. Tax'n 322 (1977) ; Segal, Disclosure of Private Rulings Under the Tax Reform Act of 1976, 63 ABAJ 1484 (1977). For the status of private rulings under prior law, see Tax Analysts & Advocates v. IRS, 505 F2d 350 (DC Cir. 1974) (unpublished letter rulings not "returns" and hence subject to disclosure under FOIA); Wright, Inadequacies of Freedom of Information Act as Applied to IRS Letter Rulings, 28 Okla. L. Rev. 701 (1975).

For the disclosure and privacy rules covering tax returns and other information supplied by taxpayers, see infra ¶ 111.2 .

---

95

IRC § 6110(b)(2) ; Reg. § 301.6110-2(g) . See IRC § 6110(e) (background file documents available only on written request); Rev. Proc. 88-11, 1988-1 CB 636 (procedures for requesting background file documents). Rev. Proc. 88-11 has been superseded by Rev. Proc. 95-15, 1995-1 CB 523 .

A 1998 amendment expands the definition of "written determination" to include "Chief Counsel advice," defined as any "written advice or instruction" issued by the IRS Chief Counsel's National Office to IRS field or service center employees or to regional or district employees of the Chief Counsel if the advice or instruction "conveys" a "legal interpretation of a revenue provision," an IRS position or policy on a revenue provision, or a legal interpretation of any other federal, state or foreign law "relating to the assessment or collection of any liability under a revenue provision." IRC §§ 6110(b)(1) , 6110(i)(1) (applicable to all such advice issued after October 22, 1998, and to most such advice issued after 1985). The term "revenue provision" includes Code provisions, regulations, revenue rulings and procedures, other IRS guidance (including Chief Counsel advice), tax treaties, and court opinions. However, "Chief Counsel advice does not include written recordations of informal telephonic advice," and "[d]rafts of Chief Counsel advice sent to the field for review, criticism, or comment prior to approval within the National Office also need not be made public." HR Rep. No. 599, 105th Cong., 2d Sess. 125 (Conf. Rep. 1998).

"Field service advice," which is "taxpayer-specific" advice given by the national office to field Counsel and IRS offices, is a principal target of the rule on Chief Counsel advice. HR Rep. No. 599, supra, at 122. "The taxpayers who are the subject of field service advice generally do not participate in the process, leading some tax commentators to express concern that the field service advice process was displacing the technical advice process." In 1997, the IRS was ordered to release its field service advice under the Freedom of Information Act (FOIA). Tax Analysts v. IRS, 117 F3d 607 (DC Cir. 1997) . See Rice, Field Service Advice Memoranda and the Attorney-Client Privilege, 78 Tax Notes 615 (Feb. 2, 1998). Congress concluded that "[c]reating a structured mechanism by which these types of legal memoranda are open to public inspection will increase the public's confidence that the tax system operates fairly and in an even-handed manner with respect to all taxpayers." HR Rep. No. 599, supra, at 123. See id. at 126 ("The public inspection of Chief Counsel advice is to be accomplished only pursuant to [these] rules and procedures..., and not under those of any other provision of law, such as FOIA"). See also Tax Analysts v. IRS, 294 F3d 71 (DC Cir. 2002) (finding various IRS documents exempt from disclosure under FOIA "pursuant to the deliberative process privilege encompassed in FOIA Exemption 5, 5 U.S.C. § 552(b)(5) ").

Generally, only names, addresses, and other identifying material may be deleted before Chief Counsel

**App. 280**

advice is released to the public. IRC § 6110(i)(3) . If the advice "is written with respect to a specific taxpayer or group of specific taxpayers," the IRS must, within 60 days after the advice is issued, mail to the taxpayer or taxpayers a notice of its intention to disclose the document to the public, and the notice must indicate the deletions that the IRS plans to make before releasing the document to the public. IRC § 6110(i)(4)(B) .

96

IRC § 6110(c) ; Reg. § 301.6110-3 . See IRC § 6103(b)(2)(B) (portions of written determination or background document exempted from disclosure by § 6110(c) are return information, disclosure of which is prohibited by § 6103 ). For § 6103 , see infra ¶ 111.2 .

97

IRC § 6110(f)(1) .

98

IRC § 6110(g) .

99

IRC § 6110(i) .

100

Reg. §§ 301.6110-5(b)(1) , (d)(1) .

101

IRC § 6110(f)(3) .

102

IRC § 6110(f)(4) .

103

IRC § 6110(d) ; Reg. § 301.6110-4 . See Staff of Joint Comm. on Tax'n, 94th Cong., 2d Sess., General Explanation of the Tax Reform Act of 1976, reprinted in 1976-3 (Vol. 2) CB 306-07; Dubroff, The United States Tax Court: An Historical Analysis 469–76 (CCH 1979).

104

See Grenier v. IRS, 449 F. Supp. 834 (D. Md. 1978) (FOIA displaced by § 6110 ). For a grandfather clause, under which the pre-1976 rules remain applicable to FOIA requests that were subject to litigation started before 1976, see § 6110(h) ; Conway v. US, 447 F. Supp. 1128 (DDC 1978) .

105

**App. 281**

King v. IRS, 684 F2d 517 (7th Cir. 1982) (denying disclosure of "draft technical memorandum," explaining adopted regulation, which IRS kept on file but never acted on); Arthur Andersen, Inc. v. IRS, 679 F2d 254 (DC Cir. 1982) (drafts of published revenue ruling and accompanying background notes; exempt as predecisional and deliberative); Pies v. IRS, 668 F2d 1350 (DC Cir. 1981) (drafts of

technical memoranda and proposed regulations; exempt as predecisional); Taxation With Representation Fund v. IRS, 646 F2d 666 (DC Cir. 1981) (ordering disclosure of IRS General Counsel's memoranda, technical memoranda, and actions on decisions representing final policy statements; contra for less definitive memoranda); Common Cause v. IRS, 646 F2d 656 (DC Cir. 1981) (documents relating to proposed procedures for disclosure of contacts between IRS and other federal officials regarding third-party tax matters; exempt as deliberative); Pope v. US, 585 F2d 802 (5th Cir. 1979) (disclosure of documents related to IRS disciplinary proceedings against attorney not required); LSB Indus., Inc. v. CIR, 556 F. Supp. 40 (WD Okla. 1982) (documents relating to investigation of taxpayer with view to grand jury proceedings and possible criminal prosecution; exempt under privileges for confidential attorney-client communication, attorney work product, and predecisional documents); Levy v. IRS, 531 F. Supp. 485 (SD Fla. 1982) (suit by accountant to obtain IRS agents' memoranda of interviews relating to accountant's client; held, documents are within FOIA exception for investigatory records, production of which would interfere with enforcement proceedings). See generally Levenson & Pitt, Government Information: FOIA, Sunshine Act, Privacy Act (PLI 1978); House Comm. on Government Operations & Senate Finance Comm., 94th Cong., 1st Sess., Freedom of Information Act and Amendments of 1974: Source Book (Joint Comm. Print 1975).

For an interminable litigation over FOIA disclosure of computer printouts used in measuring taxpayer compliance (and selecting returns for audit), see Long v. IRS, 596 F2d 362 (9th Cir. 1979), cert. denied, 446 US 917 (1980), in subsequent proceedings, 693 F2d 907 (9th Cir. 1982), 566 F. Supp. 799 (WD Wash. 1983), 742 F2d 1173 (9th Cir. 1984), 825 F2d 225 (9th Cir. 1987), vacated and remanded, 487 US 1201 (1988) . See also Bureau of Economic Analysis v. Long, 454 US 934 (1981) (similar).

---

106

Cumulative List of Announcements Relating to Decisions of the Tax Court, 1990-1 CB 1. See Estreicher & Revesz, Nonacquiescence by Federal Administrative Agencies, 98 Yale LJ 679 (1989); Diller & Morawetz, Intracircuit Nonacquiescence and the Breakdown of the Rule of Law: A Response to Estreicher and Revesz, 99 Yale LJ 801 (1990); Estreicher & Revesz, The Uneasy Case Against Intracircuit Nonacquiescence: A Reply, 99 Yale LJ 831 (1990); Rogovin, the Four R's: Regulations, Rulings, Reliance and Retroactivity, 43 Taxes 756, 772–73 (1965); Uretz, The Chief Counsel's Policy Regarding Acquiescence and Nonacquiescence in Tax Court Cases, 14 Tax Couns. Q. 129 (1970); Note, The Commissioner's Non-Acquiescence, 40 S. Cal. L. Rev. 550 (1967).

---

107

Dixon v. US, 381 US 68 (1965) (IRS has authority under § 7805(b) to withdraw acquiescence in erroneous decision retroactively, even if taxpayer relied on original notice).

---

108

Dixon v. US, supra note 107 .

---

109

See supra ¶ 110.5 .

---

110

See Quinn v. CIR, 524 F2d 617 (7th Cir. 1975) (IRS not estopped by failure to withdraw notice of acquiescence, but better administrative practice would be to withdraw outstanding acquiescences systematically; on facts, no showing of reliance to taxpayer's detriment; extensive analysis).

---

111

App. 282

See, e.g., Rev. Rul. 75-360, 1975-2 CB 110 (Tax Court decision not considered "an appropriate precedent" because of erroneous IRS concession when presenting case at trial).

END OF DOCUMENT -

© 2007 Thomson/RIA. All rights reserved.