IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-211T
(Judge Victor J. Wolski)

JAMES R. THOMPSON,

Plaintiff,

v.

THE UNITED STATES,

Defendant

**SECOND SUPPLEMENTAL APPENDIX TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**VOLUME X**


| Description | Page(s) |
|---|---|
| General Explanation of the Tax Reform Act of 1986, prepared by the Staff of the Joint Committee on Taxation (May 4, 2987), Table of Contents and Title V (Part 3) | 351-371 |


DALLAS_1 5081709v1

Under these circumstances, it is not appropriate to treat the transaction as giving rise both to portfolio interest income and to passive interest expense. Rather, to the extent that a taxpayer receives interest income with respect to a loan to a passthrough entity in which he has an ownership interest, such income should be allowed to offset the interest expense passed through to the taxpayer from the activity for the same taxable year.

The amount of interest income of the partner from the loan that is appropriately offset by the interest expense of the partnership on the loan should not exceed the taxpayer's allocable share of the interest expense to the extent not increased by any special allocation. For example, assume that an individual has a 40-percent interest in a partnership that conducts a business activity in which he does not materially participate, and the individual makes a loan to the partnership on which the partnership pays $100 of interest expense for the year. Since 40 percent of the partnership's interest expense is allocable to the individual, only $40 of the partner's $100 of interest income should be permitted to offset his share of the partnership interest expense, and the remaining $60 is properly treated as portfolio income that cannot be offset by passive losses.

Congress anticipated the issuance of Treasury regulations to provide for the above result. Such regulations may also, to the extent appropriate, identify other situations in which netting of the kind described above is appropriate with respect to a payment to a taxpayer by an entity in which he has an ownership interest. The netting permitted in any such instances should not, however, permit any passive deductions to offset non-passive income except to the extent of the taxpayer's allocable share of the specific payment at issue. Similar considerations should apply in the consolidated return context.

*Regulatory authority of Treasury in defining non-passive income.*—The Act instructs the Treasury to provide such regulations as may be necessary or appropriate to carry out the purpose of the passive loss provisions, i.e., to prevent the sheltering of positive income sources through the use of tax losses derived from passive activities. Specifically, the Treasury is authorized to provide by regulations that certain items of gross income will not be taken into account in determining income or loss from any activity (and to provide for the appropriate treatment of expenses allocable to such income). The Act also specifically authorizes regulations under which net income or gain from a limited partnership or other passive activity are treated as not from a passive activity.

Congress intended such regulations to prevent taxpayers from structuring income-producing activities (including those that do not bear significant expenses) in ways that are designed to produce passive income that may be offset by unrelated passive losses. For example, regulations may provide that, in order to prevent avoidance of the passive loss rule, a limited partner's share of income from a limited partnership is treated as not from a passive activity. Circumstances in which such treatment could be appropriate would include a transfer by a corporation of an income-producing activity to a limited partnership with a distribution to shareholders of limited partnership interests. The regulations might also treat as not passive those activities that previously generated active business

losses and that the taxpayer, with the purpose of circumventing the passive loss rule, intentionally seeks to treat as passive at a time when they generate net income. A further example of a situation where regulatory authority might appropriately be exercised is the case of related party leases or sub-leases, with respect to property used in a business activity, that have the effect of reducing active business income and creating passive income. In addition, regulatory authority could address the situation of ground rents that produce income without significant expenses.

***Treatment of closely held corporations***

The passive loss rule applies to closely held C corporations (other than personal service corporations) in modified form. Such corporations may offset passive losses and credits against active business income, but not against portfolio income. Portfolio income of a closely held corporation generally has the same definition as portfolio income of any other taxpayer subject to the passive loss rule, except that, for purposes of such a corporation (as well as for a personal service corporation) the dividends received deduction is allowed.

**4. Material participation**

***General rule***

In general, a taxpayer's interest in a trade or business activity is not treated as an interest in a passive activity for a taxable year if the taxpayer materially participates in the activity throughout such year.[27] In certain instances, however, material participation is not determinative. Working interests in oil and gas properties generally are treated as active whether or not the taxpayer materially participates, and interests in rental activities are treated as passive whether or not the taxpayer materially participates. In the case of rental real estate activities, a separate standard, active participation, is relevant in determining whether the taxpayer is permitted to use losses and credits from such activities to offset up to $25,000 of other income.

Working as an employee, and providing services as part of a personal service business (including professional businesses such as law, accounting, and medicine), intrinsically require personal involvement by the taxpayer. Thus, by their nature, they are not passive activities.[28]

---

[27] This rule is applied by considering services provided both by the taxpayer and by the taxpayer's spouse (whether or not such taxpayer and spouse file a joint return). Further, it is intended that in determining whether the taxpayer has materially participated throughout the year, all the facts and circumstances are to be taken into account. Thus, for example, if the taxpayer's involvement rises to the level of material participation in an activity on some, but not all, days during the year, but the taxpayer's involvement for the year as a whole is regular, continuous and substantial, then the taxpayer has materially participated for the year. Material participation is determined with respect to the activity for the entire period during the year that he owns an interest in the activity (not, e.g., prorated between periods of greater or lesser involvement). For example, the fact that a taxpayer takes vacations during the year can be fully consistent with a finding of material participation.

[28] The generally "active" nature of the above two undertakings is relevant, not only to the question of whether the taxpayer satisfies the material participation standard, but also to whether either of such two undertakings can be part of the same activity as any other undertaking. *See* sec. 5, *infra*.

Material participation of a taxpayer in an activity is determined separately for each taxable year. In most cases, the material participation (or lack thereof) of a taxpayer in an activity is not expected to change from year to year, although there will be instances in which it does change.

***Limited partnerships***

In the case of a limited partnership interest, except to the extent provided by regulations, it is conclusively presumed that the taxpayer has not materially participated in the activity. In general, under relevant State laws, a limited partnership interest is characterized by limited liability, and in order to maintain limited liability status, a limited partner, as such, cannot be active in the partnership's business. The presumption that a limited partnership interest is passive applies even when the taxpayer possesses the limited partnership interest indirectly through a tiered entity arrangement (e.g., the taxpayer owns a general partnership interest, or stock in an S corporation, and the partnership or corporation in which the taxpayer owns such interest itself owns a limited partnership interest in another entity).

When a taxpayer possesses both a limited partnership interest and another type of interest, such as a general partnership interest, with respect to an activity, except as otherwise provided in regulations, lack of material participation is conclusively presumed with respect to the limited partnership interest (thus limiting the use of deductions and credits allocable thereto). The presence of material participation for purposes of any other interests in the activity owned by the taxpayer is determined with reference to the relevant facts and circumstances.

Under the Act, the Secretary of the Treasury is empowered to provide through regulations that limited partnership interests in certain circumstances will not be treated (other than through the application of the general facts and circumstances test regarding material participation) as interests in passive activities. It is intended that this grant of authority be used to prevent taxpayers from manipulating the rule that limited partnerships generally are passive, in attempting to evade the passive loss provision.[29]

For example, the exercise of such authority by the Secretary may be appropriate in certain situations where taxpayers divide their interests in activities between limited and general partnership interests, e.g., to facilitate establishing a disposition of the taxpayer's entire interest in an activity, or in connection with special allocations of items of income, deduction, or credit as between limited and general partnership interests. The exercise of such authority by the Secretary would also be appropriate if taxpayers were permitted under State law to establish limited liability entities (that are not taxable as corporations) for personal service or other active

---

[29] Examples of such evasion would include attempting to treat income that generally is regarded as not passive in nature (e.g., personal service income) as passive and accordingly as shelterable, or creating an unrealistically small separate "activity" in order to trigger suspended losses upon a partial disposition. Even absent the exercise of the Secretary's authority, items such as a guaranteed cash return or portfolio income from a limited partnership are not regarded as passive. Similarly, payments to a retiring partner under sec. 736 that are in the nature of income for past (or present) services, for example, are not regarded as passive.

businesses, and to denominate as "limited partnership interests" any interests in such businesses related to the rendering of personal services.[29A] The exercise of regulatory authority might also be appropriate where taxpayers sought to avoid limited partnership status with respect to substantially equivalent entities.

***Involvement in operations on a regular, continuous, and substantial basis***

Outside of the limited partnership context, the presence or absence of material participation generally is to be determined with reference to all of the relevant facts and circumstances. In order to be treated as materially participating for purposes of the provision, the taxpayer must be involved in the operations of the activity on a regular, continuous, and substantial basis. This standard is based on the material participation standards under Code sections 1402(a) (relating to the self-employment tax) and 2032A (relating to valuation of farm property for purposes of the estate tax). However, the standard is modified consistently with the purposes of the passive loss provision.

Thus, precedents regarding the application of those preexisting legal standards, whether set forth in regulations, rulings, or cases, are not intended to be controlling with regard to the passive loss rule. For example, whether or not, under existing authorities interpreting sections 1402(a) and 2032A, it could be argued that the material participation requirement (for purposes of those sections) is in certain circumstances satisfied by periodic consultation with respect to general management decisions, the standard under this provision is not satisfied thereby in the absence of regular, continuous, and substantial involvement in operations.

In order to satisfy the material participation standard, the individual's involvement must relate to operations. Consider, for example, the case of a general partnership engaged in the business of producing movies. Among the services that may be necessary to this business are the following: writing screenplays; reading and selecting screenplays; actively negotiating with agents who represent writers, actors, or directors; directing, editing, scoring, or acting in the films; actively negotiating with third parties regarding financing and distribution; and actively supervising production (e.g., selecting and negotiating for the purchase or use of sets, costumes, etc.). An individual who does not make a significant contribution regarding these or similar services is not treated as materially participating. For example, merely approving a financing target, accepting a recommendation regarding selection of the screenplay, cast, locations, and director, or appointing others to perform the above functions, generally does not constitute involvement in operations.

In practice, a taxpayer is most likely to have materially participated in an activity for purposes of this provision in cases where involvement in the activity is the taxpayer's principal business. For example, an individual who spends 35 hours per week operating a grocery store, and who does not devote a comparable amount of

[29A] Section 469(e)(3) provides in any event that earned income is not taken into account in computing income or loss from a passive activity.

time to any other business, clearly is materially participating in the business of the grocery store.

By contrast, when an activity is not an individual's principal business, it is less likely that the individual is materially participating. For example, an individual who works full-time as an employee or in a professional service business (such as law, accounting, or medicine), and who has also invested in a general partnership or S corporation engaged in a business involving orange groves, is unlikely to have materially participated in the orange grove business.

However, the fact that an activity is or is not an individual's principal business is not conclusive in determining material participation. An individual may materially participate in no business activities (e.g., someone who does not work or is retired), or in more than one business activity (e.g., a farmer who lives and works on his farm and "moonlights" by operating a gas station).

Another factor that may be highly relevant in showing regular, continuous, and substantial involvement in the operations of an activity, and thereby establishing material participation, is whether, and how regularly, the taxpayer is present at the place or places where the principal operations of the activity are conducted. For example, in the case of an employee or professional who invests in a horse breeding activity, if the taxpayer lives hundreds of miles from the site of the activity, and does not often visit the site, such taxpayer is unlikely to have materially participated in the activity. By contrast, an individual who raises horses on land that includes, or is close to, his primary residence, is more likely to have materially participated.

Again, however, this factor is not conclusive. For example, even if the taxpayer in the above example lived near the site of the horse breeding activity, or visited it on numerous occasions during the year, it would still be necessary for the taxpayer to demonstrate regular, continuous, and substantial involvement in the operations of the activity. Such involvement might be shown, for example, by hiring and from time to time supervising those responsible for taking care of the horses on a daily basis, along with making decisions (i.e., not merely ratifying decisions) regarding the purchase, sale, and breeding of horses.

Moreover, under some circumstances, an individual may materially participate in an activity without being present at the activity's principal place of business. In order for such a taxpayer materially to participate, however, the taxpayer still must be regularly, continuously, and substantially involved in providing services integral to the activity. For example, in the case of an investor in a barge that transports grain along the Mississippi River, one way of materially participating is regularly to travel with the barge (not merely as a passenger, but performing substantial services with respect to the transporting of grain). Another way of materially participating, without being present at the principal place of business, is to work on a regular basis at finding new customers for the barge service, and to negotiate with customers regarding the terms on which the service is provided. In the case of farming, Congress anticipated that an individual who does not perform physical work relating to a farm, but who is treated as having self-employment

income with respect to the farm under section 1402, generally will be treated as materially participating.

In determining material participation, the performance of management functions generally is treated no differently than rendering other services or performing physical work with respect to the activity. However, a merely formal and nominal participation in management, in the absence of a genuine exercise of independent discretion and judgment, does not constitute material participation.

For example, in the case of a cattle-feeding activity, the fact that an investor regularly receives and responds to "check-a-box" forms regarding when grain should be purchased, what the cattle should be fed, etc., may have little or no bearing on material participation. If the management decisions being made by the taxpayer are illusory (e.g., whether to feed the cattle or let them starve), or guided by an expert in the absence of any independent exercise of judgment by the taxpayer, or unimportant to the business,[30] they are given little weight. Similarly, in situations where the investor's assets are pooled with those of other investors (such as a cattle herd), the fact that the investor's decisions regarding management do not differ or differ only insubstantially from those of other investors is a factor indicating that the investor's involvement in the activity may not rise to the level of material participation.

The fact that a taxpayer has little or no knowledge or experience regarding the cattle-feeding business is highly significant in determining whether such taxpayer's participation in management is likely to amount to material participation. However, even if a taxpayer has such knowledge and experience, if he merely approves management decisions recommended by a paid advisor, the taxpayer's role is not substantial (and he accordingly has not materially participated), since the decisions could have been made without his involvement.

Even an intermittent role in management, while relevant, does not establish material participation in the absence of regular, continuous, and substantial involvement in operations. For example, the fact that one has responsibility for making significant management decisions with respect to an activity does not establish material participation, even if one from time to time exercises such responsibility. It is almost always true (disregarding special cases such as limited partnership interests) that the owner of an interest in an activity has some right to make management decisions regarding the activity, at least to the extent that his interest is not outweighed by that of other owners. Yet many individuals who possess significant ownership interests do not materially participate, and, under present law, have received tax benefits that Congress concluded should be subject to limitation under the passive loss rule.[31] Participation in management cannot be relied upon unduly

---

[30] For example, management decisions may be unimportant to the business where the tax benefits from the business outweigh any risk of economic loss that may result from the decisions.

[31] Experience in applying existing legal standards confirms that a test based on participation in management is subject to manipulation and creates frequent factual disputes between taxpayers and the Internal Revenue Service. Sec. 464, for example, disallows prepaid expenses incurred in a farming activity if more than 35 percent of the loss from the activity is allocated to limited partners or persons who do not actively participate in management. As a result, farming

Continued

both because its genuineness and substantiality are difficult to verify, and because a general management role, absent more, may fall short of the level of involvement that the material participation standard in the provision is meant to require. Nevertheless, it is likely that, despite the difficulty in many circumstances of ascertaining whether the management services rendered by an individual are substantial and *bona fide*, such services are likely to be so when the individual is rendering them on a full-time basis and the success of the activity depends in large part upon his exercise of business judgment.

The fact that an individual works full time in a line of business consisting of one or more business activities does not determine his material participation in a particular activity, although his work may rise to the level of material participation with respect to one or more of the activities. An individual's material participation in any activity is determined on the basis of his regular, continuous, and substantial involvement in the operations of the activity. His involvement in the operations of other activities is not determinative. Thus, for example, a taxpayer's material participation in a rental activity (which is treated as passive without regard to the taxpayer's material participation) does not affect his material participation, if any, in other activities.

A taxpayer is likely to be materially participating in an activity, if he does everything that is required to be done to conduct the activity, even though the actual amount of work to be done to conduct the activity is low in comparison to other activities.

Providing legal, tax, or accounting services as an independent contractor (or as an employee thereof), or that the taxpayer commonly provides as an independent contractor, would not ordinarily constitute material participation in an activity other than the activity of providing these services to the public. Thus, for example, a member of a law firm who provides legal services to a client regarding a general partnership engaged in research and development, is not, if he invests in such partnership, treated as materially participating in the research and development activity by reason of such legal services.

The fact that a taxpayer utilizes employees or contract services to perform daily functions in running the business does not prevent such taxpayer from qualifying as materially participating. However, the activities of such agents are not attributed to the taxpayer, and the taxpayer must still personally perform sufficient services to establish material participation.

A special rule, derived from section 2032A, applies with respect to farming activities, permitting taxpayers to qualify as materially participating in certain situations involving retired or disabled individuals who previously were materially participating (as that

---

activities that rely upon syndication to outside investors, and that are operated principally under the direction of an agent, have been structured so as to assist otherwise passive investors in demonstrating that they play a role in management decisions. While the Internal Revenue Service may argue in any such instance that an investor is not truly participating in management, such argument may be difficult to sustain in the absence of reliable direct evidence regarding the investor's independence of judgment. Congress expects that the material participation standard for purposes of the passive loss rule, in light of its focus on the taxpayer's role in actual operations, will not be similarly subject to manipulation and ambiguity.

term is used for purposes of the passive loss rule), or involving a surviving spouse of an individual who was so participating. Thus, to the extent that, under section 2032A(b)(4) or (5), such person would be treated as still materially participating during retirement or disability (or, in the case of a surviving spouse, after the decedent's death), such person shall be treated as materially participating for purposes of the passive loss provision.

With respect to material participation in an agricultural activity, certain decision-making, if *bona fide* and undertaken on a regular, continuous, and substantial basis, may be relevant to material participation. The types of decision-making that may be relevant in this regard include, without being limited to, decision-making regarding (1) crop rotation, selection, and pricing, (2) the incursion of embryo transplant or breeding expenses, (3) the purchase, sale, and leasing of capital items, such as cropland, animals, machinery, and equipment, (4) breeding and mating decisions, and (5) the selection of herd or crop managers who then act at the behest of the taxpayer, rather than as paid advisors directing the conduct of the taxpayer.

The application of the material participation standard to a condominium hotel that is not a rental activity for purposes of the passive loss rules may be illustrated as follows. Assume that an individual who is an investor in the hotel does not live nearby, has a principal business that is unrelated to operating the hotel, is inexperienced in the hotel business, and employs agents to perform various essential hotel functions. However, such individual's participation in the hotel business involves making frequent visits to the hotel in order to conduct onsite inspections, meet with onsite management, and otherwise participate in integral functions of the business. In addition, the individual on a regular basis uses his independent discretion to make business decisions such as the following: (1) regularly establishing room rental rates, (2) establishing and reviewing hiring and other personnel policies, including review of management personnel, (3) reviewing and approving periodic and annually audited financial reports, (4) participating in budget operating costs and establishing capital expenditures, (5) establishing the need for and level of financial reserves, (6) selecting the banking depository for rental proceeds and reserve funds, (7) participating in frequent meetings at the hotel to review operations and the business plan, and (8) assisting in offsite business promotion activities. The individual is personally assessed his owner association charges and personally pays them, is assessed separately and personally the property taxes against his room or rooms, must personally appeal his assessment if he thinks it incorrect, and personally pays any debt service on his unit when due.

Under these circumstances, if the standard requiring regular, continuous, and substantial involvement is satisfied, then the taxpayer is treated as materially participating in the hotel activity. He is not so treated, however, in the absence of sufficient involvement. No safe harbor should be inferred from the preceding paragraph. For example, if the taxpayer's role in any of the above respects was limited to pro forma ratification of decisions made by management agents, that would tend to rebut material participa-

tion. Merely approving decisions made by others does not satisfy the standard.[32]

### *Material participation by a corporation subject to the passive loss rule*

Special rules apply in the case of corporations that are subject to the passive loss rule. A corporation that is subject to the passive loss provision is treated as materially participating in an activity with respect to which one or more shareholders, owning in the aggregate more than 50 percent of the outstanding stock of the corporation, materially participate. Thus, for example, a corporation with 5 shareholders, each owning 20 percent of the stock, is treated as materially participating in an activity if three or more of such shareholders so participate. If one of the three shareholders who so participated owned only 5 percent of the stock, and as a result the three participating shareholders owned only 45 percent of the stock in the corporation, the corporation would not be treated as materially participating in the activity.[33]

A closely held C corporation subject to the passive loss provision that is not a personal service corporation (as defined for purposes of the provision) may also be treated as materially participating in an activity if it meets the standard set forth in section 465(c)(7)(C), disregarding clause (iv). This standard generally is satisfied if (i) for the prior 12-month period, at least one full-time employee of the corporation provided sufficient services in active management with respect to the activity, (ii) during the same period, at least 3 full-time nonowner employees provided sufficient services directly related to the activity, and (iii) the amount of business deductions by the taxpayer attributable to the activity exceeded 15 percent of gross income from the activity for the taxable year.

### *Active participation in a rental real estate activity*

*Allowance of $25,000 of losses and credits against other income under specified circumstances*

For purposes of the passive loss provision, rental activities are treated as passive without regard to whether the taxpayer materially participates. The reasons for this rule are specified above in the section entitled "Reasons for Change."

---

[32] *See* 132 Cong. Rec. S8244-46 (June 24, 1986) and S13958 (September 27, 1986) (colloquies between Senators Packwood and Hatfield).

[33] No special rule is provided for determining material participation by a trust. Prior and present law provide that, generally speaking, an arrangement will be treated as a trust under the Internal Revenue Code if it can be shown that the purpose of the arrangement is to vest in trustees responsibility for the protection and conservation of property for beneficiaries who cannot share in the discharge of this responsibility and, therefore, are not associates in a joint venture for the conduct of business for profit (Treas. Reg. sec. 301.7701-4). A trust may be treated as an association taxable as a corporation, for tax purposes, if it is a joint enterprise for the conduct of business for profit. Thus, it is unlikely that a trust as such for Federal income tax purposes will be materially participating in a trade or business activity, within the meaning of the passive loss rule. In the case of a grantor trust, to the extent the grantor or beneficiary is treated as the owner for tax purposes (sec. 671), the material participation of the person treated as the owner is relevant to the determination of whether income or loss from an activity owned through the grantor trust is treated as passive in the hands of the owner. Similarly, in the case of a qualified electing Subchapter S trust (sec. 1361(d)(1)(B)) that is treated as a grantor trust (i.e., the beneficiary is treated as the owner for tax purposes), the material participation of the beneficiary is relevant to the determination of whether the S corporation's activity is a passive activity with respect to the beneficiary.

In the case of rental real estate, however, some specifically targeted relief has been provided because rental real estate is held, in many instances, to provide financial security to individuals with moderate incomes. In some cases, for example, an individual may hold for rental a residence that he uses part time, or that previously was and at some future time may be his primary residence. Even absent any such residential use of the property by the taxpayer, Congress believed that a rental real estate investment in which the taxpayer has significant responsibilities with respect to providing necessary services, and which serves significant nontax purposes of the taxpayer, is different in some respects from the activities that are meant to be fully subject to limitation under the passive loss provision.[34]

Under the relief provision for rental real estate, an individual may offset up to $25,000 of income that is not treated as passive, by using losses and credits from rental real estate activities with respect to which such individual actively participates.[35] (Low-income housing and rehabilitation credits can be so used on a deduction-equivalent basis, as a part of the overall $25,000 amount, whether or not the individual actively participates in the rental real estate activity to which such credits relate.) This relief applies only if the individual does not have sufficient passive income for the year, after considering all other passive deductions and credits, to use fully the losses and credits from such rental real estate activities. No relief is provided under the provision to taxpayers other than individuals (e.g., to trusts, personal service corporations, or closely held C corporations subject to the passive loss provision),[36] except for a special 2-year rule for estates, discussed in Section 1, above.

The $25,000 amount is reduced, but not below zero, by 50 percent of the amount by which the taxpayer's adjusted gross income for the year exceeds $100,000 ($200,000 in the case of low-income housing and rehabilitation credits). In the case of a married individual not filing a joint return, no more than $12,500 of such relief is available, reduced by 50 percent of the amount by which such individual's adjusted gross income exceeds $50,000. For these purposes, adjusted gross income is determined without reference to net losses from passive activities (other than losses allowable solely by reason of a fully taxable disposition of an activity).

Since relief under this rule applies only to rental real estate activities, it does not apply to passive real estate activities that are not treated as rental activities under the provision (e.g., an interest in the activity of operating a hotel). Similarly, relief is not provided with regard to the renting of property other than real estate (e.g., equipment leasing).

---

[34] For example, in the case of a rental real estate investor whose cash expenses with respect to the investment (e.g., mortgage payments, condominium or management fees, and costs of upkeep) exceed cash inflows (i.e., rent), tax losses other than those relating to depreciation may not be providing any cash flow benefit.

[35] For purposes of applying this standard, as with respect to material participation, services performed both by the taxpayer and by the taxpayer's spouse are considered (whether or not such individuals file a joint return). It is worth noting that, while standards requiring active management or active participation in management apply for certain purposes under prior law (see secs. 55(e), 464(e)(2)(b), and 2032A), these standards are not the same as the active participation standard described herein.

[36] *See Overview, supra.*

***Scope of active participation***

A taxpayer is treated as not having actively participated in a rental real estate activity if the taxpayer (in conjunction with such taxpayer's spouse, even in the absence of a joint return) owns less than 10 percent (by value) of all interests in such activity at any time during the year (or shorter relevant period of ownership).[37] This requirement is designed to assist in restricting the relief provided under the $25,000 rule (assuming all other applicable requirements are met) to appropriate circumstances—for example, the case of a home in which the taxpayer formerly lived or plans subsequently to live, as opposed to a syndicated real estate shelter. In addition, the 10 percent rule reflects the fact that active participation by a less than 10 percent owner typically represents services performed predominantly with regard to ownership interests of co-owners.

In the case of a taxpayer owning an interest in a rental real estate activity and meeting the 10-percent ownership requirement, up to $25,000 of relief may be available if the taxpayer actively participates in the activity. This standard is designed to be less stringent than the material participation requirement, in light of both the special nature of rental activities, which generally require less in the way of personal services, and the Congress' reasons for providing up to $25,000 of relief in this instance.

The difference between active participation and material participation is that the former can be satisfied without regular, continuous, and substantial involvement in operations, so long as the taxpayer participates, e.g., in the making of management decisions or arranging for others to provide services (such as repairs), in a significant and *bona fide* sense. Management decisions that are relevant in this context include approving new tenants, deciding on rental terms, approving capital or repair expenditures, and other similar decisions.

Thus, for example, a taxpayer who owns and rents out an apartment that formerly was his primary residence, or that he uses as a part-time vacation home, may be treated as actively participating even if he hires a rental agent and others provide services such as repairs. So long as the taxpayer participates in the manner described above, a lack of material participation in operations does not lead to the denial of relief.

A limited partner, to the extent of his limited partnership interest, is treated as not meeting the active participation standard.[38] In addition, a lessor under a net lease is unlikely to have the degree of involvement which active participation entails. Moreover, as with regard to the material participation standard, services provided by an agent are not attributed to the principal, and a merely formal and nominal participation in management, in the absence of a genuine exercise of independent discretion and judgment, is insufficient.

---

[37] Since low-income housing and rehabilitation credits are allowable without regard to active participation, they are unaffected by this requirement.

[38] The active participation rules do not prevent a limited partner from receiving $25,000 of benefit with regard to the low-income housing or rehabilitation credit, since relief relating to such credits does not depend upon active participation.

In this regard, it is useful to compare the above example of a taxpayer who owns and rents out an apartment that formerly was his primary residence with a tax shelter investor. The former taxpayer, even if he hires a rental agent and uses contract or other services to handle day-to-day problems such as routine repairs, still is likely to participate actively in light of the fact that he likely is not using it principally to generate tax losses.

By contrast, consider the case of a taxpayer who purchases an undivided interest in a shopping mall. The taxpayer purchased his interest from a promoter, based on a prospectus describing the investment opportunity and stressing the tax benefits of the $25,000 rule. Since one of the taxpayer's principal interests in the investment is to shelter income, he relies on a professional management company which also holds an interest in the shopping mall to make all significant management decisions. In order to create an evidentiary record purporting to show active participation, the management company sends letters to the investor detailing operating expenses, changes in tenants and new lease terms. The management company also informs the investor as to market trends, and requests approval of decisions to seek certain types of retailers as tenants. The investor ratifies such judgments without independently exercising judgment. The investor has not actively participated in the activity.

**5. Definition of activity**

In applying the passive loss rule, one of the most important determinations that must be made is the scope of a particular activity. This determination is important for several reasons. For example, if two undertakings are part of the same activity, the taxpayer need only establish material participation with respect to the activity as a whole, whereas if they are separate activities he must establish such participation separately for each. In the case of a disposition, knowing the scope of the activity is critical to determining whether the taxpayer has disposed of his entire interest in the activity, or only of a portion thereof.[39]

Defining separate activities either too narrowly or too broadly could lead to evasion of the passive loss rule. For example, an overly narrow definition would permit taxpayers to claim losses against salary, portfolio, or active business income by selectively disposing of portions of their interests in activities with respect to which there has been depreciation or loss of value, while retaining any portions with respect to which there has been appreciation. An overly broad definition would permit taxpayers to amalgamate undertakings that in fact are separate, and thus to use material participation in one undertaking as a basis for claiming without limitation losses and credits from another undertaking.

The determination of what constitutes a separate activity is intended to be made in a realistic economic sense. The question to be answered is what undertakings consist of an integrated and interrelated economic unit, conducted in coordination with or reliance

[39] Determining the scope of an activity also is important with respect to the 10 percent ownership requirement for actively participating in a rental real estate activity, and in certain situations where the taxpayer disposes of an activity other than through a taxable transaction.

upon each other, and constituting an appropriate unit for the measurement of gain or loss.

Section 183, relating to hobby losses, involves issues similar to those arising with respect to passive losses.[40] Section 183 requires that separate activities be identified in order to determine whether a specific activity constitutes a hobby. Treasury Regulations interpreting this provision note that all facts and circumstances of a specific case must be taken into account, and then identify as the most significant facts and circumstances: "the degree of organizational and economic interrelationship in various undertakings, the business purpose which is (or might be) served by carrying on the various undertakings separately or together . . . and the similarity of the various undertakings." These facts and circumstances likewise are relevant to determining the scope of an activity for purposes of the passive loss rule.[41]

In general, providing two or more substantially different products or services involves engaging in more than one activity (unless customarily or for business reasons provided together—e.g., the appliance and clothing sections of a department store). For example, operating a restaurant and engaging in research and development are objectively so different that they are extremely unlikely to be part of the same activity. In addition, different stages in the production and sale of a particular product that are not carried on in an integrated fashion generally are not part of the same activity. For example, operating a retail gas station and engaging in oil and gas drilling generally are not part of the same activity. In general, normal commercial practices are highly probative in determining whether two or more undertakings are or may be parts of a single activity.

On the other hand, the fact that two undertakings involve providing the same products or services does not establish that they are part of the same activity absent the requisite degree of economic interrelationship or integration. For example, separate real estate rental projects built and managed in different locations by a real estate operator generally will constitute separate activities. Similarly, in the case of farming, each farm generally will constitute a separate activity. On the other hand, an integrated apartment project or shopping center generally will be treated as a single activity.

Separate research and development projects may constitute separate activities in the absence of a sufficient interrelationship between the activities (e.g., with regard to personnel, facilities used, or the common use of knowhow developed in specific undertakings). When sufficient interrelationship exists, however, the

---

[40] By contrast, the at-risk rules, to the extent that they define "activity," address issues different from those that are relevant with respect to passive losses. *See* sec. 465(c)(2). The at-risk rules define "activity" in terms of narrow asset units, such as individual items of property, in light of the goal of such rules to establish a relationship between each such asset and financing attributable to it. In the passive loss context, unlike the at-risk context, financing is not the relevant issue.

[41] *See* Treas. Reg. sec. 1.183-1(d)(1). The provision in this regulation that a taxpayer's characterization of what constitutes an activity will be accepted unless it is unduly "artificial" does not apply with respect to the passive loss rule. While the Congress anticipated that artificial characterizations will be disregarded as a matter of course with respect to passive losses, there is no presumption that the taxpayer's characterization is correct even absent such "artificiality.

projects are part of the same activity. For example, if a particular research project is terminated, but knowhow developed from the project contributes to a subsequent project, it may be inaccurate to view the termination as establishing a loss. Any economic success realized by the second project may be attributable in part to amounts spent on the first project, and thus may establish that such amounts were not lost upon termination.

Certain types of integration among undertakings are not sufficient to establish that they are part of the same activity. For example, the fact that the taxpayer has ultimate management responsibilities with respect to different undertakings does not establish that they are part of the same activity, nor does the fact that the undertakings have access to common sources of financing, or benefit for goodwill purposes from sharing a common name. These common features may often be shared by all of the undertakings in which a particular individual is engaged, without establishing, in a substantial economic sense, that all such undertakings are part of the same activity.

The fact that two undertakings are conducted by the same entity (such as a partnership or S corporation) does not establish that they are part of the same activity. Conversely, the fact that two undertakings are conducted by different entities does not establish that they are different activities. Rather, the activity rules generally are applied by disregarding the scope of passthrough entities such as partnerships and S corporations.

With respect to limited partnerships, an additional rule applies in light of the special status of limited partnership interests with respect to material participation. An interest in a limited partnership is not treated as being part of the same activity as any activity in which the taxpayer is treated as materially participating. However, when otherwise appropriate, a limited partnership interest is treated as part of a larger activity in which the taxpayer does not materially participate (e.g., when two limited partnerships are conducting the same activity, or an individual is both a limited partner and a nonparticipating general partner with respect to the same activity).[42]

In applying the facts and circumstances test regarding what constitutes an activity, any undertaking that is accorded special treatment under the passive loss rule (e.g., treatment as always being active or as always being passive) is not treated as part of the same activity as any undertaking that does not receive identical treatment under the passive loss rule. For example, providing services as an employee or in a personal service business intrinsically is not passive, without requiring the examination of further facts and circumstances. Thus, such an undertaking generally is not part of the same activity as an undertaking in which further facts and circumstances must be examined. An oil and gas working interest is treated as not passive without regard to material participation, and thus is treated as separate from any undertaking not relating to oil

[42] These special rules regarding limited partnership interests do not apply in the case of any such interest that, pursuant to the Secretary's special regulatory authority, is treated as not intrinsically passive (i.e., as passive only to the extent established by examination of the relevant facts and circumstances).

and gas working interests.[43] This rule is necessary so that the special rules for particular undertakings will not in effect be extended to other types of undertakings (e.g., through the argument that an undertaking that is not a working interest is part of the same activity as a working interest, and hence should not be treated as passive even in the absence of material participation).

**6. Rental activity**

***In general***

Under the passive loss rule, a rental activity is generally treated as a passive activity regardless of whether the taxpayer materially participates in the activity. Deductions and credits from a rental activity generally may be applied to offset only other income from passive activities. In the case of rental real estate activities in which the taxpayer actively participates, a special rule permits the application of losses and credits from the activity against up to $25,000 of non-passive income of the taxpayer, for individual taxpayers. A taxpayer is not considered to actively participate in the activity if he owns less than a 10 percent interest in it at any time during the year (or relevant shorter period of ownership).

In determining what is a rental activity for purposes of these rules, prior law applicable in determining when an S corporation had passive rental income, as opposed to active business income, for purposes of continuing to qualify as an S corporation, provides a useful analogy.[44] The purpose of the prior law rule, like the passive loss rule, is to distinguish between rental activity that is passive in nature and nonrental activity which may not be passive. Thus, under the passive loss rule, a rental activity generally is an activity, the income from which consists of payments principally for the use of tangible property, rather than for the performance of substantial services.[45]

Some activities are not treated as rental activities under the passive loss rule even though they may involve the receipt of payments for the use of tangible property, because significant services are rendered in connection with such payments. Payments for the use of tangible property for short periods, with heavy turnover among the users of the property, may cause an activity not to be a rental activity, especially if significant services are performed in connection with each new user of the property. Another factor indicating that an activity should not be treated as a rental activity is

[43] *See* sec. 6, *infra*, noting that, for the same reasons, a rental real estate undertaking, as well as a rental undertaking involving property other than real estate, each is treated as not part of the same activity as any other type of undertaking.

[44] Sec. 1372(e)(5) (as in effect prior to the Subchapter S Revision Act of 1982) applied principles that are relevant in determining whether significant services are performed in connection with furnishing property. For example, regulations applicable in interpreting that section provided that rents did not include payments for the use or occupancy of rooms where significant services were also rendered to the occupant (such as hotels and the like which furnish hotel services). The regulations further provided, "services are considered rendered to the occupant if they are primarily for his convenience and are other than those usually or customarily rendered in connection with the rental of rooms or other space for occupancy only. The supplying of maid service, for example, constitutes such services; whereas the furnishing of heat, light, . . . the collection of trash, etc., are not considered as services rendered to the occupant.

[45] A rental activity generally does not include payments for the use of intangible property (e.g., stocks), or other payments more properly characterized as interest (e.g., for the use or forbearance of money).

that expenses of day-to-day operations are not insignificant in relation to rents produced by the property, or in relation to the amount of depreciation and the cost of carrying the rental property.

On the other hand, although the period for which property is rented is not in itself determinative of whether the activity is a rental activity, a long-term rental period (in comparison to the useful life of the property) and low turnover in the lessees of the property, is indicative that the activity is a rental activity.

For example, an activity consisting of the short-term leasing of motor vehicles, where the lessor furnishes services including maintenance of gas and oil, tire repair and changing, cleaning and polishing, oil changing and lubrication and engine and body repair, is not treated as a rental activity. By contrast, furnishing a boat under a bare boat charter, or a plane under a dry lease (i.e., without pilot, fuel or oil), constitutes a rental activity under the passive loss rule, because no significant services are performed in connection with providing the property.

Based on similar considerations, renting hotel rooms or similar space used primarily for lodging of transients where significant services are provided generally is not a rental activity under the passive loss rule. By contrast, renting apartments to tenants pursuant to leases (with, e.g., month-to-month or yearly lease terms) is treated as a rental activity. Similarly, being the lessor of property subject to a net lease is a rental activity.

A rental activity may include the performance of services that are incidental to the activity (e.g., a laundry room in a rental apartment building). However, if a sufficient amount of such services are rendered, they may rise to the level of a separate activity, or the entire activity may not constitute a rental activity under the provision (e.g., a hotel).

***Scope of rental activity***

Some businesses involve the conduct of rental activities in association with other activities not involving renting tangible property. Although the other activities may immediately precede the rental activity, be conducted by the same persons, or take place in the same general location, they are not treated as a part of the rental activity, because under the passive loss rule rental activities are considered passive activities without regard to the taxpayer's material participation. In the case of other activities, an examination of the taxpayer's material participation generally determines whether an activity is passive. Rental activities generally are treated as separate from nonrental activities involving the same persons or property. Thus, for example, automobile leasing is treated as a different activity from automobile manufacturing, and real estate construction and development is a different activity from renting the newly constructed building.

Similarly, suppose a travel agency operated in the form of a general partnership has its offices on three floors of a 10-story building that it owns. The remainder of the space in the building is rented out to tenants. The travel agency expects to take over another floor for its own use in a year. The partnership is treated as being engaged in two separate activities: a travel agency activity and a rental real estate activity. Deductions and credits attributable to

the building are allocable to the travel agency activity only to the extent that they relate to the space occupied by the travel agency during the taxable year.

*Separate rental real estate activity*

Because only rental real estate activities are eligible for the $25,000 offset of losses and credits against non-passive income, a rental real estate undertaking is not considered as part of the same activity as any undertaking other than another rental real estate undertaking. For these purposes, the word "rental" is interpreted consistently with its meaning in other respects for purposes of the passive loss provision. Thus, for example, a hotel is treated neither as a rental real estate undertaking, nor as consisting of two activities only one of which is a rental real estate undertaking.

To be eligible for the $25,000 offset, a taxpayer must actively participate in the rental real estate activity. He is not considered to actively participate unless he has at least a 10 percent interest in the activity, because without a significant ownership interest his participation in the activity is likely to be for the benefit of other owners. For purposes of determining whether his interest in the activity amounts to at least 10 percent, separate buildings are treated as separate rental real estate activities if the degree of integration of the business and other relevant factors do not require treating them as parts of a larger activity (e.g., an integrated shopping center).

In the case of units smaller than an entire building, it similarly is necessary to assess the degree of business and functional integration among the units in determining whether they are separate activities. A cooperative apartment in an apartment building, owned by a taxpayer unrelated to those owning the other apartments in the building, generally will qualify as a separate activity, despite the fact that ownership of the building may be shared with owners of other apartments in the building, and despite the sharing with other apartments of such services as management and maintenance of common areas. By contrast, ownership of an undivided interest in a building, or of an area too small to be rented as a separate unit (or that is not rented as a separate unit) does not qualify as a separate activity.

In the case of a commercial building, for example, that is rented out to various tenants, and in which different parties own different floors, it again is necessary to examine the degree of integration with which business relating to different floors is conducted. An arrangement in which the rights to the various floors are separately sold to different parties, but rental of the building is handled in a centralized fashion, generally constitutes a single activity, whereas such treatment might not be appropriate if the owners of different floors separately manage their own rental businesses.

**7. Working interest in oil and gas property**

When a taxpayer owns a working interest in an oil and gas property, the working interest is not treated as a passive activity, whether or not the taxpayer materially participates. Thus, losses and credits derived from such activity can be used to offset other

income of the taxpayer without limitation under the passive loss rule.

In general, a working interest is an interest with respect to an oil and gas property that is burdened with the cost of development and operation of the property.[46] Rights to overriding royalties, production payments, and the like, do not constitute working interests, because they are not burdened with the responsibility to share expenses of drilling, completing, or operating oil and gas property. Similarly, contract rights to extract or share in oil and gas, or in profits from extraction, without liability to share in the costs of production, do not constitute working interests. Income from such interests generally is considered to be portfolio income.

A working interest generally has characteristics such as responsibility for signing authorizations for expenditures with respect to the activity, receiving periodic drilling and completion reports, receiving periodic reports regarding the amount of oil extracted, possession of voting rights proportionate to the percentage of the working interest possessed by the taxpayer, the right to continue activities if the present operator decides to discontinue operations, a proportionate share of tort liability with respect to the property (e.g., if a well catches fire), and some responsibility to share in further costs with respect to the property in the event that a decision is made to spend more than amounts already contributed.

However, the fact that a taxpayer is entitled to decline, or does decline, to make additional contributions under a buyout, nonparticipation, or similar arrangement, does not contradict such taxpayer's possessing a working interest. In addition, the fact that tort liability may be insured against does not contradict such taxpayer's possessing a working interest.

When the taxpayer's form of ownership limits the liability of the taxpayer, the interest possessed by such taxpayer is not a working interest for purposes of the passive loss provision. Thus, for purposes of the passive loss rules, an interest owned by a limited partnership is not treated as a working interest with regard to any limited partner, and an interest owned by an S corporation is not treated as a working interest with regard to any shareholder.[47] The same result follows with respect to any form of ownership that is substantially equivalent in its effect on liability to a limited partnership interest or interest in an S corporation, even if different in form.

When an interest is not treated as a working interest because the taxpayer's form of ownership limits his liability, the general rules regarding material participation apply to determine whether the interest is treated as in a passive activity. Thus, for example, a limited partner's interest generally is treated as in a passive activity. In the case of a shareholder in an S corporation, the general

---

[46] *See* Treas. Reg. sec. 1.612-4(a), along with cases and rulings decided thereunder, such as *Phillips* v. *Comm'r* 233 F. Supp. 59 (E.D. Tex. 1964), aff'd. *per curiam*, (5th Cir.), 66-1 U.S.T.C. Paragraph 9157; *Haass* v. *Comm'r*, 55 T.C. 48 (1970), *acq.*, 1971-2 C.B. 2; *Cottingham* v. *Comm'r*, 63 T.C. 695 (1975); *Miller* v. *Comm'r* 78-1 U.S.T.C. paragraph 9127 (C.D. Cal. 1977); Rev. Rul. 68-139, 1968-1 C.B. 311.

[47] However, the fact that an interest is not treated as a working interest for purposes of the passive loss rules due to the taxpayer's form of ownership has no effect on whether it qualifies as a working interest for any other purpose under the Internal Revenue Code.

facts and circumstances test for material participation applies and the working interest exception does not apply, because the form of ownership limits the taxpayer's liability.

In determining whether the taxpayer's form of ownership limits his liability, the rule described in the two prior paragraphs is applied by looking through tiered entities. For example, a general partner in a partnership that owns a limited partnership interest in a partnership that owns a working interest is not treated as owning a working interest.

A special rule applies in any case where, for a prior taxable year, net losses from a working interest in a property were treated by the taxpayer as not from a passive activity. In such a case, any net income realized by the taxpayer from the property (or from any substituted basis property, e.g., property acquired in a sec. 1031 like-kind exchange for such property) in a subsequent year also is treated as active. Under this rule, for example, if a taxpayer claims losses for a year with regard to a working interest and then, after the property to which the interest relates begins to generate net income, transfers the interest to an S corporation in which he is a shareholder, or to a partnership in which he has an interest as a limited partner, his interest with regard to the property continues to be treated as not passive.[48]

Under some circumstances, deductions relating to a working interest may be subject to limitation under other provisions in the Internal Revenue Code. For example, protection against loss through nonrecourse financing, guarantees, stop-loss agreements or other similar arrangements, may cause certain deductions allocable to the taxpayer to be disallowed under section 465. Such limitations are applied prior to and independently of the passive loss rule.

### *Effective Date*

The passive loss rule is effective in taxable years beginning on or after January 1, 1987. It applies to all passive activity losses incurred in taxable years beginning on or after that date, and to passive activity credits for property placed in service in taxable years beginning on or after that date. However, in the case of certain pre-enactment interests, the rule is phased in. The amount disallowed under the passive loss provision during any year in the transitional period cannot exceed the applicable percentage of the amount that would be disallowed for that year under the provision if fully effective. The applicable percentage is 35 percent for 1987, 60 percent for 1988, 80 percent for 1989, 90 percent for 1990, and 100 percent for 1991 and thereafter.

Interests in passive activities acquired by the taxpayer on or before the date of enactment of the Act (October 22, 1986) are eligible for the phase-in of the passive loss rule. Interests in activities acquired after October 22, 1986, however, are not eligible for the phase-in, but rather are fully subject to the passive loss rule.

---

[48] This rule applies whether or not the working interest would have been treated as passive in the absence of the provision treating working interests as *per se* active, i.e., if material participation were relevant in this context.

The Congress intended that a contractual obligation to purchase an interest in a passive activity that is binding on October 22, 1986 be treated as an acquisition of the interest in the activity for this purpose. A binding contract qualifies under this rule, even if the taxpayer's obligation to acquire an interest is subject to contingencies, so long as the contingencies are beyond the reasonable control of the taxpayer. Thus, if the taxpayer has, by October 22, 1986, signed a subscription agreement to purchase a limited partnership interest contingent upon the agreement of other purchasers to acquire interests in the limited partnership amounting to a particular total, then if the contingency is satisfied, he is eligible for the phase-in rule with respect to the interest he was contractually bound to acquire. On the other hand, a conditional obligation to purchase, or one subject to contingencies within the taxpayer's control, does not give rise to eligibility under the phase-in rule.

In the case where, after October 22, 1986, investors in an activity contribute additional capital to the activity, their interests still qualify in full for relief under the phase-in to the extent that their percentage ownership interests do not change as a result of the contribution. However, if a taxpayer's ownership interest is increased after October 22, 1986, then (except to the extent the increase in the taxpayer's interest arises pursuant to a pre-October 23, 1986 binding contract or partnership agreement), the portion of his interest attributable to such increase does not qualify for the phase-in relief. For example, if a taxpayer, after October 22, 1986, increases his ownership interest in a partnership from 25 percent to 50 percent, then only the losses attributable to the 25 percent interest held prior to October 23, 1986 will qualify for transitional relief.[49]

In general, in order to qualify for phase-in relief, the interest acquired by a taxpayer must be in an activity which has commenced by October 22, 1986. For example, a rental activity has commenced when the rental property has been placed in service in the activity. When an entity in which the taxpayer owns an interest liquidates or disposes of one activity and commences another after October 22, 1986, the new activity does not qualify for phase-in relief. In the case of property purchased for personal use but converted to business use (e.g., a home that the taxpayer converts to rental use), similar rules apply. The activity qualifies for phase-in relief if it commences by October 22, 1986. In the case of a residence converted to rental use, for example, the residence must be held out for rental by October 22, 1986.

However, in the case of an activity that has not commenced by October 22, 1986, phase-in treatment nevertheless applies if the entity (or an individual owning the activity directly) has entered into a binding contract effective on or before August 16, 1986, to acquire the assets used to conduct the activity. Similarly, phase-in treatment applies in the case of self-constructed business property of an entity (or direct owner), where construction of the property to

[49] Phase-in relief applies only with respect to the percentage interest held by the taxpayer at all times after October 22, 1986. Thus, for example, if a taxpayer after October 22, 1986 reduces his interest in an activity from 50 percent to 25 percent, and subsequently purchases additional interests restoring his share to 50 percent, then only the 25 percent share held throughout qualifies for phase-in relief after such subsequent purchase.

be used in the activity has commenced on or before August 16, 1986.

In the case of a taxpayer owning both pre-October 23, 1986 and post-October 22, 1986 interests in passive activities, it is necessary to calculate the amount of passive loss qualifying for the phase-in. In order to determine this amount, it is necessary first to determine the amount that would be disallowed absent the phase-in. Phase-in relief then applies to the lesser of the taxpayer's total passive loss, or the passive loss taking into account only pre-enactment interests. Thus, for example, if a taxpayer has $100 of passive loss relating to pre-October 23, 1986 interests that would be disallowed in the absence of the phase-in, and has $60 of net passive income from post-October 22, 1986 interests, resulting in a total passive loss of $40, then the phase-in treatment applies to the lesser of $100 or $40 (i.e., $40). For purposes of this rule, the pre-October 23, 1986 and post-October 22, 1986 losses are calculated by including credits, in a deduction-equivalent sense.

Under the Act, any passive loss that is disallowed for a taxable year during the phase-in period and carried forward is allowable in a subsequent year only to the extent that there is net passive income in the subsequent year (or there is a fully taxable disposition of the activity).

For example, assume that a taxpayer has a passive loss of $100 in 1987, $65 of which is allowed under the applicable phase-in percentage for the year and $35 of which is carried forward. Such $35 is not allowed in part in a subsequent year under the phase-in percentage applying for such year. If the taxpayer has a passive loss of $35 in 1988, including the amount carried over from 1987, then no relief under the phase-in is provided. If the taxpayer has a passive loss of $50 in 1988 (consisting of the $35 from 1987 and $15 from 1988, all of which is attributable to pre-October 23, 1986 interests), then $6 of losses (40 percent of the $15 loss arising in 1988) is allowed against active income under the phase-in rule. The $35 loss carryover from 1987 is disallowed in 1988 and is carried forward (along with the disallowed $9 from 1988) and allowed in any subsequent year in which the taxpayer has net passive income.

The applicable phase-in percentage applies to the passive loss net of any portion of such loss that may be allowed against non-passive income under the $25,000 rule.

Transition relief is provided in the case of low-income housing activities. Losses from certain investments after 1983 in low income housing are not treated as from a passive activity, applicable for a period of up to 7 years from the taxpayer's original investment.[50]

***Revenue Effect***

This provision is estimated to increase fiscal year budget receipts by $753 million in 1987, $3,008 million in 1988, $4,831 million in 1989, $6,811 million in 1990, and $8,003 million in 1991.

[50] *See*, 132 Cong. Rec. E3392, October 2, 1986 (statement of Mr. Rostenkowski).