IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-211 T
(Judge Victor J. Wolski)

JAMES R. THOMPSON,

Plaintiff

v.

THE UNITED STATES,

Defendant

**ERRATA**

The undersigned, attorney for Plaintiff James R. Thompson, submits the following changes to the transcript of the hearing held August 2, 2007 in the above-captioned matter:

| Page/Line | As Transcribed | As Corrected |
|---|---|---|
| 5/5 | in the order -- you | in the motions – he |
| 6/1 | traditionally | with your permission |
| 9/5 | our | your |
| 20/7 | MR. REYNOLDS | MR. HELFAND |
| 20/9 | Benson | Bentsen |
| 20/12 | Benson | Bentsen |
| 29/1 | 5(t)(E)(i) | 5T(e)(3)(i) |
| 35/11 | 1.469-5(t) | 1.469-5T |
| 36/1 | 5(t) | 5T |
| 36/9, 23 | 5(t) | 5T |
| 41/5 | 3017701-3 | 301.7701-3 |
| 42/2, 15 | 14695(t)(A) | 1.469-5T(a) |
| 46/4 | 1996 | 1986 |
| 48/1, 12 | 3017701-3 | 301.7701-3 |
| 52/10 | 1469-5(t)(E)(3)(a) | 1.469-5T(e)(3)(i)(A) |
| 54/16 | MR. MALO | THE COURT |
| 67/13 | 5(t)(E)(3)(i)(b) | 5T(e)(3)(i)(B) |
| 67/23 | (E)(3)(i) | (e)(3)(ii) |
| 76/4 | (E)(3)(i)(a) | (e)(3)(i)(A) |
| 80/21 | (E)(3)(ii) | (e)(3)(ii) |
| 81/2 | (E)(3)(i)(b) | (e)(3)(i)(B) |
| 82/24 | asterisk | at-risk |

| | | |
|---|---|---|
| 83/6 | MR. MALO | MR. REYNOLDS |
| 85/10 | 3016231(a)7-2 | 301.6231(a)7-2 |
| 86/16, 24 | (E)(3)(i)(a) | (e)(3)(i)(A) |
| 89/10 | equivalence | equivalents |
| 89/12 | (E)(3)(ii) | (e)(3)(ii) |

Respectfully submitted,

WINSTEAD PC
5400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2199
(214) 745-5400 (Phone)
(214) 745-5390 (Fax)

By: /s/ Stuart M. Reynolds, Jr.
Thomas R. Helfand, State Bar No. 09392500
Stuart M. Reynolds, Jr., State Bar No. 16805700

**ATTORNEYS FOR PLAINTIFF JAMES R. THOMPSON**

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on this 28th day of August, 2007, a true and correct copy of the foregoing was forwarded via first class mail to the following:

Jeffrey R. Malo
U.S. Department of Justice, Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044

Heritage Reporting Corp.
1220 L Street NW, Suite 600
Washington, D.C. 20005-4018

/s/ Stuart M. Reynolds, Jr.
One of Counsel

MR. REYNOLDS: Failing that, Mr. Malo and I have conferred and thought that I would go first. He would then respond to my motion and make argument in support of his motion. I would then respond, and, as ~~in the order -- you~~ in the motions -- he would have the last word.

THE COURT: If that's okay with you, it's okay with me.

One thing I will point out: If it's easier for you to make your presentations seated at the table as opposed to at the rostrum, feel free to do so. This doesn't look like it's a matter which will involve frequent reference to exhibits, so it probably is not an issue, but some people find it more comfortable to sit down rather than stand.

I just ask that if you choose to sit down, or if anyone chooses to say something from the tables, please direct what you're saying towards the microphone and do a better job than I do of that so that we get it all recorded and have an accurate transcript of the proceeding. You may begin.

MR. REYNOLDS: With Your Honor's permission, I'll use the podium.

THE COURT: Certainly.

MR. REYNOLDS: Your Honor, I don't know how you have your materials organized, but I prepared and

gave it to Mr. Malo and ~~traditionally~~ with your permission I hand it up to the Court. I put the main pleadings in the binder.

THE COURT: Of course, your binder doesn't have my highlighting and notes on it.

MR. REYNOLDS: Well, then feel free not to use it, sir. When you get to a yellow-highlighted note, would you tell me?

THE COURT: Oops. I can't believe we said that. In your second brief?

MR. REYNOLDS: That's the one.

May it please the Court, Mr. Malo, and Mr. Frahm, I'm Stuart Reynolds representing James Thompson. Your Honor, as the briefing has made clear, this case presents a legal question. We call it "a question of statutory interpretation." My argument is built around a framework. I think all pure legal questions have an analytical model and that a framework is helpful, both to the lawyers arguing the case and to the Court deciding the issue.

I turn, first, to Tab 1, which is Plaintiff's motion for partial summary judgment. We have articulated the issue as whether Mr. Thompson, as the member who managed a limited liability company, should be treated as owning a limited partnership interest for purposes of applying the material

rather than the second, that you're not challenging the validity of the regulations themselves as much as the way that they are being applied.

MR. REYNOLDS: Correct.

THE COURT: But would it be ~~our~~ your position, then, that a judge would have to interpret regulations in a manner to make them consistent with the statute, and it's only when they can't be made consistent that they would be disregarded?

MR. REYNOLDS: Well, I'm not to disregard it, and I am not at making them fit if they don't fit. Our position is that these regulations do fit the statute.

THE COURT: If I could, if things are sort of flipped around, if a regulation could be reasonably interpreted to be consistent with the reasonable interpretation of the statute, then that's how it should be applied.

MR. REYNOLDS: Yes, sir.

THE COURT: And if an interpretation of a regulation would appear to be unreasonable, based on the statute, that it would be unreasonable to read the statute in a way to allow the regulation to have one application, but the regulation can be reasonably read to apply in a different way. You're arguing, then, at

Your Honor, Texas was in line with all of the other states.

THE COURT: I also think that, probably in '86, the Ranking Member of the Senate Finance Committee may have been from Texas, for whatever it's worth.

MR. HELFAND ~~MR. REYNOLDS~~: Packwood.

THE COURT: But he would have been the chairman, wasn't he, in '86? Wasn't Bentsen ~~Benson~~ the Ranking Member? Had Long retired yet or not? I don't know. Well, Louisiana is almost Texas, too.

MR. REYNOLDS: It may have been Bentsen ~~Benson~~. He was serving around in '86.

THE COURT: I'm starting to get a little hazy, either the old age or the lead in the cups.

Okay. You can continue. So interpreting this, then, you're saying that "limited partnership" itself was a term of art that was commonly understood to mean partnerships in which some of the partners, but not all, had limits on liability, and these limited partners could, nevertheless, lose their limits on liability if they participated too much because there was, in essence, a limit on participation in the control of the business that was the on/off switch for determining whether or not they

stopped with ~~5(t)(E)(i)~~ 5T(e)(3)(i), which defines the limited partner interest as one which is either set by the governing instrument of the partnership or set by state law. But when they added (ii), which is what happens when you are a general partner, I submit that the secretary clearly understood, at least, that piece of the parenthetical in the congressional history which said, This interest is going to be treated as intrinsically passive except as provided in the regulations. I think the secretary got it.

THE COURT: Well, maybe the secretary was thinking that the difference between passive is whether or not one was exposing themselves to liability and that the difference for a general partner versus a limited partner might be that the general partners are always exposed to liability.

MR. REYNOLDS: No, sir. That is absolutely irrational because the general partner is the guy who runs it. So you cannot say the general partner has limitations on his ability to deduct losses because he has general liability. He is the material participator, by definition. The limited partner, according to Congress, as it then understood the way partnerships were set up, was the presumptive nonparticipator. That's the only way it makes sense.

THE COURT: Okay. I think we can hear from Mr. Malo now. Thank you.

MR. REYNOLDS: Thank you.

THE COURT: Feel free to use whichever site is most appropriate, necessary, and convenient.

MR. MALO: Thank you. May it please the Court, I'm Jeff Malo for the United States, Mr. Helfand, Mr. Thompson, Mr. Reynolds.

Your Honor, we are here today to resolve the dispute that arises under temporary Treasury Regulation ~~1.469-5(t)~~ 1.469-5T. Now, the significance of this regulation is that it provides taxpayers with seven tests through which they can demonstrate that they have sufficiently participated in a trade or business to avoid application of the loss limitations under Section 469.

These seven tests can be collapsed down to two standards. There is a general standard, applicable to most taxpayers, and there is a specific, higher standard that is created for limited partnership interests.

Plaintiff's argument is circular in nature. Plaintiff acknowledges that he holds an interest in an L.L.C. The L.L.C. is treated as a partnership for federal tax purposes. His liability in the L.L.C. is

limited, and, under the ~~5(t)~~ 5T regulation, he is required to be treated as holding an interest in a limited partnership.

The Plaintiff argues, I don't hold an interest in a limited partnership because I hold an interest in an L.L.C., which is a partnership for federal tax purposes in which his liability is limited, which requires that he be treated as a limited partner under the ~~5(t)~~ 5T regulation.

THE COURT: Let me ask you, if I could, and it's possible that you don't know the answers to some of these questions. That's quite all right. I must admit that this is an area of the law that I have not dealt with before in any aspect of my career, even as a pundit, I guess.

If the case that we have before us, instead, involved James R. Thompson doing business as Mountain Air Charter -- no partnership, no S corporation, nothing of that sort, no L.L.C. -- would the taxpayer have qualified for the deductions?

MR. MALO: Your Honor, if this was a sole proprietorship, as I think you're suggesting, then the language in 469(h)(2) and the regulation under ~~5(t)~~ 5T would not be applicable if he fell into the general category of taxpayers. He would, at the very least,

to be true, Your Honor. However, the vehicle that Congress targeted because of specific abuses was, at the time, limited partnerships, and subsequent to the enactment of Section 469, Treasury also promulgated regulations, under 301.7701-3 ~~3017701-3~~, allowing taxpayers to choose what type of entity they would like to be treated as for tax purposes.

THE COURT: Now, would it be the government's position that the secretary, under 469, would have the authority to make an activity that is otherwise material participation for purposes of 469 not so just because a person's liability was limited? Was that authority available to the secretary?

MR. MALO: Yes, Your Honor. Congress granted legislative authority to the secretary to promulgate regulations needed to administer the statute.

THE COURT: So the secretary could have said that, okay, among the factors we're looking at to determine whether or not somebody was materially participating is whether they have exposed themselves to liability beyond what they put into the enterprise.

MR. MALO: Yes.

THE COURT: He could have done that. Right?

MR. MALO: Yes.

THE COURT: Now, the regulations that were issued, the temporary Treasury Regs. 1.469-5T(a) ~~14695(t)(A)~~, et cetera, et cetera, I want to take a look at those for a minute. That's in your appendix to your brief in opposition. I could find it in their binder, too, but it's a little easier here.

If the secretary of the Treasury believed that exposure to liability is a key factor in deciding whether or not one was materially participating in a business, he had the authority, under the statute, to promulgate a regulation to that effect, I think, is what we said. Right?

MR. MALO: Yes, Your Honor.

THE COURT: Okay. The regulations that were promulgated in temporary Treasury Regulation 1.469-5T(a) ~~14695(t)~~, "material participation," Subsection (a) lists the seven factors, only three of which are available to limited partnerships. Correct?

MR. MALO: Yes, Your Honor.

THE COURT: Limited interest in limited partnerships.

MR. MALO: Interest in limited partnership, yes.

THE COURT: Interest in a limited partnership.

losses to taxpayers. However, it was the appropriate section to insert a rule that applied to the type of entity that Congress was targeting with the legislation enacted in ~~1996~~ 1986.

The statute granted legislative authority to the secretary to issue these regulations, which are consistent with the gap that Congress left for the secretary to fill, and Plaintiff has not challenged the validity of these regulations.

The regulations are clear. They provide that the holder of a partnership interest for federal tax purposes in which the liability is limited will be treated as holding a limited partnership interest.

THE COURT: Where does it say that?

MR. MALO: That's the section of the 5(t) regulation enacted by --

THE COURT: But it doesn't say that in the code section itself.

MR. MALO: In the code section, in 469(h)(2), it says that holders of limited partnership interest shall not be treated as materially participating. But then also, in 469(l), it provides a specific grant of authority to the secretary to define what "material participation" is and to issue whatever regulations are necessary to administer the

taxpayers in Regulation ~~3017701-3,~~ 301.7701-3 in which taxpayers are allowed to choose the type of entity that they would like to be treated as for tax purposes.

Once a taxpayer has elected to be chosen as a partnership, then the authority, in Section 5(t), says that if you are treated as a partnership for federal tax purposes, and if your liability is limited, you are treated as the holder of a limited liability interest.

Plaintiff could have easily avoided the outcome by simply choosing another type of entity, checked the box regulations in ~~70701-3,~~ 301.7701-3 or choosing to be a sole proprietor or S corp., another type of entity. But Plaintiff chose to incorporate or organize in the form of an entity that Congress specifically targeted for its potential abuses.

THE COURT: And did "limited partnership" have any definition or meaning in 1986? If I, today, talk about a major league baseball franchise, I think people would understand that we're talking about the American League and the National League, with maybe a few exceptions for some of the teams from the National League.

If we were talking about major league baseball franchises in 1920, whatever it was, when the

THE COURT: Before you get off the point, before I lose track of things, I thought it was interesting that you thought that the Texas statute and the way that "limited partner" was defined as somebody who may normally have limits to their exposure to the third persons may, nevertheless, be exposed on the liability despite the name "limited partner."

That was form over substance. Temporary Treasury Regulation ~~1469-5(t)(E)(3)(a)~~ 1.469-5T(e)(3)(i)(A) reads as follows -- this is determining whether or not a partnership interest is treated as a limited partnership interest. It will be treated as a limited partnership interest if (a) such interest is designated a limited partnership interest, in the limited partnership agreement, or the certificate of limited partnership, without regard to whether the liability of the holder of such interest for obligations of the partnership is limited under the applicable state law.

You can be a limited partner and have a limited partnership interest if you just say, "I'm a limited partner." It doesn't matter how much liability you're exposed to or not. It's basically form over substance. Right?

listed eight factors to determine whether or not participation was material in a business, and Factor 1 was defined as -- if you satisfy any of these tests, you have participated materially.

Factor 1: The particular owner in question, or taxpayer in question, the person we're talking about, is a woman or a minority or a disabled veteran, would that be okay?

MR. MALO: No. That would not be okay.

THE COURT: Why wouldn't that be okay?

MR. MALO: Because that is not within the authority that was granted by Congress to the secretary. Congress said that, except as provided in regulations, limited partners shall not be treated as having materially participated in an entity.

THE COURT ~~MR. MALO:~~ The secretary also gave them the authority to determine what "material participation" is. Can't the secretary of the Treasury decide that material participation is any participation by a woman or a minority?

MR. MALO: Your Honor, I can't begin to imagine how many things the secretary would run afoul of he were to attempt to enact regulations based on protected --

THE COURT: So there must be some reason,

a general partnership interest.

MR. MALO: Yes, Your Honor.

THE COURT: How do you determine whether or not someone has a general partnership interest?

MR. MALO: Your Honor, the specific section in question determines whether or not someone has general partnership interest.

THE COURT: Where does it say that this determines what a general partner interest is? Where is it in the statute?

MR. MALO: Assuming there are only two types of interests possible, Your Honor, then, in 5T(e)(3)(i)(B) ~~5(t)(E)(3)(i)(b),~~ an interest in an entity that is treated as a partnership for federal tax purposes, in which liability is also limited, shall be treated as a limited partnership interest. By exclusion --

THE COURT: The partnership interest of an individual shall not be treated as a limited partnership interest for the individual's taxable year if the individual is a general partner in the partnership. The heading of it is, "Limited Partner Holding General Partner Interests."

The (e)(3)(ii) ~~(E)(3)(ii)~~ recognizes that you could have a limited partner, and a limited partner may well be somebody whose liability is limited to a

State of Texas do not apply.

Would somebody who had a limited partnership interest in that company be considered a limited partnership interest under the reg., (e)(3)(i)(A) (E)(3)(i)(a), merely because the certificate of a limited partnership stated that they had a limited partner interest, even though there was no limit on liability. Just because the word "limited" was used by the state, infelicitously in their --

MR. MALO: Your Honor, in the context of that hypothetical, it certainly sounds ridiculous, but I would argue, yes, simply because the secretary has a need to administer the authorities that Congress delegates, and certain bright-line rules are the only way to effectively and economically administer the tax code.

I would also say that, in the hypothetical you discussed, if this entity was not something that was recognized by standard state laws, if it was some new entity that I think you're trying to describe, then the taxpayer would have the option of electing what type of entity they would like to be treated as for tax purposes, under the check-the-box regulations in 3017701.

THE COURT: But whether they were a general

new transactions, new things occur that weren't thought of before, and if they are believed abusive, that's how they are addressed.

They are not addressed by interpreting laws that applied to businesses in which the difference between a general and a limited partner, the relevant -- was how active they were in the business, and say, Well, here, we're not going to consider anyone active in the business, even though everyone is active in the business who is a partner, or who is a member, I guess.

MR. MALO: Your Honor, if there is a need to modernize either the statute or the regulation, I submit that that is the proper forum to bring this grievance and that we have a valid legislative regulation that is deserving of a very high level of deference from this Court.

THE COURT: Again, I guess my final question, then, is, under the regulation, how is it determined that Mr. Thompson was not the general partner, under ~~(E)(3)(ii)~~ (e)(3)(ii)?

MR. MALO: Under the regulation, Mr. Thompson holds an interest in an entity. He happens to hold an interest in an entity that is treated as a partnership, by his own election for federal tax

purposes.

Under ~~(E)(3)(i)(b)~~ (e)(3)(i)(B), the regulation states that if you hold an interest in a partnership for federal tax purposes, and liability in that entity is limited, then you are treated as holding an interest in a limited partnership.

The tax code creates many legal fictions, Your Honor, and this is one of them. Mr. Thompson is a member in an L.L.C.; however, L.L.C.s do not exist in the tax code. They are treated as partnerships for tax purposes by the taxpayer's election, or they are treated as disregarded entities, if there is a single member, or corporations at their election.

But Mr. Thompson and Plaintiff chose to be treated as a partnership. Once treated as a partnership, the legal fiction continues, and we have to read the regulation as it is written and as it was authorized by Congress.

THE COURT: Okay. Do you have anything in addition you want to add, or do you want to save it for your ultimate rebuttal?

MR. MALO: I think I'll save it for rebuttal, Your Honor.

THE COURT: Okay. Thank you, Mr. Malo.

MR. MALO: Thank you.

THE COURT: Mr. Reynolds?

MR. REYNOLDS: Do you want more?

THE COURT: If you have anything you want to add. Either of you can feel free to add what you would like.

MR. REYNOLDS: Your Honor, may we caucus for one moment?

THE COURT: Sure. Certainly. We can go off the record for a moment.

(Discussion held off the record at 12:05 p.m.)

THE COURT: Resume your spot at some microphone.

MR. REYNOLDS: Mr. Helfand just gave this to me, so if you have any questions, you need to direct them to him.

THE COURT: Okay. If you can read his handwriting.

MR. REYNOLDS: I tried to write it down.

THE COURT: That's a "B," not an "N," a "B."

MR. REYNOLDS: There is a section of the Internal Revenue Code that deals with limited liability. What's it called, Tom?

MR. HELFAND: It's the ~~asterisk~~ at-risk rules under Section 465. That's where Congress has dealt with

limited liability specifically for all taxpayers, including whether it's S corporations, partnerships, you name it.

THE COURT: That's 465?

MR. HELFAND: Yes.

MR. REYNOLDS ~~MR. MALO~~: Your Honor, I wasn't going to say anything else, but the last comment from Mr. Malo prompted me to pull out a reg. that I hadn't previously cited. It came to me when I shepherdized the Gregg case last night to make sure it was good law, and I found a little internal IRS, one of those advice pieces where they are telling each other how to do something.

It had to do with something called "tax matters partner." So I looked at the reg. that was cited, and it's called "Designation or Selection of Tax Matters Partner." The reason I'm bringing it up now is because, when it suits the IRS to define something and to decide how to deal with something, it is able to do it with some great number of words. I've never understood why they needed to do so many words.

May I hand this reg. up, Your Honor?

THE COURT: Certainly.

MR. REYNOLDS: I'm giving Mr. Malo a copy.

try to elect somebody for tax matters partner who has a majority of interests. There's a bunch of regs about what "majority of interest" means.

How many pages have you flipped through, Judge?

THE COURT: I'm actually somewhat familiar with this, but it does say "solely for purposes of this section."

MR. REYNOLDS: That's right. Now, if you look at the last page, Treasury Reg. 301.6231(a)7-2 ~~3016231(a)7-2~~, "Designation or Selection of Tax Matters Partner for a Limited Liability Company." (A) In general, solely for purposes of applying Section 6231(a)7 and the regs on designation of a tax matter partner to an L.L.C.: "Only a member-manager of an L.L.C. is treated as a general partner, and a member of an L.L.C. who is not a member-manager is treated as a partner other than a general partner," and it goes on.

So my point in bringing this up is I'm not sure what Mr. Malo meant by "legal fiction," but the IRS knows that the member-manager of an L.L.C. is a general partner.

THE COURT: The thing is that one could be designated a general partner for some purposes and not other purposes. They did go out of their way to say

"solely for purposes of this section." I understand the point, anyway.

MR. REYNOLDS: Thank you, Your Honor. I'm done.

THE COURT: Okay. Mr. Malo?

MR. MALO: I would just reiterate that the TEFRA partnership rules that are being discussed are specific to TEFRA partnerships, which are rather complex entities for which certain rules of administrative convenience, again, were created, including the designation of tax matter partners.

THE COURT: Okay. The final question I have for Mr. Malo -- I'm not sure if I clearly asked this or clearly understood when I asked it and wasn't paying attention when I got the answer perhaps -- that (e)(3)(i)(A) ~~(E)(3)(i)(a)~~ of the regulations define a "limited partner" as "a partnership that's designated in the certificate or articles as a limited partnership interest, even if there is no limit on their liability."

Now, if the limit on liability is the key thing to determine what's a limited partner, how can it be that that limited liability is disregarded in (e)(3)(i)(A) ~~(E)(3)(i)(a)~~? The secretary could easily have, instead, said, "Designated as a limited partner and is

strange that a limited liability partner is defined as one, regardless of whether they have limits on their liability, and it also seems strange that the factors that are deprived them have no mention to exposure of liability.

Maybe the only way to make sense of it, and the only way to reasonably read it, is the way that the Plaintiff does, in which limited liability companies, if they are going to be recognized as the equivalents ~~equivalence~~ of limited partnerships, then there must be somebody who is a general partner in it, and (e)(3)(ii) ~~(E)(3)(ii)~~ provides that even if your liability is limited, if your interest is a general partner, if you're the one who is running the show, you get all seven factors.

What I will do is I will look again closely at all of the documents that were submitted and take the matter under submission and issue an opinion sometime in the reasonably near future.

Thank you. We are now adjourned.

(Whereupon, at 12:15 p.m., the hearing in the above-entitled matter was concluded.)

//

//

//