**THE UNITED STATE COURT OF FEDERAL CLAIMS**

**No. 06-211 T**
**(Judge Victor J. Wolski)**

---

**JAMES R. THOMPSON,**

**Plaintiff,**

**v.**

**THE UNITED STATES**

**Defendant.**

---

# DEFENDANT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF ITS CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

---

RICHARD T. MORRISON
Acting Assistant Attorney General

DAVID GUSTAFSON
STEVEN FRAHM
JEFFREY R. MALO
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 305-7539
(202) 514-9440 (facsimile)

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ........ i

**TABLE OF AUTHORITIES** ........ ii

**Case Law** ........ ii

**Statutes** ........ ii
*Federal Statutes (26 U.S.C.)* ........ ii
*Uniform Laws* ........ iii

**Regulatory Authority** ........ iii
*Temporary Treasury Regualtions (26 C.F.R.)* ........ iii

**Legislative History** ........ iii

**Reference Materials** ........ iii

**DEFENDANT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF ITS CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT** ........ 1

**I. As of 1986, was there a commonly-held or predominant meaning, under the laws of the several states, of limited partnership interests in limited partnerships? What were the features or attributes of such an interest in such an entity?** ........ 3

**II. How much deference, if any, must a court give to a federal agency's interpretation and application of the agency's own regulation? Must a court interpret regulations in a manner that makes them internally consistent?** ........ 9

**III. How does 26 C.F.R. § 1.469-5T(e)(3)(ii) apply to plaintiff's matter?** ........ 13

**CONCLUSION** ........ 15

**APPENDIX A** ........ 16

**I. Revised Uniform Limited Partnership Act of 1976 § 303(b)** ........ 16

**II. Table of Jurisdictions that have Adopted RULPA 1976** ........ 18



2705482.1

# TABLE OF AUTHORITIES

## Case Law

*Antonic Rigging and Erecting of Missouri, Inc. v. Foundry East Limited Partnership,* 773 F. Supp. 420 (S.D. Ga. 1991)............................................ 7
*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984)........................................................................................ 9
*Delaney v. Fidelity Lease Ltd.,* 526 S.W.2d 543 (Tex. 1975) ............................... 7
*Ft. Loudoun Electric Cooperative v. Plemmons,* 1989 Tenn. App. LEXIS 201 (1989)........................................................................................ 6
*Gast v. Petsinger,* 228 Pa. Super. 394, 323 A.2d 371 (1974)................................ 6
*Gateway Potato Sales v. G.B. Invest. Co.,* 170 Ariz. 137, 822 P.2d 490 (Ct. App. Div. 1 1991) ...................................................................... 6
*General Electric Credit Corp. v. Stover,* 708 S.W.2d 355 (Mo. Ct. App. W.D. 1986)...................................................................................... 6
*Gilman Paint & Varnish Co. v. Legum,* 197 Md. 665, 80 A.2d 906 (1951)........... 6
*Hommel v. Micco,* 76 Ohio App. 3d 690, 602 N.E.2d 1259 (11th Dist. Lake County 1991) .................................................................................. 7
*Isominger v. Gibbs,* 2000 WL 898867 (Tex. App. 2000)...................................... 7
*National Muffler Dealers Association v. United States,* 440 U.S. 472 (1979)........................................................................................... 9, 10
*Rathke v. Griffith,* 36 Wash. 2d 394, 218 P.2d 757 (1950).................................... 6
*Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489 (11th Cir. 1996)............................................................................................... 7
*Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504 (1994).................................... 10
*United States v. Cleveland Indians Baseball Co.,* 532 U.S. 200 (2001)......... 10, 11
*United States v. Correll,* 389 U.S. 299 (1967)...................................................... 10
*Williams v. McGowan* 152 F.2d 570 (2d Cir. 1945)............................................... 3
*Zeiger v. Wilf,* 333 N.J. Super. 258, 755 A.2d 608 (2000) .................................... 7

## Statutes

### *Federal Statutes (26 U.S.C.)*

Internal Revenue Code § 11.......................................................................... 4
Internal Revenue Code § 301........................................................................ 4
Internal Revenue Code § 469.............................................................. 2, 8, 9, 10
Internal Revenue Code § 701........................................................................ 3
Internal Revenue Code § 7805................................................................. 9, 10

***Uniform Laws***

REVISED UNIFORM LIMITED PARTNERSHIP ACT OF 1976 ............................ 4, 5, 6, 7
UNIFORM LIMITED PARTNERSHIP ACT OF 1916 ...................................................... 5
UNIFORM LIMITED PARTNERSHIP ACT OF 2001 ............................................... 5, 6, 7
UNIFORM PARTNERSHIP ACT OF 1914 ...................................................................... 3
UNIFORM PARTNERSHIP ACT OF 1997 ................................................................ 3, 4

**<u>Regulatory Authority</u>**

***Temporary Treasury Regualtions (26 C.F.R.)***

Temp. Treas. Reg. § 1.469-5T ....................................................................... passim

**<u>Legislative History</u>**

SENATE REPORT ON PUB. L. 99-514 (THE TAX REFORM ACT OF 1986) S. Rep. No. 313, 99th Cong., 2d Sess. 713, *as reprinted in* 1986-3 C.B. (Part 3) 1, 713-746 ............................................................................................ 8

**<u>Reference Materials</u>**

Alan R. Bromberg and Larry E. Ribstein, *On Partnership* (Aspen Publishers, 2004)........................................................................................ 3, 4, 5, 8
Boris I. Bittker and James S. Eustice, Federal Income Taxation of Corporations and Shareholders, (7th Ed 2006)................................................ 4
Gavin L. Phillips, LIABILITY OF LIMITED PARTNER ARISING FROM TAKING PART IN CONTROL OF BUSINESS UNDER UNIFORM LIMITED PARTNERSHIP ACT 79 A.L.R.4th 427 (originally published in 1990) ........... 6, 7
William P. Streng, 700-2nd T.M., *Choice of Enity* (The Bureau of National Affairs, 1999) ..................................................................... 4, 8



2705482.1

**THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 06-211 T**
**(Judge Victor J. Wolski)**

---

**JAMES R. THOMPSON,**

**Plaintiff,**

**v.**

**THE UNITED STATES**

**Defendant.**

---

# DEFENDANT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF ITS CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

---

On August 14, 2007, the Court directed the parties to file a post argument Supplemental Brief, addressing three specified issues, and any other relevant matters a party feels the need to clarify. Defendant submits the following discussion of those three issues, and relates them to what defendant believes is the central and critical issue in this case: Whether Temp. Treas. Reg. § 1.469-5T(e)(3)(i)(B) unambiguously provides that a taxpayer holds a limited partnership interest if he (1) holds a partnership interest and (2) has limited liability for the obligations of the partnership.

As we explain below, the hallmark of state law regarding limited partnerships in 1986 (and always) is that a limited partnership interest is one as to which the partner has only limited liability for the obligations of the enterprise. Temp. Treas. Regulation

§1.469-5T(e)(3)((i)(A) and (B) together recognize, as Congress contemplated, that, for purposes of Section 469, a limited partnership interest can exist with respect to limited partnerships created under state law (subsection A) and also through partnership interests in other organizational forms (subsection B).

Temp. Treas. Reg. § 1.469-5T(e)(3)(i)(B), at issue in this case, is a legislative regulation which plaintiff agrees is valid – the dispute is over its interpretation. The Government's interpretation of the regulation follows reasonably from its unambiguous words and does not conflict with other portions of the regulation (such as Temp. Treas. Reg. §§ 1.469-5T(a)(1-7) and (e)(3)(i)(A), which make different inquiries). That interpretation is entitled to substantial judicial deference.

Finally, Temp. Treas. Reg. § 1.469-5T(e)(3)(ii) does not apply to this case at all. Unlike a limited partnership interest, a general partnership interest is one as to which the holder has unlimited liability. The plaintiff here had only limited liability. Moreover, while limited partnerships created under state law must have at least one general partner, other organizational forms, such as limited liability companies, may give rise to a limited partnership interest under Temp. Treas. Reg. § 1.469-5T(e)(3)(i)(B), notwithstanding that those organizational forms do not necessitate a general partner.

Therefore, as we have maintained, in accordance with Temp. Treas. Reg. § 1.469-5T(e)(3)(i)(B), plaintiff held only a limited partnership interest in Mountain Air Charter. Whether he is subject to the loss limitations of Section 469 is therefore determined by whether he can satisfy any of the three tests for material participation set forth in Temp. Treas. Reg. § 1.469-5T(a)(1), (5), and (6). In accordance with the parties' Stipulation, plaintiff agrees that, if this Court determines he holds a limited partnership interest, final judgment should be entered for the United States.

**I. As of 1986, was there a commonly-held or predominant meaning, under the laws of the several states, of limited partnership interests in limited partnerships? What were the features or attributes of such an interest in such an entity?**

When one or more persons wish to start a business, one of the first questions to address is the organizational form the business should take. All law school students learn the basics of those choices and their attributes. Historical choices are a sole proprietorship, a general partnership, a corporation, and for some time under state law, a limited partnership. Relatively recently, state laws have added a new choice – a limited liability company ("LLC"). Limited liability has been a key to the decision-making process and the distinctions among these choices.

One person may operate a business as a "sole proprietorship", and such a person has personal liability, that is, unlimited liability for the debts of the business. Bromberg & Ribstein, *On Partnership*, Vol. 1 ¶ 1.01(b)(1) at 1:3. Two or more persons may form a partnership, defined broadly as an agreement (written or not) under which persons join together to engage in a business for profit. *Id.*, at 1:4.[1] These "general" partnerships (not formed as limited partnerships pursuant to state law) expose each of the partners to personal liability for the partnership's debts, just as the sole proprietor has personal liability for the obligations of the proprietorship. Bromberg & Ribstein, at 1:4; UPA 1914 § 15(b); UPA 1997 § 306(a). Neither a sole proprietorship, nor a general partnership, is taxed separately for federal income tax purposes. *See Williams v. McGowan*, 152 F.2d 570 (2d Cir. 1945) (*holding that a sole proprietorship is not a separate entity for federal tax purposes*); *see also* 26 U.S.C. § 701 (*providing that a*

---

[1] *See also* UNIFORM PARTNERSHIP ACT § 6(1) (1914) ("UPA 1914") for the model definition of a partnership. A new version of the 1914 act was released in 1997 ("UPA 1997"), in which the same basic definition of a partnership was preserved. UPA § 101(6) (1997).

*partnership is not an entity subject to federal taxation*). Rather, the operating results of a sole proprietorship are reported on the tax return of the sole proprietor, and the operating results of a general partnership are reported by the partnership on an information return, and by the partners on their individual returns, according to their respective partnership shares. Streng, 700-2nd T.M., *Choice of Entity*, VI-E(1)(a),(2)(a) at A-86, (*sole proprietors report income on Schedule C of the individual return, Form 1040, and partnerships complete an information return on Form 1065*).

A business also may be conducted in corporate form. The chief advantage of using a corporation is limited liability. Bromberg & Ribstein, Vol. 1 ¶ 1.01(b)(2) at 1:4-5; Streng, 700-2nd T.M. IV-D(2) at A-47. The shareholders of a corporation may lose their capital contributions, but they are not personally liable for the corporation's debts. *Id.* A corporation, unlike a sole proprietorship or a general partnership, is a separate entity for federal income tax purposes. *Id.* II-J at A-10; *see also* 26 U.S.C. § 11(a). A corporation files a tax return and is taxable on its profits. Streng, 700-2nd T.M., VI-E(3)(a) at A-86 (*corporations report income on Form 1120*). Shareholders do not pay tax on the corporation's profits (although they may be taxed on dividends the corporation distributes to them). *Id.* VII-A(3)(a) at A-87; *see also* 26 U.S.C. § 301(a). Likewise, if the corporation operates at a loss, that loss may not be claimed on the individual tax returns of the shareholders to reduce their taxes on other income. Bittker & Eustice, *Federal Income Taxation of Corporations and Shareholders* ¶ 1.07(3) (7th ed. 2006).

Limited partnerships were added to this traditional mix many years ago, and are the specific creature of state laws. The essence of a limited partnership from the beginning, in 1986, and always, has been that the limited partners of a limited partnership enjoyed limited liability, much like the shareholders of a corporation. RULPA 1976

§ 303(a).[2] Their capital contributions to the partnership are at risk, but the holder of a limited partnership interest was not liable for the partnership's debts. RULPA 1976 § 502(b). Under the state law authorizing limited partnerships, there must be one or more general partners, who have unlimited liability. RULPA 1976 §§ 101(7), 403(b). The line of demarcation between limited partners and general partners under state law is that the former have limited liability and the latter have "general" (*i.e.*, unlimited liability) for the partnership's debts. Bromberg & Ribstein, Vol. 1 ¶ 1.01(b)(3) at 1:7; *Compare* RULPA 1976 §§ 303(a) and 403(b) (*for a comparison of limited partner and general partner liability in 1986*).

A limited partner of a state-law created limited partnership may lose his limited liability if the nature and quantum of his involvement in the partnership's activities exceed a certain ceiling. The "ceiling" of activity that won't deprive a limited partner of limited liability has varied among the states and has been steadily rising over the years (which include 1986). Now, under the new Uniform Limited Partnership Act of 2001, which a growing number of states have adopted, a limited partner retains limited liability regardless of how extensively he is involved in the partnership's activities. ULPA 2001 § 303.

The Uniform Limited Partnership Act of 1916 ("ULPA 1916") provided that a limited partner would lose limited liability if he "takes part in the control of the business." ULPA 1916 § 7. This original control test became the subject of frequent

---

[2] *See* REVISED LIMITED PARTNERSHIP ACT § 303(a) (1976) ("RULPA 1976") for the model liability shield that applied to taxpayers in 1986. An even stronger liability shield was introduced in § 303 of the new UNIFORM LIMITED PARTNERSHIP ACT released in 2001 ("ULPA 2001"). For the purpose of defining "limited partnership interests" in 1986, reference will be made to RULPA 1976, as amended in 1985.

litigation.[3] In 1976, the Revised Uniform Limited Partnership Act of 1976 relaxed the bar against limited partner participation. Section 303(b) of the Act provided a list of safe harbor activities that would not constitute limited partner participation and would not disturb a limited partner's limited liability.[4] A table identifying the states that adopted RULPA 1976 prior to the enactment of the Tax Reform Act of 1986 is included in Appendix A. Despite RULPA 1976, there was considerable variation and confusion in the various states regarding the type and level of activities that would cause a limited partner to lose limited liability.[5]

---

[3] The cases debating the meaning of the original control test is quite lengthy. Some cases prior to the 1976 revisions to the uniform act are listed here. *Rathke v. Griffith,* 218 P.2d 757 (Wash. 1950) (limited partner execution of documents on behalf of partnership, including power of attorney and bank agreements, did not constitute taking part in control of the business of the partnership). *Gilman Paint & Varnish Co. v. Legum,* 80 A. 2d 906 (Md. 1951) (loan from a relative of a limited partner, conditioned on the partnership's employment of a different relative of the limited partner, did not constitute taking part in control of the business of the partnership, absent a showing that the limited partner acted directly or indirectly on behalf of the partnership through the employed relative). *Gast v. Petsinger,* 323 A.2d 371 (Pa. Super. 1974) (limited partner receipt of reports on partnership business and attendance of partnership meetings did not constitute taking part in control of the business of the partnership). *General Electric Credit Corp. v. Stover,* 708 S.W.2d 355 (Mo. Ct. App. W.D. 1986) (limited partner signature on a contract between the partnership and a creditor did not constitute taking part in control of the business of the partnership). *Ft. Loudoun Electric Cooperative v. Plemmons,* 1989 Tenn. App. LEXIS 201 (1989) (limited partner who had no direct dealings with creditor, was found to have unspecified minimal involvement with the partnership that did not constitute taking part in control of the business of the partnership). For a more complete discussion, see Gavin L. Phillips, *Liability of Limited Partner Arising from Taking Part in Control of Business Under Uniform Limited Partnership Act* 79 A.L.R.4th 427 (originally published in 1990).

[4] The full text of RULPA 1976 § 303(b) appears in Appendix A. The list of safe harbors has expanded since 1976.

[5] The cases debating the meaning of the control test after the release of RULPA 1976 is quite lengthy. Some cases that occurred after the revisions to the uniform act are listed here. *Gateway Potato Sales v. G.B. Invest. Co.,* 822 P.2d 490 (Ariz. Ct. App Div. 1991) (limited partner presence on business premises 2-3 times per week, and requirement of limited partner approval of significant business decisions was (continued on next page)

In 1986 then, there was universal agreement among the states that the *sine quo non* of a limited partnership interest was limited liability for the partnership's debts. There was, however, far less agreement, and much variation among states, regarding the activities a limited partner could undertake without losing limited liability.

At least in part due to the tension between limited liability and involvement in the activities of a limited partnership, the states began passing statutes that provided for the

---

(continued from prior page) sufficient to determine that limited partner acted substantially the same as a general partner in controlling the business of the partnership). *Hommel v. Micco,* 602 N.E.2d 1259 (Ohio App.11th Dist. Lake County 1991) (limited partners actually functioned as general partners where they had final approval of partnership contracts and controlled the direction of projects). *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1503 (11th Cir. 1996) (limited partners who were given the *right* to participate in control of the business by the limited partnership agreement, but who did not exercise this right, did not participate in control of the business of the partnership). *Antonic Rigging and Erecting of Missouri, Inc. v. Foundry East Limited Partnership,* 773 F. Supp. 420, 431 (S.D. Ga. 1991) (limited partner could not be found liable as a general partner on the grounds that it participated in the parntership's management and control. The court noted that Georgia specifically rejected the control test because under "most modern limited partnership statutes, the "control" rule has been diminished to the point where there is no liability for participation in control without creditor reliance, and an extensive "safe harbor" is usually provided. . . uncertainty as to the degree of control which can trigger liability. . . [is why] the proposed new law [ULPA 2001] eliminates the control test"). *Zeiger v. Wilf*, 755 A.2d 608, 615 (N.J. Super 2000) (limited partner who was also vice president of corporate general partner, did not participate in control of the partnership business, even though he was the head of the partnership's operations, because his actions as an officer in the corporation were within the limited partner safe harbor activities allowed by the New Jersey limited partnership statute). *Isominger v. Gibbs*, 2000 WL 898867 (Tex. App. 2000) (noting that the state legislature amended the Texas Revised Limited Partnership Act in 1979 to allow a limited partner to serve as an officer, director or shareholder of a corporate general partner, without being deemed to participate in the control of the business of the partnership. In doing so, the legislature overruled the result in *Delaney v. Fidelity Lease Ltd.*, 526 S.W.2d 543 (Tex. 1975). This case demonstrates that, like many other states, the control test was steadily eroding in Texas prior to 1986. For a more complete discussion, *see* Gavin L. Phillips, 79 A.L.R.4th 427 (originally published in 1990).

creation of limited liability companies ("LLC's").[6] Bromberg & Ribstein, Vol. 1 ¶ 1.01(b)(4) at 1:8; Streng, 700-2d T.M. *Choice of Enity* II-I(1). As explained in defendant's earlier briefs (Def. Brief at 20-21), LLCs are hybrid entities in which all "members" generally have limited liability, yet may participate freely in its activities. *Id*. As we also explained (Def. Brief at 15), LLC's may elect to be treated for tax purposes as a partnership, which Mountain Air did. Thus, while Mountain Air was not a state law limited partnership, and therefore had no designated limited partner(s) and general partner(s), its members (plaintiff and his wholly-owned Subchapter S corporation) enjoyed the same limited liability as limited partners of a limited partnership. They also enjoyed the same pass-through tax treatment as limited partners.

Temp. Treas. Reg. § 1.469-5T(e)(3)(i)(A) treats a taxpayer as holding a limited partnership interest if the partner's interest is designated as a limited partner in a limited partnership agreement or certificate of limited partnership. Temp. Treas. Reg. § 1.469-5T(e)(3)(i)(B) addresses holders of partnership interests in organizations other than limited partnerships organized pursuant to state law. Indeed, Congress contemplated when it enacted Section 469 that taxpayers could hold limited partnership interests in organizations other than a limited partnership created under state law (and therefore would be subject to its loss limitations, unless regulations provided otherwise). S. Rep. No. 313, 99th Cong., 2d Sess. 713, 731-732 (1986).

Since plaintiff was a member of an LLC which elected to be treated for tax purposes as a partnership (so that its operating losses would flow through to him individually), his membership interest was a partnership interest. He also enjoyed limited

---

[6] The first limited liability company ("LLC") statute was adopted in Wyoming in 1977. By 1988, Florida was the only other state that had enacted an LLC statute. Bromberg & Ribstein, Vol. 1 ¶ 1.01(b)(4) at 1:8.

liability under state law. Therefore, in accordance with Temp. Treas. Reg. § 1.469-5T(e)(3)(i)(B), plaintiff held a limited partnership interest for purposes of the Section 469 loss limitations.

**II. How much deference, if any, must a court give to a federal agency's interpretation and application of the agency's own regulation? Must a court interpret regulations in a manner that makes them internally consistent?**

In considering the judicial deference due a regulation, legislative regulations must be contrasted with interpretive regulations. An interpretive regulation is an agency's interpretation of statutory language it is charged with administering. The Secretary is granted general authority to issue interpretive regulations under § 7805(a). Courts must defer to an interpretive regulation if it implements the congressional mandate in some reasonable manner. *National Muffler Dealers Association v. United States,* 440 U.S. 472, 477 (1979).

A legislative regulation, however, arises when, in passing a statute, Congress grants an agency specific rulemaking authority to address matters the statute does not cover. As the Supreme Court explained in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-844 (1984), legislative regulations fill an intentional legislative "gap" and are controlling absent extraordinary circumstances:

> If Congress has explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. . . When an agency fills such a "gap" reasonably, and in accordance with other applicable (e.g. procedural) requirements, the courts accept the result as legally binding.



2705482.1

If the regulation itself is not explicit, and requires interpretation, the agency's reasonable interpretation of the regulation attracts substantial deference. In *U.S. v. Cleveland Indians Baseball Co.*, 532 U.S. 200 (2001), the Supreme Court was faced with regulations that provided that employment taxes are due when wages are paid, and the issue was the year in which backpay should be taxed. The regulations did not specifically address backpay, but the Internal Revenue Service had issued rulings, reflecting its interpretation that backpay should be taxed when paid, regardless of the year it was earned or should have been paid. The Court accorded substantial judicial deference to that reasonable interpretation of the regulations (532 U.S. at 219):

> Although the regulations, like the statute, do not specifically address backpay, the Internal Revenue Service has consistently interpreted them to require taxation of back wages according to the year the wages are actually paid, regardless of when those wages were earned or should have been paid (citing Revenue Rulings). We need not decide whether the Revenue Rulings themselves are entitled to deference. In this case, the Rulings simply reflect the agency's long standing interpretation of its own regulations. Because that interpretation is reasonable, it attracts substantial judicial deference. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).

This is so "because Congress has delegated to the [Commissioner], not to the courts, the task of prescribing all needful rules and regulations for the enforcement of the Internal Revenue Code." *National Muffler Dealers Assn., v. United States*, 440 U.S. 472, 477 (1979) (*citing U.S. v. Correll* 389 U.S. 299, 307 (1967)(*citing* 26 U.S.C. § 7805(a)).

Congress explicitly left a gap in § 469(h)(2). It provides: "*Except as provided in regulations*, no interest in a limited partnership as a limited partner shall be treated as an interest with respect to which a taxpayer materially participates." (emphasis added). *See also*, Section 469(l) ("the Secretary shall prescribe such regulations as may be necessary

or appropriate to carry out provisions of this section, including regulations which specify what constitutes an activity, material participation, or active participation for purposes of this section.") Congress therefore expressly delegated authority to the Secretary to issue legislative regulations.

The Secretary acted on this authority by promulgating Temp. Treas. Reg. § 1.469-5T(e)(2) and (3), which soften Congress' otherwise universal rule that a limited partnership interest is subject to the loss limitations of Section 469. Plaintiff agrees that these legislative regulations are valid. The parties' dispute is limited to the interpretation of Temp. Treas. Reg. § 1.469-5T(e)(3). As the Supreme Court expressed (in the less deferential context of interpretive regulations[7]), the Internal Revenue Service's reasonable interpretation of a regulation is accorded substantial judicial deference.

Unlike the regulation at issue in *Cleveland Indians Baseball Co.*, which did not address backpay and therefore required interpretation, Temp. Treas. Reg. §1.469-5T(e)(3)(i)(B) is explicit, complete, and unambiguous. The regulation provides, simply and clearly, that a partnership interest shall be treated as a limited partnership interest if the holder has limited liability. Moreover, since limited liability is the touchstone of a limited partner in a state law limited partnership, the regulation is reasonable in also using limited liability to determine whether a membership interest in an LLC should be treated as a limited partnership interest. Plaintiff's "interpretation" of the regulation to treat his partnership interest as not a limited partnership interest, even though he had limited liability, constitutes an effort to avoid its express and mandatory language.

This straightforward, plain language interpretation of Temp. Treas. Reg. § 1.469-5T(e)(3)(i)(B) does not render the regulations internally inconsistent. At oral

---

[7] The regulation at issue in *Cleveland Indians Baseball Co.* was an interpretive regulation.

argument on August 2, 2007, the Court inquired why limited liability should be critical when the seven tests in Temp. Treas. Reg. § 1.469-5T(a)(1-7) make no mention of limited liability. (Tr. at 44:15-21) That is not surprising at all, and simply reflects the different purposes Temp. Treas. Reg. §§ 1.469-5T(a) and (e) serve. Subsection (e) addresses whether a taxpayer is treated as holding a limited partnership interest and provides that such taxpayers only have three of the seven participation tests available to them under subsection (a). Subsection (e) makes that determination giving primacy to limited liability, just as state law does in defining a limited partnership interest in a partnership. Once the limited partnership test has been resolved on the basis of limited liability, however, subsection (a) comes into play to test the taxpayer's participation. It is natural that limited liability should have no role in measuring participation under subsection (a) (either as to limited partners or any other taxpayers).

Temp. Treas. Reg. §§ 1.469-5T(e)(3)(i)(A) and (B), about which the Court also inquired at oral argument (Tr. 53:6-15) are likewise not internally inconsistent. Subsection (A) focuses on "de jure" limited partners – those whose interest is designated as a limited partnership interest on the organizational documents of a limited partnership created under state law. Subsection (B), at issue in this case, involves "de facto" limited partners – those whose ownership interest should be treated as a limited partnership interest, even if not designated as such, and, indeed, even if the organizational form is not a limited partnership created under state law. As discussed above, it is reasonable to inquire under subsection (B) whether the taxpayer has limited liability, since that characterizes limited partnership interests generally. Defendant is not aware of the reasons why subsection (A) was written to treat an interest as a limited partnership



2705482.1

interest if so designated, regardless of limited liability, but whether the different inquiry under that provision is appropriate and reasonable is not before the Court.[8]

## III. How does 26 C.F.R. § 1.469-5T(e)(3)(ii) apply to plaintiff's matter?

Temp. Treas. Reg. § 1.469-5T(e)(3)(ii) addresses the unusual circumstance in which a taxpayer is both a limited and a general partner. It provides (notwithstanding Temp. Treas. Reg. § 1.469-5T(e)(3)(i)) that a partnership interest shall not be treated as a limited partnership interest, if the taxpayer is a general partner in the partnership at all times during the taxable year.

As explained above, since plaintiff has a partnership interest in Mountain Air and has only limited liability for its obligations, the plain language of Temp. Treas. Reg. § 1.469-5T(e)(3)(i)(B) treats him as holding a limited partnership interest. Temp. Treas. Reg. § 1.469-5T(e)(3)(ii) does not change that result, since plaintiff does not also hold a general partnership interest in Mountain Air. The distinction between a limited partnership interest and a general partnership interest under state law is that the former has limited liability for the partnership's debts, while the latter has "general", *i.e.*, unlimited personal liability. Thus, if a partner owns a general partnership interest – to which unlimited liability attaches – he can not claim to have limited liability protection in the partnership by virtue of also owning a limited partnership interest. The liability that arises from his general partnership interest trumps the liability protection of his limited

---

[8] Even if there were no overriding rationale that explains subsections (A) and (B), the language of both provisions is clear. Any friction between those provisions bears on whether each is arbitrary, capricious, or manifestly contrary to the statute, and should be upheld as a valid legislative regulation, Since the application of subsection (A) is not before the Court, neither is its validity. There is no dispute that subsection (B) is a valid legislative regulation, and its relationship with subsection (A) cannot be resolved through a (mis)interpretation of its plain language.

partnership interest, even though no liability would attach to the partner through his limited partnership interest when viewed in isolation. Temp. Treas. Reg. § 1.469-5T(e)(3)(ii) simply reflects this and treats a taxpayer as not holding a limited partnership interest for purposes of the loss limitations if he also has a general partnership interest. Plaintiff, however, had only limited liability for Mountain Air's debts, and was not, therefore, a general partner.

Plaintiff nevertheless claims he was a general partner, because he participated in Mountain Air's activities. But participation is what can destroy limited liability (of a limited partner in a state law created limited partnership); it is not the universal characteristic of a general partner. All partners of a general partnership are general partners (because they have unlimited liability), but a general partner may be a mere investor and need not participate in the partnership's activities. Likewise, a limited partnership may have multiple general partners, but there is no requirement that each general partner participate in its activities.

Moreover, Mountain Air was an LLC under state law, not a limited partnership under state law, and there is no requirement under state law that the former have a general partner. LLC's, unlike state law limited partnerships, have "members", rather than designated limited partners and general partners. LLC members enjoy limited liability and may participate freely in the LLC's activities. Since Mountain Air chose to be treated for tax purposes as a partnership, plaintiff claimed its losses as a partner, and he had limited liability, Temp. Treas. Reg. § 1.469-5T(e)(3)(i)(B) treats him as holding a limited partnership interest. There is no need to find someone at Mountain Air who is a general partner of that LLC, and, in any event, participation, rather than unlimited

liability, is no basis for doing so. Plaintiff was not a general partner of Mountain Air, and Temp. Treas. Reg. § 1.469-5T(e)(3)(ii) has no application to this case.

## CONCLUSION

For the reasons expressed in this Supplemental Brief, defendant's prior briefs, and at oral argument, this Court should grant defendant's Motion for Partial Summary Judgment, and, pursuant to the parties' subsequent Stipulation, enter judgment for defendant.

Respectfully Submitted

August 28, 2007

s/ Jeffrey R. Malo
JEFFREY R. MALO
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, DC 20044
Phone: (202) 305-7539
Fax: (202) 514-9440

RICHARD T. MORRISON
Acting Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN FRAHM
Assistant Chief, Court of Federal Claims Section

August 28, 2007

s/ Steven Frahm
Of Counsel



2705482.1

## APPENDIX A

### *I. Revised Uniform Limited Partnership Act of 1976 § 303(b)*

**303. Liability to Third Parties.**

(b) A limited partner does not participate in the control of the business within the meaning of subsection (a) solely by doing one or more of the following:

(1) being a contractor for or an agent or employee of the limited partnership or of a general partner or being an officer, director, or shareholder of a general partner that is a corporation;

(2) consulting with and advising a general partner with respect to the business of the limited partnership;

(3) acting as surety for the limited partnership or guaranteeing or assuming one or more specific obligations of the limited partnership;

(4) taking any action required or permitted by law to bring or pursue a derivative action in the right of the limited partnership;

(5) requesting or attending a meeting of partners;

(6) proposing, approving, or disapproving, by voting or otherwise, one or more of the following matters:

(i) the dissolution and winding up of the limited partnership;

(ii) the sale, exchange, lease, mortgage, pledge, or other transfer of all or substantially all of the assets of the limited partnership;

(iii) the incurrence of indebtedness by the limited partnership other than in the ordinary course of its business;

(iv) a change in the nature of the business;

(iv) the admission or removal of a general partner;

(v) the admission or removal of a limited partner;

(vi) a transaction involving an actual or potential conflict of interest between a general partner and the limited partnership or the limited partners;

(vii) an amendment to the partnership agreement or certificate of limited partnership; or

(ix) matters related to the business of the limited partnership not otherwise enumerated in this subsection (b), which the partnership agreement states in writing may be subject to the approval or disapproval of limited partners;

(7) winding up the limited partnership pursuant to Section 803; or

(8) exercising any right or power permitted to limited partners under this [Act] and not specifically enumerated in this subsection (b).

## *II. Table of Jurisdictions that have Adopted RULPA 1976*

Uniform Laws Annotated
Revised Uniform Limited Partnership Act (1976) with the 1985 Amendments to the 1976 Act (where applicable)

TABLE OF JURISDICTIONS WHEREIN ACT HAS BEEN ADOPTED

| Jurisdiction | Laws | Effective Date | Statutory Citation |
|---|---|---|---|
| Alabama | 1997, 1st Sp.Sess. 97-921 | 10-1-1998 | Code 1975, §§ 10-9B-101 to 10-9B-1206. |
| Alaska | 1992, c. 128 | 7-1-1993 | AS 32.11.010 to 32.11.990. |
| Arizona | 1982, c. 192 | 4-22-1982 (FN *) | A.R.S. §§ 29-301 to 29-376. |
| Arkansas | 1979, No. 657 | 7-1-1979 | A.C.A. §§ 4-43-101 to 4-43-1206. |
| California (FN 1) | 1983, c. 1223 | 7-1-1984 | West's Ann. Cal. Corp. Code, §§ 15611 to 15724. |
| Colorado (FN 1) | 1981, c. 77 | 11-1-1981 | West's C.R.S.A. §§ 7-62-101 to 7-62-1201. |
| Connecticut | 1979, P.A. 440 | 6-14-1979 (FN *) | C.G.S.A. §§ 34-9 to 34-38u. |
| Delaware | L.1982, c. 420 | 7-21-1982 (FN*) | 6 Del. C. §§ 17-101 to 17-1111. |
| District of Columbia | 1987, D.C.Law 7-49 | | D.C. Official Code, 2001 Ed. §§ 33-201.01 to 33-211.07 |
| Georgia (FN 1) | 1988, pp. 1016, 1018 | | O.C.G.A. §§ 14-9-100 to 14-9-1204. |
| Hawaii | 1989, Act 288 | 1-1-1990 | H.R.S. §§ 425D-101 to 425D-1206. |
| Illinois (FN 3) | 1986, P.A. 84-1412 | 7-1-1987 | S.H.A. 805 ILCS 210/100 to 210/1205. |
| Indiana | 1988, P.L. 147 | 7-1-1988 | West's A.I.C. 23-16-1-1 to 23-16-12-6. |
| Kansas | 1983, c. 88 | 1-1-1984 | K.S.A. 56-1a101 to 56-1a610. |
| Kentucky (FN 3) | 1988, c. 284 | 7-15-1988 | KRS 362.401 to 362.550. |
| Maine (FN 4) | 1991, c. 552 | 1-1-1992 | 31 M.R.S.A. §§ 401 to 530. |
| Maryland | 1981, c. 801 | 7-1-1982 | Code, Corporations and Associations, §§ 10-101 to 10-1105. |
| Massachusetts | 1982, c. 202 | 7-1-1982 | M.G.L.A. c. 109, §§ 1 to 62. |
| Michigan | 1982, P.A. 213 | 1-1-1983 | M.C.L.A. §§ 449.1101 to 449.2108. |

| Jurisdiction | Laws | Effective Date | Statutory Citation |
|---|---|---|---|
| Mississippi | 1987, c. 488 | 1-1-1988 | Code 1972, §§ 79-14-101 to 79-14-1107. |
| Missouri | 1985, H.B. 512, 650 | 1-1-1987 | V.A.M.S. §§ 359.011 to 359.691. |
| Montana | 1981, c. 522 | | MCA §§ 35-12-501 to 35-12-1404. |
| Nebraska | 1981, LB 272 | 1-1-1982 | R.R.S. 1943, §§ 67-233 to 67-296. |
| Nevada | 1985, c. 445 | 1-1-1987 | N.R.S. 88.010 to 88.650. |
| New Hampshire | 1987, c. 349 | 1-1-1987 | RSA 304-B:1 to 304-B:64. |
| New Jersey | 1983, c. 489 | 1-1-1985 | N.J.S.A. 42:2A-1 to 42:2A-73. |
| New Mexico | 1988, c. 90 | 9-1-1988 | NMSA 1978, §§ 54-2-1 to 54-2-63. |
| New York (FN 1) | 1990, c. 950 | 4-1-1991 | McKinney's Partnership Law, §§ 121-101 to 121-1300. |
| North Carolina | L.1985 (Reg. Sess. 1986), c. 989 | 10-1-1986 | G.S. §§ 59-101 to 59-1107. |
| Ohio | 1984, H.B. 607 | 4-1-1985 | R.C. §§ 1782.01 to 1782.65. |
| Oklahoma (FN 1) | 1984, c. 50 | 11-1-1984 | 54 Okl.St.Ann. §§ 301 to 365. |
| Oregon | 1985, c. 677 | 7-1-1986 | ORS 70.005 to 70.625. |
| Pennsylvania | 1988, Act 177 | 10-1-1989 | 15 Pa.C.S.A. §§ 8501 to 8594. |
| Rhode Island | 1985, c. 390 | 1-1-1986 | Gen. Laws 1956, §§ 7-13-1 to 7-13-68. |
| South Carolina | 1984, No. 491 | 6-27-1984 | Code 1976, §§ 33-42-10 to 33-42-2040. |
| South Dakota | SL 1986, c. 391 | 7-1-1986 | SDCL 48-7-101 to 48-7-1106. |
| Tennessee | 1988, c. 922 | 1-1-1989 | T.C.A. §§ 61-2-101 to 61-2-1208. |
| Texas | 1987, c. 49 | 9-1-1987 | Vernon's Ann. Texas Civ. St. art. 6132a-1. |
| Utah | 1990, c. 233 | 7-1-1990 | U.C.A. 1953, 48-2a-101 to 48-2a-1107. |
| Vermont | 1998, c. 149 | 1-1-1999 | 11 V.S.A. §§ 3401 to 3503. |
| Virgin Islands | L.1998, c. 6205 | 2-12-1998 (FN *) | 26 V.I.C. §§ 321 to 575. |
| Virginia | 1985, c. 607 | 1-1-1987 | Code 1950, §§ 50-73.1 to 50-73.78. |
| Washington | 1981, c. 51 | 1-1-1982 | West's RCWA 25.10.010 to 25.10.955 |
| West Virginia | 1981, c. 208 | 1-1-1982 | Code, 47-9-1 to 47-9-63. |
| Wisconsin | 1983-85, Act 173 | 9-1-1984 | W.S.A. 179.01 to 179.94. |
| Wyoming | 1979, c. 153 | 7-1-1979 | Wyo.Stat.Ann. §§ 17-14-201 to 17-14-1104. |

FN* Date of approval.

FN1 Enacted Revised Limited Partnership Act of 1976 without repealing the 1916 Limited Partnership Act.

FN3 Enacted the Uniform Limited Partnership Act (2001), and repealed the Revised Limited Partnership Act (1976) effective January 1, 2008.

FN4 Enacted the Uniform Limited Partnership Act (2001), and repealed the Revised Limited Partnership Act (1976) effective July 1, 2007.