IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-211 T
(Judge Victor J. Wolski)

JAMES R. THOMPSON,

Plaintiff

v.

THE UNITED STATES,

Defendant

# PLAINTIFF'S REPLY BRIEF

Plaintiff James R. Thompson, pursuant to the Court's August 14, 2007 Order, submits this reply to Defendant's Supplemental Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment and In Support of Its Cross Motion for Partial Summary Judgment.

- **Government Brief at 2**

The government's interpretation of Reg. § 1.469-5T(e)(3)(i)(B) in a vacuum, without consideration of the other parts of Reg. § 1.469-5T(e), is not entitled to substantial judicial deference. Because it is a substantive or legislative regulation, the regulation itself is entitled to deference. But the interpretation put forward as a litigating position by the government in this case would render the regulation invalid because it is contrary to the statute and the intent expressed by Congress, as Mr. Thompson demonstrated in his prior briefs.

**1. As of 1986, was there a commonly-held or predominant meaning, under the law of the several states, of limited partner interests in limited partnerships? What were the features or attributes of such an interest in such an entity?**

- **Government Brief at 1, 4 and 7**

According to the government, "limited liability" was the "hallmark," (Br. at 1) the "essence" (Br. at 4) and the "*sine quo* [sic] *non*" (Br. at 7) of a limited partnership. Why, then, can a limited partner lose his limited liability by participating in control of the business and yet the limited partnership interest continues to exist? Indeed, under the 1916 Act, the death of the general partner dissolves the partnership but the death of a limited partner merely transfers the rights and obligations of his interest to his estate. ULPA §§ 20 and 21 (App. 183-184). In fact, "general partners [have] most or all of the control, and the limited partners little or none." Bromberg III, 11:4 (App. 125). The hallmark is more appropriately stated that limited partners do not inherently possess authority to bind, control or manage the partnership. The same hallmark would not apply to a manager member of a limited liability company.

- **Government Brief at 8-9**

There appears here a mischaracterization by the government of Reg. § 1.469-5T(e)(3)(i)(B). Nowhere does subsection (B) "[address] holders of partnership interests in organizations other than limited partnerships organized pursuant to state law." Subsection (B) and the entirety of Reg. § 1.469-5T(e) deal only with "limited partnerships."

Subparagraph (B) of Temp. Reg. § 1.469-5T(e)(3)(i) does not expand by implication the meaning of the term "limited partnership." Rather, it simply provides a necessary alternative method in the context of a state law limited partnership of classifying an interest as a limited partnership interest. This is important because under RULPA, only the names of the general partners need to be disclosed in the certificate and RULPA does not require the parties to enter into a written agreement of limited partnership. RULPA § 201(a)(3) and § 201(b) (App. 200-

201). Under such a circumstance, Subparagraph (A) would not appropriately capture the interest in the definition. Therefore, Subparagraph (B) must work together with Subparagraph (A) to ensure all appropriate interests in a state law limited partnership are captured under the passive activity loss rule.

The plain language notwithstanding, however, if Subparagraph (B) were interpreted to be an expansion by implication of the meaning of the term "limited partnership," with the result that a limited liability company is considered to be a "de facto" limited partnership, then the entire regulation should similarly be expanded, necessarily including the application of Temp. Reg. § 1.469-5T(e)(3)(ii). There is another way to look at this issue. Under Texas limited partnership law and all the other states which enacted RULPA, Mr. Thompson's participation as a "limited partner" in the control of Mountain Air Charter in 2002 and 2003 would have caused him no longer to "enjoy limited liability under state law." (Government Br. at 8-9). Wouldn't the government have to concede that subsection (B) would then not apply, with the result that Mr. Thompson would get to use all seven tests of material participation? (See Government Br. at 13-15 for the government's logic in answering this Court's question No. 3). If limited liability is paramount, Mr. Thompson's interest would convert to a general partnership interest under state law and such interest necessarily would be subject to Reg. § 1.469-5T(e)(3)(ii).

**2. How much deference, if any, must a court give to a federal agency's interpretation and application of the agency's own regulations? Must a court interpret regulations in a manner that makes them internally consistent?**

- **Government Brief at 9-13**

This section of the government's brief contains another attempt to explain Reg. § 1.469-5T(e)(3)(i)(A) and (B). (Government Br. at 12-13). Mr. Thompson stands on his post-hearing brief in answer to this Court's two related but different questions. The government doesn't answer the Court's second question about internal consistency and asserts that subsection (A) "is

not before the Court." (Government Br. at 12-13, n.8). Mr. Thompson believes the entirety of Reg. § 1.469-5T(e) is before the Court and, under the authorities discussed in his post-hearing brief, must be interpreted to make sense in relation to the statute and internally.

Deference should require internal consistency. This standard requires the government to interpret the entire regulation in a consistent manner. This is particularly appropriate and important if the government interprets the regulation in a manner that causes a limited liability company to be considered a "de facto" limited partnership. As described in our prior briefs, such an interpretation is consistent and in accordance with legislative intent only if it considers the fact that a general partner is a common feature of all limited partnerships. Since a member manager carries with it rights, powers and authority comparable to a general partner's interest, Mr. Thompson should be considered the general partner of any "de facto" limited partnership. Such an interpretation would be consistent and work in tandem with all interpretations of the regulation to allow it to have an internally consistent application that is in line with its legislative intent and purpose.

**3. How does 26 C.F.R. § 1.469-5T(e)(3)(ii) apply to plaintiff's matter?**

- **Government Brief at 13-15**

Mr. Thompson is at a loss to understand what the government means by "the unusual circumstance in which a taxpayer is both a limited and a general partner." (Government Br. at 13). The ULPA of 1916 has a specific section on this circumstance. ULPA § 12 (App. 179).

The government argues that "a limited partnership may have multiple general partners, but *there is no requirement that each general partner participate in its activities*." (Government Br. at 14) (emphasis added). The government's logic simply misses the point of this provision. Although there is no requirement that all general partners participate in the activities of a limited partnership, there is also no appropriate presumption that a general partner is intrinsically

passive. Congress applied the higher standard only to limited partners because a limited partner generally is precluded from participating in control of the partnership's business. The seven-test standard applies to general partners because there is no such presumption. That is the important distinction and provides the rationale for the provision. Since a member manager carries with it rights, powers and authority in an LLC comparable to a general partner's interest, the same standard should apply for the same reason and rationale.

The Secretary issued Reg. § 1.469-5T(e)(3)(ii) for a reason. The reason can only be that when a taxpayer possesses management power and authority, the presumption that the taxpayer is intrinsically passive is not appropriate. Mr. Thompson stands on his prior briefs, and the hearing on August 2, 2007, to explain both the application of this regulation to his matter and the consistency of such application with the statute, congressional intent and the other regulations.

**PRAYER**

For the reasons set forth in his briefs and at the hearing on August 2, 2007, Plaintiff respectfully asks that the Court grant Plaintiff's Motion for Partial Summary Judgment, deny Defendant's Cross-Motion for Partial Summary Judgment and grant Plaintiff such other and further relief to which he may be entitled.

Respectfully submitted,

WINSTEAD PC
5400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2199
(214) 745-5400 (Phone)
(214) 745-5390 (Fax)

By: /s/ Stuart M. Reynolds, Jr.
Thomas R. Helfand, State Bar No. 09392500
Stuart M. Reynolds, Jr., State Bar No. 16805700

**ATTORNEYS FOR PLAINTIFF JAMES R. THOMPSON**

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on this 5th day of September, 2007, a true and correct copy of the foregoing was forwarded via first class mail to the following:

Jeffrey R. Malo
U.S. Department of Justice, Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044

/s/ Stuart M. Reynolds, Jr.
One of Counsel

Dallas_1\5090957\1
44222-1 9/5/2007