# United States Court of Federal Claims
**No: 06-211 T**
July 20, 2009

---

**JAMES R. THOMPSON,**

    *Plaintiff*,

**v.**

**UNITED STATES OF AMERICA,**

    *Defendant*.

Taxation of LLCs; Passive Activity Losses; 26 U.S.C. § 469; 26 C.F.R. § 1.469-5T; Statutory and Regulatory Interpretation

---

*Thomas R. Helfand*, Winstead, Sechrest & Minick, P.C., Dallas, TX, for plaintiff.

*Michael J. Roney*, *Jeffrey R. Malo*, and *George L. Squires*, Court of Federal Claims Section, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION and ORDER

**Block,** *Judge*.

## I. INTRODUCTION

  The nub of this case is whether the government is collecting more taxes than written law and regulation allow. More precisely, plaintiff James R. Thompson structured his business activity in the form of a limited liability company ("LLC") under the laws of the State of Texas. LLCs are hybrid entities that under state law are neither partnerships nor corporations. *See generally* ALAN BROMBERG & LARRY RIBSTEIN, BROMBERG AND RIBSTEIN ON PARTNERSHIP ("BROMBERG") § 1.01(b)(4) (2007). Nevertheless, under the Treasury Regulations, an LLC must choose to be taxed as either one or the other.[1] *See* 26 C.F.R. ("Treas. Reg.") §§ 301.7701-2(a), -3(b)(1)(i). To avoid the two-tier system of corporate taxation, most LLCs elect partnership taxation.[2] *See Gregg v. United States*, 186 F. Supp. 2d 1123, 1126 (D. Or. 2000).

---

[1] Technically, the LLC must choose whether or not it will be taxed as a corporation. Otherwise, it is taxed as a partnership by default. *See* Treas. Reg. § 301.7701-3(b)(1)(i). This is what happened in the case at bar. *See infra* section II.

[2] Under partnership taxation law, the LLC and its members are not separately taxable. *See generally* Martha W. Jordan, *Pennsylvania's Limited Liability Company Act Raises Taxing Questions*, 69 TEMP. L. REV. 703, 708 (1996). Instead, the LLC serves as a conduit; its income and losses pass through to its members, who take the losses and income into account in calculating their own taxable income. *Id.* at 708–09 & n.39.

The parties ask this court to decide whether a member interest in an LLC electing partnership taxation is a limited partnership interest for purposes of applying the passive activity rules of 26 U.S.C. ("I.R.C." or the "Code") § 469 and the regulations thereunder. This is a question of first impression for the court. The issue arises when a member of an LLC claims a share of the LLC's losses. If the member's ownership interest is a limited partnership interest, as defendant contends, then the member has fewer means by which he can demonstrate his material participation in the business. *See* Treas. Reg. § 1.469-5T(e)(2). This is important because unless the member can demonstrate his material participation, the Code will deem his share of the LLC's losses to be a "passive activity" loss rather than an ordinary loss. *See* I.R.C. § 469(c)(1)(B). Passive activity losses are less advantageous than ordinary losses because they may only offset passive activity income. *See* I.R.C. § 469 (a)(1), (d)(1). In the instant case, plaintiff's share of his LLC's losses exceeds his passive activity income. *See* Compl. Ex. B at 3.

Each party has moved for partial summary judgment on the aforementioned issue. *See* Pl.'s Mot. for Partial Summ. J. at 1–2.; Def.'s Cross-Mot. for Partial Summ. J. at 1–2. After filing their cross-motions, the parties stipulated that if plaintiff's member interest is a limited partnership interest, then plaintiff cannot demonstrate his material participation in the LLC and I.R.C. § 469 limits his losses. *See* July 16, 2007 Stipulation at 1. Likewise, the parties also stipulated that if plaintiff's member interest is not a limited partnership interest, then plaintiff can demonstrate his material participation in the LLC and § 469 does not limit his losses. *See id.* Because the parties do not disagree as to the amount of the tax and because the parties stipulated that deciding their cross-motions for partial summary judgment will, in fact, resolve the case entirely, the court deems the parties' cross-motions for partial summary judgment to be cross-motions for summary judgment.

Perhaps demonstrating once again that "[l]ogic and taxation are not always the best of friends," *Sonneborn Bros. v. Cureton*, 262 U.S. 506, 522 (1923) (McReynolds, J., concurring), the court rejects defendant's position because, among other reasons, the tax code and the applicable regulations literally cannot be read to transfigure plaintiff's member interest in his LLC into one of a limited partnership. Accordingly, this court grants plaintiff's motion for summary judgment and denies the government's motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On March 19, 2002, plaintiff formed Mountain Air Charter, LLC ("Mountain Air")[3] under the laws of the State of Texas. Def.'s Resp. to Pl.'s Proposed Findings of Uncontroverted Fact ("DRPPFF") ¶ 1; Pl.'s Resp. to Def.'s Proposed Findings of Uncontroverted Fact ("PRDPFF") ¶ 16. Plaintiff directly holds a 99% member interest in Mountain Air and indirectly holds the remaining

---

[3] Mountain Air owns and operates a single aircraft for on-demand air charter services. DRPPFF ¶ 2.

1% through JRT Holdings, Inc., a Subchapter S corporation.[4]  DRPPFF ¶¶ 3, 6.  Significantly, Mountain Air's articles of organization[5] designate plaintiff as its only manager.  DRPPFF ¶¶ 7, 9.

Because Mountain Air did not elect to be treated as a corporation for federal tax purposes, DRPPFF ¶ 8, by default the Code treats it as a partnership, *see* Treas. Reg. §§ 301.7701-2(a), -3(b)(1)(i).  On his 2002 and 2003 individual income tax returns, plaintiff claimed Mountain Air's losses of $1,225,869 and $939,878, respectively.  PRDPFF ¶¶ 48–49.  After reviewing plaintiff's returns, an IRS auditor disallowed all of plaintiff's claimed losses in 2002 and $783,878 of plaintiff's claimed losses in 2003.  PRDPFF ¶ 51.  The IRS assessed plaintiff additional tax liability and interest amounting to $437,186 for 2002 and $308,055 for 2003.  DRPPFF ¶¶ 12, 14.  On September 9, 2005, plaintiff paid the IRS $863,124 in tax and interest stemming from his 2002 and 2003 income tax returns.  DRPPFF ¶¶ 13, 15.  On the same day plaintiff submitted his payment, he also submitted a tax refund claim for the same amount.  PRDPFF ¶ 52.  The IRS denied plaintiff's claim on March 2, 2006.  Compl. Ex. B at 1.

According to the IRS auditor, he disallowed the claimed losses because plaintiff did not materially participate in the business operations of Mountain Air.  Compl. Ex. B at 3.  The IRS auditor rested his conclusion on Treasury Regulation § 1.469-5T,[6] which sets forth the test for what constitutes taxpayer material participation for purposes of applying I.R.C. § 469's passive activity rules.  *See* Treas. Reg. § 1.469-5T (titled "Material participation").  To the auditor, § 1.469-5T "explicitly treats interests in any entity which limits liability as limited partnership interests."  Pl.'s App. at 4.  Because plaintiff enjoyed limited liability as an LLC member, the auditor concluded that plaintiff's interest was identical to a limited partnership interest.  *Id.*  The IRS then deemed plaintiff's share of Mountain Air's losses to be a passive activity loss.  *Id.*

Two weeks after the IRS denied plaintiff's refund claim, plaintiff filed his complaint in the United States Court of Federal Claims, seeking a tax refund of $781,241 plus interest based on the Mountain Air losses that he originally claimed in his 2002 and 2003 returns.  Compl. at 1, 6 & Exs. A, C; PRDPFF ¶¶ 48–49.  The case was originally assigned to Judge Wolski, who heard oral argument and subsequently ordered supplemental briefing.  Tr. at 1; Aug. 14, 2007 Order at 1.  The case was then transferred to the undersigned judge on March 6, 2009.  Transfer Order.  The court

---

[4] An S corporation is a business entity with shareholders, rather than members or partners, and is taxed in a pass-through manner as if it were a partnership or sole proprietorship.  RICHARD B. ROBERTSON & ARTHUR A. WEISS, TAX PLANNING FOR S CORPORATIONS § 1.01[2] (2009); *see also* I.R.C. § 1366(a)(1).  Unlike limited partnerships, however, all S corporation shareholders enjoy limited liability regardless of their level of participation in the business.  ROBERTSON & WEISS § 1.01[2].

[5] Organizers must file an LLC's "articles of organization" with the appropriate state authority before the state will formally recognize the LLC.  UNIF. LTD. LIAB. CO. ACT § 202, 6B U.L.A. 574 (2008).  The articles include, *inter alia*, whether management power is vested in specific managers or its members generally.  UNIF. LTD. LIAB. CO. ACT § 203, 6B U.L.A. 575 (2008).

[6] The "T" denotes that this regulation is a "temporary" one.  However, it was issued on February 19, 1988, and remains in force today.  *Garnett v. Comm'r of Internal Revenue*, No. 132-19, 2009 WL 1883965, at *3 n.11 (T.C. June 30, 2009).

soon thereafter ordered the parties to submit consolidated briefs. March 12, 2009 Scheduling Order. Armed with these consolidated briefs, this court now turns to the merits of the parties' cross-motions for summary judgment.

### III. DISCUSSION

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Jentoft v. United States*, 450 F.3d 1342, 1346 (Fed. Cir. 2006). Material facts are those "that might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248. A dispute over facts is genuine "if the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." *Id.*

Where the parties have submitted cross-motions, the court is not compelled to grant summary judgment for one side or the other. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed. Cir. 1988). In other words, "rejecting one does not mean that the other is justified." *Res. Invs., Inc. v. United States*, 85 Fed. Cl. 447, 467 (2009) (citing *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)). "Rather, the court must evaluate each party's motion on its own merit." *Consolidation Coal Co. v. United States*, 86 Fed. Cl. 384, 387 (2009) (citing *A Olympic Forwarder, Inc. v. United States*, 33 Fed. Cl. 514, 518 (1995)).

Again, the parties' cross-motions ask this court to determine whether plaintiff held a limited partnership interest in Mountain Air for purposes of applying the passive activity rules of I.R.C. § 469 to plaintiff's share of Mountain Air's losses. *See* Pl.'s Mot. for Partial Summ. J. at 1; Def.'s Cross-Mot. for Partial Summ. J. at 1. A "passive activity loss" occurs where "the aggregate losses from all *passive activities* for the taxable year, exceed the aggregate income from all passive activities for such year." I.R.C. § 469(d)(1) (emphasis added). A passive activity is "any activity which involves the conduct of a trade or business, and in which the taxpayer does not *materially participate*." I.R.C. § 469(c)(1)(B) (emphasis added).

A taxpayer materially participates in an activity only if he is involved in the activity's operations on a regular, continuous, and substantial basis. I.R.C. § 469(h)(1). Generally, an individual may establish his material participation for a given taxable year by demonstrating any of the following:

> (1) The individual participate[d] in the activity for more than 500 hours during such year;
>
> (2) The individual's participation in the activity for the taxable year constitute[d] substantially all of the participation in such activity of all individuals . . . for such year;
>
> (3) The individual participate[d] in the activity for more than 100 hours during the taxable year, and such individual's participation in the activity for the taxable year [was] not less than the participation

>  in the activity of any other individual . . . for such year;
>
>  (4) The activity [was] a significant participation activity . . . for the taxable year, and the individual's aggregate participation in all significant participation activities during such year exceed[ed] 500 hours;
>
>  (5) The individual materially participated in the activity . . . for any five taxable years . . . during the ten taxable years that immediately precede[d] the taxable year;
>
>  (6) The activity is a personal service activity . . . , and the individual materially participated in the activity for any three taxable years . . . preceding the taxable year; or
>
>  (7) Based on all of the facts and circumstances . . . , the individual participate[d] in the activity on a regular, continuous, and substantial basis during such year.

Treas. Reg. § 1.469-5T(a).

The Code treats limited partners differently because it presumes that they do *not* materially participate in their limited partnerships. *See* I.R.C. § 469(h)(2) ("Except as provided in regulations, no interest in a limited partnership as a limited partner shall be treated as an interest with respect to which a taxpayer materially participates."). In fact, under the Treasury Regulations implementing § 469, if a taxpayer holds a limited partnership interest, only three of the seven tests described above—(1), (5), and (6)—are available to measure the taxpayer's material participation in the partnership. Treas. Reg. § 1.469-5T(e)(2). Treasury Regulation § 1.469-5T(e)(3) determines whether a taxpayer is holding a limited partnership interest. *See* Treas. Reg. § 1.469-5T(e)(3) (titled "Limited partnership interest"). The regulation provides:

>  (i) In general.
>  Except as provided in paragraph (e)(3)(ii) of this section, for purposes of [I.R.C. §] 469(h)(2) and this paragraph (e), a partnership interest shall be treated as a limited partnership interest if—
>
>  (A) Such interest is designated a limited partnership interest in the limited partnership agreement or the certificate of limited partnership, without regard to whether the liability of the holder of such interest for obligations of the partnership is limited under the applicable State law; or
>
>  (B) The liability of the holder of such interest for obligations of the partnership is limited, under the law of the State in which the partnership is organized, to a determinable fixed amount (for example, the sum of the holder's capital contributions to the

>       partnership and contractual obligations to make additional capital contributions to the partnership).
>
>   (ii) Limited partner holding general partner interest.
>   A partnership interest of an individual shall not be treated as a limited partnership interest for the individual's taxable year if the individual is a general partner in the partnership at all times during the partnership's taxable year ending with or within the individual's taxable year (or the portion of the partnership's taxable year during which the individual (directly or indirectly) owns such limited partnership interest).

*Id.*

As noted above, both parties agree that I.R.C. § 469's passive activity rules limit plaintiff's share of Mountain Air's losses if he holds a limited partnership interest under § 1.469-5T(e)(3) and only § 1.469-5T(a)(1), (5), and (6) are available to measure his material participation. *See* July 16, 2007 Stipulation at 1. The parties also agree that I.R.C. § 469 does not limit plaintiff's share of Mountain Air's losses if plaintiff does *not* hold a limited partnership interest under § 1.469-5T(e)(3) and all seven tests under § 1.469-5T(a) are available to measure his material participation. *See id.*; Def.'s Consol. Br. at 3; Tr. at 39. Therefore, the instant case turns on the proper application of Treasury Regulation § 1.469-5T(e)(3) to plaintiff's interest in Mountain Air.

As a threshold matter, it is important to note that an LLC is not a partnership. While LLC members may participate directly in the management of the company, all members enjoy limited liability regardless of their respective levels of involvement. *See Gregg*, 186 F. Supp. 2d at 1128; BROMBERG § 1.01(b)(4). Limited partnerships, on the other hand, must distinguish between: (1) their limited partners, who have limited liability but are unable to participate in the management of the partnership; and (2) their general partners, who may participate in the management of the partnership but are personally liable for its debts. *See Gregg*, 186 F. Supp. 2d at 1128; BROMBERG § 1.01(b)(3).

Defendant argues that it was nevertheless proper for the IRS to treat plaintiff's interest in Mountain Air as a limited partnership interest under Treasury Regulation § 1.469-5T(e)(3)(i)(B) because plaintiff elected to have Mountain Air taxed as a partnership for income tax purposes and because plaintiff's liability is limited under the laws of the state in which Mountain Air was organized (Texas). Def.'s Consol. Br. at 15–18. Plaintiff's response is a simple one: because Mountain Air is not a limited partnership, his ownership interest cannot be that of a limited partner. *See* Pl.'s Consol. Br. at 7. Moreover, plaintiff contends that even if Mountain Air could be properly analogized to a limited partnership, his interest is more akin to a general partner's interest under § 1.469-5T(e)(3)(ii) than a limited partner's interest under 1.469-5T(e)(3)(i), given the high degree of control he exerts over Mountain Air's business operations as its sole manager. *See* Pl.'s Consol. Br. at 7–8.

The court notes that the canons of statutory construction apply equally to regulations. *Gen. Elec. Co. v. United States*, 610 F.2d 730, 734 (Ct. Cl. 1979); *see, e.g., Rice v. Martin Marietta Corp.*, 13 F.3d 1563, 1568 (Fed. Cir. 1993) ("we keep in mind the canon of statutory construction, equally

applicable to regulations, that where the text permits, statutes dealing with similar subjects should be interpreted harmoniously" (internal quotation omitted)); *Wronke v. Marsh*, 787 F.2d 1569, 1574 (Fed. Cir. 1986) ("As in the interpretation of statutes, we begin, as we must, with the plain language of the regulation." (internal citations omitted)). Thus, this court begins with the language of § 1.469-5T(e)(3), and derives its plain meaning from its text, structure, and purpose.[7] *Prati v. United States*, 81 Fed. Cl. 422, 430 (2008).

The language from § 1.469-5T(e)(3) upon which defendant relies states that "a partnership interest shall be treated as a limited partnership interest if . . . [t]he liability of the holder of such interest for obligations of the partnership is limited, *under the law of the State in which the partnership is organized*." Treas. Reg. § 1.469-5T(e)(3)(i)(B) (emphasis added). The emphasized portion of the regulation thus literally requires that the ownership interest be in a business entity that is, in fact, a partnership under state law—not merely taxed as such under the Code. This provision is unambiguous. As such, this court must enforce its plain meaning. *See Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (internal quotation omitted)); *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."); *Diefenderfer v. Merit Sys. Prot. Bd.*, 194 F.3d 1275, 1278 (Fed. Cir. 1999) ("If the terms of the statute or regulation are unambiguous, no further inquiry is usually required.").

Moreover, the relevant section of the Code, upon which Treasury Regulation § 1.469-5T(e)(3) is predicated, states: "Except as provided in regulations, no interest in a limited partnership *as a limited partner* shall be treated as an interest with respect to which a taxpayer materially participates." I.R.C. § 469(h)(2) (emphasis added). Thus for this provision even to apply, the taxpayer must actually be a limited partner. *See Garnett*, 2009 WL 1883965, at *5 ("The operative condition for applying § 469(h)(2) is not simply that there be an 'interest in a limited partnership' but an 'interest in a limited partnership *as a limited partner*.'"). Of course, Mountain Air is organized under Texas state law as an LLC, not a limited partnership, and plaintiff is a member of an LLC, not a limited partner. DRPPFF ¶¶ 1, 4, 6.

---

[7] Defendant argues that this court owes substantial deference to an agency regulation promulgated in accordance with an express congressional mandate and to an agency's reasonable interpretation of such a regulation. Def.'s Br. at 2–3; Def.'s Supp. Br. 10–11; Def.'s Consol. Br. at 2–3. However, plaintiff agrees that the regulation is valid, Pl.'s Consol. Br. at 43–44, and defendant has not set forth, nor is this court aware of, any official IRS interpretation extending § 1.469-5T(e)(3) to include membership interests in LLCs. Therefore, this court owes no deference to defendant's proffered interpretation, and the court may proceed unhindered in applying the appropriate canons of construction. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212–13 (1988) (holding that where the agency itself has articulated no position on the question, "[d]eference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate"); *see also Am. Express Co. v. United States*, 262 F.3d 1376, 1383 (Fed. Cir. 2001) (holding that a "mere audit determination . . . may not draw deference").

Defendant also ignores the possibility that plaintiff meets the general partner exception under § 1.469-5T(e)(3)(ii). This is remarkable considering that the provision upon which defendant bases its argument, § 1.469-5T(e)(3)(i), begins: "Except as provided in paragraph (e)(3)(ii) . . . ." Section 1.469-5T(e)(3)(ii) provides, in part, that "[a] partnership interest of an individual shall not be treated as a limited partnership interest . . . if the individual is a general partner in the partnership at all times during the partnership's taxable year." In other words, plaintiff's ownership interest would not be a limited partnership interest under the regulations if plaintiff could show that he were a general partner at all times during the 2002 and 2003 tax years.

Again, plaintiff was both a member and a manager of an LLC, not a partner in a limited partnership. DRPPFF ¶¶ 1, 4, 6–7. However, defendant twice conceded at oral argument that plaintiff would be a general partner if Mountain Air were a limited partnership. Tr. 62, 73. Defendant asks this court to equate plaintiff's interest in Mountain Air to that of a limited partner's interest in a limited partnership under § 1.469-5T(e)(3)(i)(B), but also deny plaintiff the possible benefit of § 1.469-5T(e)(3)(ii)'s general partner exception. According to defendant, the legal fiction created by the Code—that an LLC electing partnership taxation is a limited partnership—does not extend to § 1.469-5T(e)(3)(ii). *See* Tr. 73.[8] This position strikes the court as entirely self-serving and inconsistent. If an LLC member could hold a limited partner's interest under § 1.469-5T(e)(3)(i), then, alternatively, that same member could hold a general partner's interest under § 1.469-5T(e)(3)(ii).

Defendant further argues that between the two types of partnership interests plaintiff could possess—limited or general—plaintiff must hold a limited partnership interest because at the time I.R.C. § 469 and Treasury Regulation § 1.469-5T were promulgated, "there was universal agreement among the states that the *sine qua non* of a limited partnership interest was limited liability." Def.'s Supp. Br. at 7; *see* Tr. 68.[9] Plaintiff takes the opposite position, contending that the key feature or

---

[8] The following exchange between Judge Wolski and defendant's counsel at the August 2, 2007 hearing best demonstrates defendant's position:

JUDGE WOLSKI: Again, limited partnerships are partnerships that have general partners. Who is the general partner in the LLC?

DEF.'S COUNSEL: In the context of the '86 Act, [plaintiff] would be the general partner.

JUDGE WOLSKI: Well?

DEF.'S COUNSEL: But he is not in a partnership. He is in an LLC, and under [§ 1.469-5T(e)(3)(i)(B)] . . . , he is required to be treated as a limited partner.

[9] Again, defendant's position was made clear at the August 2, 2007 hearing:

JUDGE WOLSKI: What I want to know is, how do you know if they are a general partner? You can't say they are a general partner if they are not a limited partner because [Treasury Regulation § 1.469-5T(e)(3)(ii)] specifically applies to a limited partner holding a general partner interest. Are you saying that the Treasury Secretary is just throwing out words that don't mean anything?

attribute differentiating the two interests is the ability to participate in the control of the business. Pl.'s Supp. Br. at 3. After reviewing the state of limited partnership law at the time Congress enacted § 469, this court agrees with plaintiff.

When Congress passed I.R.C. § 469 in 1986,[10] the limited partnership was not a novel business entity. In 1916, the National Conference of Commissioners on Uniform State Laws drafted the first Uniform Limited Partnership Act ("ULPA"). BROMBERG § 11.02(b). By the 1970s, a majority of the states had adopted the ULPA. In 1976, the National Conference created the Revised Uniform Limited Partnership Act ("RULPA"). *Id.* § 11.02(c). Further amendments followed in 1985. *Id.* § 11.02(c) n.41, (d). By 1986, almost every state, including Texas, had adopted either the ULPA or the RULPA.[11]

The ULPA provides that "[a] limited partner shall not become liable as a general partner unless, in addition to the exercise of his rights and powers as a limited partner, *he takes part in the control of the business*." ULPA § 7 (1916) (emphasis added). Likewise, the 1976 version of the RULPA provides that "a limited partner is not liable for the obligations of a limited partnership unless he is also a general partner or, in addition to the exercise of his rights and powers as a limited partner, *he takes part in the control of the business*." RULPA § 303(a) (1976) (emphasis added). The 1985 version of the RULPA offers no material change, providing that "a limited partner is not liable for the obligations of a limited partnership unless he is also a general partner or, in addition to the exercise of his rights and powers as a limited partner, *he participates in the control of the business*." RULPA § 303(a) (1985) (emphasis added).

In sum, when Congress enacted I.R.C. § 469, there was general agreement among state laws that a limited partner would lose his limited liability status if he participated in the control of the

---

DEF.'S COUNSEL: No, your Honor, and the dividing line between the two types of interests is limited liability.

JUDGE WOLSKI: Where does it say that?

DEF.'S COUNSEL: It does not say that in the text of the regulation.

JUDGE WOLSKI: Then how do we know?

DEF.'S COUNSEL: Because the defining characteristic that establishes the difference between a general partner and a limited partner in this context is the fact that the general partner, who is free to participate, has absolutely unlimited liability and, therefore, should be subject to a lower standard under the two standards of the seven tests.

[10] Tax Reform Act of 1986, Pub. L. No. 99-514, 100 Stat. 2085.

[11] The only states that did not adopt either the ULPA or the RULPA by 1986 were: Alabama, Florida, Idaho, Iowa, Kentucky, Louisiana, Mississippi, New Hampshire, New Mexico, North Dakota, and Tennessee. *See* 6B U.L.A. 1–2 (2008); 6 U.L.A. 172 (Supp. 1989).

business.[12]  Stated another way, a limited partner's level of participation in the business dictated whether or not he enjoyed limited liability.  But the converse is not true.  Under the ULPA, a limited partner who "takes part in the control of the business" becomes "liable as a general partner."  ULPA § 7 (1916).  The same is true under the RULPA, which makes a limited partner "liable for the obligations of a limited partnership" if "he participates in the control of the business."  *See* RULPA § 303(a) (1985).  To be sure, the loss of limited liability under state law likely deterred many limited partners from participating in the control of their businesses, but limited liability is not the *sine qua non* of a limited partnership interest.

   Moreover, the surrounding statutory and regulatory framework does not support a "dividing line between the two types of [partnership] interests [based on] limited liability," as defendant suggests,[13] but rather a dividing line based on participation.  Defendant loses sight of what the Treasury Secretary drafted § 1.469-5T to define—namely, what constitutes "material participation" in an activity.  *See* I.R.C. § 469(*l*)(1) ("The [Treasury] Secretary shall prescribe regulations . . . to carry out the provisions of this section, including regulations which specify what constitutes an activity, material participation, or active participation . . . ."); Treas. Reg. § 1.469-5T (titled "Material participation").  Deciding whether a taxpayer materially participated in an activity is but one step in the ultimate determination of whether the taxpayer was involved in a "passive activity."  *See* I.R.C. § 469(c)(1).  These terms—"material participation" and "passive activity"—indicate that Congress was primarily concerned with the taxpayer's level of involvement in the activity in question.  If Congress desired a test that turned on a taxpayer's level of liability, it surely would have included the word "liability" somewhere in the statute.  However, as defendant's counsel admitted at oral argument, the word "liability" does not appear in I.R.C. § 469.  Tr. 38.

   Defendant's appeal to § 469's legislative history is no more persuasive.  Defendant cites two committee prints and argues that Congress passed § 469 to stem the use of limited liability pass-though entities as tax shelters.  *See* Def.'s Br. at 10; Tr. 38, 45.  But "[t]he starting point in discerning congressional intent is the existing statutory text," *Lamie v. United States Trustee*, 540 U.S. at 534, not the legislative history, *see Hoechst Aktiengesellschaft v. Quigg*, 917 F.2d 522, 526 (Fed. Cir. 1990) ("It is well settled law that the plain and unambiguous meaning of the words used by Congress prevails in the absence of a clearly expressed legislative intent to the contrary.").  As described above, the text of § 469 does not demonstrate that Congress cared about a taxpayer's level of liability.  And, as defendant's counsel conceded, shareholders in an S corporation enjoy limited liability and pass-through taxation, just as members in an LLC, yet the regulations do not hold them to the same standard for demonstrating their material participation.  Tr. 39–40.  If Congress were, in fact, trying to stem the use of limited liability pass-though entities as tax shelters, the disparate treatment of S corporations and LLCs would be inexplicable.

---

[12] Defendant argues that the Uniform Limited Partnership Act of 2001 ("ULPA 2001") eliminated the control rule, in part, to bring limited partnerships into parity with LLCs.  Def.'s Consol. Br. 22–23 & n.15.  The glaring deficiency in this argument is that the National Conference drafted ULPA 2001 fifteen years after Congress enacted I.R.C. § 469.  Even today, only fourteen states have adopted ULPA 2001.  6A U.L.A. 325 (2008).  Texas is not one of them.  *Id.*

[13] Tr. 68.

Ironically, even if this court required § 469's legislative history to shed light on the issue at bar, the legislative history supports plaintiff's position, not defendant's. While Congress may have been concerned about the "proliferation of a variety of tax-driven transactions," Def.'s Br. at 10 (citing STAFF OF J. COMM. ON TAXATION, 100TH CONG., GENERAL EXPLANATION OF THE TAX REFORM ACT OF 1986 at 209 (Comm. Print 1987)), it does not follow that "limited liability [was] central to the reasons that [§] 469 was enacted," Tr. 38. Defendant's own sources undermine its arguments. One of the two committee prints that defendant cites[14] states:

> In general, a tax shelter is an investment in which a significant portion of the investor's return is derived from the realization of tax savings with respect to other income, as well as the receipt of tax-favored (or, potentially, tax-exempt) income from the investment itself. Generally tax shelters are passive investments *in the sense that the investor is not involved in actively managing a business*.

STAFF OF J. COMM. ON TAXATION, 99TH CONG., TAX REFORM PROPOSALS: TAX SHELTERS AND MINIMUM TAX 2 (Comm. Print 1985) (emphasis added). The print identifies three "elements of a tax shelter," none of which involve limited liability. *See id.* (stating that tax shelters typically permit taxpayers to: (1) defer tax liability to future years; (2) convert ordinary income to tax-favored income; and (3) leverage their investments to maximize the benefit of deductions). The second committee print states:

> The distinction that Congress determined should be drawn between activities on the basis of material participation was viewed as unrelated to the question of whether, and to what extent, the taxpayer was at risk with respect to the activities.
>
> * * *
>
> At-risk standards, although important in determining the maximum amount that is subject to being lost, were viewed as not a sufficient basis for determining whether or when net losses from an activity should be deductible against other sources of income, or for determining whether an ultimate economic loss has been realized. Congress concluded that its goal of making tax preferences available principally to active participants in substantial businesses, rather than to investors seeking to shelter unrelated income, was best accomplished by examining material participation, as opposed to the financial stake provided by an investor to purchase tax shelter benefits.

GENERAL EXPLANATION OF THE TAX REFORM ACT OF 1986 at 213.

---

[14] Def.'s Br. at 10; Def.'s Consol. Br. at 11.

The only piece of legislative history that aids defendant is a Senate Finance Committee report, which arguably suggests that Congress may have intended to vest the Treasury Secretary with the regulatory authority to treat "substantially equivalent entities" as limited partnerships for purposes of § 469(h)(2). *See* S. REP. NO. 99-313, at 731–32 (1986). However, the Senate report is far from clear on this point. The relevant section states:

> Under the bill, the Secretary of the Treasury is empowered to provide through regulations that limited partnership interests in certain circumstances will *not* be treated (other than through the application of the general facts and circumstances test regarding material participation) as interests in passive activities.
>
> * * *
>
> The exercise of *such authority* might also be appropriate where taxpayers sought to avoid limited partnership status with respect to substantially equivalent entities.

S. REP. NO. 99-313 at 731–32 (emphases added). "[S]uch authority" appears to refer to the authority to treat a taxpayer's limited partnership interest as *not* an interest in a passive activity. However, if that were true, the second sentence in the above-quoted passage would make little sense. How "such authority" could be used in an effort to press limited partnership status upon a taxpayer's ownership interest in a substantially equivalent activity is unclear.

Notwithstanding whatever the Senate report was attempting to convey, defendant's interpretation conflicts with the plain language of the statute. Section 469 states: "Except as provided in regulations, no interest in a limited partnership as a limited partner shall be treated as an interest with respect to which a taxpayer materially participates." I.R.C. § 469(h)(2). Thus, the purpose of Congress's grant of regulatory authority was to provide *exceptions* to—not *expand* upon—the Code's presumption that limited partners do not materially participate in their limited partnerships.

Finally and most importantly, an LLC is not "substantially equivalent" to a limited partnership. As discussed above, unlike a limited partnership, an LLC allows all members to participate in the business while retaining limited liability. BROMBERG § 1.01(b)(4). In other words, "LLCs are designed to permit active involvement by LLC members in the management of the business." *Gregg*, 186 F. Supp. 2d at 1128. It makes little sense, therefore, to extend the Code's presumption concerning limited partners' lack of participation in their limited partnerships to plaintiff and his LLC.[15] Once Treasury Regulation § 1.469-5T(e)(3) is read in context and with due regard to its text, structure, and purpose, it becomes abundantly clear that it is simply inapplicable

---

[15] When Congress debated the Tax Reform Act of 1986, only one state, Wyoming, had adopted an LLC statute. BROMBERG § 1.01(b)(4). Therefore, it is unlikely that Congress could have envisioned applying § 469(h)(2)'s presumption to LLCs. *Garnett*, 2009 WL 1883965, at *7–8.

to a membership interest in an LLC.[16] *See Gregg*, 186 F. Supp. 2d at 1128 ("Plaintiffs argue that the limited partnership test, as set forth in . . . Treasury Regulation § 1.469-5T(e)(3)(i)(B) . . . , is obsolete when applied to LLCs and their members . . . . I agree.").

And even if Treasury Regulation § 1.469-5T(e)(3) could apply to plaintiff and this court had to categorize his membership interest as either a limited or a general partner's interest, it would best be categorized as a general partner's interest under § 1.469-5T(e)(3)(ii). *Accord Garnett*, 2009 WL 1883965, at *8 (recognizing the legal "fiction of treating an . . . [LLC] as a 'limited partnership'" and holding that "the legislative purposes of the special rule of [§] 469(h)(2) are more nearly served by treating . . . [LLC] members as general partners"). At best, defendant has identified an ambiguity in § 1.469-5T(e)(3) as it applies to LLCs. However, the court should decide such ambiguities in favor of the taxpayer. *Coca-Cola Co. v. United States*, No. 03-1155T, 2009 WL 1578030, at *6 (Fed. Cl. June 3, 2009) (citing *Auto-Ordnance Corp. v. United States*, 822 F.2d 1566, 1571 (Fed. Cir. 1987)). Accordingly, plaintiff may demonstrate his material participation in Mountain Air using all seven § 1.469-5T(a) tests.

This holding also accords with *Gregg*, wherein the plaintiff was a member of an LLC "formed to create a network of credentialed alternative medicine practitioners." 186 F. Supp. 2d at 1125. He claimed an ordinary flow-through loss of $230,723 on his income tax return, which the IRS disallowed on the basis that it should have been characterized as a passive activity loss. *Id*. The plaintiff paid the resulting deficiency amount, filed a claim for refund, and ultimately brought suit in district court. *Id.* at 1125–26. As in the instant case, defendant argued that the plaintiff's losses were passive activity losses because the plaintiff was a limited partner under Treasury Regulation § 1.469-5T(e)(3)(i)(B). *Id.* at 1128. The *Gregg* court disagreed, holding:

> In the absence of any regulation asserting that an LLC member should be treated as a limited partner of a limited partnership, defendant's conclusion is inappropriate. Therefore, the higher standard of material participation test for limited partners should not be applied to plaintiff. Plaintiff materially participated in the activity of [his LLC] "if and only if" he satisfies one of the seven tests set forth in . . . Treasur[y] Regulation § 1.469-5T(a)(1)–(7).

*Id.* at 1129.

Defendant raised the same argument in *Garnett*, a recent United States Tax Court case in which the petitioners owned interests in both LLCs and limited liability partnerships ("LLPs"). *See* 2009 WL 1883965, at *5 ("Because of [their] limited liability, respondent contends, each [LLP] and [LLC] interest in question is a 'limited partnership interest' under the temporary regulations."). Like the district court in *Gregg*, the *Garnett* court rejected defendant's argument, holding:

> We do not believe that this rationale properly extends to interests in [LLPs] and [LLCs]. . . . [M]embers of [LLPs] and [LLCs], unlike

---

[16] As Judge Wolski stated at oral argument: "We don't have a living breathing tax code, or, at least, we shouldn't." Tr. 66.

>limited partners in [s]tate law limited partnerships, are not barred by State law from materially participating in the entities' business. Accordingly, it cannot be presumed that they do not materially participate. Rather, it is necessary to examine the facts and circumstances to ascertain the nature and extent of their participation. That factual inquiry is appropriately made, we believe, pursuant to the general tests for material participation under [I.R.C. §] 469 and the regulations thereunder. We anticipate that this examination will occur in subsequent phases of this proceeding.

*Id.* at *7.

Unlike *Garnett*, no subsequent determination is necessary in this case to establish whether plaintiff meets one of the seven general tests for material participation set forth under Treasury Regulation § 1.469-5T(a). As noted above, the parties have stipulated that if plaintiff does not hold a limited partnership interest under § 1.469-5T(e)(3), then I.R.C. § 469 does not limit his share of Mountain Air's losses. *See* July 16, 2007 Stipulation at 1; Def.'s Consol. Br. at 3; Tr. at 39. Plaintiff does not hold a limited partnership interest. Therefore, § 469 does not limit plaintiff's share of Mountain Air's losses and the IRS's conclusion to the contrary is in error.

## IV. CONCLUSION

Accordingly, the court **GRANTS** plaintiff's motion for summary judgment and **DENIES** the government's cross-motion. The Clerk is hereby directed to enter judgment in favor of plaintiff. Defendant shall pay plaintiff a tax refund in the amount $781,241 for his 2002 and 2003 tax years, plus interest thereon until paid. No costs.

**IT IS SO ORDERED.**

s/ *Lawrence J. Block*
Lawrence J. Block
Judge